## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEIT ELECTRIC COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 9339-SJS-SIS |
| | ) | |
| BEACON POINT CAPITAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED DECLARATORY JUDGMENT COMPLAINT AND COUNTERCLAIM

Defendant and Counterclaim-Plaintiff Beacon Point Capital, LLC ("Beacon" or "Defendant"), for its Answer and Affirmative Defenses to Plaintiff's Amended Complaint ("Complaint"), states:

### ANSWER

1. This is an amended complaint for a declaratory judgment that Defendant is collaterally estopped from asserting infringement of U.S. Patent Nos. 5,757,140 and 6,172,464 ("the '140 patent" and "the '464 patent," respectively) and, in the alternative, a declaratory judgment of unenforceability for inequitable conduct. True and correct copies of the '140 patent and '464 patent are attached hereto as Exhibits A and B, respectively.

**ANSWER:** Beacon admits that Feit Electric Company, Inc. ("Plaintiff" or "Feit") has filed a complaint setting forth allegations contained in this paragraph and that true and correct copies of the '140 patent and '464 patent are attached to the complaint, but otherwise denies the allegations in this paragraph.

### PARTIES

2. Plaintiff Feit Electric Company, Inc. ("Feit") is a California corporation with a principal place of business at 4901 Gregg Road, Pico Rivera, CA 90660.

**ANSWER:** Admitted.

3.     Feit sells, among other things, self-ballasted, screw-in compact fluorescent lamps ("CFLs") throughout the United States, including in this District.

**ANSWER:**     Admitted.

4.     On information and belief, Defendant Beacon Point Capital, LLC ("Beacon") is a Delaware limited liability company with a principal place of business at 16 Ascot Lane, Barrington, IL 60010.

**ANSWER:**     Denied in part.  Beacon is an Illinois limited liability company with a

principal place of business located at 800 Hart Road, Suite 109, Barrington, Illinois 60010.

## NATURE OF THE ACTION

5.     This declaratory judgment action is the latest of several cases previously decided by this Court concerning the Nilssen CFL patents, namely:  *Nilssen, et al. v. Osram Sylvania Inc.*, 440 F.Supp.2d 884 (N.D. Ill. 2006) (*aff'd* 504 F.3d 1223 (Fed Cir. 2007)); *Nilssen v. Wal-Mart Stores, Inc.*, No. 04 C 5363, 2008 WL 5087967, at *2 (N.D. Ill. Nov. 24, 2008); *see also Nilssen v. General Elec. Co.*, No. 06 C 4155, 2011 WL 633414 (N.D. Ill. Feb. 11, 2011). Indeed, at least three different judges in this District – Judge Darrah (who was affirmed by the U.S. Court of Appeals for the Federal Circuit), Judge Norgle, and Judge Gettleman – found Nilssen to have engaged in rampant and pervasive inequitable conduct rendering Nilssen CFL patents unenforceable.  This Court has noted that "[f]ar too much judicial resources have been devoted to Nilssen's losing litigation" and awarded attorneys' fees for Nilssen's pursuit of patents obtained in bad faith.  *See Nilssen v. Wal-Mart Stores, Inc.*, No. 04 C 5363, 2008 WL 5087967, at *2 (N.D. Ill. Nov. 24, 2008); *see also Nilssen v. General Elec. Co.*, No. 06 C 4155, 2011 WL 633414 (N.D. Ill. Feb. 11, 2011).

**ANSWER:**     The term "Nilssen CFL patents" is undefined.  For purposes of this

answer, Beacon assumes that the term "Nilssen CFL patents" refers to the '140 and '464 patents

referenced in paragraph 1.  Beacon denies that the '140 patent was at issue in any of the

decisions cited in this paragraph.  Beacon admits that the '464 patent was at issue in *Nilssen v.

Wal-Mart Stores, Inc.*, No. 04 C 5363, 2008 WL 5087967 (N.D. Ill. Nov. 24, 2008), but denies

that the '464 patent was at issue in any other decision cited in this paragraph.  Beacon further

denies that the purported quote from *Nilssen v. Wal-Mart Stores, Inc.*, No. 04 C 5363, 2008 WL

5087967, at *2 (N.D. Ill. Nov. 24, 2008) is accurate.  Beacon otherwise denies the allegations in

- 2 -

this paragraph, including denials to the extent of any suggestions that Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities.

6.     As a result of this Court's and the Federal Circuit's rulings, which are now final and unappealable, Defendant is collaterally estopped from asserting infringement under the '464 and '140 patents because, among other things, they have been found unenforceable in judgments that are now final and unappealable.

**ANSWER:**   Denied.

7.     Defendant, a successor in interest in and to the Nilssen CFL patents apparently managed by a relative of Ole K. Nilssen, nonetheless now threatens Plaintiff with litigation under the '464 and '140 patents.  Plaintiff therefore brings this declaratory judgment action.

**ANSWER:**   The term "Nilssen CFL patents" is undefined.   For purposes of this answer, Beacon assumes that the term "Nilssen CFL patents" refers to the '140 and '464 patents referenced in paragraph 1.  Beacon admits that it has all rights to as assignee from Estate of Ole K. Nilssen and assigned of Master License Agreement the '140 and '464 patents.  Beacon's co-managers are Kenneth Sutton (Ms. Nilssen's son-in-law) and Linda Sutton (Ms. Nilssen's daughter), and that Beacon (via Mr. Sutton) expressed interest in negotiating a patent license with Feit.   Beacon does not contest the allegations in this paragraph to the extent of any suggestion that Feit was under a reasonable apprehension of an imminent patent infringement suit being brought by Beacon on the basis of the '464 and '140 patents, but otherwise denies the allegations in this paragraph, including a denial to the extent of any suggestion that this Court has subject-matter jurisdiction and/or declaratory judgment jurisdiction over any patent(s) other than the '464 and '140 patents or defenses related to such other, unasserted patents.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and pursuant to 35 U.S.C. §§ 1331 and 1338(a) because Feit's claims arise under the patent laws of the United States, 35 U.S.C. §§ 101, et seq.

**ANSWER:** Beacon admits that this Court has subject-matter jurisdiction over Beacon's claims that Feit infringes the '140 and '464 patents and that certain defenses raised by Feit are properly triable in this Court. Beacon otherwise denies the allegations in this paragraph, including a denial to the extent of any suggestion that this Court has subject-matter jurisdiction and/or declaratory judgment jurisdiction over any patent(s) other than the '464 and '140 patents or defenses related to such other, unasserted patents.

9.    There is an actual controversy between Beacon and Feit with respect to whether Beacon may assert the Nilssen patents, which Feit alleges are unenforceable. As set forth below, Beacon has, on more than one occasion, threatened to sue Feit for infringement of the '140 patent and the '464 [*sic*]. Beacon's actions have created a substantial controversy and, in Feit, apprehension of suit, creating a legal dispute of sufficient immediacy and reality to warrant relief by this Court.

**ANSWER:** The term "Nilssen patents" is undefined. For purposes of this answer, Beacon assumes that the term "Nilssen patents" refers to the '140 and '464 patents referenced in paragraph 1. Beacon admits that this Court has subject-matter jurisdiction over Beacon's claims that Feit infringes the '140 and '464 patents. Beacon denies the allegations in this paragraph to the extent of any suggestion that there is a genuine dispute over whether Beacon may assert the '140 and '464 patents.

10.    This Court has personal jurisdiction over Defendant Beacon which on information and belief conducts business in and from Barrington, Illinois.

**ANSWER:** Admitted.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendant Beacon is subject to personal jurisdiction in this judicial district, and further because a substantial part of the events and activities giving rise to Feit's claims occurred in this judicial district.

**ANSWER:** Admitted.

# BACKGROUND

12.     On information and belief, on or about September 5, 2013, the estate of Ole K. Nilssen assigned the '140 and '464 patents to Beacon.

**ANSWER:**     Admitted.

13.     On information and belief, Beacon is the successor in interest to Ole K. Nilssen and/or the Geo Foundation, Ltd. to ownership of the '140 patent and '464 patent.

**ANSWER:**     Beacon admits that it is the assignee of the '140 and '464 patents from the estate of Ole K. Nilssen and that Geo Foundation, Ltd. relinquished the exclusive rights, *inter alia*, to license and enforce the '140 and '464 patents, such that Beacon has all substantial rights under the '140 and '464 patents.  Otherwise, denied.

14.     On information and belief, Beacon owns and has all substantial rights under the '140 and '464 patents, including the right to past damages.

**ANSWER:**     Admitted.

15.     Ole K. Nilssen and Geo Foundation, Ltd. have multiple times in the past asserted numerous patents in this Court.

**ANSWER:**     Beacon admits that Ole K. Nilssen was named as a party in more than one patent infringement cause of action brought by Geo Foundation, Ltd. in this judicial district.  Otherwise, denied.

16.     In the *Nilssen, et al. v. Osram Sylvania Inc.*, 440 F.Supp.2d 884 (N.D. Ill. 2006) (*aff'd* 504 F.3d 1223 (Fed. Cir. 2007)) and *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.*, No. 1:04-CV-5363 (N.D. Ill.) cases, all of the asserted patents were withdrawn with prejudice or declared unenforceable for multiple grounds of inequitable conduct.

**ANSWER:**     Beacon admits that, in the *Nilssen, et al. v. Osram Sylvania Inc.* matter, 15 of 26 originally asserted patents were withdrawn prior to trial, and after the trial, the remaining 11 patents were held unenforceable.  Beacon further admits that, in the *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.* matter, Ole K. Nilssen and Geo Foundation, Ltd., did not oppose the accused infringers' motion for summary judgment on five patents that were previously held

unenforceable in the *Osram* matter. As to the remaining two patents asserted in *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.* matter, Beacon admits that the court in that case held those patents to be unenforceable. Otherwise, denied.

17. Even though not a named party in the action, to meet its obligations to defend its customers, Feit effectively defended and bore part of the cost of the defense in the *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.* case.

**ANSWER:** Beacon admits that Feit was not a named party in the *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.* case. Otherwise, Beacon lacks information to admit or deny the allegations of this paragraph.

18. The '140 patent and the '464 patent name Ole K. Nilssen as inventor and were part of an extensive and complicated scheme of patent applications that included the patents declared unenforceable for multiple grounds of inequitable conduct in the *Nilssen, et al. v. Osram Sylvania Inc.* and *Nilssen, et al. v. Wal-Mart Stores, Inc., et al.* cases ("the *Osram* case" and "the *Wal-Mart* case," respectively).

**ANSWER:** Beacon admits that the '140 and '464 patents name Ole K. Nilssen as the inventor of those patents. Beacon also admits that the '464 patent was held unenforceable in the *Wal-Mart* case, but denies the allegations in this paragraph to the extent of any suggestion that Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities. Otherwise, denied.

19. On or about May 24, 2012, Ole K. Nilssen and Geo Foundation, Ltd. commenced an action against Feit Electric Company, Inc. in the United States District Court for the Middle District of Florida, Ft. Myers Division (Civil Action No. 2:12-CV-296-FtM-99DNF), alleging, among other things infringement of U.S. Patent No. 5,757,140 (the '140 patent) by self-ballasted, screw-in compact fluorescent lamps ("CFLs" sold by Feit (the "Florida action")).

**ANSWER:** Admitted.

20. In the Florida action, Ole K. Nilssen and Geo Foundation, Ltd. also asserted infringement of:

U.S. Patent No. 4,857,806 despite the fact that such patent was found unenforceable in the *Osram* and *Wal-Mart* cases for two types of inequitable

conduct (misleading affidavit and false small entity declaration) and which expired on or about August 15, 2006;

U.S. Patent No. 5,233,270 despite the fact that such patent was found unenforceable in the *Osram* and *Wal-Mart* cases for two types of inequitable conduct (misleading affidavit and false small entity declaration) and which expired on or about September 10, 2008 based on a terminal disclaimer; and

U.S. Patent No. 5,341,067 which was found unenforceable in the *Osram* and *Wal-Mart* cases for four types of inequitable conduct (misleading affidavit, false small entity declaration, failure to disclose material litigation, and failure to disclose material prior art) and which expired on or about September 10, 2008 based on a terminal disclaimer.

**ANSWER:** Beacon admits that U.S. Patent Nos. 4,857,806 ("the '806 patent"), 5,233,270 ("the '270 patent") and 5,341,067 ("the '067 patent") were asserted in the Florida action. Beacon further admits that the '806, '270 and '067 patents were found unenforceable in the *Osram* case, that the '067 patent was found unenforceable in the *Wal-Mart* case, and that summary judgment of unenforceability was not opposed with respect to the '806 and '270 patents in the *Wal-Mart* case. Beacon admits that the '806 patent expired on or about August 15, 2006 and was found unenforceable on grounds of allegedly underpaid maintenance fees, but denies that the '806 patent was found unenforceable on the basis of a misleading affidavit. Beacon admits that the '270 patent expired on or about September 10, 2008 and was found unenforceable on grounds of allegedly underpaid maintenance fees, but denies that the '270 patent was found unenforceable on the basis of a misleading affidavit. Beacon admits that the '067 patent expired on or about September 10, 2008 and was found unenforceable on the basis of undisclosed prior art, but denies that the '067 patent was found unenforceable on the basis of allegedly underpaid maintenance fees, a misleading affidavit or failure to disclose litigation. Otherwise, denied.

21.     On or about February 13, 2013, Ole K. Nilssen and Geo Foundation, Ltd. voluntarily dismissed the Florida action without prejudice.

**ANSWER:**     Admitted.

22.     The dismissal of the Florida action was not based on any settlement, license or other resolution of the claim of infringement between Ole K. Nilssen and Geo Foundation, Ltd. on the one hand and Feit on the other hand.

**ANSWER:**     Admitted.

23.     On information and belief, Kenneth Sutton is the son-in-law of Ole K. Nilssen.

**ANSWER:**     Admitted.

24.     On information and belief, Kenneth Sutton is a principal, manager, and/or executive officer of Beacon.

**ANSWER:**     Admitted.

25.     Aaron Feit is the President and Chief Executive Officer of Feit.

**ANSWER:**     Admitted.

26.     On     or     about     April     8,     2013,     from     the     e-mail     address "ksutton@beaconcapital.com," Mr. Sutton sent Mr. Feit an e-mail message in which he referenced five patents listed in an attachment to that e-mail message that are allegedly directed to CFLs (the "April 2013 assertion message").

**ANSWER:**     Beacon admits that Mr. Sutton sent an email to Mr. Feit on or about April 8, 2013 and that the email referenced five patents relating to CFLs. Beacon denies the allegations in this paragraph to the extent of any suggestion that Mr. Sutton accused Feit of infringing any one of the five patents referenced in the email.

27.     The attachment to the April 2013 assertion message listed U.S. Patent No. 6,172,464 (the '464 patent) as well as U.S. Patent Nos.:  5,166,578; 5,191,262; 5,446,347; and 5,757,140.

**ANSWER:**     Admitted.

28.     In the April 2013 assertion message, Mr. Sutton asserted that the referenced patents "are fully enforceable against CFL infringement."

**ANSWER:**     Admitted.

29.    On or about December 3, 2013, attorney Frederick Roth sent Mr. Feit a letter in which he indicated that he had been retained by Beacon to represent Beacon's right and interest in Ole K. Nilssen patents (the "first Roth letter").

**ANSWER:**    Admitted.

30.    In the first Roth letter, Mr. Roth indicated that "Beacon is the sole owner of all patents formerly owned by Ole K. Nilssen."

**ANSWER:**    Admitted.

31.    In the first Roth letter, Mr. Roth:

- inquires as to whether Feit "is willing to participate in substantive negotiations regarding patent infringement";

- states that "[w]e believe you and your counsel are well acquainted with the patents at issue… and the basis for my client's claims for patent infringement;

- states that he is reaching out to Mr. Feit "before filing an appropriate action in court;" and,

- states that if a response is not forthcoming by December 15, 2013, "we will assume litigation is the only option and proceed accordingly."

**ANSWER:**    Beacon denies the allegations of this paragraph to the extent they are intended to suggest that the first Roth letter accused Feit of infringing any specific patents. Otherwise, admitted.

32.    On or about December 26, 2013, attorney Frederick Roth sent Mr. Feit a second letter (the "second Roth letter") stating:

> Dale Fiene has reviewed and considered a representative sample of virtually all of Feit Electric products found at Menards with regard to the patent claims and is convinced that all of the CFLs sold by Feit Electric during the last six years infringed on at least one claim of one patent. The foregoing statement is true even with consideration of the terminal disclaimers. Mr. Fiene is also convinced the future time period is at least through 5/26/2015 on all of Feit Electric CFLs and through 1/9/2018 on the majority of Feit Electric CFLs.

**ANSWER:** Beacon denies the allegations of this paragraph to the extent they are intended to suggest that the second Roth letter accused Feit of infringing any specific patents. Otherwise, admitted.

33. On information and belief, Dale Fiene was previously in the employ of, or contracted by, Ole K. Nilssen.

**ANSWER:** Admitted.

34. On information and belief, Dale Fiene is employed by or contracted by Beacon.

**ANSWER:** Admitted.

35. May 26, 2015 is the expiration date of the '140 patent.

**ANSWER:** Admitted.

36. January 9, 2018 is the expiration date of the '464 patent.

**ANSWER:** Admitted.

37. The communications and past conduct of Beacon and the communications of Beacon's attorney have caused Feit to be in reasonable apprehension of an imminent action for patent infringement by Beacon.

**ANSWER:** Beacon does not contest the allegations in this paragraph to the extent of any suggestion that Feit was under a reasonable apprehension of an imminent patent infringement suit being brought by Beacon on the basis of the '464 and '140 patents. Beacon otherwise denies the allegations in this paragraph to the extent they suggest that this Court has subject-matter jurisdiction and/or declaratory judgment jurisdiction over any patent(s) other than the '140 and '464 patents.

38. A justiciable case or controversy under the Declaratory Judgment Act exists between Feit and Beacon.

**ANSWER:** Beacon admits that a justiciable case or controversy under the Declaratory Judgment Act exists between Feit and Beacon with respect to Beacon's allegations of

infringement concerning the '140 and '464 patents, but denies that any such justiciable case or controversy exists with respect to any patent other than the '140 and '464 patents.

**COUNT I**
**PATENTS DECLARED UNENFORCEABLE**
**REMAIN UNENFORCEABLE**

**ANSWER:**    To the extent that an answer is required, Beacon denies the allegations contained in this heading.

39.    Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:**    Beacon incorporates by reference the above answers to the above paragraphs as if fully set forth herein.

40.    In the *Osram* case, this Court found the following U.S. patents to be unenforceable, each on multiple grounds of inequitable conduct:

U.S. Patent No. 4,857,806
U.S. Patent No. 5,164,637
U.S. Patent No. 5,233,270
U.S. Patent No. 5,343,123
U.S. Patent No. 5,402,043
U.S. Patent No. 5,416,386
U.S. Patent No. 5,432,409
U.S. Patent No. 5,479,074
U.S. Patent No. 5,481,160
U.S. Patent No. 5,510,680
U.S. Patent No. 5,510,681
U.S. Patent No. 4,677,345
U.S. Patent No. 5,047,690
U.S. Patent No. 5,341,067
U.S. Patent No. 5,189,342

*Nilssen v. Osram Sylvania, Inc.*, 440 F.Supp. 2d 884 (N.D. Ill. 2006).

**ANSWER:**    Beacon admits that, in the *Osram* case, a court in this judicial district found that each patent listed in this paragraph was found unenforceable on grounds of at least one type of inequitable conduct.  Beacon denies that each list patent was found unenforceable on multiple grounds of inequitable conduct.  Beacon further denies the allegations in this paragraph

- 11 -

to the extent of any suggestion that Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities.

41.   The United States Court of Appeals for the Federal Circuit affirmed the unenforceability findings of this Court in the *Osram* case.  *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007).

**ANSWER:**   Beacon admits that the United States Court of Appeals for the Federal Circuit affirmed the judgment of the court in the *Osram* case, but denies the allegations in this paragraph to the extent of any suggestion that the Federal Circuit affirmed or otherwise agreed with every underlying finding that was a predicate to the judgment.  For example, the Federal Circuit stated in its opinion that "[w]hile an opposite conclusion could have been reached, it is not the function of a court of appeals to override district court judgments on close issues, where credibility findings have been made."  Beacon denies the allegations in this paragraph to the extent of any suggestion that Mr. Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities.

42.   The United States Supreme Court denied a petition for certiorari to appeal the decision by United States Court of Appeals for the Federal Circuit affirming the finding of this Court in the *Osram* case.  That case is now final and unappealable.

**ANSWER:**   Beacon admits that the United States Supreme Court denied a petition for certiorari to appeal the decision by United States Court of Appeals for the Federal Circuit affirming the judgment of the court in the *Osram* case, but denies the allegations in this paragraph to the extent of any suggestion that the Federal Circuit affirmed or otherwise agreed with every underlying finding that was a predicate to the judgment.  Beacons also admits that the judgment in the *Osram* case is final to the extent that direct appellate remedies have been exhausted, but denies the allegations in this paragraph to the extent of any suggestions that the findings in the *Osram* case have collateral estoppel effect at this time and in these proceedings.

43.     In the *Wal-Mart* case, also final and not subject to appeal, this Court found the following U.S. patents to be unenforceable, each on multiple grounds of inequitable conduct and relying upon collateral estoppel from the *Osram* case:

U.S. Patent No. 5,341,067
U.S. Patent No. 6,172,464

**ANSWER:**     Beacon admits that the court in the *Wal-Mart* case found the '464 patent

unenforceable on two grounds of inequitable conduct, but denies that the court did so on grounds

of collateral estoppel.     Beacon admits that the *Wal-Mart* court found the '067 patent

unenforceable on grounds of collateral estoppel, but denies that there were multiple grounds of

inequitable conduct concerning the '067 patent.     Beacon also admits that the judgment in the

*Wal-Mart* case is final to the extent that the opportunity for a direct appellate remedy has

expired, but denies the allegations in this paragraph to the extent of any suggestions that the

findings in the *Wal-Mart* case have collateral estoppel effect at this time and in these

proceedings.

44.     In the *Wal-Mart* case, Nilssen also stipulated to an adverse judgment on the following patents as unenforceable:

U.S. Patent No. 4,857,806
U.S. Patent No. 5,233,270
U.S. Patent No. 5,343,123
U.S. Patent No. 5,510,680
U.S. Patent No. 5,510,681

**ANSWER:**     Beacon admits that, in the *Wal-Mart* case, Nilssen did not oppose the

accused infringers' motion for summary judgment on the five patents identified in this

paragraph, which patents were previously held unenforceable in the *Osram* matter.     Otherwise,

denied including a denial to the extent of any suggestion that Mr. Nilssen's conduct could, at this

time and in these proceedings, be deemed "inequitable" under current, controlling authorities.

45. No intervening events or acts have changed, altered, and/or undone the unenforceability of the patents held unenforceable by this Court (the "unenforceable Nilssen patents").

**ANSWER:** Denied.

46. No intervening change in law has changed, altered, reversed, and/or undone the unenforceability of the unenforceable Nilssen patents.

**ANSWER:** Denied.

47. The enforcement of the unenforceable Nilssen patents is barred by collateral estoppel.

**ANSWER:** Denied.

48. The enforcement of the unenforceable Nilssen patents is barred by law.

**ANSWER:** Denied.

49. The unenforceable Nilssen patents may not be asserted against Feit CFL products.

**ANSWER:** Denied.

50. Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '140, '464, '806, '270, and '067 patents. A declaratory judgment is necessary and appropriate to resolve this justiciable controversy s.

**ANSWER:** Beacon admits that a justiciable controversy exists with respect to Beacon's claims of infringement respecting the '464 and '140 patents, but denies that Beacon is precluded by the collateral estoppel doctrine, or otherwise, from enforcing the '464 or '140 patents. Beacon further denies that the Court has subject-matter jurisdiction or declaratory judgment jurisdiction to declare that the '806, '270 or '067 patents which were previously held and/or found unenforceable under now-obsolete legal standards for assessing inequitable conduct are unenforceable by Beacon on grounds of collateral estoppel. Beacon further states that, in its February 9, 2015 Memorandum Opinion and Order, the Court found that "[w]ith respect to the remaining patents [*i.e.*, patents other than the '140, '464, '578, '262 and '347 patents] the

- 14 -

complaint lacks factual enhancement to indicate a substantial controversy with sufficient immediacy to support subject matter jurisdiction." (Dkt. 46 at 4). Because this Amended Complaint pleads no additional grounds for subject matter jurisdiction over the '806, '270 or '067 patents, there remain no grounds for declaratory judgment jurisdiction over those patents. Beacon otherwise denies the remaining allegations of this paragraph.

### COUNT II
### BEACON IS COLLATERALLY ESTOPPED
### FROM ASSERTING THE '464 PATENT

**ANSWER:** To the extent that an answer is required, Beacon denies the allegations contained in this heading.

51. Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:** Beacon incorporates by reference the above answers to the above paragraphs as if fully set forth herein.

52. In the *Nilssen, et al. v. Wal-Mart Stores, Inc.*, et al., No. 1:04-CV-5363 (N.D. Ill.) case, this Court found that Ole K. Nilssen made a false declaration claiming small entity status in the application leading to the '464 patent.

**ANSWER:** Beacon admits that the *Wal-Mart* court stated that "[i]t is undisputed that plaintiff paid small entity fees for the '464 Patent after entering the CFLA" and that "[t]his alone justifies summary judgment in favor of defendants." Otherwise, denied.

53. In the *Wal-Mart* case, on March 17, 2008, this Court found that Ole K. Nilssen failed to disclose material litigation in the application leading to the '464 patent.

**ANSWER:** Beacon admits that the *Wal-Mart* court stated that "the subject matter of the '464 Patent was involved in the Motorola litigation while Nilssen prosecuted that patent," that Nilssen "knew the subject matters were related and chose not to reveal the litigation to the PTO," and that "[t]his failure also compels summary judgment of unenforceability in favor of defendants." Otherwise, denied.

54.     In the *Wal-Mart* case, this Court found that Ole K. Nilssen failed to disclose material litigation in the application leading to the '464 patent.  And that such failure constituted inequitable conduct.

**ANSWER:**     Beacon admits that the *Wal-Mart* court stated that "the subject matter of

the '464 Patent was involved in the Motorola litigation while Nilssen prosecuted that patent,"

that Nilssen "knew the subject matters were related and chose not to reveal the litigation to the

PTO," and that "[t]his failure also compels summary judgment of unenforceability in favor of

defendants."  Otherwise, denied.

55.     In the *Wal-Mart* case, this Court found the '464 patent to be unenforceable for inequitable conduct.

**ANSWER:**     Beacon denies the allegations to the extent of any suggestion that the '464

patent would, at this time and in these proceedings, be held unenforceable under current legal

standards or that the unenforceability findings in the *Wal-Mart* case have collateral estoppel

effect.  Otherwise, admitted.

56.     In particular, the Court in the *Wal-Mart* case found that collateral estoppel applied from the *Osram* case even though the '464 patent was not directly at issue in that case.

**ANSWER:**     Denied.

57.     In the *Osram* and *Wal-Mart* cases, as well as other cases in this District involving the Nilssen patents, this Court found the cases to be exceptional under 35 U.S.C. § 285 and awarded the defendants their reasonable attorneys' fees under 35 U.S.C. § 285 and their costs. The Federal Circuit upheld in the *Osram* case.  In fact, in at least one case in this District, the Court found that collateral estoppel as to this finding that the case is exceptional applied.  *See Nilssen v. General Elec. Co.*, No. 06 C 04155, 2011 WL 633414 (N.D. Ill. Feb. 11, 2011).

**ANSWER:**     Beacon admits that three decisions from this judicial district (namely,

decisions rendered in the *Osram*, *Wal-Mart* and *General Electric* cases, as referenced in this

paragraph) awarded attorneys' fees to the accused infringers pursuant to 35 U.S.C. § 285.

Beacon further admits that the decision to award fees in the *Osram* case was affirmed in a split

decision rendered by the Federal Circuit, wherein Judge Newman dissented, in part, because the

Federal Circuit had previously "stated that Nilssen's arguments on every issue were 'not per se unreasonable,'" and also because the decision to affirm "enlarges the scope of 'exceptional case' to include less than egregious aspects of patent prosecution and litigation practice, with no evidence or charge of bad faith or prejudice." Beacon admits that the *General Electric* court stated that "Plaintiffs are estopped from relitigating the issue of exceptionality here." Otherwise, denied.

58. Under the doctrine of issue preclusion, Beacon is estopped from asserting infringement of the '464 patent by Feit.

**ANSWER:** Denied.

59. Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '464 patent and the effect of collateral estoppel. A declaratory judgment is necessary and appropriate to resolve this judiciable controversy and so that Feit may ascertain its rights and duties with respect to the '464 patent.

**ANSWER:** Beacon admits that a justiciable controversy exists with respect to Beacon's claims of infringement respecting '464 patent, but denies that Beacon is, at this time and in these proceedings, precluded by the collateral estoppel doctrine, or otherwise, from enforcing the '464 patent.

**COUNT III**
**BEACON IS COLLATERALLY ESTOPPED**
**FROM ASSERTING THE '140 PATENT**

**ANSWER:** To the extent that an answer is required, Beacon denies the allegations contained in this heading.

60. Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:** Beacon incorporates by reference the above answers to the above paragraphs as if fully set forth herein.

61.     Nilssen engaged in ongoing and pervasive inequitable conduct that rendered sixteen of his CFL patents unenforceable after full and final adjudication. *(Nilssen, et al. v. Osram Sylvania Inc.*, 440 F.Supp.2d 884 (N.D. Ill. 2006) ("*Osram I'*); (*aff'd* 504 F.3d 1223) (Fed. Cir. 2007) ("*Osram II*"), cert. denied 554 U.S. 903 (U.S. 2008); *Nilssen v. Wal-Mart Stores, Inc.*, No. 04 C 5363, Order on Summary Judgment, Dkt. No. 192 (N.D. Ill. March 17, 2008) ("*Wal-Mart*") (*aff'd, per curiam*, No. 2009-1495, Fed Cir. 2010) (*aff'd, per curiam*, No. 2010-1139, Fed. Cir. 2011), cert. denied, 132 S.Ct. 1915 (U.S. 2012)).

**ANSWER:**     Beacon admits that certain patents were held and/or found unenforceable in *Osram I* and in the *Wal-Mart* summary judgment decision, that the judgments in *Osram I* was affirmed on appeal and that direct appellate remedies for the judgments identified in this paragraph have been exhausted.  Beacon denies the allegations in this paragraph to the extent of any suggestion that Beacon is, at this time and in these proceedings, precluded by the collateral estoppel doctrine, or otherwise, from enforcing any patent held and/or found unenforceable in the proceedings referenced by this paragraph.  Otherwise, denied.

62.     In the *Osram I* case, Judge Darrah found the following Nilssen CFL patents to be unenforceable, each on multiple grounds of inequitable conduct:

> U.S. Patent No. 4,857,806
> U.S. Patent No. 5,164,637
> U.S. Patent No. 5,233,270
> U.S. Patent No. 5,343,123
> U.S. Patent No. 5,402,043
> U.S. Patent No. 5,416,386
> U.S. Patent No. 5,432,409
> U.S. Patent No. 5,479,074
> U.S. Patent No. 5,481,160
> U.S. Patent No. 5,510,680
> U.S. Patent No. 5,510,681
> U.S. Patent No. 4,677,345
> U.S. Patent No. 5,047,690
> U.S. Patent No. 5,341,067
> U.S. Patent No. 5,189,342

**ANSWER:** Beacon admits that, in the *Osram I* case, Judge Darrah found each patent listed in this paragraph to be unenforceable on grounds of at least one type of inequitable conduct. Beacon denies that each listed patent was found unenforceable on multiple grounds of inequitable conduct. Beacon further denies the allegations in this paragraph to the extent of any suggestion that Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities. Beacon lacks information to admit or deny whether each and every patent identified in this paragraph has a claim that covers a CFL sold by Feit, and therefore denies the allegations to the extent of any suggestion that each and every patent listed in this paragraph covers a Feit CFL. Otherwise, denied.

63. In *Osram II*, The Federal Circuit affirmed the unenforceability findings in the *Osram* case. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007). The United States Supreme Court denied Nilssen's petition for certiorari to appeal the Federal Circuit's decision.

**ANSWER:** Beacon admits that the United States Court of Appeals for the Federal Circuit affirmed the judgment of the court in the *Osram* case and that the United States Supreme Court denied a petition for certiorari to appeal the decision by United States Court of Appeals for the Federal Circuit affirming the judgment of the court in the *Osram* case. Beacon denies the allegations in this paragraph to the extent of any suggestion that the Federal Circuit affirmed or otherwise agreed with every underlying finding that was a predicate to the judgment. For example, the Federal Circuit stated in its opinion that "[w]hile an opposite conclusion could have been reached, it is not the function of a court of appeals to override district court judgments on close issues, where credibility findings have been made." Beacon denies the allegations in this paragraph to the extent of any suggestion that Mr. Nilssen's conduct could, at this time and in these proceedings, be deemed "inequitable" under current, controlling authorities.

64.     In the *Wal-Mart* case, which is also final and not subject to appeal, Judge
Gettleman found two more of Nilssen's CFL patents to be unenforceable, each on multiple
grounds of inequitable conduct and relying upon collateral estoppel from the *Osram* case:

U.S. Patent No. 5,341,067
U.S. Patent No. 6,172,464

**ANSWER:**     Beacon admits that Judge Gettleman in the *Wal-Mart* case found the '464

patent unenforceable on two grounds of inequitable conduct, but denies that the court did so on

grounds of collateral estoppel.   Beacon admits that Judge Gettleman found the '067 patent

unenforceable on grounds of collateral estoppel, but denies that there were multiple grounds of

inequitable conduct concerning the '067 patent.   Beacon also admits that the judgment in the

*Wal-Mart* case is final to the extent that the opportunity for a direct appellate remedy has

expired, but denies the allegations in this paragraph to the extent of any suggestion that the

findings in the *Wal-Mart* case have collateral estoppel effect at this time and in these

proceedings.

65.     In the *Wal-Mart* case, Nilssen also stipulated to summary judgment of
unenforceability, and Judge Gettleman entered judgment accordingly, on the following of
Nilssen's CFL patents:

U.S. Patent No. 4,857,806
U.S. Patent No. 5,233,270
U.S. Patent No. 5,343,123
U.S. Patent No. 5,510,680
U.S. Patent No. 5,510,681

**ANSWER:**      Beacon admits that, in the *Wal-Mart* case, Nilssen did not oppose the

accused infringers' motion for summary judgment on the five patents identified in this

paragraph, which patents were previously held unenforceable in the *Osram* matter, and that

summary judgment on those five patents was accordingly granted.   Otherwise, denied including

a denial to the extent of any suggestion that Mr. Nilssen's conduct could, at this time and in these

proceedings, be deemed "inequitable" under current, controlling authorities.

66.     Three different Judges of this Court – Judge Darrah, Judge Gettleman and Judge Norgle – also found that Nilssen's conduct was so egregious that they each found the cases before them exceptional under 35 U.S.C. § 285 and ordered Nilssen to pay the attorneys' fees incurred by the defendants.

**ANSWER:**     Beacon admits that three decisions from this judicial district (namely, decisions rendered in the *Osram* (Judge Darrah), *Wal-Mart* (Judge Gentleman) and *General Electric* (Judge Norgle) cases, as referenced in this paragraph) awarded attorneys' fees to the accused infringers pursuant to 35 U.S.C. § 285.  Beacon further notes that the decision to award fees in the *Osram* case was affirmed in a split decision rendered by the Federal Circuit, wherein Judge Newman dissented, in part, because the Federal Circuit had previously "stated that Nilssen's arguments on every issue were 'not per se unreasonable,'" and also because the decision to affirm "enlarges the scope of 'exceptional case' to include less than egregious aspects of patent prosecution and litigation practice, with no evidence or charge of bad faith or prejudice."  Otherwise, Beacon denies the allegations in this paragraph, including a denial of any suggestion that any referenced decision found Nilssen's conduct to be "egregious."   Judge Norgle expressly found that "Plaintiff's conduct was not so egregious in this Court that it justifies Rule 11 sanctions."

67.     In Judge Norgle's decision finding Nilssen's case against GE to be "exceptional" pursuant to 35 U.S.C. § 285 and awarding attorneys' fees to GE, Judge Norgle stated that:

> What made Nilssen's conduct so distinctive, however, is that although he considered himself an expert in the field of patent procedures and prosecutions Nilssen continued to engage in this inequitable conduct over a significant period of time.

**ANSWER:**     Beacon admits the accuracy of the quote provided in this paragraph, but denies the allegations in this paragraph to the extent of any suggestion that the quoted passage carries relevance to any patent asserted in this matter.

- 21 -

68.     Judge Darrah's decision in *Osram I*, issued after a bench trial on the issue of inequitable conduct, sets forth Nilssen's misconduct in detail, including his: (a) submission of false declarations and corresponding failure to properly pay more than $200,000 in patent maintenance fees to the Patent Office; (b) improper and false claims of priority dates in oaths to avoid prior art; (c) failure to disclose the *Motorola* litigation (which involved related patents) to the Patent Office; and (d) failure to disclose material prior art to the Patent Office.

**ANSWER:**     Beacon admits that in *Osram I*, Judge Darrah issued a decision, after a

bench trial on issues of alleged inequitable conduct, made findings of inequitable conduct based

on small entity status claims, so-called "priority misclaims," - failure to disclose the *Motorola*

litigation and failure to disclose prior art.  Beacon denies the allegations to the extent of any

suggestion that Nilssen's conduct would constitute "misconduct" or "inequitable conduct" under

contemporary legal standards (including the standards for evaluating materiality and intent), and

otherwise denies the remaining allegations in this paragraph.

69.     Judge Darrah held in *Osram I* that throughout the prosecution of his patents, Nilssen consistently acted with intent to defraud the Patent Office and that Nilssen should neither have received nor be entitled to retain the patent rights he fraudulently obtained.

**ANSWER:**     Denied.

70.     The '140 Patent claims a priority date of March 20, 1978.

**ANSWER:**     Beacon denies the allegations in this paragraph to the extent of any

suggestion that the '140 patent asserts an effective filing date.  Beacon admits that the '140

patent identifies a related application having a filing date of March 20, 1978, but otherwise

denies the allegations in this paragraph.

71.     The '140 Patent is a child of application serial number 06/787,692 ("the '692 application").

**ANSWER:**     Beacon admits that the '140 patent issued from application serial number

851,887 (filed March 16, 1992), which is a continuation of application serial number 819,655

(filed January 13, 1992), which is a continuation of application serial number 643,023 (filed

- 22 -

January 18, 1991), which is a continuation-in-part of application serial number 787,692 (filed October 15, 1985). Otherwise, denied.

72. The '692 application claims a priority date of August 14, 1980.

**ANSWER:** Beacon denies the allegations in this paragraph to the extent of any suggestion that the '692 application asserts an effective filing date. Beacon admits that the '692 application identifies a related application having a filing date of August 14, 1980, but otherwise denies the allegations in this paragraph.

73. The '692 application does not claim a priority date of March 20, 1978.

**ANSWER:** Admitted.

74. The earliest applications that the '140 Patent relies upon for priority do not claim priority dates earlier than August 14, 1980.

**ANSWER:** Beacon denies the allegations in this paragraph to the extent of any suggestion that the '140 patent sets forth a claim to an effective filing date of prior to August 14, 1980. Further, Beacon does not understand this allegation. If the allegation is referring to the issue whether the '140 patent does not list related application that were filed prior to August 14, 1980, then denied. If the allegation is referring to the issue whether one or more "related" applications themselves do not cite a related application filed prior to August 14, 1980, then admitted (e.g., the '692 application makes no such reference). Otherwise, denied.

75. In *Osram I*, Judge Darrah considered this same priority claim made by Nilssen in the '140 patent in connection with U.S. Patent Nos. 5,164,637, 5,510,680, and 5,510,681 ("the '637, '680, and '681 patents," respectively), which like the '140 patent, were all children of the '692 application and found them to be unenforceable for inequitable conduct.

**ANSWER:** Beacon admits that the '140, '637, '680 and '681 each cite the '692 application as a related application. Beacon denies the allegations in this paragraph to the extent of any suggestions that the '140 patent asserts an effective filing date or that the '140 patent cites

the same chain of related applications as the '637, '680 or '681 patents. Beacon further denies the allegations in this paragraph to the extent of any suggestion that the disclosure of the '140 patent is substantively the same as the '637, '680 or '681 patents or that the '140 patent claims the same combinations of elements as the '637, '680 or '681 patents. Beacon additionally denies the allegations in this paragraph to the extent of any suggestion that the findings of materiality and intent by Judge Darrah comport with contemporary legal standards. Otherwise, denied.

76. Nilssen made the priority claim in the application that led to the '140 patent under oath.

**ANSWER:** Beacon admits that, for the application that led to the '140 patent, Nilssen under oath recited a number of related applications. Beacon denies the allegations in this paragraph to extent of any suggestion by the words "priority claim" or otherwise in this paragraph that Mr. Nilssen intended for the Patent Office to believe that any claim of the application for the '140 patent was entitled to an effective filing date.

77. As found by Judge Darrah in *Osram I*, Nilssen submitted an oath intentionally claiming the March 1978 false priority date.

**ANSWER:** Beacon admits that Judge Darrah found that Nilssen made "false claims of priority dates" "to obtain an effective filing date of March 20, 1978." Beacon denies the allegations in this paragraph to the extent of any suggestion that the findings of materiality and intent by Judge Darrah comport with contemporary legal standards. Otherwise, denied.

78. Judge Darrah also found in *Osram I* "that Nilssen intentionally misclaimed priority in the patents to claim an earlier effective date" and that "[t]hese false claims of priority dates were highly material because they allowed Nilssen to potentially avoid prior art and obtain patent claims to which he would not otherwise be entitled."

**ANSWER:** Beacan admits that Judge Darrah stated in *Osram I* that "[t]hese false claims of priority dates were highly material because they allowed Nilssen to potentially avoid prior art and obtain patent claims to which he would not otherwise be entitled." Beacon denies the allegations

in this paragraph to the extent of any suggestion that the findings of materiality and intent by

Judge Darrah comport with contemporary legal standards. Otherwise, denied.

79.     In *Osram I*, Judge Darrah found compelling evidence of Nilssen's intent:

> This Advance letter demonstrates that Nilssen intentionally misclaimed priority in these '637, '680, and '681 Patents to claim an earlier effective date to assure that Advance could not cancel its License Agreement. Nilssen's testimony to the contrary was not credible.

**ANSWER:**    Denied.

80.     As held by both Judge Darrah and confirmed by the Federal Circuit in *Osram I* and *II*, the March 20, 1978 priority claim is false. In particular, Judge Darrah found in *Osram I* that:

> Nilssen's claim of priority to the effective filing date of March 20, 1978, in the '637, '680, and '681 Patents is, therefore, incorrect because the respective patent applications filed between 1980 and 1990 do not claim priority to or cross reference any patents or patent applications earlier than Nilssen's U.S. Patent Application No. 06/178,107, filed August 14, 1980.

As further explained by the Federal Circuit in *Osram II*:

> Nilssen recited in his various patent applications paternity from earlier applications, the obvious purpose of which is to be able to assert a claim for priority over intervening publications or other patent-defeating occurrences if needed. The district court found, and appellants are not contesting, that the recitation of application histories did not comply with the applicable 35 U.S.C. § 120 requirements, and certain applications were thus not entitled to earlier priority dates.

**ANSWER:**    Beacon admits the accuracy of the quotes provided in this paragraph.

Beacon denies the allegations in this paragraph to the extent of any suggestion that the findings

of materiality comport with contemporary legal standards. Otherwise, denied.

81.     The priority claim made by Nilssen in the application that led to the '140 patent is the same priority claim that was found to constitute inequitable conduct by Judge Darrah in *Osram I*.

- 25 -

**ANSWER:** Beacon admits that the '140 patent cites as "related" the same 1978 application cited by the '637, '680, and '681 patents as "related." Beacon denies the allegations in this paragraph to the extent of any suggestions that the '140 recites the same chain of related applications as the '637, '680, and '681 patents, or that the findings of materiality and intent by Judge Darrah comport with contemporary legal standards. Otherwise, denied.

82. Nilssen's intentional claim of a false priority date for children of the '692 application, was found to constitute inequitable conduct by both Judge Darrah in *Osram I* and the Federal Circuit in *Osram II* and those decisions are final and unappealable.

**ANSWER:** Beacon admits that the '637, '680, and '681 patents all cited the '692 application as a related application, that Judge Darrah found inequitable conduct based on so-called "priority misclaims" with respect to those patents, that Judge Darrah's judgment of unenforceability respecting those patents was affirmed by the Federal Circuit in *Osram II* and that the judgments in *Osram I* and *Osram II* are no longer subject to direct appellate review. Beacon denies the allegations in this paragraph to the extent of any suggestions that Judge Darrah found all later applications related to the '692 application unenforceable, or that the findings of materiality and intent by Judge Darrah comport with contemporary legal standards. Otherwise, denied.

83. Nilssen made the same knowingly false claim of priority in connection with the '140 Patent.

**ANSWER:** Denied.

84. Nilssen had a full and fair opportunity to litigate the issue of his false priority claim in *Osram I* and *Osram II*.

**ANSWER:** Beacon admits that Nilssen had a full and fair opportunity to litigate inequitable conduct issues concerning the '637, '680, and '681 patents in *Osram I* and *Osram II* under the then-existing legal standards. Otherwise, denied.

85.     Collateral estoppel therefore precludes Beacon, as Nilssen's successor-in-interest, from challenging that finding.

**ANSWER:**     Denied.

86.     The prosecution histories of the '140 and the '464 patents are so similar that collateral estoppel applies with equal force to the '140 patent.

**ANSWER:**     Denied.

87.     In the prosecution history of the '464 patent, Nilssen filed a declaration claiming small entity status.

**ANSWER:**     Admitted.

88.     In the *Wal-Mart* case, this Court found that Nilssen made a false declaration claiming small entity status in the application leading to the '464 patent.

**ANSWER:**     Beacon admits that the *Wal-Mart* court stated that "[i]t is undisputed that plaintiff paid small entity fees for the '464 Patent after entering the CFLA" and that "[t]his alone justifies summary judgment in favor of defendants."  Otherwise, denied.

89.     In the *Wal-Mart* case, this Court found the '464 patent to be unenforceable for inequitable conduct.

**ANSWER:**     Beacon admits that the *Wal-Mart* Court found the '464 patent to be unenforceable for inequitable conduct.  Beacon otherwise denies the allegations in this paragraph to the extent of any suggestion that issues of materiality and intent were evaluated under contemporary legal standards.

90.     In particular, the Court in the *Wal-Mart* case found that collateral estoppel applied from the *Osram* case even though the '464 patent was not directly at issue in that case.

**ANSWER:**     Beacon admits that the Court in the *Wal-Mart* case found that collateral estoppel applied from the *Osram* case to a patent other than the '464 patent, but denies that the Court applied collateral estoppel to find the '464 patent unenforceable.

91.     Collateral estoppel protects a party from having to relitigate issues that have been fully and fairly tried in a previous action and adversely resolved against the opposing party.

**ANSWER:**     This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

92.     Collateral estoppel applies to patent issues that are identical.

**ANSWER:**     This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

93.     Accordingly, although the '140 patent was not directly at issue in the *Osram* cases, collateral estoppel applies and the '140 patent is unenforceable, as set forth above, for the same reasons set forth in the *Osram* and *Wal-Mart* cases.

**ANSWER:**     Denied.

94.     Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '140 patent and the effect of collateral estoppel. A declaratory judgment is necessary and appropriate to resolve this justiciable controversy and so that Feit may ascertain its rights and duties with respect to the '140 patent.

**ANSWER:**     Beacon admits that a justiciable controversy exists with respect to

Beacon's claims of infringement respecting the '140 patent, but denies that the allegations in this

paragraph to the extent of any suggestion that the '140 patent is unenforceable.   Otherwise

denied.

## COUNT IV

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF
## THE '140 PATENT BECAUSE OF INEQUITABLE CONDUCT

95.     Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:**     Beacon incorporates by reference the above answers to the above

paragraphs as if fully set forth herein.

**False Small Entity Declaration**

**ANSWER:**    To the extent that an answer is required, Beacon denies the allegations contained in this heading.

96.    On information and belief, on or about March 16, 1992, in the application leading to the issuance of the '140 patent, Ole K. Nilssen filed a declaration claiming small entity status.

**ANSWER:**    Admitted.

97.    On information and belief, Ole K. Nilssen was not at the time the declaration claiming small entity status was filed entitled to small entity status for the application leading to the '140 patent or the '140 patent.

**ANSWER:**    Denied.

98.    On information and belief, on or before March 2, 1998, Ole K. Nilssen no longer qualified for small entity status for the application leading to the '140 patent or the '140 patent but he did not promptly correct that status or underpayments and made further small entity status payments to the U.S. Patent Office.

**ANSWER:**    Denied.  Beacon notes that, on or around February 25, 1998, the U.S. Patent Office mailed Mr. Nilssen an "Issue Fee Transmittal Form" specifying that the issue fee due at the small entity rate was $660.00.  In a check dated March 1, 1998, Mr. Nilssen paid a sum of $1,320.00 as an issue fee for the '140 patent, *i.e.*, an issue fee at the large entity rate. Further, in a communication dated March 2, 1998, Mr. Nilssen explicitly informed the U.S. Patent Office, with respect to the application for the '140 patent, that "Applicant no longer qualifies as a Small Entity," at least as of that date.

99.    On information and belief, on or before June 1, 2000, Ole K. Nilssen no longer qualified for small entity status for the application leading to the '140 patent or the '140 patent but he did not promptly correct that status or underpayments.

**ANSWER:**    Beacon admits that, for at least a period of time following January 4, 1996, Mr. Nilssen no longer qualified for small entity status, for example, as shown by the 1998 large

entity payment referenced in the answer to paragraph 63. Otherwise, denied to the extent of any suggestion that Mr. Nilssen knowingly underpaid maintenance fees for the '140 patent.

100. On information and belief, even though he was not entitled to small entity status, Ole K. Nilssen made one or more small entity status payments in connection with the application leading to the '140 patent and/or in connection with the maintenance of the '140 patent.

**ANSWER:** Beacon admits that on or about November 12, 2001, Nilssen made a small entity maintenance payment for the '140 patent and that, on information and belief, the maintenance fee for the '140 patent was required to be paid at the large entity rate. Beacon denies the allegations in this paragraph to the extent of any suggestion that Mr. Nilssen was aware, at the time of the 2001 payment, of the relevant change in maintenance fee payment rules, published in the Federal Register on or about September 8, 2000 and otherwise reflected by subsequent versions of the Manual of Patent Examining Procedure ("MPEP"), which subsequent versions of the MPEP first reflected the rule change in the August 2001 edition of the MPEP. Otherwise, denied.

101. On information and belief, during the time he took advantage of small entity status for the application leading to the '140 patent or the '140 patent, Ole K. Nilssen was not entitled to small entity status.

**ANSWER:** Beacon admits that on or about November 12, 2001, Nilssen made a small entity maintenance payment for the '140 patent and that, on information and belief, the maintenance fee for the '140 patent was required to be paid at the large entity rate. Beacon denies the allegations in this paragraph to the extent of any suggestion that Mr. Nilssen was aware, at the time of the 2001 payment, of the relevant change in maintenance fee payment rules, published in the Federal Register on or about September 8, 2000 and otherwise reflected by subsequent versions of the Manual of Patent Examining Procedure ("MPEP"), which subsequent

versions of the MPEP first reflected the rule change in the August 2001 edition of the MPEP.

Otherwise, denied.

102.    Ole K. Nilssen intentionally and purposefully submitted one or more declarations claiming small entity status know that he was not entitled to do so.  The declarations claiming small entity status filed by Ole K. Nilssen in the application leading to the '140 patent were false.

**ANSWER:**    Denied.

103.    A false declaration to claim small entity status constitutes inequitable conduct.

**ANSWER:**    Denied.

104.    A false declaration to claim small entity status constitutes inequitable conduct rendering the '140 patent unenforceable.

**ANSWER:**    Denied.

105.    The failure to timely correct entity status was misleading.

**ANSWER:**    Denied.

106.    Improperly taking advantage of small entity status constitutes inequitable conduct.

**ANSWER:**    Denied.

107.    Improperly taking advantage of small entity status constitutes inequitable conduct rendering the '140 patent unenforceable.

**ANSWER:**    Denied.

**False Priority Claim**

**ANSWER:**    To the extent that an answer is required, Beacon denies the allegations contained in this heading.

108.    Additionally, the application leading to the '140 patent contained an oath signed by Ole K. Nilssen on March 12, 1992 ("the '140 oath") with the following priority claim:

> … which application is a continuation of Serial No. 07/819,655 filed 01/13/92; which is a Continuation of Serial" No. 07/643,023 filed 01/18/91; which is a Continuation-in-Part of application Serial No. 06/787,692 filed 10/15/85, now abandoned; which is a Continuation of application Serial No. 06/644,155 filed 08/27/84,

> now abandoned; which is a continuation of Serial No. 06/555,426 filed 11/23/83, now abandoned; which is a Continuation of application Serial No. 06/178,107 filed 08/14/80, now abandoned; which is a Continuation-in-Part of Serial No. 05/973,741 filed 12/28/78, now abandoned; which is a Continuation-in-Part of Serial No. 05/890,586 filed 03/20/78, now U.S. Patent No. 4,184,128…. [*Sic.*]

**ANSWER:** Beacon denies the allegations in this paragraph to extent of any suggestion by the words "priority claim" or otherwise in this paragraph that Mr. Nilssen intended for the Patent Office to believe that any claim of the application for the '140 patent was entitled to an effective filing date. Otherwise, admitted.

109. The first time in the chain of applications leading to the '140 patent a claim of priority back to U.S. patent application serial number 05/973,741 filed December 28, 1978 and/or U.S. patent application serial number 05/890,586 filed March 20, 1978 was in U.S. patent application serial number 07/819,655 filed January 13, 1992.

**ANSWER:** Beacon admits that on or about January 10, 1992, Mr. Nilssen identified application serial no. 07/819,655 as being related to application serial no. 06/555,426, filed November 23, 1983, as a continuation of application serial no. 06/178,107, filed August 14, 1980, and which application serial no. 06/555,426 also was identified as a continuation-in-part of application serial no. 06/330,159, filed December 14, 1981, which is a division of application serial no. 05/973,741, filed December 28, 1978. Beacon further admits that no later than March 16, 1992, in the application for the '140 patent, Mr. Nilssen identified application serial no. 05/973,741 as a continuation-in-part of application serial no. 05/890,586, filed March 29, 1978. Beacon notes that, on the same page of his reciting related application data for the application for the '140 patent, he explicitly identified application serial no. 06/178,107, filed August 14, 1980, as "the original in-part progenitor of instant application." Beacon otherwise denies the allegations in this paragraph, including a denial to the extent of any suggestion that Mr. Nilssen intended for the Patent Office to believe, or, that the Patent Office did in fact believe, that any

claim of the application for the '140 patent was entitled to an effective filing date prior to August 14, 1980.

110.    Contrary to the claim of priority recited in the '140 oath, U.S. patent application serial number 05/973,741 filed December 28, 1978 did not claim priority to U.S. patent application serial number 05/890,586 filed March 20, 1978.

**ANSWER:**    Application serial no. 05/973,741, filed December 28, 1978, expressly states under the header "CROSS REFERENCE TO RELATED APPLICATION" that "[t]his invention is a Continuation-In-Part of my application entitled 'High Efficiency Push-Pull Inverters,' filed March 20, 1978, Serial Number 890,586." Beacon therefore denies the allegations in this paragraph.

111.    The claim of priority recited in the '140 oath that U.S. patent application serial number 05/973,741 filed December 28, 1978 claiming priority to U.S. patent application serial number 05/890,586 filed March 20, 1978 is false.

**ANSWER:**    Denied.

112.    Contrary to the claim of priority recited in the '140 oath, U.S. patent application serial number 06/178,107 filed August 14, 1980 did not claim priority U.S. patent application serial number 05/973,741 filed December 28, 1978.

**ANSWER:**    Beacon admits that application serial no. 06/178,107 does not reference application serial number 05/973,741 as a related application, but otherwise denies the allegations in this paragraph. Beacon notes that, under the operative version of the MPEP at the time, a continuation-in-part application need not have referenced an earlier related application in order to constitute a "continuation-in-part." *See* MPEP 201.08 (4th Ed., Rev. 3, Jul. 1980). In addition, "[t]he inclusion of parent or prior application information in the heading does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date." *Id*. at 202.02.

113.    The claim of priority recited in the '140 oath that U.S. patent application serial number 06/178,107 filed August 14, 1980 claiming claim priority U.S. patent application serial number 05/973,741 filed December 28, 1978 is false.

**ANSWER:**    Beacon admits that application serial no. 06/178,107 does not reference application serial number 05/973,741 as a related application, but otherwise denies the allegations in this paragraph.  Beacon notes that, under the operative version of the MPEP at the time, a continuation-in-part application need not have referenced an earlier related application in order to constitute a "continuation-in-part."  *See* MPEP 201.08 (4th Ed., Rev. 3, Jul. 1980).  In addition, "[t]he inclusion of parent or prior application information in the heading does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date."  *Id.* at 202.02.

114.    Contrary to the claim of priority recited in the '140 oath, U.S. patent application serial number 06/555,426 filed 23 November 1983 did not claim priority to U.S. patent application serial number 06/330,159 filed December 14, 1981.

**ANSWER:**    Beacon notes that the '140 oath makes no reference to U.S. patent application serial number 06/330,159 filed December 14, 1981, and, therefore, denies the allegations of this paragraph.

115.    The claim of priority recited in the '140 oath that U.S. patent application serial number 06/555,426 filed 23 November 1983 claiming priority to U.S. patent application serial number 06/330,159 filed December 14, 1981 is false.

**ANSWER:**    Beacon notes that the '140 oath makes no reference to U.S. patent application serial number 06/330,159 filed December 14, 1981, and, therefore, denies the allegations of this paragraph.

116.    The discontinuity in the priority claims in the chain of applications leading to the '140 patent makes the priority claims to U.S. patent application serial number 05/973,741 filed December 28, 1978 and U.S. patent application serial number 05/890,586 filed March 20, 1978 improper.

**ANSWER:**    Beacon notes that a recitation of related application data is not, in and of itself, a claim to an effective filing date based on the earliest referenced application, and, therefore, denies the allegations in this paragraph.

117.    The discontinuity in the priority claims in the chain of applications leading to the '140 patent makes the priority claims to U.S. patent application serial number 05/973,741 filed December 28, 1978 and U.S. patent application serial number 05/890,586 filed March 20, 1978 ineffective.

**ANSWER:**    Beacon notes that a recitation of related application data is not, in and of itself, a claim to an effective filing date based on the earliest referenced application, and, therefore, denies the allegations in this paragraph.

118.    The '140 oath contained at least three false statements.  These statements by Nilssen were intentional and made with intent to deceive the patent office.

**ANSWER:**    Denied.

119.    A false claim of priority is material.

**ANSWER:**    Denied.

120.    A false claim of priority constitutes inequitable conduct.

**ANSWER:**    Denied.

121.    A false claim of priority constitutes inequitable conduct rendering the '140 patent unenforceable.

**ANSWER:**    Denied.

122.    Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '140 patent.  A declaratory judgment is necessary and appropriate to resolve this justiciable controversy and so that Feit may ascertain its rights and duties with respect to the '140 patent.

**ANSWER:**    Beacon admits that a justiciable controversy exists with respect to Beacon's claims of infringement respecting the '140 patent, but denies that the allegations in this paragraph to the extent of any suggestion that the '140 patent is unenforceable.

## COUNT V
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF
## THE '464 PATENT BECAUSE OF INEQUITABLE CONDUCT

**ANSWER:**     To the extent that an answer is required, Beacon denies the allegations contained in this heading.

123.     Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:**     Beacon incorporates by reference the above answers to the above paragraphs as if fully set forth herein.

### False Small Entity Declaration

**ANSWER:**     To the extent that an answer is required, Beacon denies the allegations contained in this heading.

124.     On information and belief, on or about February 24, 1995, in the application leading to the issuance of the '464 patent, Ole K. Nilssen filed a declaration claiming small entity status.

**ANSWER:**     Admitted.

125.     On information and belief, Ole K. Nilssen was not at the time the declaration claiming small entity status was filed entitled to small entity status for the application leading to the '464 patent or the '464 patent.

**ANSWER:**     Denied.

126.     On information and belief, on or before June 1, 2000, Ole K. Nilssen no longer qualified for small entity status for the application leading to the '464 patent or the '464 patent but he did not properly correct that status or underpayments.

**ANSWER:**     Denied.

127.     On information and belief, even though he was not entitled to small entity status, Ole K. Nilssen made one or more small entity status payments in connection with the application leading to the '464 patent and/or in connection with the maintenance of the '464 patent.

**ANSWER:**     Denied.

128.   On information and belief, during the time he took advantage of small entity status for the application leading to the '464 patent and the '464 patent, Ole K. Nilssen was not entitled to small entity status.

**ANSWER:**   Denied.

129.   Ole K. Nilssen intentionally and purposefully submitted one or more declarations claiming small entity status knowing that he was not entitled to do so.  The declaration claiming small entity status filed by Ole K. Nilssen in the application leading to the '464 patent was false.

**ANSWER:**   Denied.

130.   A false declaration to claim small entity status constitutes inequitable conduct.

**ANSWER:**   Denied.

131.   A false declaration to claim small entity status filed by Ole K. Nilssen in the application leading to the '464 patent constitutes inequitable conduct rendering the '464 patent unenforceable.

**ANSWER:**   Denied.

132.   The failure to timely correct entity status was misleading.

**ANSWER:**   Denied.

133.   Improperly taking advantage of small entity status constitutes inequitable conduct.

**ANSWER:**   Denied.

134.   Improperly taking advantage of small entity status constitutes inequitable conduct rendering the '464 patent unenforceable.

**ANSWER:**   Denied.

### Failure to Disclose Material Litigation Inequitable Conduct

**ANSWER:**   To the extent that an answer is required, Beacon denies the allegations contained in this heading.

135.   Ole K. Nilssen sued Motorola, Inc. and its subsidiary, Motorola Lighting, Inc. on October 19, 1993, alleging patent infringement and trade secret misappropriation (*See Nilssen v.*

*Motorola, Inc.*, No. 93-C-6333, 2002 WL 31369410 (N.D. Ill. Oct. 21, 2002) – the "*Motorola* litigation").

**ANSWER:** Admitted.

136. The '464 patent shares a grandparent application with U.S. Patent No. 5,510,681 ("the '681 patent") that was at issue in the *Motorola* litigation.

**ANSWER:** Beacon denies that the '681 patent was at issue in the *Motorola* litigation. Beacon admits that the '464 patent issued from application serial no. 08/394,251, filed on February 24, 1995, which is a continuation-in-part of application serial no. 07/579,569, filed on September 10, 1990, which is a continuation-in-part of application no. 06/787,692, filed on October 15, 1985. Beacon also admits that the '681 patent issued from application serial no. 227,999, filed on April 15, 1994, which is a continuation of application serial no. 770,414, filed on October 3, 1991, which is a continuation-in-part of application serial no. 663,566, filed on March 4, 1991, and also a continuation-in-part of application serial no. 768,105, filed on September 30, 1991, said application serial no. 768,105 being a continuation of application serial no. 787,692, filed on October 5, 1985. Accordingly, Beacon admits that application serial no. 787,692 is cited as a related application for both the '464 patent and the '681 patent, but denies the allegations in this paragraph to the extent of any suggestion that any aspect of the *Motorola* litigation was material to the prosecution of the '464 patent.

137. The *Motorola* litigation involved the same subject matter that is disclosed and claimed in the '464 patent.

**ANSWER:** Denied.

138. The '464 patent and the '681 patent share eight figures and their specifications are remarkably similar.

**ANSWER:** Beacon admits that the respective disclosures of the '464 and '681 patents have commonalities, but denies the allegations in the paragraph to the extent of any suggestion

that any such commonalities are "remarkabl[e]" or that any aspect of the *Motorola* litigation was

material to the prosecution of the '464 patent.

139.    The *Motorola* litigation was material to the prosecution of the application that led
to the '464 patent.

**ANSWER:**    Denied.

140.    The *Motorola* litigation was highly material to the prosecution of the application
that led to the '464 patent.

**ANSWER:**    Denied.

141.    The *Motorola* litigation wound its way through this Court for close to ten years,
finally being dismissed on October 21, 2002 pursuant to a settlement agreement.

**ANSWER:**    Beacon admits that the *Motorola* litigation was filed in October 1993 and

dismissed in October 2002 pursuant to a settlement agreement.  Otherwise, denied.

142.    Ole K. Nilssen was certainly aware of the *Motorola* litigation during the time he
was prosecuting the application that lead to the '464 patent.

**ANSWER:**    Beacon admits that Mr. Nilssen was aware of the *Motorola* litigation

during the time that he prosecuted the application for the '464 patent, but denies the allegations

in this paragraph to the extent of any suggestion that Mr. Nilssen was aware of any information

from or about the *Motorola* litigation that would have been material to the prosecution of the

'464 patent.

143.    Nilssen was fully aware of his duty to disclose the *Motorola* litigation, which he
commenced more than one year before he filed the application that led to the '464 patent.

**ANSWER:**    Denied.

144.    Nilssen failed to disclose to the United States Patent Office all information
regarding the *Motorola* litigation including, most importantly, Motorola's invalidity affirmative
defenses.  Nilssen did so intentionally and with intent to deceive.

**ANSWER:** Beacon admits that, during prosecution of the application for the '464 patent, Mr. Nilssen did not disclose to the Patent Office "all information regarding the *Motorola* litigation," but otherwise denies the remaining allegations in this paragraph.

145. The failure to disclose the *Motorola* litigation was misleading.

**ANSWER:** Denied.

146. The failure to disclose the *Motorola* litigation constitutes inequitable conduct rendering the '464 patent unenforceable.

**ANSWER:** Denied.

147. Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '464 patent. A declaratory judgment is necessary and appropriate to resolve this justiciable controversy and so that Feit may ascertain its rights and duties with respect to the '464 patent.

**ANSWER:** Beacon admits that a justiciable controversy exists with respect to Beacon's claims of infringement respecting the '464 patent, but denies that the allegations in this paragraph to the extent of any suggestion that the '464 patent is unenforceable.

**COUNT VI**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY**
**BASED ON PROSECUTION LACHES ESTOPPEL**

**ANSWER:** To the extent that an answer is required, Beacon denies the allegations contained in this heading.

**The '140 Patent Prosecution Laches Estoppel**

**ANSWER:** To the extent that an answer is required, Beacon denies the allegations contained in this heading.

148. Feit incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER:** Beacon incorporates by reference the above answers to the above paragraphs as if fully set forth herein.

149. The '140 patent has a history of over 20 years of patent prosecution.

**ANSWER:** Beacon admits that the application for the '140 patent was filed on March 16, 1992 and issued about six years later on May 26, 1998. Otherwise, denied.

150. The '140 patent claims priority back to an application that was filed on or about March 20, 1978.

**ANSWER:** Beacon denies the allegations in this paragraph to the extent of any suggestion that the '140 patent asserts an effective filing date. Beacon admits that the '140 patent identifies a related application having a filing date of March 20, 1978, but otherwise denies the allegations in this paragraph.

151. The '140 patent is a child of application serial number 06/787,692 ("the '692 application.")

**ANSWER:** Beacon incorporates by reference its answer to paragraph 71.

152. The '692 application claims a priority date of August 14, 1980.

**ANSWER:** Beacon incorporates by reference its answer to paragraph 72.

153. The application that led to the '140 patent was filed by Nilssen in a long line of continuation applications and claimed priority back through that chain of applications (the "'140 patent chain of applications"):

application serial number 07/851,887 filed March 16, 1992 (the application that matured into the '140 patent) as a continuation of

application serial number 07/819,655 filed January 13, 1992 as a continuation of

application serial number 07/643,023 filed January 18, 1991 as a continuation in part of

application serial number 06/787,692 filed October 15, 1985 as a continuation of

application serial number 06/644,155 filed August 27, 1984 as a continuation of

application serial number 06/555,426 filed November 23, 1983 as a continuation of

application serial number 06/178,107 filed August 14, 1980 as a continuation in part of

application serial number 05/973,741 filed December 28, 1978 as a continuation in part of

application serial number 05/890,586 filed March 20, 1978.

**ANSWER:**    Denied.

155.    Nilssen abandoned five applications in the '140 patent chain of applications, each time filing a new file wrapper continuation application that was prosecuted and then abandoned.

**ANSWER:**    Beacon admits that five applications listed as "related" on the face of the '140 patent were abandoned by operation of law as a result of file wrapper continuations having been filed. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

156.    Nilssen application serial number 07/643,023 in the '140 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 819,655 on or about January 10, 1992 caused the abandonment by operation of law of application serial number 643,023. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

157.    Nilssen application serial number 07/787,692 in the '140 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 768,105 on or about September 26, 1991 caused the abandonment by operation of

law of application serial number 787,692, and notes that application serial number 768,105 is unrelated to the '140 patent. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

158.    Nilssen application serial number 06/644,155 in the '140 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 787,692 on or about October 15, 1985 caused the abandonment by operation of law of application serial number 644,155. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

159.    Nilssen application serial number 06/555,426 in the '140 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 644,155 on or about August 24, 1984 caused the abandonment by operation of law of application serial number 555,426. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

160.    Nilssen application serial number 06/178,107 in the '140 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 555,426 on or about November 21, 1983 caused the abandonment by operation of law of application serial number 178,107. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '140 patent. Nilssen did not give up on any of his applications.

161.    In at least one application in the '140 patent chain of applications, after receiving a notice of allowance, Ole K. Nilssen abandoned the application in favor of a file wrapper continuation application.

**ANSWER:**    Beacon admits that the '140 patent issued from application serial number 851,887 (filed March 16, 1992), which is a continuation of application serial number 819,655 (filed January 13, 1992), which is a continuation of application serial number 643,023 (filed January 18, 1991).  Beacon also admits that, during prosecution of application serial number 643,023, Nilssen received a notice of allowability with respect then-pending claims 1-14 and 20 on or about December 31, 1991.  Beacon further admits that, on or about January 10, 1992, Nilssen filed application serial number 819,655 as a file wrapper continuation of application serial number 643,023 in which Nilssen sought to obtain allowance on 10 claims (25-34) in addition to already-allowed claims 1-14 and 20, and that Nilssen received a notice of allowance on additional claims (as well as already-allowed claims 1-14 and 20) on or about June 15, 1992.  Beacon admits that the filing of a file wrapper continuation of application serial number 643,023 caused the abandonment by operation of law of that application.  Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any allowed claims or otherwise unreasonably delayed issuance of any claim of the '140 patent.  Nilssen did not give up on any of his applications.

162.    Application serial number 07/643,023 in the '140 patent chain of applications is a parent application to the application leading to the '140 patent, and in that application Nilssen received a notice of allowance on or about December 31, 1991.

**ANSWER:**    Beacon incorporates by reference its answer to Paragraph 161.

163.    Rather than letting application serial number 07/643,023 issue after receiving the notice of allowance, Nilssen filed a file wrapper continuation.

**ANSWER:**    Beacon incorporates by reference its answer to Paragraph 161.

164.    The file wrapper continuation application filed after receiving a notice of

allowance in application serial number 07/643,023 unreasonably prolonged and extended prosecution of the subject matter of the applications in the '140 patent chain of applications.

**ANSWER:**    Denied.

165.    On information and belief, if application serial number 07/643,023 was allowed to issue responsive to the notice of allowance, it would have issued in 1992.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

166.    If application serial number 07/643,023 was allowed to issue responsive to the notice of allowance and it issued in 1992, given a term of seven years from the issue date, the resulting patent would have expired in 2009.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.  Beacon notes that the allowed

claims were issued in a patent dated March 2, 1993 and which would have expired on February

10, 2010.  Beacon denies the allegations in this paragraph to the extent of any suggestion that

Nilssen unreasonably delayed issuance of any allowed claims or otherwise unreasonably delayed

issuance of any claim of the '140 patent.

167.    By filing a file wrapper continuation application rather than allowing application serial number 07/643,023 to issue pursuant to the notice of allowance, Nilssen and his successors in interest obtained at least six years of patent term later in time than it would have otherwise been entitled.

**ANSWER:**    Denied.

168.    The '140 patent did not issue until 1998.

**ANSWER:**    Admitted.

169.    The term of the '140 patent expires in 2015.

**ANSWER:**    Admitted.

170.    The multiple abandonments and file wrapper continuation applications in the '140

patent chain of applications delayed the filing, prosecution and issuance of the '140 patent.

**ANSWER:**   This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

171.   By abandoning and then filing multiple file wrapper continuation applications in the '140 patent chain of applications, Nilssen and his successors in interest obtained a patent term shifted later in time.

**ANSWER:**   This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

172.   Such repeated abandonments and file wrapper continuation applications improperly extended the patent term and was an abuse of the patent system.

**ANSWER:**   Denied.

173.   The multiple abandonments and file wrapper continuation applications in the '140 patent chain of applications was excessive and unreasonable.

**ANSWER:**   Denied.

174. The multiple abandonments and file wrapper continuation applications in the '140 patent chain of applications resulted in delay in the issuance of the '140 patent that is prejudicial to Feit.

**ANSWER:**   Denied.

175.   There is no reasonable explanation for the multiple abandonments and file wrapper continuation applications in the '140 patent chain of applications.

**ANSWER:**   Denied.

176.   Nilssen used one or more abandonments and file wrapper continuation applications in the '140 patent chain of applications patent to shift the term of the '140 patent to later in time.

**ANSWER:**   Denied.

177.   Nilssen's filing of one or more abandonments and file wrapper continuation applications in the '140 patent chain of applications effectively shifted the term of the '140 patent later in time.

**ANSWER:**   This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time

178.    Feit began having CFLs made for sale in the United States in about 1986.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

179.    In the years following 1986 and to the present, Feit expanded its line of CFLs for sale in the United States.

**ANSWER:**     Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

180.    In the years following 1986 and to the present, Feit and its suppliers further developed and improved upon the CFLs made for Feit for sale in the United States.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

181. In the years following 1986 and to the present, Feit undertook substantial efforts to expand its sales and marketing of CFLs in the United States.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

182.    In the years following 1986 and to the present, Feit's substantial efforts to expand its sales and marketing of CFLs in the United States included investment to support such expansion.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

183.    The multiple abandonments and file wrapper continuations in the '140 patent chain of applications has prejudiced Feit by inexcusably delaying issuance, and therefore notice, of the '140 patent claims that otherwise Feit could have designed around or otherwise avoided.

**ANSWER:**    Denied.

184.    The later patent term obtained by Nilssen prejudices Feit by creating a potential claim of patent infringement on patent claims that otherwise would have expired and would have thus been dedicated to the public.

**ANSWER:**    This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

185.    The later patent term obtained by Nilssen's filing of one or more abandonments and file wrapper continuation applications in the '140 patent chain of applications is the result of an abuse of the patent system.

**ANSWER:**    Denied.


186.    The '140 patent is invalid and/or unenforceable for prosecution laches estoppel.

**ANSWER:**    Denied.

### The '464 Patent Prosecution Laches Estoppel

**ANSWER:**    To the extent that an answer is required, Beacon denies the allegations

contained in this heading.

187.    The '464 patent has a history of over twenty years of patent prosecution.

**ANSWER:**    Beacon admits that the application for the '464 patent was filed on

February 24, 1995 and issued less than six years later on January 9, 2001.  Otherwise, denied.

188.    The '464 patent claims priority back to an application that was filed on or about August 14, 1980.

**ANSWER:**    Beacon denies the allegations in this paragraph to the extent of any

suggestion that '464 patent asserts an effective filing date.  Beacon admits that the '464 patent

identifies a related application having a filing date of August 14, 1980, but otherwise denies the

allegations in this paragraph.

189.    The '464 patent claims priority back through a chain of six earlier filed applications, four of which were abandoned.

**ANSWER:**    Beacon denies the allegations in this paragraph to the extent of any

suggestion that '464 patent asserts an effective filing date.  Beacon admits that five applications

listed as "related" on the face of the '464 patent were abandoned by operation of law. Beacon otherwise denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '464 patent. Nilssen did not give up on any of his applications.

190. The application that led to the '464 patent was filed by Nilssen in a long line of continuation applications and claimed priority back through that chain of applications (the "'464 patent chain of applications"):

application serial number 08/394,251 filed February 24, 1995 (the application that matured into the '464 patent) as a continuation in part of

application serial number 07/579,569 filed September 10, 1990 which is a continuation in part of

application serial number 06/787,692 filed October 15, 1985 which is a continuation of

application serial number 06/644,155 filed August 27, 1984 which is a continuation of

application serial number 06/555,426 filed November 23, 1983 which is a continuation of

application serial number 06/178,107 filed August 14, 1980.

**ANSWER:** Beacon admits the allegations in this paragraph to the extent that they recite related application data for the '464 patent. Otherwise, denied.

191. Nilssen abandoned four of the applications in the '464 patent chain of applications in favor of file wrapper continuation applications.

**ANSWER:** Beacon admits that five applications are listed as "related" on the face of the '140 patent and that four of those applications were abandoned by operation of law as a result of file wrapper continuations having been filed. Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '464 patent. Nilssen did not give up on any of his applications.

192.    Nilssen application serial number 06/555,426 in the '464 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 644,155 on or about August 24, 1984 caused the abandonment by operation of law of application serial number 555,426.  Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '464 patent.  Nilssen did not give up on any of his applications.

193.    Nilssen application serial number 06/644,155 in the '464 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:** Beacon admits that the filing of file wrapper continuation application serial number 787,692 on or about October 15, 1985 caused the abandonment by operation of law of application serial number 644,155.  Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '464 patent. Nilssen did not give up on any of his applications.

194.    Nilssen application serial number 06/787,692 in the '464 patent chain of applications was abandoned to file a file wrapper continuation application.

**ANSWER:**    Beacon admits that the filing of file wrapper continuation application serial number 768,105 on or about September 26, 1991 caused the abandonment by operation of law of application serial number 787,692, and notes that application serial number 768,105 is unrelated to the '464 patent.  Beacon denies the allegations in this paragraph to the extent of any suggestion that Nilssen unreasonably delayed issuance of any claim of the '464 patent.  Nilssen did not give up on any of his applications.

195.    The '464 patent did not issue until 2001.

**ANSWER:**    Admitted.

196.    The natural term of the '464 patent would have expired in 2018.

**ANSWER:**    Admitted.

197.    The multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications delayed the filing, prosecution and issuance of the '464 patent.

**ANSWER:**    This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

198.    Such repeated abandonments and file wrapper continuation applications improperly extended the patent term and was an abuse of the patent system.

**ANSWER:**    Denied.

199.    By filing multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications, Nilssen and his successors in interest obtained a patent term shifted later in time.

**ANSWER:**    This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

200. The multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications was excessive and unreasonable.

**ANSWER:**    Denied.

201.    The multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications resulted in prejudice to Feit.

**ANSWER:**    Denied.

202.    There is no reasonable explanation for the multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications.

**ANSWER:**    Denied.

203.    Nilssen used one or more abandonments and file wrapper continuation applications in the '464 patent chain of applications patent to shift the term of the '464 patent to later in time.

**ANSWER:**    Denied.

204.    The multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications delayed issuance of the '464 patent.

**ANSWER:** Denied.

205. The multiple abandonments and file wrapper continuation applications in the '464 patent chain of applications resulted in delay in the issuance of the '464 patent prejudicial to Feit.

**ANSWER:** Denied.

206. Nilssen's filing of one or more abandonments and file wrapper continuation applications in the '464 patent chain of applications effectively shifted the term of the '464 patent later in time.

**ANSWER:** This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

207. Feit began having CFLs made for sale in the United States in about 1986.

**ANSWER:** Beacon lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and, therefore, denies the same.

208. In the years following 1986 and to the present, Feit expanded its line of CFLs for sale in the United States.

**ANSWER:** Beacon lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and, therefore, denies the same.

209. In the years following 1986 and to the present, Feit and its suppliers further developed and improved upon the CFLs made for Feit for sale in the United States.

**ANSWER:** Beacon lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and, therefore, denies the same.

210. In the years following 1986 and to the present, Feit undertook substantial efforts to expand its sales and marketing of CFLs in the United States.

**ANSWER:** Beacon lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and, therefore, denies the same.

211. In the years following 1986 and to the present, Feit's substantial efforts to expand its sales and marketing of CFLs in the United States included investment to support such

expansion.

**ANSWER:**    Beacon lacks knowledge or information sufficient to admit or deny the

allegations of this paragraph, and, therefore, denies the same.

212.    The multiple abandonments and file wrapper continuations in the '464 patent chain of applications has prejudiced Feit by inexcusably delaying issuance, and therefore notice, of the '464 patent claims that otherwise Feit could have designed around or otherwise avoided.

**ANSWER:**    Denied.

213.    The later patent term obtained by Nilssen prejudices Feit by creating a potential claim of patent infringement on patent claims that otherwise would have expired and thus would have been dedicated to the public.

**ANSWER:**    This paragraph states a legal conclusion to which no answer is required.

Beacon reserves the right to address Feit's purported statement of the law at a later time.

214.    The '464 patent is invalid and/or unenforceable for prosecution laches estoppel. 215. Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '140 patent and the '464 patent and the effect of prosecution history estoppel. A declaratory judgment is necessary and appropriate to resolve this justiciable controversy and so that Feit may ascertain its rights and duties with respect to the '140 patent and the '464 patent.

**ANSWER:**    Denied.

215.    Based on Beacon's actions described above, an actual substantial controversy of sufficient immediacy and reality has arisen and now exists between the parties as to the enforceability of the claims of the '140 patent and the '464 patent and the effect of prosecution history estoppel.  A declaratory judgment is necessary and appropriate to resolve this justiciable controversy and so that Feit may ascertain its rights and duties with respect to the '140 patent and the '464 patent.

**ANSWER:**    Beacon admits that a justiciable case or controversy under the Declaratory

Judgment Act exists between Feit and Beacon with respect to Beacon's allegations of

infringement concerning the '140 and '464 patents, but denies that any such justiciable case or

controversy exists with respect to any patent other than the '140 and '464 patents.  Beacon

further denies that Feit has stated a plausible cause of action of prosecution laches.

## AFFIRMATIVE DEFENSES

Beacon alleges and asserts the following defenses in response to Feit's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST AFFIRMATIVE DEFENSE

Due to a change in the law governing the inequitable conduct doctrine, findings of inequitable conduct made prior to the change in law, have no preclusive effect in this case, and do not bar Beacon from enforcing any patents at this time, and in these proceedings.

## RESERVATION OF AFFIRMATIVE DEFENSES

Beacon expressly reserves the right to assert any other defenses that discovery may reveal.

## COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Beacon alleges the following Counterclaim against Plaintiff and Counterclaim-Defendant Feit:

**A.     The Parties**

1.      Counterclaim-Plaintiff Beacon is an Illinois limited liability company with a principal place of business at 800 Hart Road, Suite 109, Barrington, IL 60010.

2.      On or around September 5, 2013, Beacon acquired from the estate of Ole K. Nilssen 100% ownership interest in U.S. Patent Nos. 5,757,140 ("the '140 patent") and 6,172,464 ("the '464 patent") (collectively, "the patents-in-suit"), including the right to bring patent enforcement actions for damages accruing prior to September 5, 2013.

3.     Counterclaim-Defendant Feit is a California corporation with a business address at 4901 Gregg Road, Pico Rivera, California 90660.

4.     Feit sells self-ballasted, screw-in compact fluorescent lamps ("CFLs") throughout the United States, including this District, which infringe at least one claim of each of the patents-in-suit.

### B.     Jurisdiction and Venue

5.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Feit, which sells and has sold infringing products throughout the United States, including within the Northern District of Illinois.  Feit has been, and is currently, in the business of selling CFLs that are the subject of this counterclaim complaint in the Northern District of Illinois.  Feit's acts of selling and offering for sale the infringing products within the Northern District of Illinois demonstrate continual and systematic contacts by Feit within the Northern District of Illinois.  Defendant's acts of selling and offering for sale the infringing products within the Northern District of Illinois give rise to Beacon's cause of action for patent infringement.

7.     In addition, Feit's acts of selling and offering for sale within the Northern District of Illinois the infringing products that are the subject of this counterclaim complaint establish minimum contacts as such contacts were made for purposes of availing Feit of the privilege of doing business within the Northern District of Illinois.  Furthermore, exercising jurisdiction over Feit in the Northern District of Illinois is consistent with traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**C.      Infringement of the Patents-In-Suit**

9.      On May 26, 1998, the Patent Office duly and legally issued the '140 patent, entitled "Electronic Ballast with Frequency Control."  A copy of the '140 patent is attached as Exhibit 1.

10.      CFLs sold and/or offered for sale by Feit infringe at least claim 16 of the '140 Patent.

11.      On January 9, 2001, the Patent Office duly and legally issued the '464 patent, entitled "Compact Screw-In Fluorescent Lamp."  A copy of the '464 patent is attached as Exhibit 2.

12.      CFLs sold and/or offered for sale by Feit infringe at least claim 3 of the '464 Patent.

13.      Plaintiffs bring this lawsuit to stop Feit's unauthorized practice of the patents-in-suit.

**D.      Collateral Estoppel Poses No Bar to Plaintiffs' Claims**

14.      In prior litigation, one of the two patents-in-suit, namely, the '464 patent, was found unenforceable based on grounds of alleged inequitable-conduct by Ole K. Nilssen ("Nilssen"), the inventor and former owner of the patents-in-suit.  *See Nilssen v. Wal-Mart Stores, Inc*., No. 04-cv-5363 (N.D. Ill. March 17, 2008) ("*Wal-Mart* Decision").  No Court has found the '140 Patent to be unenforceable.

15.      Because of intervening changes in fact and/or law, the prior findings of unenforceability with respect to the '464 patent are not conclusive in this case.  *See, e.g., Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599-600 (1948) (collateral estoppel

- 56 -

can apply only where the "controlling facts and applicable legal rules remain unchanged" between two proceedings).

16.     In particular, the inequitable-conduct findings in the *Wal-Mart* Decision are obsolete under current law enunciated by the Federal Circuit's *en banc* decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*).

### Count I – Patent Infringement

17.     Beacon re-alleges paragraphs 1-16 as if fully incorporated herein.

18.     Beacon is the owner of all rights, title and interest in the patents-in-suit, including the right to bring this suit for injunctive relief and to recover for past and continuing damages.

19.     Feit is directly and/or indirectly infringing each of the patents-in-suit in this District and elsewhere in the United States, by using, offering for sale and/or selling, without authority, CFLs covered by one or more claims of the patents-in-suit, including, at the very least, Feit CFL model no. BPESL 13T/D/3 ("Exemplary Accused Model").

20.     On information and belief, in the Northern District of Illinois and elsewhere in the United States, purchasers of the Exemplary Accused Model sold by Feit have used in the past, and continue to use, Exemplary Accused Model in combination with other components, including power sources, thereby infringing each of the patents-in-suit.

21.     On information and belief, each Exemplary Accused Model sold by Feit was designed to be used in connection with a power source.

22.     Feit has in the past offered for sale and sold, and continues to offer for sale and sell, Exemplary Accused Models that constitute a material component of each patent-in-suit and which have no substantial use other than as an infringement of the patents-in-suit.

23.     On information and belief, Feit knew and intended that purchasers of the Exemplary Accused Model would use the Exemplary Accused Model in combination with other components, including power sources, so as to infringe each of the patents-in-suit.

24.     On information and belief, Feit has actively induced purchasers of the Exemplary Accused Model to use the Exemplary Accused Model in combination with other components, including power sources, so as to infringe each of the patents-in-suit.

25.     On information and belief, Feit's offers to sell and sales of the Exemplary Accused Model constitute willful infringement of the patents-in-suit.

As a result of Feit's infringement of the patents-in-suit, Beacon has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Feit's infringing activities are enjoined by this Court.

WHEREFORE, Defendant and Counterclaim-Plaintiff Beacon respectfully requests that this Court enter judgment in favor of Beacon and against Plaintiff and Counterclaim-Defendant Feit, and:

(a)     award Beacon all damages adequate to compensate them for Feit's infringement of the patents-in-suit, including without limitation damages and prejudgment interest under 35 U.S.C. §284;

(b)     enjoin Feit from selling the Exemplary Accused Model as well as all other models of CFLs which directly infringe the patents-in-suit;

(c)     enjoin Feit from contributorily infringing and inducing the infringement of the inventions claimed in the patents-in-suit;

(d)     increase Beacon's actual damages under 35 U.S.C. §284 and award Beacon's reasonable attorneys fees under 35 U.S.C. §285; and

(e)     award Beacon any and all such other relief as the Court deems just and proper.

Respectfully submitted,
BEACON POINT CAPITAL, LLC
By: /s/ Frederick E. Roth
    One of Its Attorneys

**Attorneys for Defendant and
Counterclaim-Plaintiff
Beacon Point Capital, LLC**

Frederick E. Roth
Roth Law Firm
33 N. Dearborn St.
Suite 2350, Chicago, IL 60602
630-778-1100
fred@rlfirm.com
ARDC No. 3123593

Dated: <u>March 26, 2015</u>

## CERTIFICATE OF SERVICE

The undersigned, being one of the attorneys of record, certifies that on this 26th day of March 2015, he caused a copy of **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED DECLARATORY JUDGMENT COMPLAINT AND COUNTERCLAIM** to be served upon the attorney listed below electronically.

Kal K. Shah
Locke Lord LLP
225 W. Wacker Drive, Suite 3000
Chicago, IL 60606

/s/  Frederick E. Roth
Attorney for Beacon Point Capital, LLC