**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEIT ELECTRIC COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 9339-SJS-SIS |
| | ) | |
| BEACON POINT CAPITAL, LLC, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF CLIFFORD H. KRAFT**

1. My name is Clifford H. Kraft of 320 Robin Hill Dr., Naperville, IL 60540. I have been retained to offer opinions as an expert in patent prosecution concerning U.S. Patent number 5,757,140 ("the '140 Patent") issued to Mr. Ole K. Nilssen. My CV is attached as Exhibit A hereto.

2. I hold a Ph.D. in Electrical Engineering and a J.D. in Law. I am a Senior Life Member of the International Association of Electrical and Electronic Engineers ("IEEE") and am retired from AT&T Bell Laboratories. I am a registered Patent Attorney licensed to practice before the United States Patent and Trademark Office ("USPTO") holding Registration Number 35,229 issued to me in 1992. I have successfully prosecuted and obtained hundreds of U.S. Patents for clients. I am very familiar with patent law, patent prosecution practice, and especially the patent prosecution practice of the relevant time frame of 1992. I have actively practiced patent prosecution before the USPTO for over 24 years.

3. I have carefully examined the '140 Patent, its prosecution history file, and all of the patents and prosecution history files for the applications named by Mr. Nilssen on the face of the '140 Patent. I have also carefully examined the patent law as it was in March 1992 in the relevant editions of Title 35 U.S.C (U.S. Patent Law), 37 C.F.R. (Rules of Patent Practice) and the United States Patent Office prosecution guidelines contained in the Manual of Patent Examining Practice ("MPEP").

4. In examining a patent application at the USPTO, it is the primary job of the examiner to determine whether there is prior art that prevents patentability of the patent claims submitted by the applicant. Each claim is examined separately. Prior art includes any patent, document, other reference, use or sale that was public before the priority date of the claim in question.

5. I will first present an Executive Summary of relevant patent prosecution requirements and my opinions as to the '140 Patent. I will then present a detailed analysis of the charge of inequitable conduct being raised against the '140 Patent.

## EXECUTIVE SUMMARY

6. The "priority date" of a patent claim is a date that determines whether a reference can be asserted as prior art against the patent claim. Generally, the priority date of the patent claim is the filing date of the patent application containing that claim, unless the applicant can establish that the claim is entitled to an earlier "effective filing date" in accordance with the requirements of 35 U.S.C. § 120 ("Section 120").

7. As of 1992, Section 120 had four requirements for an application to be entitled to the benefit of the filing date of an earlier, related application:

> An application for patent for an invention [1] disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States…which is [2] filed by an inventor or inventors named in the previously filed application ***shall have the same effect***, as to such invention, ***as though filed on the date of the prior application***, if [3] filed before the patenting or abandonment or on an application similarly entitled to the benefit of the first application and if [4] it contains or is amended to contain a specific reference to the earlier filed application.

(Ex. 28 at MPEP §201.11 (5th Ed., Rev. 13, Nov. 1989) (quoting 35 U.S.C. §120) (emphasis added).) In other words, for a later application claim to be entitled to the filing date of an earlier immediate parent patent application:

1) The invention being claimed in the later application had to be properly disclosed to the public in the earlier application.

2) At least one of the inventors of the later application and the earlier application had to be the same.

3) The later application had to be filed before the earlier application was patented or abandoned.

4) The later application had to contain a specific reference to the earlier application.

8. A later application can be related to an earlier application(s) as a "continuation," a "continuation-in-part" or a "divisional" (sometimes called a "division") of the earlier application.

9. A "continuation," by definition under MPEP § 201.07 (5th Ed., Rev. 13, Nov. 1989), adds no "new matter" and repeats the same technical disclosure as its parent application. (Ex. 28.) Thus, the first requirement of Section 120 (regarding continuity of disclosure under 35 U.S.C. § 120, first paragraph) is always met. This is also true for a "divisional" application (although a divisional application may leave out non-pertinent matter).

10. In contrast to a "continuation" or "divisional," a "continuation-in-part" (or "CIP"), by definition under MPEP § 201.08 (5th Ed., Rev. 13, Nov. 1989), adds "new matter" not found in the parent application. (Ex. 28.) As such, determining whether a CIP claim is entitled to the benefit of the filing date of an earlier application under Section 120 requires analysis of whether the claim finds written description support, in accordance

with 35 U.S.C. § 112, first paragraph, in the disclosure of the earlier application. Put another way, if the CIP claim is not adequately supported by the disclosure of the earlier application because some part of the claim requires support by the new matter added by the CIP, then the priority date of the CIP claim is the filing date of the CIP application, and not the filing date of the earlier application. (*See* Ex. 28 at MPEP § 201.11 (5th Ed., Rev. 13, Nov. 1989).)

11. Sometimes there are multiple continuations and CIP applications in a patent's ancestry (which is often referred to as a "priority chain" or "priority claim"). In this case, the priority date of a given claim can only go back under Section 120 to the earliest application that fully supports every element of that claim. The priority date of each claim must be determined separately by considering, among other requirements of Section 120, what is the earliest application in the chain that supports all of the elements of that claim.

12. The requirements for meeting the definition of "CIP," in accordance with MPEP § 201.08, and the requirements for a claim being entitled the benefit of the filing date of a CIP's parent or ancestor, in accordance with Section 120, are not to be confused. CIP refers to the application as a whole—the term "CIP" connotes that its disclosure contains some new matter relative to the application(s) from which it descended. The priority date, or the effective filing date, relates to each claim separately.

13. A later-filed application may be identified as a CIP of an earlier application without meeting the Section 120 requirements for having claims entitled to the filing date of the earlier application. In fact, a later-filed application may be a CIP of an earlier application, in accordance with MPEP § 201.08, even if the later application makes no reference at all to the earlier-filed application because MPEP § 201.08 does not require any such reference in its definition of "CIP." (Ex. 28.)

14. I have reviewed Nilssen's statements of patent ancestry on both the face of the '140 Patent and in the Oath submitted during its prosecution. In each case, Nilssen's identification of an application as a "continuation" or "CIP" of another application are correct and fully accord with the MPEP's definitions of "continuation" or "CIP" in MPEP § 201.07 and § 201.08, respectively.

15. I have also reviewed the prosecution history of the '140 Patent. In no instance did Nilssen argue that any claim in that application was entitled to an earlier effective filing date (or an earlier priority date) under Section 120, much less an earlier effective filing date (or an earlier priority date) based on the date of earliest recited patent application, namely, March 20, 1978.

16. It is a common understanding among patent practitioners that the recitation of patent ancestry under the heading "Related U.S. Application Data" (or the like) is not, in and of itself, an assertion that any claim of a patent or patent application is entitled to the benefit of the filing date of the earliest-filed recited patent application, pursuant to Section 120. Although the recitation of patent ancestry is frequently referred to as a "priority claim" (or "priority chain") (due to the repetition of at least some subject matter from one related application to the next), determining the actual priority date or effective filing date under Section 120 requires separate analysis and is not a determination that may be made solely by reference to the so-called "priority claim" on the face of a patent. For example, as I have stated, in cases involving CIPs in the recited patent ancestry, one must ensure that a given claim finds written description support in any prior application to which Section 120 benefits are asserted.

17. In practice, the USPTO presumes that the priority date for all claims in the application is the filing date of that application unless and until the patent applicant affirmatively argues for an earlier effective filing date for a particular claim in accordance with the requirements of Section 120. For example, during prosecution of Nilssen's application serial no. 07/993,628, filed on December 21, 1992 and which recited patent ancestry back to March 20, 1978, the examiner rejected claims over the De Jong reference, which had a priority date of October 9, 1990. (*See infra*, ¶102.) With the examiner having used Nilssen's 1992 application filing date as the presumptive invention date, Nilssen then affirmatively argued for an August 14, 1980 effective filing date—***not*** March 20, 1978—and thereby properly overcame the De Jong rejection. (*See id*.) As detailed below, Nilssen had several similar experiences during the prosecution of his other patent applications. (*See infra*, ¶¶103-06.)

18. During prosecution of the '140 Patent, in addition to never affirmatively asserting an earlier effective filing date under Section 120, Nilssen also affirmatively disclaimed entitlement to an effective filing date that pre-dated August 14, 1980. Nilssen did so by informing the USPTO that his August 14, 1980 patent application was the "progenitor" for the inventions being claimed in the '140 Patent. (Ex. 1 at col. 1, lines 27-31; Ex. 3 at FEIT_012774.) A "progenitor" is understood by patent practitioners to mean that the claims are supported and descend from, at least in part, the application designated as the "progenitor," which, in this case, was the application dated August 14, 1980. Because Nilssen effectively admitted that the written description support for the claims of the '140 Patent depended at least in part on matter not disclosed prior to August 14, 1980, he informed the USPTO that the first requirement of Section 120 was not met with respect to applications prior to August 14, 1980. In other words, Nilssen disclaimed any Section 120 benefits to pre- August 14, 1980 patent applications.

19. It is important to make a complete statement of patent ancestry for a given application, whether or not any claim could properly claim a benefit to the filing date of the earliest-recited application in accordance with the requirements of Section 120. For example, MPEP § 2004 encourages applicants to disclose their other applications. If a prior application matures into a patent more than one year prior to the earliest effective filing date of a given claim, then that prior application can be prior art to the claim being examined. And regardless of whether an earlier, related patent is prior art, the USPTO could also reject an application claim on the basis of double patenting. While such rejections can usually be overcome (for example, by filing a terminal disclaimer), it is very important that the examiner be made aware of the prior applications. As such, the preferred practice is to err on the side of disclosure, particularly where a patent application is related to an earlier application that has matured into a patent. (*See infra*, ¶¶109-11.)

## DETAILED ANALYSIS

Basic Rules and Definitions

20. Under 35 U.S.C. §112, ¶1, a patent application must include: (a) a "written description" describing the invention for which patent protection is sought, and which otherwise enables a person of skill in the art to practice the invention; and (b) at least one claim defining the metes and bounds of what the applicant regards to be the invention.

21. ***Continuation***. After a patent application is filed, the MPEP permits the filing of a "continuation" application, which "is a second application…for the same invention claimed in a prior application and filed before the original becomes abandoned or patented. (Ex. 28 at MPEP § 201.07 (5th Ed., Rev. 13, Nov. 1989).) To qualify as a

"continuation," there further must be one common inventor between the continuation and the parent application, and "[t]he disclosure presented in the continuation must be the same as that of the original application, *i.e.*, the continuation should not include anything which would constitute new matter if inserted in the original application." (*Id.*) It is important to note that that it is ***not*** a requirement for a continuation application be word-for-word identical to its parent. The requirement is that it contains no new matter.

22. ***Continuation-In-Part***. Where an inventor has expanded upon (e.g., improved) the original invention(s), the MPEP also permits the filing of a "continuation-in-part" ("CIP") application, which, like a "continuation" is "filed during the lifetime of an earlier application by the same applicant," but, unlike a "continuation," "repeat[s] some substantial portion…of the earlier application ***and add[s] matter not disclosed*** in the said earlier case." (Ex. 28 at MPEP § 201.08 (5th Ed., Rev. 13, Nov. 1989) (emphasis added).) Thus, a CIP adds "new matter" not found in the earlier, copending application. (*See id*.)

<u>Nilssen's Recitation of Patent Ancestry on the Face of the '140 Patent</u>

23. U.S. Patent No. 5,757,140 issued on May 26, 1998 from application serial no. 07/851,887 filed on March 16, 1992. (Ex. 1 at face page.)

24. The face of U.S. Patent No. 5,757,140 provides the following recitation of "Related U.S. Application Data":

> [1] Continuation of Ser. No. 819,655, Jan. 13, 1992, Pat. No. 5,191,262,
>
> [2] which is a continuation of Ser. No. 643,023, Jan. 18, 1991, abandoned,
>
> [3] which is a continuation-in-part of Ser. No. 787,692, Oct. 15, 1985, abandoned,
>
> [4] which is a continuation of Ser. No. 644,155, Aug. 27, 1984, abandoned,
>
> [5] which is a continuation of Ser. No. 555,426, Nov. 23, 1983, abandoned,
>
> [6a] which is a continuation of Ser. No. 178,107, Aug. 14, 1980, abandoned,
>
> [6b] said Ser. No. 06/555,426, Nov. 23, 1983, is a continuation-in-part of Ser. No. 330,159, Dec. 14, 1981, Pat. No. 4,430,628,
>
> [7] which is a division of Ser. No. 973,741, Dec. 28, 1978, abandoned,
>
> [8] which is a continuation-in-part of Ser. No. 890,586, Mar. 20, 1978, Pat. No. 4,184,128.

(Ex. 1 at face page.) Note: It was USPTO practice at that time to omit the sequence number from the serial number on the face of the patent. Therefore, the correct list of serial numbers including the sequence numbers is: 07/851,887, 07/819,655, 07/643,023, 06/767,692, 06/644,155, 06/555,426, 06/178,107, 06/330,159, 05/973,741 and 05/980,586

25. As demonstrated below, this recitation of patent ancestry is correct.

26. ***07/851,887***. Application serial no. 07/851,887 was filed on March 16, 1992 as a continuation of application serial no. 07/819,655. (Ex. 3 at FEIT_012774, 012802.)

27. On March 16, 1992, the operative version of the MPEP defined "continuation" as "a second application…for the same invention claimed in a prior application and filed before the original becomes abandoned or patented." (Ex. 28 at MPEP §201.07 (5th Ed., Rev. 13, Nov. 1989).) Additionally, "[t]he applicant in the continuation application must include at least one inventor named in the prior application" and "[t]he disclosure presented in the continuation must be the same as that of the original application, *i.e.*, the continuation should not include anything which would constitute new matter if inserted in the original application." (*Id*.)

28. Application serial no. 07/851,887 was filed on March 16, 1992 before application serial no. 07/819,655 issued as U.S. Patent No. 5191,262 on March 2, 1993. (*Compare* Ex. 3 at FEIT_012771 (date/time stamp of filing) *with* Ex. 4 at JTX 1039.7 (issue date upper right hand corner of face of patent).)

29. Both application serial no. 07/851,887 and application serial no. 07/819,655 name Nilssen as the inventor. (*Compare* Ex. 3 at FEIT_012772 (after "To all whom it may concern") *and* FEIT_012803 (signature line on oath) *with* Ex. 4 at JTX 1039.7 (after "To all whom it may concern") *and* JTX 1039.40 (signature line on oath).)

30. The technical disclosures of application serial no. 07/851,887 and application serial no. 07/819,655 are substantively identical, with no new matter being presented in application serial no. 07/851,887. (*Compare* Ex. 3 at FEIT_012805-09 (Figs. 1-11) *with* Ex. 4 at JTX1039.42-46 (Figs. 1-11).) It is my expert opinion after reading the entire disclosures of both applications that no new matter was introduced in application serial no. 07/851,887.

31. Accordingly, application serial no. 07/851,887 is, in fact, a continuation of application serial no. 07/819,655.

32. ***07/819,655***. Application serial no. 07/819,655 was filed on January 13, 1992 as a Rule 62 "file wrapper continuation" of application serial no. 07/643,023. (Ex. 4 at JTX 1039.89).)

33. Under the "file wrapper continuation" program, the entire Prosecution History File of the older application was automatically transferred by the USPTO to the new application. The newer application was automatically a "continuation," as it had the same inventor, contained no new matter, and was copending with the prior application by operation of law. Only the claims were different. That application 07,819,655 was a File Wrapper Continuation of application 07/643,023 can also be seen on Ex. 4 (JTX 1039.8) where the number 07/643,023 is stamped on the disclosure (Ex. 4 is the file history of the later application 07/819,655). In other words, in a file wrapper continuation, the USPTO used the previous disclosure with no changes to anything but the claims.

34. Accordingly, application serial no. 07/819,655 is, in fact, a continuation of application serial no. 07/643,023 because application serial no. 07/819,655 was filed as a Rule 62 file wrapper continuation of application serial no. 07/643,023.

35. ***07/643,023***. Application serial no. 07/643,023 was filed on January 18, 1991 as a continuation-in-part of application serial no. 06/787,692. (Ex. 5 at JTX 1124.6 (date/time stamp of filing), JTX 1124.9 (description of "Related Applications").)

36. On January 18, 1991, the operative version of the MPEP defined "continuation-in-part" as "an application…filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application and *adding matter not disclosed* in the said earlier case." (Ex. 28 at MPEP §201.08 (5th Ed., Rev. 13, Nov. 1989) (emphasis original).)

37. Application serial no. 07/643,023 was filed on January 18, 1991 before application serial no. 06/787,692 was abandoned on September 30, 1991 through the filing of a file wrapper continuation of application serial no. 06/787,692, which file wrapper continuation was assigned application serial no. 07/768,105. (*Compare* Ex. 5 at JTX 1124.1 (box at top of page) *with* Ex. 6 at JTX 1114.20 (date/time stamp).)

38. Both application serial no. 07/643,023 and application serial no. 06/787,692 name Nilssen as the inventor. (*Compare* Ex. 5 at JTX 1124.1 (top of page) *with* Ex. 6 at JTX 1114.1 (top of page).)

39. I note that application serial no. 06/787,692 was filed as a Rule 62 file wrapper continuation of application serial no. 06/644,155. (Ex. 6 at JTX 1114.19.) As such, the disclosure of application serial no. 06/787,692, by operation of law, repeats the disclosure of application serial no. 06/644,155.

40. Application serial no. 06/644,155 was itself filed as a Rule 62 file wrapper continuation of application serial no. 06/555,426. (Ex. 7 at JTX 1111.4.) As such, the disclosure of application serial no. 06/644,155, by operation of law, repeats the disclosure of application serial no. 06/555,426.

41. Application serial no. 06/555,426 was itself filed as a Rule 62 file wrapper continuation of application serial no. 06/178,107. (Ex. 8 at FEIT 012976.) As such, the disclosure of application serial no. 06/555,426, by operation of law, repeats the disclosure of application serial no. 06/178,107.

42. The disclosure of application serial no. 06/178,107 is provided, in large part, at Exhibit 9, produced by Feit. However, Exhibit 9 does not contain any of the drawings originally filed with the application. I understand that those original drawings are, however, available in the file wrapper for application serial no. 07/678,105 (Exhibit 29.) Exhibit 29 repeats the technical disclosure of Exhibit 9. (*Compare* Ex. 29 at pp. 13-42 *with* Ex. 9 at JTX 1109.6-34.) (I note that page 22 is a duplicate of page 21 of Exhibit 29.) In addition, Exhibit 29 contains drawings labeled figures 1-8 at pages 45-47. I have inspected those drawings and note that the drawings were once labeled "178,107" and immediately follow an abstract and oath dated August 14, 1980 and labeled "178,107." Accordingly, I conclude that these drawing were, in fact, originally submitted with application serial no. 06/178,107 and were part of its original disclosure.

43. Therefore, the technical disclosure provided by Ex. 29 at pp. 13-42 and 45-47 is the technical disclosure of application serial no. 06/787,692 (as well as application serial nos. 06/644,155, 06/555,426 and 06/178,107).

44. Application serial no. 07/643,023 repeats a substantial portion of the disclosure of application serial no. 06/787,692 such as Figs. 1-8 and numerous parts of the disclosure. (*Compare* Ex. 5 at JTX 1124.40-41 *with* Ex. 6 at JTX 1114.11-13 *and* Ex. 29 at pages 45-

47.) I have thoroughly examined the file wrappers of application 07/643,021 and 07/787,692 (including the technical disclosure provided in the specification for application serial no. 06/178,107 provided at Exhibits 9 and 29). It is my expert opinion that a substantial portion of the two disclosures is the same.

45. Application serial no. 07/643,023 adds matter not disclosed in application serial no. 06/787,692 such as Figs 9, 10 and 11A-11H. (*See* Ex. 5 at JTX 1124.42-44 (showing new figures), JTX 1124.20-26 (describing new figures).) It is my expert opinion that there is a considerable amount of new matter in application 07/643,023 that does not appear in application 07/787,692.

46. Accordingly, application serial no. 07/643,023 is, in fact, a continuation-in-part of application serial no. 06/787,692.

47. ***06/787,692***. Application serial no. 06/787,692 was filed on October 15, 1985 as a continuation of application serial no. 06/644,155. (Ex. 6 at JTX 1114.1 (under "Continuing Data").) As noted, application serial no. 06/787,692 was filed as a Rule 62 file wrapper continuation of application serial no. 06/644,155. Therefore, by operation of law, application serial no. 06/787,692 is, in fact, a continuation of application serial no. 06/644,155.

48. ***06/644,155***. Application serial no. 06/644,155 was filed on August 27, 1984 as a continuation of application serial no. 06/555,426. (*See* Ex. 7 at JTX 1111.1.) As noted, application serial no. 06/644,155 was filed as a Rule 62 file wrapper continuation of application serial no. 06/555,426. Therefore, by operation of law, application serial no. 06/787,692 is, in fact, a continuation of application serial no. 06/644,155.

49. ***06/555,426***. Application serial no. 06/555,426 was filed on November 23, 1983 as a continuation of application serial no. 06/178,107. (*See* Ex. 8 at FEIT 012976.) As noted, application serial no. 06/555,426 was filed as a Rule 62 file wrapper continuation of application serial no. 06/178,107. Therefore, by operation of law, application serial no. 06/555,426 is, in fact, a continuation of application serial no. 06/178,107.

50. In addition, application serial no. 06/555,426 was filed on November 23, 1983 and <u>meets the requirements</u> of a continuation-in-part of application serial no. 06/330,159.

51. As stated above, application no. 06/555,426 was a file wrapper continuation of application 06/178,107, which means that its technical disclosure is identical to that of application 06/178,107. The inventor did not enter any data into the record of the 06/555,426 file wrapper continuation stating that it was also a continuation-in-part of application 06/330,159, but it nevertheless meets the requirements of a continuation in part since actual reference is not required (see below).

52. On November 23, 1983, the operative version of the MPEP defined "continuation-in-part" as "an application filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application and *adding matter not disclosed* in the said earlier case." (Ex. 30 at MPEP §201.08 (5th Ed., Aug. Nov. 1983) (emphasis original).)

53. Application serial no. 06/555,426 was filed on November 23, 1983 before application serial no. 06/330,159 issued as U.S. Patent No. 4,430,628 on Feb. 7, 1984. (Ex. 31 at cover page.)

54. Both application serial no. 06/555,426 and application serial no. 06/330,159 name Nilssen as the inventor. (*Compare* Ex. 8 at FEIT_012973 *with* Ex. 31 at cover page).

55. Application serial no. 06/555,426 repeats a substantial portion of the disclosure of application serial no. 06/330,159. As a file wrapper continuation of application serial no. 06/178,107, application serial nos. 06/178,107 and 06/555,426, by definition, have identical disclosures (absent amendment to the specification by the latter application, which did not occur in this case). (*See supra*, ¶43.) Accordingly, the disclosure of application serial no. 06/555,426 is found in the disclosure for application 06/178,107, which is found in both Exhibit 9 (at JTX 1109.6-34) and Exhibit 29 at pp. 12-42 and 45-47. (*See supra*, ¶42.) Application serial no. 06/178,107 repeats a substantial portion of the disclosure of application serial no. 06/330,159 such as the basic, push-pull inverter circuit disclosed in each:




(Ex. 29 at page 50 (Fig. 7 of application 06/178,107, which is identical to Fig. 7 in application serial nos. 06/787,692, 06/644,155 and 06/555,426). The disclosure of application serial no. 06/330,159 also depicts a push-pull inverter circuit:




(Ex. 31 at page 33.) It is my expert opinion that these two circuits are substantially similar. The wiring and arrangement of the toroids, transformer and transistor drivers are the same.

56. Application serial no. 06/555,426 (the disclosure of which is represented by Exhibit 29) adds matter not disclosed in application serial no. 06/330,159. The file wrapper continuation of application serial no. 06/178,107, application serial nos. 06/178,107 and 06/555,426, has by definition, an identical disclosure (absent amendment to the specification by the latter application, which did not occur in this case). Application serial no. 06/178,107 adds matter not disclosed in application serial no. 06/330,159 such as the resonant inverter output circuit in the first drawing above that added capacitor 118 in resonance with inductor 119.

57. I further note that Figure 1 of application serial no. 06/178,107 depicts a self-ballasted, screw-in compact florescent lamp, (*see* Ex. 29 at page 45 (Fig. 1)), which is nowhere described in application serial no. 06/330,159, and, therefore, also constitutes new matter in addition to the resonant circuit described above.

58. Accordingly, application serial no. 06/555,426 is, in fact, a continuation-in-part of application serial no. 06/330,159. I note that the MPEP does not define "continuation-in-part" in a way that requires the later application to reference the earlier application. Thus, application serial no. 06/555,426 is a "continuation-in-part" of application serial no. 06/330,159 even though application serial no. 06/555,426 does not expressly refer to application serial no. 06/330,159.

59. ***06/330,159***. Application serial no. 06/330,159 was filed on December 14, 1981 as a division of application serial no. 05/973,741. (*See* Ex. 31 at page 1.)

60. On December 14, 1981, the operative version of the MPEP defined "division" as "[a] later application for a distinct or independent invention carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application." (Ex. 32 at MPEP § 201.06 (4th Ed., Rev. 8, Oct. 1983).) In addition, "[e]xcept as provided in 37 C.F.R. 1.45 both must be by the same applicant" and "[t]he

divisional should set forth only that portion of the earlier disclosure which is germane to the invention as claimed in the divisional application." (*Id*.)

61. Application serial no. 06/330,159 was filed on December 14, 1981 before application serial no. 05/973,741 was abandoned on February 16, 1982. (*Compare* Ex. 31 at page 1 *with* Ex. 10 at JTX 1107.94.)

62. Application serial no. 06/330,159 discloses and claims only subject matter disclosed in application serial no. 05/973,741. (*Compare* Ex. 31 at pp. 4-22, 23-31 (claims) and 33-34 (Figs. 1-4) *with* Ex. 10 at JTX 1107.5-23 and JTX 1107.35-36 (Figs. 1-4).)

63. Both application serial no. serial no. 06/330,159 and application serial no. 05/973,741 name Nilssen as the inventor. (*Compare* Ex. 31 at page 1 *with* Ex. 10 at JTX 1107.1.)

64. Application serial no. 06/330,159 does not set forth any portion of the disclosure of application serial no. 05/973,741 that is not germane to the subject matter claimed in application serial no. 06/330,159. Accordingly, application serial no. 06/330,159 is, in fact, a division of application serial no. 05/973,741.

65. ***05/973,741***. Application serial no. 05/973,741 was filed on December 28, 1978 as a continuation-in-part of application serial no. 05/890,586. (Ex. 10 at JTX 1107.1.)

66. On December 28, 1978, the operative version of the MPEP defined "continuation-in-part" as "an application filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application and *adding matter not disclosed* in the said earlier case." (Ex. 33 at MPEP §201.08 (3d Ed., Rev. 56, Apr. 1978) (emphasis original).)

67. Application serial no. 05/973,741 was filed on December 28, 1978 before application serial no. 05/890,586 issued as U.S. Patent No. 4,184,128 on Jan. 15, 1980. (*Compare* Ex. 10 at JTX 1107.1 *with* Ex. 11 at JTX 1077.1.)

68. Both application serial no. 05/973,741 and application serial no. 05/890,586 name Nilssen as the inventor. (*Compare* Ex. 10 at JTX 1107.1 *with* Ex. 11 at JTX 1077.1.)

69. Application serial no. 05/973,741 repeats a substantial portion of the disclosure of application serial no. 05/890,586 such as the basic push-pull inverter circuit shown in Figure 1. (*Compare* Ex. 10 at JTX 1107.35 *with* Ex. 11 at JTX 1077.28.)




(Ex. 11 at JTX 1077.28 (Fig. 1 of application no. 05/890,586).)




(Ex. 10 at JTX 1107.35 (Fig. 1 of application number 05/973,741).) It is my expert opinion that the basic push-pull inverter circuits are substantially similar.

70. Application serial no. 05/973,741 adds matter not disclosed in application serial no. 05/890,586 such as diodes 20c and 25c and a second toroid 33. (*Compare* Ex. 10 at JTX 1107.35 *with* Ex. 11 at JTX 1077.28.)

71. Accordingly, application serial no. 05/973,741 is, in fact, a continuation-in-part of application serial no. 05/890,586.

72. ***Verification of Ancestry***. The USPTO Office of Initial Patent Examination ("OIPE") verified the ancestry chain listed on Nilssen's oath. This indicates that Nilssen's list agreed with the records of the USPTO. It is marked as having been done by a "Certifying Officer." (*See* Ex. 3 at FEIT_12817.)

Nilssen's Recitation of Patent Ancestry in the Oath

73. Along with his application for U.S. Patent No. 5,757,140, Nilssen submitted an "Oath." (Ex. 3 at FEIT_012802-03.)

74. The Oath makes the following statement regarding Nilssen's patent ancestry, identifying the then just-filed application as:

> [1] a Continuation of Serial No. 07/819,655 filed 01/13/92;
>
> [2] which is a Continuation of Serial No. 07/643,023 filed 01/18/91;
>
> [3] which is a Continuation-in-Part of application Serial No. 06/787,692 filed 10/15/85, now abandoned;
>
> [4] which is a Continuation of Serial No. 644,155, Aug. 27, 1984, abandoned,
>
> [5] which is a Continuation of application Serial No. 555,426 filed 11/23/83, now abandoned;
>
> [6] which is a Continuation-in-Part of Serial No. 06/178,107 filed 08/14/80, now abandoned;
>
> [7] **which is a Continuation-in-Part of serial No. 05/973,741 filed 12/28/78, now abandoned**;
>
> [8] which is a Continuation-in-Part of Serial No. 05/890,586 filed 03/20/78, now U.S. Patent No. 4,184,128….

(Ex. 3 at FEIT_012802 (emphasis added).)

75. The bolded statement of relatedness between application serial nos. 06/178/107 and 05/743,741 is the only relationship not recited on the face of the '140 Patent. As explained below, the recitations of patent ancestry in Nilssen's Oath are accurate.

76. ***06/178,107***. Application serial no. 06/178,107 was filed on August 14, 1980 and <u>meets the requirements</u> of a continuation-in-part of application serial no. 05/973,741.

77. On August 14, 1980, the operative version of the MPEP defined "continuation-in-part" as "an application filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application *and adding matter not disclosed* in the said earlier case." (Ex. 34 at MPEP §201.08 (4th Ed., Rev. 3, Jul. 1980) (emphasis original).)

78. Application serial no. 06/178,107 was filed on August 14, 1980 before application serial no. 05/973,741 was abandoned on February 16, 1982. (*Compare* Ex. 9 at JTX 1109.1 *with* Ex. 10 at JTX 1107.94.)

79. Both application serial no. 06/178,107 and application serial no. 05/743,741 name Nilssen as the inventor. (*Compare* Ex. 9 at JTX 1109.1 *with* Ex. 10 at JTX 1107.1.)

80. It was explained above in paragraphs 39-43 of this declaration how the technical disclosures for application serial nos. 06/787,692, 06/644,155, 06/555,46 and 06/178,107 are identical by operation of law. It was also explained above in paragraph 55 of this declaration how the technical disclosure of application no. 06/555,426 (and thus 06/178,107) contains a substantial portion of the technical disclosure of application 06/330,159. It was further explained above in paragraphs 59-64 of this declaration that application serial no. 06/330,159 was a divisional (containing an identical disclosure) of application serial no. 05/973,741. Therefore, because application no. 06/555,426 contains a substantial portion of the technical disclosure of application 06/330,159, application serial no. 06/178,107 similarly repeats a substantial portion of the disclosure of application serial no. 05/743,741.

81. For similar reasons explained in paragraph 80, because application serial no. 06/555,426 adds matter not disclosed in application serial no. 06/330,159, as explained in paragraph 56 of this declaration, application serial no. 06/178,107 similarly adds matter not disclosed in application serial no. 05/743,741. For example, capacitor 118 and inductor 119 forming a resonant circuit were added.

82. Accordingly, application serial no. 06/178/107 is, in fact, a continuation-in-part of application serial no. 05/743,741. I note that the MPEP does not define "continuation-in-part" in a way that requires the later application to reference the earlier application. Thus, application serial no. 06/178,107 is a "continuation-in-part" of application serial no. 05/973,741 even though application serial no. 06/178,107 does not expressly refer to application serial no. 05/973,741.

<u>The implications of Nilssen's patent ancestry recitations and the lack of Section 120 assertions</u>

83. Nilssen's recitation of patent ancestry was neither explicitly nor implicitly a claim to a 1978 effective filing date.

84. The purpose Section 120 is to accord a patent applicant the benefit of the filing date for an invention disclosed in an earlier filed application. As noted, Section 120 has four requirements: An application for patent for an invention [1] disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States…which is [2] filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if [3] filed before the patenting or abandonment or on an application similarly entitled to the benefit of the first application and if [4] it contains or is amended to contain a specific reference to the earlier filed application. (Ex. 28 at MPEP §201.11 (5th Ed., Rev. 13, Nov. 1989) (quoting 35 U.S.C. §120).)

85. I have reviewed the entire file wrapper for the '140 Patent and found <u>no instance</u> where Nilssen invoked Section 120 to claim any earlier effective filing date, much less a 1978 effective filing date. (*See* Ex. 3.) The following is a summary of the prosecution history of the '140 patent.

86. In the first office action of August 21, 1992, the claims were rejected as being obvious over Franke in view of Bedford and Pintell. Nilssen responded on October 21, 1992 with modified claims and argued substantively that the this combination of references could not render the claims obvious.

87. In the second office and final action of January 11, 1993, the examiner made the identical rejection. Nilssen responded on March 17, 1993 with a notice of appeal. Nilssen filed an appeal brief on May 7, 1993 arguing substantively how the examiner's combination could not render the claims obvious. The examiner supplied an Examiner's Answer on September 22, 1993 maintaining his rejection.

88. The Board of Patent Appeals issued a decision on May 31, 1994 reversing the examiner's obvious rejection and entering a new ground of rejection under Section 112 of 35 U.S.C. stating that claims 1-14 and 17 were indefinite. The Board also entered a new rejection stating that claims 15-16 were anticipated by Elms.

89. Nilssen responded on July 24, 1994 with an amendment to the claims to distinguish over Elms and overcome the indefiniteness rejection.

90. The examiner issued a second final rejection of the new claims on May 9, 1995 stating that the new claims were also indefinite and not supported by the disclosure. The examiner maintained the Board's anticipation rejection over Elms, and also rejected the claims under the doctrine of obviousness-type double patenting.

91. Nilssen filed a second notice of appeal on Aug. 24, 1995 followed by a second appeal brief on Oct. 13, 1995 pointing out where in the specification the support could be found for the new claims, how they were not indefinite and how the double patenting rejection was incorrect.

92. The examiner filed an Examiner's Answer on Jan. 22, 1996 maintaining the same rejections.

93. The Board issued an opinion on Feb. 19, 1998 reversing the examiner.

94. The examiner issued a Notice of Allowability on Feb. 25, 1998 followed by a Notice of Allowance.

95. The patent issued on May 26, 1998.

96. Nilssen's recitation of patent ancestry does not implicitly assert any effective filing date, much less a 1978 effective filing date. Nilssen's reference to a 1978 application relates to only one of the four requirements for Section 120 benefits and is not logically, in and of itself, an assertion that all four requirements are met.

97. The USPTO's standard procedure is to treat an application's filing date as the presumptive date of the invention for purposes of determining whether publication or patent is "prior" art. That standard procedure is consistent with my experience, my review of Nilssen prosecution histories and MPEP § 202.02 (Ex. 28).

98. Additionally, Nilssen's reference to multiple continuations-in-part in the patent ancestry put the USPTO on notice that the claims of the '140 Patent might depend on new matter and possibly could not be accorded the benefit of a 1978 effective filing date. Because a "continuation," by definition, provides the same disclosure as its parent, the Section 112 requirement of Section 120—that the "invention [be] disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed"—should invariably be met. However, because a "continuation-in-part," by dentition, adds matter not present in the parent application, it is necessary to verify that the Section 112 requirements specified by Section 120 are met for purposes of establishing that the continuation is entitled to the effective filing date of the parent.

99. Accordingly, an application may be a continuation-in-part of a parent application without meeting the requirements of Section 120 with respect to the parent. In other words, an application may be a continuation-in-part of a parent application without meeting the Section 112 requirements of Section 120. And, an application may be a continuation-in-part of a parent application without meeting the cross-reference requirements of Section 120. Put another way, identifying one application as a "continuation-in-part" of a parent is not an implicit assertion that the application is entitled to the benefit of the parent's filing date under Section 120.

100. Further, the admission as to new matter (by identifying an application in the patent ancestry as a continuation-in-part) indicates that the written description support may not be met by applications pre-dating each continuation-in-part. MPEP 201.08 instructs examiners not to determine Section 120 compliance unless the filing date of an earlier application is actually needed. (Ex. 28.) In the case of the '140 Patent, Nilssen identified three continuation-in-part applications in the patent ancestry. (*See* Ex. 1, at face page.)

101. In my experience, an Examiner presumes that the date of an application is the date of invention, and will identify art as "prior" based on the date of the application, without regard to the dates of ancestor applications that may be listed as "related." Several Nilssen prosecution histories illustrate this practice.

102. ***Prosecution of U.S. Patent No. 5,510,680***. On December 21, 1992, Nilssen filed application serial no. 07/993,628, which recited patent ancestry back to March 20, 1978. (Ex. 35 at OSRAM 091634.) The examiner rejected claims over the De Jong reference (U.S. Patent No. 5,164,635), (*id*. at OSRAM 091665), which has a filing date of December 19, 1991 and a foreign filing date of October 10, 1990. (*Id*. at OSRAM 091670.) Nilssen then affirmatively argued for a priority date of August 14, 1980 and overcame the DeJong rejection. (*Id*. at OSRAM 091676-77.) Plainly, the PTO ignored Nilssen's patent ancestry until he argued in accordance with Section 120 for an earlier effective filing date.

103. During the prosecution for U.S. Patent No. 5,510,680, Nilssen also faced rejections over U.S. Patent No. 4,277,728 to Stevens (having an earliest filing date of May 8, 1978, (*see* Ex. 35 at OSRAM 091919)) and U.S. Patent No. 4,322,658 to Minarczyk (having an earliest filing date of March 19, 1980, (*see* Ex. 35 at OSRAM 091738)). (*See* Ex. 35 at OSRAM 091693 (rejecting claims over Stevens), 091695 (same), 091735-36 (rejecting claims over Stevens in view of Minarczyk).) Nilssen did not attempt to assert an effective filing date of March 20, 1978 to overcome either reference. (*See id*. at OSRAM 091722-33, 091743-55.)

104. ***Prosecution of U.S. Patent No. 5,416,386***. On May 10, 1993, Nilssen filed application serial no. 08/063,075, which recited patent ancestry back to March 20, 1978. (Ex. 36 at OSRAM 088252.) The examiner rejected claims over U.S. Patent No. 5,144,195 to Konopka (having an earliest filing date of May 28, 1991, (*see* Ex. 37 at face page)), U.S. Patent No. 5,191,263 to Konopka (having an earliest filing date of March 4, 1992 (see Ex. 38 at face page)) and U.S. Patent No. 5,192,892 to Qin (having an earliest filing date of April 10, 1992, (*see* Ex. 39 at face page)). (Ex. 35 at OSRAM 088326, 088328.) Rather than assert an earlier effective filing date under Section 120, Nilssen argued on the merits of the rejections. (*See* Ex. 35 at OSRAM 088333-55.)

105. ***Prosecution of U.S. Patent No. 5,471,118***. During the prosecution for U.S. Patent No. 5,471,118, which recited a March 20, 1978 related application, (Ex. 40 at OSRAM 090681), Nilssen faced a rejection over U.S. Patent No. 4,277,728 to Stevens (having an earliest filing date of May 8, 1978 (*see id*. at OSRAM 090817)). (*Id*. at OSRAM 090811-

12.) Nilssen did not attempt to assert an effective filing date of March 20, 1978 to overcome the Stevens reference. (*See id*. at OSRAM 090828-30.)

106. ***Prosecution of U.S. Patent No. 5,510,681***. During the prosecution for U.S. Patent No. 5,510,681, which recited a March 20, 1978 related application, (Ex. 41 at OSRAM 091106), Nilssen faced a rejection over U.S. Patent No. 4,277,728 to Stevens (having an earliest filing date of May 8, 1978, (*see id*. at OSRAM 091237)). (*Id*. at OSRAM 091233-35, 091262-64.) Nilssen did not attempt to assert an effective filing date of March 20, 1978 to overcome the Stevens reference. (*See id*. at OSRAM 091248-58, 091265-74.)

107. In 1992, it was standard practice to provide a complete recitation of patent ancestry regardless of whether Section 120's requirements could be satisfied for any claim relative to the earliest recited application.

108. Assessing written description support for a given claim can be time-consuming, especially where a patent ancestry chain includes one or more continuations-in-part. Where there are one or more continuations-in-part in a patent ancestry chain, it is also possible for different claims in the same application to have different effective filing dates under Section 120. Considering the time it would take to determine an effective filing date for each claim in a given patent, and consistent with MPEP § 201.08 (Ex. 28), it makes little sense to undertake such a task unless the need for an earlier effective filing date arises. Accordingly, it was the standard practice of both patent examiners and patent prosecution practitioners not to assert or assess Section 120 benefits unless and until the need to do so arose (e.g., if the examiner makes a rejection over a reference that could be avoided with argument that the reference is not "prior" art by virtue of a Section 120 benefit to an earlier filing date).

109. More generally, it was required under 37 C.F.R. § 1.56 to make a full disclosure to the PTO of anything that could affect patentability of a claim. For example, an earlier-issued patent could potentially be cited as the basis for an obvious-type double-patenting rejection of the later related application claims being prosecuted. An earlier application, if still pending, could be cited in a provisional double patenting rejection. As another example, if an earlier-filed application were published more than one year prior to the effective filing date of the application being prosecuted, the earlier filed application could serve as potentially-invalidating prior art. In either situation, it was advisable to disclose to the PTO potential bases for rejection, regardless of whether the applicant would have been entitled to a filing date predating the potentially-invalidating related reference.

110. It also is worth noting that MPEP § 2004 nos. 9 & 10 (5th Ed., Rev. 13, Nov. 1989) admonished applicants to disclose applications belonging to the same applicant and to err on the side of over-disclosure than non-disclosure of potentially relevant materials:

> Do not rely upon the examiner of a particular application to be aware of other applications belonging to the same applicant…. It is desirable to call such applications to the attention of the examiner even if there is only a question that they might be "material to the examination" of the application….
>
> When in doubt, it is desirable and safest to submit information. Even though the…applicant doesn't consider it necessarily material, someone else may see it differently and embarrassing questions can be avoided.

(Ex. 42.)

111. Additionally, the failure to recite patent ancestry as far back as possible could result in a malpractice claim against the prosecuting attorney. Inequitable conduct is an affirmative defense in patent cases usually claiming that the applicant (or attorney) either withheld a "material" reference from the USPTO or tried to deceive the USPTO in some way. If a patent were to be held unenforceable due to inequitable conduct because the applicant's attorney failed to disclose a prior published application or patent in a chain to the USPTO, the attorney could be sued by the applicant for malpractice. Therefore, attorneys teach applicants to disclose every possible prior application in a chain as well as every known piece of possibly material prior art.

112. I understand and have been warned that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. 1001) and may jeopardize the validity of the patent. I also understand that willful false statements and the like constitute perjury. All of the statements herein made on my own knowledge are true, and all statements made on information and belief are believed to be true.

Dated: ________________________ Clifford H. Kraft ________________________

111. Additionally, the failure to recite patent ancestry as far back as possible could result in a malpractice claim against the prosecuting attorney. Inequitable conduct is an affirmative defense in patent cases usually claiming that the applicant (or attorney) either withheld a "material" reference from the USPTO or tried to deceive the USPTO in some way. If a patent were to be held unenforceable due to inequitable conduct because the applicant's attorney failed to disclose a prior published application or patent in a chain to the USPTO, the attorney could be sued by the applicant for malpractice. Therefore, attorneys teach applicants to disclose every possible prior application in a chain as well as every known piece of possibly material prior art.

112. I understand and have been warned that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. 1001) and may jeopardize the validity of the patent. I also understand that willful false statements and the like constitute perjury. All of the statements herein made on my own knowledge are true, and all statements made on information and belief are believed to be true.

Dated: April 5, 2016 Clifford H. Kraft Clifford Kraft

# EXHIBIT A

# Curriculum Vitae

# Clifford H. Kraft

Patent attorney, licensed professional engineer, inventor and researcher. Published numerous articles in the field of electrical engineering and electromagnetic compatibility, and hold several patents with several current applications before the USPTO.

---

## Credentials

- Registered Patent Attorney before the United States Patent and Trademark Office
- Member of the State Bar of California
- Member of the Bar of the Court of Appeals for the Federal Circuit
- Member of the Bar of the United States District Court for the Central District of California
- Licensed Professional Engineer (State of Illinois - Electrical)
- NARTE Certified EMC Engineer (Inactive)
- Amateur Radio License K6UAS (former 1st Class Radio-Telephone License)

## Education

- J.D. - IIT Chicago Kent College of Law (High Honors) (1996)
- Ph.D Electrical Engineering - University of New Mexico (1983)
- M.S. Electrical Engineering - University of Pennsylvania (1973)
- B.S. Engineering Physics - University of California (Honors) (1968)
- United States Navy Electronics School (97th percentile) (1962)
- Phi Beta Kappa (Arts and Sciences honor society)(Physics) (Berkeley 1968)
- Order of the Coif (Legal honor society)(Top 10% Law School) (IIT 1996)
- Eta Kappa Nu and Tau Beta Pi (Engineering honor societies) (Berkeley 1968)
- Corpus Juris Secundum Award (civil procedure) (1992-93)

## Professional Organizations

- National Association of Patent Practitioners NAPP (founding member - past member of board of directors)
- Institute for Electrical and Electronic Engineering IEEE (life senior member)
- Verbandt der Elektrotechnik Elektronik Informationstechnik VDE (German Institute of Electrical Engineering)(inactive)

## Employment History

- Patent Attorney since 1998 - Patent Agent since 1992
- Technical Consultant – Owner PatentTheoretics LLC since (2007-present)
- Technical Patent Consultant to the law firm of Niro, Haller and Niro, Chicago since 2001
- Member of Technical Staff AT&T/Lucent Technologies Bell Laboratories (1986-2001)
- Senior Electronic Researcher AMOCO Research Center (1986)
- Member of the Technical Staff Sandia National Laboratories (1976-1986)
- Member of the Technical Staff RCA David Sarnoff Laboratories (1970-1976)
- Engineering Consultant and Owner of Professional Engineering Associates (1986-2005)
- Electronics Officer (and former Chief Petty Officer) United States Navy (1960-1976)

## Foreign Languages

- Speak, read and write French (fluent)
- Speak, read and write German
- Read and understand Spanish
- Read Portuguese (patents)
- Read Italian (patents)

---

## My Patents - Patents where I am a named inventor

BCH ERROR-LOCATION POLYNOMIAL DECODER - U.S. 5,343,481 issued Aug. 30, 1994. Assignee: None

HIGH SPEED N-TO-1 BURST TIME-MULTIPLEXED DATA TRANSMISSION SYSTEM AND METHOD - U.S. 5,526,360 issued June 11, 1996 Assignee: Baxter Diagnostics, Inc., a division of Baxter Healthcare.

METHOD AND APPARATUS FOR COMBINING VIDEO IMAGES ON A PIXEL BASIS - U.S. 5,532,714 issued July 2, 1996. Assignee: SPX Corporation, Inc.

METHOD AND APPARATUS FOR DETECTING LIQUID PRESENCE ON A REFLECTING SURFACE USING MODULATED LIGHT - U.S. 5,508,521 issued Ap. 16, 1996. Assignee: Cardiovascular Diagnostics, Inc.

METHOD OF DETERMINING MEASURED GAS DATA WITH REMOTE SENSORS - U.S. 6,289,288 issued Sept. 11, 2001.

HYDROGEN LIGHTER THAN AIR SHIP - U.S. 6,896,222 issued May 24, 2005.

TELEPHONE LOCATION CALLER ID – U.S. 7,269,413 issued Sept. 11, 2007. Assignee: Oro Grande Technology LLC

BIO-SENSOR AND BIO-SENSOR REPORTING SYSTEM – U.S. 7,387,877 Issued June 17, 2008. Assignee: Oro Grande Technology LLC

UBIQUITOUS PERSONAL INFORMATION DEVICE – U.S. 7,558,671 Issued July 7, 2009, Assignee: Oro Grande Technology LLC

TRINARY TO TRINARY ROLLING CODE GENERATION METHOD AND SYSTEM – U.S. 7,589,613 Issued Sept. 15, 2009. Assignee: Lear Corporation, Southfield MI (Also continuation 8,077,099 issued Dec. 13, 2011)

SELECTIVE RESPONSE TELEPHONE ANSWERING SYSTEM – 7,627,094 Issued Dec. 1, 2009. Assignee: Oro Grande Technology LLC

LIGHT BULB LOUDSPEAKER – 7,672,471 – Issued March 2, 2010.

SYSTEM AND METHOD FOR PROVIDING REAL TIME ROAD CONSTRUCTION INFORMATION FOR VEHICLE TRIP PLANNING SYSTEMS – 7,729,850 – Issued June 1, 2010. Assignee: Oro Grande Technology LLC

SYSTEM AND METHOD FOR DETECTING NUCLEAR MATERIAL IN SHIPPING CONTAINERS – 7,813,540 – Issued Oct. 12, 2010 – Assignee: Oro Grande Technology LLC

TELEPHONE GROUP IDENTIFICATION RING – 7,995,734 – Issued Aug. 9, 2011 – Assignee Oro Grande Technology LLC

CELLULAR TELEPHONE COUPLED TO A DATA CENTER BY A DEDICATED COMMUNICATIONS LINK - 8,655,328 - Issued Feb. 18, 2014.

CELLULAR TELEPHONE SYSTEM AND METHOD - 8,903,371 - Issued Dec. 2, 2014

Several other pending patent applications in the USPTO

---

## Publications

“Legal Issues for Engineers”, Invited speaker, IEEE Career Event, Argonne National Laboratories, Nov. 2011.

"Leakage Through an Insulated Overlapped Slot", IEEE Int. Symposium on EMC, Boston Ma.., Aug. 2003.

"What About International Protection", Patent Cafe (www.cafezine.com) Dec, Jan 2001-02 2-parts.

"Is Your Patent a Strong One?", Patent Cafe (www.cafezine.com) Aug. 2001.

"The Effect of a Small Metal Plate on Normalized Site Attenuation at Open Area Test Sites", EMC2000, Brugge Belgium, Sept. 2000.

"Conducted Noise from 48 Volt DC-DC Converters Used in Telecommunications and Its Mitigation for EMC", VDE-IEEE Telescon 2000, Dresden Germany, May 10, 2000.

"Selection of the Variable Edmax in Calibration of Log Periodic Antennas", IEEE Int. Symposium on EMC, Santa Clara, Ca., Aug. 1996.

"Modeling Radiation from Finite Apertures with TLM", IEEE Int. Symposium on EMC, Chicago Il., Aug. 1994 p.73.

"The Effect of a Finite Conductivity Ground Plane on Open-Area Site Attenuation", IEEE Int. Symposium. on EMC, Anaheim Ca. Aug. 1992, pp. 131.

"300 Megabit/Second Berlekamp Decoder for Binary BCH Codes", IEEE Globecom 91, Phoenix Az, Dec. 1991.

"Closed Solution of the Berlekamp Massey Algorithm for Fast Decoding of BCH Codes," IEEE Transactions on Communications, Dec. 1991, pp. 1721.

"Reflection of Plane Waves from Absorber Pyramids: Transmission Line Matrix Analysis", IEEE International Symposium on Electromagnetic Compatibility EMC91, Cherry Hill NJ, Aug. 1991.

"Closed Solution of the Berlekamp Massey Algorithm for Fast Decoding of BCH Codes", International Conference on Communications, ICC 90, Atlanta Ga, April 1990.

"Harmonic Series Analysis of Digital Clock Distribution Circuits", IEEE 32nd Midwest Symposium on Circuits and Systems, Champaign Il., Aug. 1989.

"Using the Modulo-Inverse Prefilter as a Data Scrambling Device," Conf. Record, IEEE Military Communications Conference, MILCOM, San Diego Ca., Oct. 1988.

"Optimized Velocity Profiles for Stepper Motors," Motion Magazine, pp. 3-8, Nov-Dec 1987.

"Constitutive Parameter Measurements of Fluids and Soil Between 500 kHz and 5 MHz Using a Transmission Line Technique," Journal of Geophysical Research - Solid Earth (red), Vol 92, No. B10, pp. 10650-10656, Sept 10, 1987.

"A Radio Vehicle Position Reporting Technique that is Protected from Interception and Directional Fixes", 28th Annual Meeting of the Institute of Nuclear Materials Management, Newport Beach Ca., pp. 201-205, July 1987.

"The Modulo-Inverse Prefilter - A Method of Combating Intersymbol Interference in Data Transmission Systems", Ph.D. Dissertation, University of New Mexico, Albuquerque, N.M., Dec., 1983.

"A 1 Mbit/Sec Data Loop for Security Sites," IEEE International Conference on Communications, Seattle, Wa., Vol 1, pp. 14.3.1-14.3.5, June 1980.

"Speed, Acceleration and Pulse Prediction Calculations on Test Vehicles with Wheel Pulse Generators", 28th IEEE Vehicular Technology Conference, Denver, Co., pp. 241-246, March 1978.

"A High Speed Fault Simulator for Evaluation of Functional Tests for Digital Networks", Masters Thesis, Moore School of Electrical Engineering, University of Pennsylvania June 1972.

---