JUMBO

PATENT DATE | PATENT NUMBER

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/768,185 | 09/30/91 | 363 | 37 | 2102 | Beha |

APPLICANTS: OLE K. NILSSEN, BARRINGTON, IL.

**CONTINUING DATA*********************
VERIFIED THIS APPLN IS A CON OF 06/787,692 10/15/85 ABN
WHICH IS A CON OF 06/644,155 08/27/84
WHICH IS A CON OF 06/555,426 11/23/83
WHICH IS A CON OF 06/178,107 08/14/80
WHICH IS A CIP OF 05/973,741 12/28/78 ABN

**FOREIGN/PCT APPLICATIONS************
VERIFIED

Nilssen v. Osram
01 C 3585
JTX 1128

FOREIGN FILING LICENSE GRANTED 10/17/91 ***** SMALL ENTITY *****

| Foreign priority claimed / 35 USC 119 conditions met / Verified and Acknowledged: Examiner's Initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| ☐ yes ☐ no / ☐ yes ☐ no | | IL | 3 | 1 | 1 | $315.00 | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

INVERTER WITH RESONANT L-C CIRCUIT

U.S. DEPT. of COMM.-Pat. & TM Office—PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE | CLAIMS ALLOWED |
|---|---|---|
| | Assistant Examiner / Docket Clerk | Total Claims / Print Claim |
| ISSUE FEE: Amount Due / Date Paid | Primary Examiner | DRAWING: Sheets Drwg. / Figs. Drwg. / Print Fig. |
| Label Area | ISSUE CLASSIFICATION: Class / Subclass | ISSUE BATCH NUMBER |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(rev. 8/90)

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | | |
|---|---|---|---|---|---|
| 06/178,107 | 08/14/80 | 363 | 98 | 212 | BONN |

APPLICANTS: OLE K. NILSSEN, BARRINGTON, IL.

**CONTINUING DATA**********************
VERIFIED

**FOREIGN/PCT APPLICATIONS************
VERIFIED

| Foreign priority claimed ☐ yes ☐ no / 35 USC 119 conditions met ☐ yes ☐ no / Verified and Acknowledged / Examiner's Initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| | → | IL | 3 | 53 | 14 | $ 281 | 6 |

ADDRESS: Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

~~James W. Potthast~~
~~Three Illinois Center - Suite 2000~~
~~303 East Wacker Drive~~
~~Chicago, Illinois 60601~~

TITLE: ~~INVERTER CIRCUITS~~
Electronic Inverter And Ballast Circuits

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY
3 Sht of dwg filed June 15, 1981

| PREPARED FOR ISSUE | |
|---|---|
| (Assistant Examiner) | (Docket Clerk) |

AT ALLOWANCE

| SHEETS DRWGS. | FIGURES DRWGS. | CLAIMS | CLASS | SUBCLASS |
|---|---|---|---|---|
| | | | | |

EXAMINED AND PASSED FOR ISSUE

(Primary Examiner) (Art Unit)

| Estimate of printed pages | | Issue fee due (est.) |
|---|---|---|
| Drawing(s) | Spec(s) | |

| Notice of allowance and issue fee due (est.) | |
|---|---|
| Date mailed | Date paid |

LABEL

JUMBO

Form PTO-436A
(Rev. 8/78)

SERIAL NUMBER (series of 1979) 555

SERIAL NUMBER
06/555,426

APPLICANTS: OLE K. NILSSEN, BARRINGTON, IL.

**CONTINUING DATA**********************
VERIFIED THIS APPLN IS A CON OF 06/178,107 08/14/80

**FOREIGN/PCT APPLICATIONS************
VERIFIED

FOREIGN FILING LICENSE GRANTED 01/18/84 ***** SMALL ENTITY *****

| Foreign priority claimed / 35 USC 119 conditions met / Verified and Acknowledged (Examiner's Initials) | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| ☐ yes ☒ no / ☐ yes ☐ no | → | IL | 3 | 20 | 3 | $ 225.00 | |

ADDRESS:
OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

TITLE: ~~INVERTER CIRCUITS~~ INVERTER, CONTROL AND LOADING CIRCUIT

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

| PREPARED FOR ISSUE | |
|---|---|
| (Assistant Examiner) | (Docket Clerk) |

AT ALLOWANCE

| SHEETS DRWGS. | FIGURES DRWGS. | CLAIMS | CLASS | SUBCLASS |
|---|---|---|---|---|
| | | | | |

EXAMINED AND PASSED FOR ISSUE

(Primary Examiner) (Group)

| Estimate of printed pages | | Issue fee due (est.) |
|---|---|---|
| Drawing(s) | Spec(s) | |

Notice of allowance and issue fee due (est.)

| Date mailed | Date paid |
|---|---|
| | |

RETENTION LABEL

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 06/646,155 | 08/27/84 | 363 | 132 | 212 | Dela |

APPLICANTS: OLE K. NILSSEN, BARRINGTON, IL.

**CONTINUING DATA*************************
VERIFIED THIS APPLN IS A CON OF 06/555,426 11/23/83, now abandoned
WHICH IS A CON OF 06/178,107 08/14/80 ABN
WHB

OK

**FOREIGN/PCT APPLICATIONS************
VERIFIED
WHB

FOREIGN FILING LICENSE GRANTED 09/13/84 ***** SMALL ENTITY *****

| Foreign priority claimed ☐ yes ☐ no / 35 USC 119 conditions met ☐ yes ☐ no / Verified and Acknowledged ______ Examiner's Initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| | | IL | 3 | 20 | 8 | $ 225.00 | |

ADDRESS:
OLE K. NILSSEN
[illegible] DRIVE, RR 55
BARRINGTON, IL 60010

TITLE: INVERTER CIRCUITS

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

PREPARED FOR ISSUE

(Assistant Examiner) (Docket Clerk)

AT ALLOWANCE

| SHEETS DRWGS. | FIGURES DRWGS. | CLAIMS | CLASS | SUBCLASS |
|---|---|---|---|---|
| | | | | |

EXAMINED AND PASSED FOR ISSUE

(Primary Examiner) (Group)

Estimate of printed pages — Drawing(s) — Spec(s) — Issue fee due (est.)

Notice of allowance and issue fee due (est)

Date mailed — Date paid

RETENTION LABEL

88-3439

# JUMBO UTILITY

Form PTO-436A
(Rev. 8/78)

| SERIAL NUMBER (series of 1979) | PATENT DATE | PATENT NUMBER |
|---|---|---|
| 787692 | | |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 06/787,692 | 10/15/85 | 363 | 132.31 | 212 | Bever |

OLE K. NILSSEN, BARRINGTON, IL.

Carillo, Kross, Wrigmorey, Heller

**CONTINUING DATA*********************
VERIFIED THIS APPLN IS A CON OF 06/644,155 08/27/84
WHICH IS A CON OF 06/555,426 11/23/83 ABN
WHICH IS A CON OF 06/178,107 08/14/80 ABN
WB

**FOREIGN/PCT APPLICATIONS************ None
VERIFIED
WB

FOREIGN FILING LICENSE GRANTED 10/30/85 ***** SMALL ENTITY *****

| Foreign priority claimed ☐ yes ☑ no; 35 USC 119 conditions met ☐ yes ☐ no; Verified and Acknowledged WB Examiner's initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| | | IL | 3 | 20 | 4 | $ 187.00 | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

~~INVERTER CIRCUITS~~ ~~Frequency Converter Having~~ ...
Inverter with Resonance

U.S. ... COMM.-Pat. & TM Office — P...

| PARTS OF APPLICATION FILED SEPARATELY | PREPARED FOR ISSUE | |
|---|---|---|
| | (Assistant Examiner) | (Docket Clerk) |

| AT ALLOWANCE | | | | | EXAMINED AND PASSED FOR ISSUE | |
|---|---|---|---|---|---|---|
| SHEETS DRWGS | FIGURES DRWGS | CLAIMS | CLASS | SUBCLASS | (Primary Examiner) | (Group) |

| Estimate of printed pages | | Issue fee due (est.) |
|---|---|---|
| Drawing(s) | Spec(s) | |

| Notice of allowance and issue fee due (est.) | |
|---|---|
| Date mailed | Date paid |

RETENTION LABEL

78107 [redacted]

Special

**CONTENTS**

Entered

1. Application Pat 3 papers
2. Restriction (30 days) 17 APR 1981 4-28-81
3. Ltr. w/ Formal Dwgs June 15, 1981
4. Amdt. A May 11, 1981
5. Rej (3 mos) 04 AUG 1981
6. Request Ext. Time / Ext. Time Granted Oct. 29, 1981
7. Rev + P/Atty. Dec. 4, 1981
8. Notice of Rev & Accept 18 DEC 1981
9. Request Ext. Time / Ext. Time Granted Dec. 21, 1981
10. Amdt B Jan 4, 1982
11. Supple Amdt C Jan 21, 1982
12. Ltr re Prosecution Jan 27, 1982
13. 3rd Req Ext. Time - 2-23-82
14. Denied - 2-26-82
15. Notice of Abandonment March 18, 1982
16. Amdt D (F) - March 15, 1982
17. Petition to Revive - March 15, 1982
18. Petition Denied - March 31, 1983
19. Petition to Revive (1376) - 28 Jun 1983
20. Petition Granted - July 29, 1983
21. Final Rej (3) 9-7-83 7/30
22. Response (AF) Oct. 13, 1983
23. Rev or P/Atty Oct. 13, 1983
24. Notice of Rev + Accept NOV 4 1983
25. Adv Act Nov 15, 1983 11/8
26.
27.
28.
29.
30.
31.
32.

RECEIVED OCT 24 1980 GROUP 210

U.S. GOVERNMENT PRINTING OFFICE: 1979-298-604

06/555,426

CONTENTS

1. Application papers.

26. Pre E Nov. 23, 1983

R 27. Req. (3 months) Feb. 29, 1984 2/9

28. Amdt. F May 29, 1984

29. Final Rej. (3) mon. July 19, 1984 7/11

30. Amdt. G July 27, 1984

31. Examiner Interview Summary Aug 15, 1984

R 32. Advisory Action Aug. 20, 1984 8/16

33.

34.

35.

36.

37.

38.

39.

40.

41.

42.

43.

44.

45.

46.

47.

48.

49.

50.

51.

52.

53.

54.

55.

56.

U.S. GOVERNMENT PRINTING OFFICE: 1982 - 389 - 881

6441

644,135

Entered

# CONTENTS


1. Applications papers.
33. Declar. small entity Aug. 27, 1984
34. Amdt H Aug. 27-1984
35. Rej. (3 months) Jan. 24, 1985
36. Amdt II 4-22-85
37. Final Rej 3 months July 16, 1985
38. Amdt J (N.E.) July 24, 1985
39. Advisory Action Aug. 5, 1985
40.
41.
42.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.

37693

ABAND

Entered

## CONTENTS

1. Applications ✓ papers.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.

| Entered | No. | Contents | Date |
|---|---|---|---|
| | 40 | Pre. Amdt J | July 24, 1985 |
| | 41 | Rej 3 mos | Dec 9, 1985 |
| | 42 | Response | March 10, 1986 |
| | 43 | Return of Papers | March 26, 1986 |
| | 44 | Letter / K | 4-3-86 |
| | 45 | Final Reject | 6-18-86 |
| | 46 | Notice of appeal | Sep. 1986 |
| | 47 | Appeal Brief | Sept. 8, 1986 |
| | 48 | Rejection 3 months | 11-7-86 |
| | 49 | Amdt L | 2/9/87 |
| RB | 50 | Letter | 3-24-87 3/23 |
| RB | 51 | Ex Interview Summary | 4-17-87 |
| | 52 | Amdt M | 4-21-87 |
| L.M. | 53 | Final Rej 3 months | 6-15-87 6/10 |
| | 54 | Amdt N | July 7, 1987 |
| | 55 | Examiner Interview Summary Sheet | July 24, 1987 |
| L.M. | 56 | Final Rej 3 months | 7-28-87 |
| L.M. | 57 | Interview Summary Recd. | 7-28-87 |
| | 58 | Power to Inspect | 8-7-87 |
| | 59 | Notice of Appeal | 11/30/87 88-5439 |
| | 60 | [illegible] | [illegible] |
| | | Letter | 2-14-90 |

dd 767,692

APPROVED FOR LICENSE

INITIALS

| | | |
|---|---|---|
| 61. | Letter | January 21, 1988 |
| 62/63 | Appeal Brief | 2-3-88 |
| 64 | Petition to Review Director Dec. | Feb. 4, 1988 |
| 65 | Petition denied | May 27, 1988 |
| 65 | ~~Reply Brief~~ Ex Aus | ~~June 24, 1988~~ June 17, 1988 |
| 66 | Reply Brief | June 24, 1988 |
| mvs 67 | Letter | 7/13/88 |
| 68 | DECISION BY BOARD NOV 30 '89 | Affirmed - 37 CFR 1.196(d) |
| 69 | Amendment E | Jan 25, 1990 |
| 82½ 70 | Petition (withdrawal holding of abandonment) (claim) | March 1, 1990 |
| 71 | Petition (granted) (Denied) | August 2, 1990 |
| 72 | Petition R1326 | |
| 73 | Response | July 13 1990 |
| 74 | Petition Granted | July 13 1990 / 9/24/90 |
| 75 | Reg 3 | |
| 76 | Request for access | 9/26-90 |
| 77 | Request for Access | 10/3/90 |
| 78 | Letter (Returned Petition) | 10-30-90 |
| 79 | Petition | 11/16/90 |
| 80. | Petition (Dismissed/Denied) Returned Papers | 11/26/90 12/24/90 |
| 81. | Ltr. (Petition Returned) | 2/15/91 |
| 82. | Pet. to Review Directors Decision | 2-22-91 |
| 83. | Petition dismissed | 3/29/91 |
| 84. | Petition | 4-8-91 |
| 85. | Notice of Abandonment | 4-23-91 |
| 86. | Petition R.137b | 7-11-91 |
| 87. | Petition Dismissed | 9-20-91 |
| 88 | | |
| 89 | | |
| 90 | | |

[redacted]

APPROVED FOR LICENSE

INITIALS

# CONTENTS

| | Received or Mailed |
|---|---|
| [illegible]ation papers | |
| [illegible] | |
| [illegible] | |
| Petition granted | MAR 10 1992 |
| [illegible] 3 mth | 6-29-92 |
| [illegible] Abandonment | 7-[illegible]-92 |
| [illegible] | [illegible] |
| [illegible] for Access | [illegible] |
| [illegible] | [illegible] |
| [illegible] | [illegible] |
| Request for Access | [illegible] |
| Request for Access | 11/4/[illegible] |
| Request for access | 8-15-9[illegible] |
| Request for access | 12-11-95 |
| Request for Access | 12/12/95 |
| Request for Access | 7/11/96 |
| Request for access | 2/10/98 |
| Request for access | 3-19-98 |
| Request for Access | 4-22-98 |
| [illegible] for Access | 5-14-98 |
| [illegible]st for access | 4-9-99 |
| Request for Access | 5/4/99 |
| Request for access | 6-23-99 |
| Request for access | 9-20-99 |
| Request for access | 01-18-01 |
| Request for access | 3/28/01 |
| [illegible] | 5-[illegible]-03 |
| Request for access | 7-3-03 |
| Request for access | 8-1-03 |
| Request for access | [illegible] |
| Request for [illegible] | [illegible] |

PATENT APPLICATION SERIAL NO. 07/768105

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

040 RP 10/08/91 07768105 1 201 315.00 CK

PTO-1556
(5/87)

## BACKGROUND OF THE INVENTION

### Field of the Invention

This invention relates in general to power supply circuits, and, more particularly, to high-efficiency inverter circuits operable to provide high voltage outputs.

### Description of the Prior Art

As is well-known in the art, the main function of an inverter circuit is to convert a direct or DC input voltage into an alternating or AC voltage output. See, for example my U.S. Patent No. 4,184,128, issued January 15, 1980, and entitled "High Efficiency Push-Pull Inverters"; Murray et al. U.S. Patent No. 3,467,852, issued September 16, 1969, entitled "High Speed Controlled Switching Circuit"; Engel et al. U.S. Patent No. 3,753,071, issued August 14, 1973, for "Low Cost Transistorized Inverter"; and Suzuki et al. U.S. Patent No. 4,031,454, issued June 21, 1977, entitled "Transistor Inverter".

In certain applications of inverter circuits, such as energizing fluorescent or other gas discharge lamps, it is important to provide high voltages both for starting ease and efficient operation. The following U.S. patents are believed to be representative of the prior art relevant to such lamps and energizing circuits therefor:

| Patentee | Patent No. | Issue Date | Title |
|---|---|---|---|
| Morley | 2,279,635 | Apr. 14, 1942 | LUMINOUS VAPOR LAMP |
| Miller | 2,298,961 | Oct. 13, 1942 | FLUORESCENT LAMP |
| Polevitzky | 2,405,518 | Aug. 6, 1946 | ILLUMINATING DEVICE |
| Rogers | 2,505,993 | May 2, 1950 | FLUORESCENT ELECTRIC LAMP |
| Dupuy | 2,525,022 | Oct. 10, 1950 | CIRCULAR LIGHTING FIXTURE |
| Baumgartner et al. | 2,817,004 | Dec. 17, 1957 | ADAPTER HOLDER FOR CIRCULAR LAMPS |
| Fry | 2,878,372 | Mar. 17, 1959 | CIRCULAR LIGHTING FIXTURE |
| Reaves | 3,059,137 | Oct. 16, 1962 | SCREW-IN FLUORESCENT LIGHTING FIXTURE |
| Grunwaldt | 3,084,283 | Apr. 2, 1963 | TRANSISTOR-BATTERY SUPPLY FOR GAS-DISCHARGE TUBES |
| Wenrich et al. | 3,155,875 | Nov. 3, 1964 | HIGH FREQUENCY BALLAST FOR FLUORESCENT LAMPS |
| Genuit | 3,263,122 | July 26, 1966 | CURRENT LIMITING INVERTER CIRCUITS AND APPARATUS FOR OPERATING ELECTRIC DIS-CHARGE LAMPS AND OTHER LOADS |
| Johnson | 3,634,681 | Jan. 11, 1972 | INTEGRAL BALLAST, LAMP-HOLDER SUPPORT AND WIREWAY |
| Piccola | 3,704,212 | Nov. 28, 1972 | ADJUSTABLE LIGHT FIXTURE FOR U-SHAPED LAMPS |
| Anderson | 4,093,893 | June 6, 1978 | SHORT ARC FLUORESCENT LAMP |
| Wheeler | 4,093,974 | June 6, 1978 | FLORESCENT LIGHT FIXTURE |
| Miller | 4,161,020 | July 10, 1979 | FLUORESCENT LAMPHOLDER ASSEMBLY FOR CIRCLINE LAMP |
| Young et al. | 4,173,730 | Nov. 6, 1979 | COMPACT FLUORESCENT LAMP UNIT HAVING INTEGRAL CIRCUIT MEANS FOR DC OPERATION |

While gas discharge lamp units and associated energizing circuits are generally known in the prior art typified by these patents, need has arisen for improved devices of these types, particularly inexpensive, reliable and highly efficient inverter circuits which can be employed to provide high voltage outputs suitable for energizing gas discharge lamps.

## SUMMARY OF THE INVENTION

The present invention is directed to satisfy these needs. The inverter circuits according to the present invention are highly efficient, can be compactly constructed and are ideally suited for energizing gas discharge lamps, particularly "instant-start" and "self-ballasted" fluorescent lamps.

In general, according to one form of the present invention, a series-connected combination of an inductor and a capacitor is provided in circuit with the inverter transistors to be energized upon periodic transistor conduction. Transistor drive current is preferably provided through the use of at least one saturable inductor to control the transistor inversion frequency to be equal to or greater than the natural resonant frequency of the inductor and capacitor combination. The high voltages efficiently developed by loading the inverter with the inductor and capacitor are ideally suited for energizing external loads such as gas discharge lamps. In such an application, the use of an adjustable inductor permits control of the inverter output as a means of adjusting the level of lamp illumination.

According to another important form of the present invention, reliable and highly efficient half-bridge inverters include a saturable inductor in a current feedback circuit to drive the transistors for alternate conduction. The inverters also include a load having an inductance sufficient to effect periodic energy storage for self-sustained transistor inversion. As a result, these half-bridge inverter circuits obviate the need for additional voltage feedback as required in the prior art such as disclosed in the previously-mentioned Suzuki patent. Importantly, improved reliability is achieved because of the relatively low and transient-free voltages across the transistors in these half-bridge inverters.

Further, according to another feature of the present invention, novel and economical power supplies particularly useful with the disclosed inverter circuits convert conventional AC input voltages to DC for supply to the inverters.

These and other important objects of the present invention will become apparent from the following description which, when taken in conjunction with the accompanying drawings, discloses preferred embodiments of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front elevation of a folded fluorescent lamp unit adapted for screw-in insertion into a standard Edison incandescent socket;

FIG. 2 is a schematic diagram illustrating the essential features of a push-pull inverter circuit particularly suitable for energizing in the lamp unit of FIG. 1;

FIG. 3 is a set of waveform diagrams of certain significant voltages and currents occurring in the circuit of FIG. 2;

FIG. 4 is a schematic diagram of a DC power supply connectable to both 120 and 240 volt AC inputs;

FIG. 5 is a schematic diagram which illustrates the connection of a non-self-ballasted gas discharge lamp unit to the FIG. 2 inverter circuit;

FIG. 6 is a schematic diagram which illustrates the use of a toroid heater for regulation of the inverter output; and

FIG. 7 is an alternate form of a push-pull inverter circuit according to the present invention; and

FIG. 8 is a schematic diagram showing the connection of a gas discharge lamp of the "rapid-start" type to an inductor-capacitor-loaded inverter according to the present invention.

DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 illustrates a screw-in gas discharge lamp unit 10 comprising a folded fluorescent lamp 11 suitably secured to an integral base 12. The lamp comprises two cathodes 13, 14 which are supplied with the requisite high operating voltage from an inverter circuit 16, which, because of its compact size, conveniently fits within the base 12. The inverter circuit 16, which can be in the form schematically illustrated in FIGS. 2 or 7, will be described in detail later.

The inverter circuit 16 is connected by means of leads 17, 18 to a screw-type plug 19 adapted for insertion into a standard Edison-type incandescent socket at which a typical 60 Hz. 120 volt AC source is available. A ground plane comprising a wire or metallic strip 21 is disposed adjacent a portion of the fluorescent lamp 11 as a starting aid. Finally, a manually-rotatable external knob 22 is connected to a shaft for mechanical adjustment of the air gap of a ferrite core inductor to vary the inductance value thereof in order to effect adjustment of the inverter voltage output connected to electrodes 13, 14 for controlled variation of the lamp illumination intensity.

With reference to FIG. 2, a power supply 23, connected to a conventional AC input, provides a DC output for supplying a high-efficiency inverter circuit 24. The inverter is operable to provide a high voltage to an external load 26, which may comprise a gas discharge device such as the fluorescent lamp 11 of FIG. 1.

The power supply 23 comprises a bridge rectifier having four diodes 27, 28, 29 and 31 connectable to a 240 volt AC supply at terminals 32, 33. Capacitors 34, 36 are connected between a ground line 37 (in turn directly connected to the inverter 24) and to a B+ line 38 and a B- line 39, respectively. The power supply 23 also comprises a voltage doubler and rectifier optionally connectable to a 120 volt AC input taken between the ground line 37 and terminal 33 or 32.

The voltage doubler and rectifier means provides a direct electrical connection by way of line 37 between one of the 120 volt AC power input lines and the inverter 24, as shown in FIG. 2. The bridge rectifier and the voltage doubler and rectifier provide substantially the same DC output voltage to the inverter 24 whether the AC input is 120 or 240 volts. Typical voltages are +160 volts on the B+ line 38 and -160 volts on the B- line 39.

With additional reference to FIG. 4, which shows an alternate power supply 23', the AC input, whether 120 or 240 volts, is provided at terminals 32' and 39. Terminal 39 is in turn connected through a single-pole double-throw selector switch 41 to terminal 37' (for 120 volt operation) or terminal 33' (for 240 volt operation). In all other respects, power supplies 23 and 23' are identical.

The inverter circuit 24 of FIG. 2 is a half-bridge inverter comprising transistors 42, 43 connected in series across the DC voltage output of the power supply 23 on B+ and B- lines 38 and 39, respectively. The collector of transistor 42 is connected to the B+ line 38, the emitter of transistor 42 and the collector of transistor 43 are connected to a midpoint line 44 (designated "M") and the emitter of transistor 43 is connected to the B- line 39. The midpoint line 44 is in turn connected to the ground line 37 through a primary winding 46 of a toroidal saturable core transformer 47, a primary winding 48 on an identical transformer 49, an inductor 51 and a series-connected capacitor 52. The inductor 51 and capacitor 52 are energized upon alternate transistor conduction in a manner to be described later.

An external load 26 is preferably taken off of capacitor 52, as shown in FIG. 2. The inductor 51, preferably a known ferrite core inductor, has an inductance variable by mechanical adjustment of the air gap in order to effect variation in the level of the inductor and capacitor voltage and hence the power available to the load, as will be described. When the load is a gas discharge lamp such as lamp 11 in FIG. 1, variation of this inductance upon rotation of knob 22 accomplishes a lamp dimming effect.

Drive current to the base terminals of transistors 42 and 43 is provided by secondary windings 53, 54 of transformers 49, 47, respectively. Winding 53 is also connected to midpoint lead 44 through a bias capacitor 56, while winding 54 is connected to the B- lead 39 through an identical bias capacitor 57. The base terminals of transistors 42 and 43 are also connected to lines 38 and 44 through bias resistors 58 and 59, respectively. For a purpose to be described later, the base of transistor 42 can be optionally connected to a diode 61 and a series Zener diode 62 in turn connected to the midpoint line 44; similarly, a diode 63 and a series Zener diode 64 in turn connected to the B- line 39 can be connected to the base of transistor 43. Shunt diodes 66 and 67 are connected across the collector-emitter terminals of transistors 42 and 43, respectively. Finally, a capacitor 68 is connected across the collector-emitter terminal of transistor 43 to restrain the rate of voltage rise across those terminals, as will be seen presently.

The operation of the FIG. 2 circuit can best be understood with additional reference to FIG. 3, which illustrates significant portions of the waveforms of the voltage at the midpoint M (FIG. 3A), the base-emitter voltage on transistor 42 (FIG. 3B), the current through transistor 42 (FIG. 3C), and the capacitor 52 voltage and the inductor 51 current (FIG. 3D).

Assuming that transistor 42 is first to be triggered into conduction, current flows from the B+ line 38 through windings 46 and 48 and the inductor 51 to charge capacitor 52 and returns through capacitor 34 (refer to the time period designated I in FIG. 3). When the saturable inductor 49 saturates at the end of period I, drive current to the base of transistor 42 will terminate, causing voltage on the base of the transistor to drop to the negative voltage stored on the bias capacitor 56 in a manner to be described, causing this transistor to become non-conductive. As shown in FIG. 3C, current flow in transistor 42 terminates at the end of period I.

Because the current through inductor 51 cannot change instantaneously, current will flow from the B- line 39 through capacitor 68, causing the voltage at the midpoint line 44 to drop to -160 volts (period II in FIG. 3). The capacitor 68 restrains the rate of voltage change across the collector and emitter terminals of transistor 42. The current through the inductor 51 reaches its maximum value when the voltage at the midpoint line 44 is zero. During period III, the current will continue to flow through inductor 51 but will be supplied from the B- line 39 through the shunt diode 67. It will be appreciated that during the latter half of period II and all of period III, positive

The operation of the FIG. 2 circuit can best be understood with additional reference to FIG. 3, which illustrates significant portions of the waveforms of the voltage at the midpoint M (FIG. 3A), the base-emitter voltage on transistor 42 (FIG. 3B), the current through transistor 42 (FIG. 3C), and the capacitor 52 voltage and the inductor 51 current (FIG. 3D).

Assuming that transistor 42 is first to be triggered into conduction, current flows from the B+ line 38 through windings 46 and 48 and the inductor 51 to charge capacitor 52 and returns through capacitor 34 (refer to the time period designated I in FIG. 3). When the saturable inductor 49 saturates at the end of period I, drive current to the base of transistor 42 will terminate, causing voltage on the base of the transistor to drop to the negative voltage stored on the bias capacitor 56 in a manner to be described, causing this transistor to become non-conductive. As shown in FIG. 3C, current flow in transistor 42 terminates at the end of period I.

Because the current through inductor 51 cannot change instantaneously, current will flow from the B- line 39 through capacitor 68, causing the voltage at the midpoint line 44 to drop to -160 volts (period II in FIG. 3). The capacitor 68 restrains the rate of voltage change across the collector and emitter terminals of transistor 42. The current through the inductor 51 reaches its maximum value when the voltage at the midpoint line 44 is zero. During period III, the current will continue to flow through inductor 51 but will be supplied from the B- line 39 through the shunt diode 67. It will be appreciated that during the latter half of period II and all of period III, positive

current is being drawn from a negative voltage; in reality, energy is being returned to the power supply through a path of relatively low impedance.

When the inductor current reaches zero at the start of period IV, the current through the primary winding 46 of the saturable inductor 47 will cause a current to flow out of its secondary winding 54 to cause transistor 43 to become conductive, thereby causing a reversal in the direction of current through inductor 51 and capacitor 52. When transformer 47 saturates at the end of period IV, the drive current to the base of transistor 43 terminates and the current through inductor 51 will be supplied through capacitor 68, causing the voltage at the midpoint line 44 to rise (period V). When the voltage at the midpoint line M reaches 160 volts, the current will then flow through shunt diode 66 (period VI). The cycle is then repeated.

As seen in FIG. 3, the saturable inductors 47, 49, provide transistor drive current only after the current through the inductor 51 has diminished to zero. Further, the transistor drive current is terminated before the current through the inductor 51 has reached its maximum amplitude. This coordination of base drive current and inductor current is achieved because of the series connection between the inductor 51 and the primary windings 46, 48 of saturable inductors 47, 49, respectively.

The series-connected combination of the inductor 51 and the capacitor 52 are energized upon the alternate conduction of transistors 42 and 43. With a large value of capacitance of capacitor 52, very little voltage will be developed across its terminals. As the value of this capacitance is decreased, however, the voltage across this capacitor will

increase. As the value of the capacitor 52 is reduced to achieve resonance with the inductor 51, the voltage on the capacitor will rise and become infinite in a loss-free circuit operating under ideal conditions.

It has been found desirable to regulate the transistor inversion frequency, determined mainly by the saturation time of the saturable inductors 47, 49, to be equal to or higher than the natural resonant frequency of the inductor and capacitor combination in order to provide a high voltage output to the external load 26. A high voltage across capacitor 52 is efficiently developed as the transistor inversion frequency approaches the natural resonant frequency of the inductor 51 and capacitor 52 combination. Stated another way, the conduction period of each transistor is desirably shorter in duration than one quarter of the full period corresponding to the natural resonant frequency of the inductor and capacitor combination. When the inverter 24 is used with a self-ballasted gas discharge lamp unit, it has been found that the inversion frequency can be at least equal to the natural resonant frequency of the tank circuit. If the capacitance value of capacitor 52 is reduced still further beyond the resonance point, unacceptably high transistor currents will be experienced during transistor switching and transistor burn-out will occur.

It will be appreciated that the sizing of capacitor 52 is determined by the application of the inverter circuit 24. Variation in the values of the capacitor 52 and the inductor 51 will determine the voltages developed in the inductor-capacitor tank circuit. The external load 26 may be connected in circuit with the inductor 51 (by a winding on

the inductor, for example) and the capacitor 52 may be omitted entirely. If the combined circuit loading of the inductor 51 and the external load 26 has an effective inductance of value sufficient to effect periodic energy storage for self-sustained transistor inversion, the current feedback provided by the saturable inductors 47, 49 will effect alternate transistor conduction without the need for additional voltage feedback. When the capacitor 52 is omitted, the power supply 23 provides a direct electrical connection between one of the AC power input lines and the inverter load circuit.

Because the voltages across the transistors 42, 43 are relatively low (due to the effect of capacitors 34,36), the half-bridge inverter 24 is very reliable. The absence of switching transients minimizes the possibility of transistor burn-out.

The inverter circuit 24 comprises means for supplying reverse bias to the conducting transistor upon saturation of its associated saturable inductor. For this purpose, the capacitors 56 and 57 are charged to negative voltages as a result of reset current flowing into secondary windings 53, 54 from the bases of transistors 42, 43, respectively. This reverse current rapidly turns off a conducting transistor to increase its switching speed and to achieve inverter circuit efficiency in a manner described more fully in my co-pending U.S. patent application Serial No. 103,624 filed December 14, 1979 and entitled "Bias Control for High Efficiency Inverter Circuit". The more negative the voltages on bias capacitors 56 and 57, the more rapidly charges are swept out of the bases of their associated transistors upon transistor turn-off.

When a transistor base-emitter junction is reversely biased, it exhibits the characteristics of a Zener diode having a reverse breakdown voltage on the order of 8 to 14 volts for transistors typically used in high-voltage inverters. As an alternative, to provide a negative voltage smaller in magnitude on the base lead of typical transistor 42 during the reset operation, the optional diode 61 and Zener diode 62 combination can be used. For large values of the bias capacitor 56, the base voltage will be substantially constant.

If the load 26 comprises a gas discharge lamp, the voltage across the capacitor 52 will be reduced once the lamp is ignited to prevent voltages on the inductor 51 and the capacitor 52 from reaching destructive levels. Such a lamp provides an initial time delay during which a high voltage, suitable for instant starting, is available.

FIG. 5 illustrates the use of an alternate load 26' adapted for plug-in connection to an inverter circuit such as shown in FIG. 2. The load 26' consists of a gas discharge lamp 71 having electrodes 72, 73 and connected in series with a capacitor 74. The combination of lamp 71 and capacitor 74 is connected in parallel with a capacitor 52' which serves the same purpose as capacitor 52 in the FIG. 2 circuit. However, when the load 26' is unplugged from the circuit, the inverter stops oscillating and the development of high voltages in the inverter is prevented. The fact that no high voltages are generated by the circuit if the lamp is disconnected while the circuit is oscillating is important for safety reasons.

FIG. 6 illustrates a capacitor 52'' connected in series with an inductor 51'' through a heater 81 suitable for heating the toroidal inductors 47, 49 in accordance with the level of the output. The load 26'' is connected across the series combination of the capacitor 52'' and the toroid heater. The heater 81 is preferably designed to controllably heat the toroidal saturable inductors in order to decrease their saturation flux limit and hence their saturation time. The result is to decrease the periodic transistor conduction time and thereby increase the transistor inversion frequency. When a frequency-dependent impedance means, that is, an inductor or a capacitor, is connected in circuit with the AC voltage output of the inverter, change in the transistor inversion frequency will modify the impedance of the frequency-dependent impedance means and correspondingly modify the inverter output. Thus, as the level of the output increases, the toroid heater 81 is correspondingly energized to effect feedback regulation of the output. Further, transistors 42, 43 of the type used in high voltage inverters dissipate heat during periodic transistor conduction. As an alternative, the toroid heater 81 can use this heat for feedback regulation of the output or control of the temperature of transistors 42, 43.

The frequency dependent impedance means may also be used in a circuit to energize a gas discharge lamp at adjustable illumination levels. Adjustment in the inversion frequency of transistors 42, 43 results in control of the magnitude of the AC current supplied to the lamp. This is preferably accomplished where saturable inductors 47, 49 have adjustable flux densities for control of their saturation time.

FIG. 7 schematically illustrates an alternate form of inverter circuit, shown without the AC to DC power supply connections for simplification. In this Figure, the transistors are connected in parallel rather than in series but the operation is essentially the same as previously described.

In particular, this circuit comprises a pair of alternately conducting transistors 91, 92. The emitter terminals of the transistors are connected to a B- line 93. A B+ lead 94 is connected to the center-tap of a transformer 96. In order to provide drive current to the transistors 91, 92 for control of their conduction frequency, saturable toroidal inductors 97, 98 have secondary windings 99, 101, respectively, each secondary winding having one end connected to the base of its associated transistor; the other ends are connected to a common terminal 102. One end of transformer 96 is connected to the collector of transistor 91 through a winding 103 on inductor 98 in turn connected in series with a winding 104 on inductor 97. Likewise, the other end of transformer 96 is connected to the collector of transistor 92 through a winding 106 on inductor 97 in series with another winding 107 on inductor 98.

The B+ terminal 94 is connected to terminal 102 through a bias resistor 108. A bias capacitor 109 connects terminal 102 to the B- lead 93. This resistor and capacitor serve the same function as resistors 58, 59 and capacitors 56, 57 in the FIG. 2 circuit.

The bases of transistors 91, 92 are connected by diodes 111, 112, respectively, to a common Zener diode 113 in turn connected to the B- lead 93. The common Zener diode 113 serves the same function as individual Zener diodes 62, 64 in FIG. 2.

Shunt diodes 114, 116 are connected across the collector-emitter terminals of transistors 91, 92, respectively. A capacitor 117 connecting the collectors of transistors 91, 92 restrains the rate of voltage rise on the collectors in a manner similar to the collector-emitter capacitor 68 in FIG. 2.

Inductive-capacitive loading of the FIG. 7 inverter is accomplished by a capacitor 118 connected in series with an inductor 119, the combination being connected across the collectors of the transistors 91, 92. A load 121 is connected across the capacitor 118.

FIG. 8 illustrates how an inverter loaded with a series capacitor 122 and inductor 123 can be used to energize a "rapid-start" fluorescent lamp 124 (the details of the inverter circuit being omitted for simplification). The lamp 124 has a pair of cathodes 126, 127 connected across the capacitor 122 for supply of operating voltage in a manner identical to that previously described. In addition, the inductor 123 comprises a pair of magnetically-coupled auxiliary windings 128, 129 for electrically heating the cathodes 126, 127, respectively. A small capacitor 131 is connected in series with lamp 124.

It is thought that the present invention and many of its attendant advantages will be understood from the foregoing description and that many changes may be made in the form and construction of its component parts, the forms described being merely preferred embodiments of the invention.

The embodiments of the invention in which an exclusive property or privilege is claimed are defined as follows:

1. In an inverter circuit having at least one pair of alternately conducting transistors in circuit with a DC voltage input and being operable to provide an AC voltage output, the improvement comprising:

means comprising a series-connected combination of an inductor and a capacitor in circuit with the transistors and energized upon alternate conduction thereof; and

means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination.

2. The inverter circuit of claim 1 wherein the drive current means is in circuit with the inductor and comprises at least one saturable inductor means operable to provide drive current to the transistors to effect inverter self-oscillation, the conduction period of each transistor being determined by the saturation time of the saturable inductor means.

3. The inverter circuit of claim 2 wherein the drive means comprises means for supplying reverse bias to the conducting transistor upon saturation of the saturable inductor means.

4. The inverter circuit of claim 3 wherein the reverse bias means comprises a Zener diode.

5. The inverter circuit of claim 3 wherein each transistor comprises a base, an emitter and a collector, and wherein the level of reverse bias for each transistor is determined by the reverse breakdown voltage of the base-emitter junction thereof.

6. The inverter circuit of claim 2 wherein the transistors are connected in series across the DC voltage input.

7. The inverter circuit of claim 6 wherein each of the transistors comprises a base, an emitter and a collector; the inverter circuit further comprising a second capacitor connected across the collector-emitter terminals of at least one of the transistors, the second capacitor being operable to restrain the rate of voltage change across said terminals.

8. The inverter circuit of claim 1 wherein each of the transistors comprises a base, an emitter and a collector, and wherein the transistors are connected in parallel; the inverter circuit comprising a second capacitor connected between the collectors of the transistors, the second capacitor being operable to restrain the rate of voltage change on the collectors.

9. The inverter circuit of claim (1) and a shunt diode connected across the collector-emitter terminals of each transistor.

10. The inverter circuit of claim 1 and a load connected in circuit with the inductor and the capacitor, the load being operable to limit the voltages developed across the inductor and the capacitor to non-destructive levels.

~~11. The inverter circuit~~ of claim 10 wherein the load comprises a gas discharge lamp.

12. The inverter circuit of claim 11 wherein the lamp and the capacitor constitute a self-contained unit.

13. The inverter circuit of claim 1 and a fluorescent lamp having a pair of cathodes in circuit with the inductor and the capacitor, and wherein the inductor comprises a pair of magnetically-coupled auxiliary windings for electrically ~~heating~~ the cathodes.

14. In an inverter circuit having at least one pair of alternately conducting transistors in circuit with a DC voltage input and being operable to provide an AC voltage output, the improvement comprising:

means comprising a series-connected combination of an inductor and a capacitor in circuit with the transistors and energized upon alternate conduction thereof; and

means for providing drive current to the transistors to control each conduction period thereof to be shorter in duration than one quarter of the full period corresponding to the natural resonant frequency of the inductor and capacitor combination.

15. The inverter circuit of claim 14 wherein the drive current means is in circuit with the inductor and comprises at least one saturable inductor means operable to provide drive current to the transistors to effect inverter self-oscillation, the conduction period of each transistor being determined by the saturation time of the saturable inductor means.

16. The inverter circuit of claim 15 wherein the drive means comprises means for supplying reverse bias to the conducting transistor upon saturation of the saturable inductor means.

17. The inverter circuit of claim 14 and a shunt diode connected across the collector-emitter terminals of each transistor.

18. The inverter circuit of claim 14 wherein the transistors are connected in series across the DC voltage input.

19. The inverter circuit of claim 18 wherein each of the transistors comprises a base, an emitter and a collector; the inverter circuit further comprising a second capacitor connected across the emitter-collector terminals of at least one of the transistors, the second capacitor being operable to restrain the rate of voltage change across said terminals.

20. The inverter circuit of claim 14 and a load connected in circuit with the inductor and the capacitor, the load being operable to limit the voltages developed across the inductor and the capacitor to non-destructive levels.

~~21.~~ The inverter circuit of claim 20 wherein the load comprises a gas discharge lamp.

22. The inverter circuit of claim 14 wherein the drive current means is in circuit with the inductor and is operable to provide drive current only after the current through the inductor has diminished to zero.

23. The inverter circuit of claim 14 wherein the drive current means is in circuit with the inductor and is operable to terminate the drive current before the current through the inductor has reached its maximum amplitude.

~~24. In an inverter circuit~~ having at least one periodically conducting transistor in circuit with a supply of unidirectional voltage and being operable to provide an AC voltage output, the improvement comprising:

means comprising a series-connected combination of an inductor and a capacitor in circuit with the transistor and energized upon periodic conduction thereof; and

a fluorescent lamp in circuit with the inductor-capacitor combination;

whereby the fluorescent lamp is operable to limit the voltages developed across the inductor and capacitor to ~~non-destructive levels.~~

25. A power supply for providing a voltage output, comprising:

rectifier means being optionally connectable to a first AC voltage input; and

voltage doubler and rectifier means being optionally connectable to a second AC voltage input having an amplitude that is approximately one-half the amplitude of the first AC voltage input;

whereby the rectifier means and the voltage doubler and rectifier means are selectively operable to provide substantially the same magnitude of DC voltage output.

26. The power supply of claim 25 and switching means for alternative connection of the rectifier means and the voltage doubler and rectifier means to the first and second AC input voltages, respectively.

27. In an inverter circuit connected to a DC voltage input and being operable to provide an AC voltage output, the improvement comprising:

rectifier means being optionally connectable to a first AC voltage input; and

voltage doubler and rectifier means being optionally connectable to a second AC voltage input having an amplitude approximately one-half the amplitude of the first AC voltage input;

whereby the rectifier means and the voltage doubler and rectifier means are selectively operable to provide substantially the same magnitude of DC voltage input to the inverter.

~~28. The inverter circuit~~ of claim 27 wherein the rectifier means comprises a bridge rectifier having four diodes and wherein the voltage doubler and rectifier means comprises at least two of said diodes.

29. The inverter circuit of claim 27 and switching means for alternative connection of the rectifier means and the voltage doubler and rectifier means to the first and second AC input voltages, respectively.

30. The inverter circuit of claim 27 and a pair of alternately conducting transistors connected in series across the DC voltage.

31. The inverter circuit of claim 27 wherein the AC voltage input comprises two power leads and wherein the voltage doubler and rectifier means provides a direct electrical connection between one of the power lines and the ~~inverter~~ circuit.

32. In an inverter circuit having a pair of alternately conducting transistors connected in series across a DC voltage supply and being operable to provide an AC voltage output, the improvement comprising:

means providing an AC input voltage on two power leads;

an inductor means in circuit with the common connection of the transistors;

a load in circuit with the inductor means; and

power supply means in circuit with the AC input voltage and being operable to provide the DC voltage supply to the inverter, the power supply means providing a direct electrical connection between one of the power leads and the inductor means.

33. A self-ballasted gas discharge lamp unit comprising:

an inverter having at least one periodically conducting transistor in circuit with a DC voltage input and being operable to provide an AC voltage output;

the inverter comprising a tank circuit having an inductor and a capacitor energized upon periodic transistor conduction;

the inverter further comprising means for providing transistor drive current to control the inversion frequency thereof to be at least equal to the natural resonant frequency of the tank circuit.

34. The lamp unit of claim 33 wherein the drive current means comprises at least one saturable inductor means operable to provide transistor drive current to effect inverter self-oscillation, the transistor conduction period being determined by the saturable inductor means saturation time.

35. ~~A self-ballasted~~ gas discharge lamp unit comprising:

a gas discharge lamp having a pair of electrodes;

a base secured to the lamp and containing an AC power supply for providing a voltage of a magnitude sufficient for instant starting of the lamp;

the power supply comprising an inverter in circuit with a DC input voltage and having at least one periodically conducting transistor and means comprising an inductor and a capacitor in circuit therewith to be energized upon periodic transistor conduction, the inductor and capacitor being in circuit with the lamp electrodes.

36. The self-ballasted gas discharge lamp unit of claim 35 wherein the gas discharge lamp is a fluorescent lamp.

37. The self-ballasted lamp unit of claim 35 wherein the inverter comprises two alternately conducting transistors connected in series across the DC voltage.

38. The lamp unit of claim 35 and means for providing transistor drive current to control the frequency of the transistor conduction to be at least equal to the natural resonant frequency of the inductor and capacitor combination.

39. The lamp unit of claim 38 wherein the drive current means comprises at least one saturable inductor means, the transistor conduction period being determined by ~~the saturation time of the saturable inductor means.~~

40. ~~The lamp unit of~~ claim 35 wherein the base is adapted for screw-in insertion into a conventional Edison-type socket at which a relatively low frequency AC voltage is available, the power supply further comprising means for rectifying the low frequency AC voltage for providing the DC input voltage to the inverter circuit.

41. The lamp unit of claim 35 and a starting aid electrode in proximity with the lamp.

42. The lamp unit of claim 35 wherein the inductance value of the inductor is manually variable whereby to effect illumination of the lamp at adjustable levels.

43. A power supply operable to energize a gas discharge lamp at adjustable illumination levels, comprising:

an inverter circuit having at least one periodically conducting transistor in circuit with a DC voltage input and being operable to provide an AC voltage output to the lamp;

frequency dependent impedance means in circuit with the AC voltage output and the lamp; and

means for adjustably controlling the transistor inversion frequency and hence the magnitude of the AC current supplied to the lamp.

44. The power supply of claim 43 wherein the controlling means comprises a saturable inductor means.

45. The power supply of claim 44 wherein the saturable inductor means has an adjustable saturation flux density for control of its saturation time.

46. In an inverter circuit having at least one periodically conducting transistor in circuit with a DC voltage input and being operable to provide an AC voltage output, the improvement comprising:

means comprising at least one saturable inductor for providing transistor drive current to control the conduction frequency thereof; and

means for controllably heating the saturable inductor whereby to correspondingly decrease the saturation flux limit and the saturation time thereof to increase the transistor inversion frequency.

47. The inverter circuit of claim 46 and means for adjustably controlling the heating means.

48. The inverter circuit of claim 46 wherein the transistor dissipates heat upon periodic conduction thereof and the heating means is operable to provide heat from the transistor to the saturable inductor.

49. The inverter circuit of claim 46 wherein the heating means is electrically powered, and wherein the inverter circuit further comprises a frequency dependent impedance means in circuit with the output and means for supplying power to the heating means in accordance with the level of the output whereby to effect feedback regulation ~~thereof~~.

50. In a half-bridge inverter circuit connected to a DC voltage input and being operable to provide an AC voltage output, the inverter circuit comprising a pair of alternately conducting transistors connected in series across the DC voltage input, the improvement comprising:

current feedback means in circuit with the output and comprising at least one saturable inductor operable to provide drive current to the transistors to effect alternate conduction thereof; and

a load in circuit with the transistors and having an inductance of value sufficient to effect periodic energy storage for self-sustained transistor inversion.

51. In a half-bridge inverter circuit connected to a DC voltage input and being operable to provide an AC voltage output, the inverter circuit comprising a pair of alternately conducting transistors connected in series across the DC voltage input, the improvement comprising:

a load in circuit with the transistors and being operable to effect periodic energy storage; and

a shunt diode connected in circuit with each transistor to provide a path of relatively low impedance to the DC voltage input for energy periodically stored in the load.

52. In a half-bridge inverter circuit connected to a DC voltage input and being operable to provide an AC voltage output, the inverter circuit comprising a pair of alternately conducting transistors connected in series across the DC voltage input each transistor having base, emitter and collector terminals, the improvement comprising a capacitor connected between the collector and emitter terminals of at least one of the transistors, the capacitor being operable to restrain the rate of rise of voltage across said terminals.

53. In a half-bridge inverter circuit connected to a DC voltage input and being operable to provide an AC voltage output, the inverter circuit comprising a pair of alternately conducting transistors connected in series across the DC voltage input, the improvement comprising:

current feedback means in circuit with the output and comprising at least one saturable inductor operable to provide drive current to the transistors to effect alternate conduction thereof; and

means for supplying reverse bias to the conducting transistor upon saturation of the saturable inductor.

Add B4

Add 5

Add 13

Add M1

3 pts

MAIL ROOM
AUG 14 1980
PAT. & TRADEMARK OFF.

178107 65.00-101 216.00-102 A

# INVERTER CIRCUITS

## ABSTRACT OF THE DISCLOSURE

High-efficiency inverter circuits, particularly half-bridge devices, are especially suitable for energizing gas discharge lamps. The inverters preferably employ a series-connected combination of an inductor and a capacitor to be energized upon periodic transistor conduction. Transistor drive current is preferably provided through the use of at least one saturable inductor to control the transistor inversion frequency to be equal to or higher than the natural resonant frequency of the inductor and capacitor combination. The inverters can develop high output voltages to supply external loads connected to the inductor-capacitor combinations.

08/25/80 178107 1 101 65.00CK
08/25/80 178107 1 102 216.00CK

OATH AND POWER OF ATTORNEY

As the below named inventor, being duly sworn, I depose and say that my residence, post office address and citizenship are as listed below next to my name; that I believe I am the original, first and sole inventor of the improvement in INVERTER CIRCUITS (Case 6) which is described and claimed in the attached specification; that I do not know and do not believe that the same was ever known or used in the United States of America before my invention thereof, or patented or described in any printed publication in any country before my invention thereof, or more than one year prior to this application, or in public use or on sale in the United States of America more than one year prior to this application; that said invention has not been patented or made the subject of an inventor's certificate issued before the date of this application in any country foreign to the United States of America on an application filed by me or my legal representatives or assigns more than twelve months prior to this application; that I acknowledge my duty to disclose information of which I am aware, which is material to the examination of this application; and that no application for patent or inventor's certificate on said invention has been filed by me or my legal representatives or assigns in any country foreign to the United States of America except as follows:

NONE

And I hereby appoint William E. Lucas (Reg. No. 16,086), Lawrence W. Brugman (Reg. No. 13,995), Keith K. Nicolls (Reg. No. 17,723), Murray A. Gleeson (Reg. No. 15,234), John K. Lucas (Reg. No. 27,024) and Richard B. Hoffman (Reg. No. 26,910) of Suite 2040, 230 West Monroe Street, Chicago, Illinois 60606, my attorneys individually, each with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

301

[signature]
401 Ole K. Nilssen

Dated: 8-8-80

Residence: 1984-Caesar Drive - Rt. 4
Barrington, Illinois 60010 IL

Citizenship: Norway

P.O. Address: 1984 Caesar Dr. - Rt. 4
Barrington, Illinois 60010

MAILING ADDRESS:

McCaleb, Lucas & Brugman
230 West Monroe Street, Suite 2040
Chicago, Illinois 60606
Phone: 312/236-4711

STATE OF ILLINOIS)
) ss
COUNTY OF McHENRY)

Subscribed and sworn to before me this 8 day of August, 1980.

(SEAL)

[signature]
Notary Public

My Commission Expires: 12-1-80

Algonquin Illinois

Nilssen Case 6
Sheet 1 of 3 Sheets

~~79107~~ 768,105
~~555,476~~




FIG. 1




FIG. 2

PHOTOPRINTS AS DRAWINGS FOR FILING DATE ONLY

Nilssen Case 6
Sheet 2 of 3 Sheets

~~178107~~
7~~87692~~

No8, 185

FIG. 3A
FIG. 3B
FIG. 3C
FIG. 3D







FIG. 4




FIG. 5

Nilssen Case 6
Sheet 3 of 3 Sheets

~~555,486~~
768,105




FIG. 7




FIG. 8



Sheet 1 of 3

PR. 2 OF DRAWING
AS ORIGINALLY FILED

787692




FIG. 1




FIG. 2

PHOTOPRINTS AS ORIGINALLY FILED

Nilssen Case 6
Sheet 2 of 3 Sheets

[redacted]
787692

PRINT OF DRAWING
AS ORIGINALLY FILED

FIG. 3A
FIG. 3B
FIG. 3C
FIG. 3D




FIG. 4




FIG. 5



Nilssen Case 6
Sheet 3 of 3 Sheets

[redacted]

363/98

PRINT OF DRAWING AS ORIGINALLY FILED

787692

FIG. 6




FIG. 7




FIG. 8



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 178,107 | 08/14/80 | Ole K. Nilssen, | 6 |

McCaleb, Lucas & Brugman
230 West Monroe St., Ste. 2040
Chicago, ILL. 60606

| EXAMINER | |
|---|---|
| W. Beha | |
| ART UNIT | PAPER NUMBER |
| 212 | 2 |

DATE MAILED: 17 APR 1981

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined. ☐ Responsive to communication filed on ______ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ______ month(s), 30 days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Notice of Informal Patent Drawing, PTO-948
3. ☐ Notice of References Cited by Applicant, PTO-1449
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☑ PTO-1094 (TWO MONTHS RESPONSE PERIOD HOLDS)

Part II SUMMARY OF ACTION

1. ☑ Claims 1-53 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☐ Claims ______ are rejected.
5. ☐ Claims ______ are objected to.
6. ☑ Claims 1-53 are subject to restriction or election requirement.
7. ☐ The formal drawings filed on ______ are acceptable.
8. ☐ The drawing correction request filed on ______ has been ☐ approved. ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received. ☐ not been received. ☐ been filed in parent application, serial no. ______ filed on ______.
10. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
11. ☐ Other

PTOL-326 (rev. 7-79)

EXAMINER'S ACTION

Restriction under 35 USC 121 to one of the following distinct inventions is required:

I. Claims 1-10,14-20,22,23,32 and 50-53, drawn to a inverter circuit classified in Class 363, subclass 131.

II. Claims 11-13,21,24,33-45, drawn to a inverter and a lamp classified in Class 315, subclass 205.

III. Claims 25-31, drawn to a optionally connectable power supply classified in Class 363, subclass 143.

IV. Claims 46-49, drawn to a regulated inverter classified in Class 363, subclass 98.

The inventions of groups I,II,III and IV indicated above are distinct (See MPEP 806.05 (e-g)] because the inverter of group I, the optionally connectable power supply of group III and the regulated inverter of loads other than a discharge lamp load, and the lamp load of group II may be driven by other inverter sources, as acknowledged on pages 1 and 2 of applicant's specification. Since the subject matter of each group has achieved a separate place of classification, and since each class and subclass has a different, substantially non-overlapping search locus, restriction for examination purposes, as indicated is proper.

Applicant's response to be complete must include a provisional election of one of the above identified inventions even though the requirement is traversed.

W. Beha/jm
703/557-5050
04/14/81

William H. Beha Jr.

WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

10.00-345-Dft212

31 sheets formal for Dwg
Coller 6/25/81

MAIL ROOM
38 JUN 15 1981
PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ole K. Nilssen
Case: 6

Serial No: 178,107
Group Art Unit: 212

Filed: August 14, 1980
Examiner: W. Beha

For: INVERTER CIRCUITS

JUN 22 1981

LETTER RE TRANSMITTAL OF FORMAL DRAWINGS

230 W. Monroe Street, Rm. 2040
Chicago, Illinois 60606

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

Enclosed are three sheets of formal drawings to be substituted for the informal drawings originally filed with this application.

Also enclosed is a check in the amount of $10.00 for the drawing comparison fee.

Respectfully submitted,

Ole K. Nilssen,
Applicant

By John K Lucas
John K. Lucas
Reg. No. 27,024

McCALEB, LUCAS & BRUGMAN
230 West Monroe Street
Suite 2040
Chicago, Illinois 60606

Telephone: 312/236-4711

06/19/81 178107 1 345 10.00CK

APPROVED | O.G. FIG.
BY | CLASS | SUBCLASS
DRAFTSMAN

Nilssen Case 6
Sheet 1 of 3 Sheets

768,102

Fig. 1.







Fig. 2.

APPROVED BY DRAFTSMAN | O.G. FIG. | CLASS | SUBCLASS

Nilssen Case 6
Sheet 2 of 3 Sheets

Fig. 3A.
Fig. 3B.
Fig. 3C.
Fig. 3D.







Fig. 4.

Fig. 5.



APPROVED BY DRAFTSMAN | O.G. FIG. | CLASS | SUBCLASS

Nilssen Case 6
Sheet 3 of 3 Sheets

768/185

Fig. 6.




Fig. 7.




Fig. 8.



[redacted]

4/a

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ole K. Nilssen | Case: 6

Serial No: 178,107 | Group Art Unit: 212

Filed: August 14, 1980 | Examiner: W. Beha

For: INVERTER CIRCUITS

RECEIVED JUL 7 1981 GROUP 210

A M E N D M E N T

230 W. Monroe Street, Suite 2040
Chicago, Illinois 60606
May 7, 1981

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

In response to the outstanding Official Action, Paper No. 2, please amend the subject application as follows:

Cancel Claims 11-13, 21, 24-31 and 33-49.

REMARKS

In view of the Examiner's restriction requirement, applicant has elected to prosecute Claims Nos. 1-10, 14-20, 22, 23, 32 and 50-53, which constitute Group I. By this amendment, all other claims in this application have been cancelled and are being pursued in three separate divisional applications (for Groups II-IV) filed concurrently herewith.

Respectfully submitted,

Ole K. Nilssen,
Applicant

By John K Lucas
John K. Lucas
Reg. No. 27,024
Attorney for Applicant

McCALEB, LUCAS & BRUGMAN
230 W. Monroe Street
Suite 2040
Chicago, Illinois 60606
Telephone: (312)236-4711

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Commissioner of Patents and Trademarks, Washington, D.C. 20231, on the date indicated below.

By John K Lucas
Attorney for Applicant
Date May 7, 1981

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/178,107 | 08/14/80 | NILSSEN 0 | 6 |

MC CALEB, LUCAS & BRUGMAN
230 WEST MONROE ST., STE. 2040
CHICAGO, IL 60606

| EXAMINER | |
|---|---|
| BEHA, I | |
| ART UNIT | PAPER NUMBER |
| 212 | 5 |

DATE MAILED: ~~08/03/81~~ 17 AUG 1981

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined. ☐ Responsive to communication filed on ______ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892
2. ☐ Notice of Informal Patent Drawing, PTO-948
3. ☐ Notice of References Cited by Applicant, PTO-1449
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ ______

Part II SUMMARY OF ACTION

1. ☑ Claims 1-10, 14-20, 22, 23, 32 & 50-53 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☑ Claims 11-13, 21, 24-31, & 33-49 have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☑ Claims as in para 1 above are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ The formal drawings filed on ______ are acceptable.
8. ☐ The drawing correction request filed on ______ has been ☐ approved. ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received. ☐ not been received. ☐ been filed in parent application, serial no. ______; filed on ______.
10. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
11. ☐ Other

PTOL-326 (rev. 7-79)

EXAMINER'S ACTION

PTO-1142 (10-78)

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

SERIAL NUMBER 178/107 | GROUP ART UNIT 212

PART III

NOTIFICATION OF REJECTION(S) AND/OR OBJECTION(S) (35 USC 132)

| | CLAIMS (1) | REASONS FOR REJECTION (2) | REFERENCES * (3) | INFORMATION IDENTIFICATION AND COMMENTS (4) |
|---|---|---|---|---|
| 1 | 1-10, 14-20 22,23 & 32 | 35USC112 PARA 2 | — | CLAIMS ARE INCOMPLETE — CLAIMS RECITE AN ASSEMBLY OF PARTS WITHOUT THE NECESSARY INTERCONNECTIONS TO DEFINE "AN INVERTER CIRCUIT." PARTICULARLY UNINFORMATIVE OF ANY CONNECTION ARE RECITATIONS SUCH AS A "CIRCUIT HAVING AT LEAST A PAIR OF ALTERNATELY CONDUCTING TRANSISTORS" (CLAIM 1, LINES 1 & 2), & "IN CIRCUIT WITH" (CLAIM 1, LINES 2 & 6; CLAIM 10, LINE 2, CLAIM 14, LINES 2 & 6 ETC). ALSO UNINFORMATIVE ARE THE GENERAL LACK OF INPUT & OUTPUT MEANS FOR THE INVERTER CIRCUITS. |
| 2 | 1,9,10 14,17, 18,20 22,23 (32) | 35USC 102 | A | "SERIES CONNECTED COMBINATION OF INDUCTOR AND A CAPACITOR" WITHOUT MORE RECITATION OF OTHER INTERCONNECTIONS, "READS ON" REF A, FIG 1, L1 & C3. |
| 3 | 51 | 35USC102 | A | CLEARLY ANTICIPATED BY FIG. 1 |
| 4 | 52 ~~50,52~~ WAS + ~~83~~ | 35USC102 | ~~B~~ WAS N | ~~CLEARLY ANTICIPATED BY FIG. 8~~ WAS SEE REF. N, FIG. 9, CAPACITOR C |
| 5 | 1-3+5 | 35USC102 | C | FIG. 2, LC CIRCUIT IS TRANSF. 2 + CAP 18. |
| 5A | 50+53 | 35USC102 | M | SEE REF. M, SATURATING TRANSF. 1 |

* Capital letters representing references are identified on accompanying Form PTO-892
The symbol "v" between letters represents - in view of -.
The symbol "+" or "&" between letters represents - and -.
A slash "/" between letters represents the alternative - or -.

NOTE: Sections 100, 101, 102, 103, and 112 of the Patent Statute (Title 35 of the United States Code) are reproduced on the back of this sheet.

EXAMINER | TEL. NO. (703) — 557

See next page

2

PTO-1142 (10-78)

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

SERIAL NUMBER 178 107 | GROUP ART UNIT 212

PART III

NOTIFICATION OF REJECTION(S) AND/OR OBJECTION(S) (35 USC 132)

| | CLAIMS (1) | REASONS FOR REJECTION (2) | REFERENCES * (3) | INFORMATION IDENTIFICATION AND COMMENTS (4) |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

6. APPLICANT'S ELECTION OF THE INVENTION OF GROUP I IS ACKNOWLEDGED.

7. USSR '185 SHOWS CAPACITORS 8 & 9 IN THE OSCILLATOR'S TURN-OFF CIRCUIT. USSR '803 SHOWS THE STATE OF THE ACT. REF. D SHOWS ZENER DIODES Z1—Z4 USED AS REVERSE BIAS MEANS.

8. A MORE DESCRIPTIVE TITLE IS REQUIRED

* Capital letters representing references are identified on accompanying Form PTO-892
The symbol "v" between letters represents - in view of -.
The symbol "+" or "&" between letters represents - and -.
A slash "/" between letters represents the alternative - or -.

NOTE: Sections 100, 101, 102, 103, and 112 of the Patent Statute (Title 35 of the United States Code) are reproduced on the back of this sheet.

EXAMINER

TEL. NO. (703) — 557 5050

William H. Beha Jr.
WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

3

TO SEPARATE, I... (P AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

SERIAL NO. 178 107

GROUP ART UNIT 212

ATTACHMENT TO PAPER NUMBER 5

APPLICANT (S) NILSSEN

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4227243 | 10-1980 | GURWICZ ET AL | 363 | 132 | 6-22-78 |
| ✓ | B | 4184128 | 1-1980 | NILSSEN | 363 | 133 | |
| | C | 3691450 | 9-1972 | COX | 363 | 131 | |
| | D | 4121281 | 10-1978 | BANGA | 363 | 132 | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | 150185 | 8-1960 | USSR | — | 331 | 113A | — | — |
| | M | 197803 | 3-1978 | USSR | — | 363 | 132 | | — |
| | N | 609813 | 3-1979 | SWITZERLAND | — | 363 | 132 | | — |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER: WM BEHA

DATE: 7/30/81

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

#6
dk 10/30/81

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

OLE K. NILSSEN

Serial No. 178,107

Filed August 14, 1980

For INVERTER CIRCUITS

Art Unit 212 - Examiner Beha

RECEIVED
OCT 29 1 23 PM '81
GROUP 210

Hon. Commissioner of Patents
and Trademarks
Washington, D. C.

Sir:

REQUEST FOR EXTENSION OF TIME

Request is hereby made for a one month extension of time to reply to the outstanding Office Action. A response is now due on November 3, 1981 and the extension will extend the period to December 3, 1981.

The reason for the request is that the attorney handling this application has an extremely crowded docket and will be unable to prepare and file a fully responsive amendment within the presently set time.

This is a first request for extension of time.

Respectfully submitted,

John K. Lucas

John K. Lucas
Reg. No. 27,024

ONE MONTH EXTENSION
APPROVED BY ORDER OF THE
PRIMARY EXAMINER
G.M. White, Clerk, Group 210
10/29/81

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re application of | ) | "INVERTER CIRCUITS" |
| Ole K. Nilssen | ) | Examiner: T. Beha |
| Serial No. 06/178,187 197 | ) | Group Art Unit 212 |
| Filed: August 14, 1980 | ) | |

20 12-18-81

7/Rev't P/Atty

RECEIVED DEC 4 1981 GROUP 210

REVOCATION OF PAST POWER OF ATTORNEY AND GRANTING OF NEW POWER OF ATTORNEY

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Sir:

The Power of Attorney previously granted to John K. Lucas, McCaleb, Lucas & Brugman and to the partners of that firm is hereby revoked and a new Power of Attorney is hereby granted to James W. Potthast, Reg. No. 26,792.

Please send all future correspondence to my new attorney at his new address:

JAMES W. POTTHAST
Three Illinois Center - Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601

Your immediate attention to this matter will be greatly appreciated.

Respectfully submitted,

[signature]
Ole K. Nilssen

Date 11-30-81

Examiner's communication states that Applicant's Appeal Brief filed December 28, 1987, is being returned for failing to comply with 37 CFR 1.3.

Yet, in spite of Examiner's "explanation", Applicant does not understand why Examiner believes that the Reply Brief does not conform to reasonable standards of "decorum and courtesy"; neither does Applicant understand why Examiner is so concerned about such a non-central issue as "courtesy" -- especially to the degree it might be lacking from the Appeal Brief.

In particular and by way of example, in what way is it discourteous to state that:

"Examiner has led Applicant to believe that Examiner may not possess ordinary skill in the art to which the claimed invention belongs".

Is Examiner embarrassed with respect to his level of skill relative to the subject matter of the claimed invention? --- Why otherwise would he be so clearly reluctant to respond to Applicant's inquiry about his skill level?

From Applicant's perspective, by responding as he does, Examiner not only provides further indication of his lack of competence, but also shows a clear lack of dedication to effectively performing his duties of office.

Also, Examiner takes the position that Applicant's remarks regarding Examiner's competence are non-appropos in the Appeal Brief, stating that "the brief should be limited to addressing the grounds of rejection stated by the Examiner".

Yet, as Applicant eventually came to understand during the course of the prosecution, Examiner' <u>real</u> grounds of rejection were based on his lack of ordinary skill in the subject matter to which the claims at issue are directed; and, although these <u>real</u> grounds were (of course) not explicitly stated by Examiner, they were never-the-less stated implicitly by the nature of his arguments and reasoning. Hence, in order to address the <u>real</u> grounds of rejection, Applicant has no choice but to address the issue of Examiner's competence.

Finally, Applicant wishes to point out that -- after having prosecuted a very large number of applications at the PTO -- he has concluded that examiners generally do not possess ordinary skill in the art pertinent to the various applications they are charged with examining; and now, as a matter of "standard policy", Applicant automatically addresses the issue of Examiner's competence.

So, in many different applications, Applicant has raised the issue of Examiner's competence; and, in that connection, it is very revealing to note that:

i) whenever Applicant raises the issue of Examiner's competence with respect to an application being prosecuted in Group 210, the result is a strong reaction to the effect of trying to avoid the issue; whereas

ii) whenever this issue of Examiner's competence is being raised with respect to an application prosecuted in Group 260, the result is an effort to address the issue.

As Commissioner well knows, Applicant believes that the examination procedure at the PTO is materially deficient in respect to establishing obviousness under paragraph "103": it forces PTO's examiners to apply hindsight judgement in respect to subject matters in which they possess less than ordinary skill.

Applicant has previously written to Commissioner on this point, only to receive "Dear John" letters in return: clearly, Commissioner does not believe that his procedures could stand significant improvement.

Absent constructive response from the Commissioner, Applicant has taken his case to the CAFC (in the form of appeals from decisions of POT/BA); where he believes he will be more successful in terms of forcing an improvement in Commissioner's procedures. In this connection, one of the key issues Applicant plans to present to the CAFC is that of the examiners' lack of ordinary skill in the subject matters on which they are called-upon to render (hindsight) judgements.

Ole K. Nilssen, Pro Se Applicant

Date: 1-29-88

312-658-5615

**U.S. DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

W. Beha Art Unit 212
Aug. 14, 1980 178,107
Ole K. Nilssen

Paper No. 8

INVERTER CIRCUITS

18 DEC 1981

John K. Lucas,
McCaleb, Lucas & Brugman
230 West Monroe St., Ste. 2040
Chicago, Ill. 60606

This is in response to the communication re the Power of Attorney filed ... Dec. 4, 1980

1. ☑ The power of attorney to you in this application has been revoked by the applicant.

2. ☐ In view of the notice in this application of the death of ______ his power of attorney is terminated.

3. ☑ The power of attorney to you in this application has been accepted by the Commissioner of Patents, & Trademarks.

For Director, Operation

4. ☐ The assignee in this application has intervened and appointed an attorney of his own selection. Further correspondence will be held with said attorney. (Rule 36, Rules of Practice.)

5. ☐ The revocation of the power of attorney to ______ has been entered and said attorney has been notified. Further correspondence will be addressed to you.

6. ☐ On ______, the applicant assignee appointed ______ as additional attorney in this application. Further correspondence will continue to be addressed to you as specified in the new power of attorney.

7. ☐ On ______, the applicant assignee appointed ______ as additional attorney in this application. Further correspondence will be addressed to said attorney. MPEP 403.02

8. ☐ The associate power of attorney to you in this application has been revoked by the attorney of record.

James W. Potthast
Three Illinois Center -Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601

Sarah B. Dempsey
Sarah B. Dempsey
For Director, Operation

RETAIN THIS COPY IN THE APPLICATION FILE

MAIL ROOM
DEC 2 1981
35 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of )
Ole K. Nilssen )
Serial No. 06/178,127 )
Filed: August 14, 1980 )

"INVERTER CIRCUITS"
Examiner: T. Beha
Group Art Unit 212

REQUEST FOR EXTENSION OF TIME

RECEIVED DEC -7 1981 DIRECTOR GROUP 210

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Sir:

A one month extension of time to and including January 4, 1981 for applicant to respond to the outstanding Office action mailed August 4, 1981 is hereby respectfully requested.

This extension of time is needed because applicant has changed attorneys in charge of this case, and the new undersigned attorney needs time to become familiar with the application, the office action, and the cited references both in the Office Action and in the application.

The revocation and new power of attorney is enclosed herewith.

For the foregoing reasons, favorable consideration of this request is respectfully solicited.

Respectfully submitted,

James W. Potthast
Reg. No. 26,792

November 30, 1981

APPROVED
DEC 7 1981
DIRECTOR, GROUP 210

IN THE U[illegible]ED STATES PATENT AND TRA[illegible]RK OFFICE

| | |
|---|---|
| In re application of | "INVERTER CIRCUITS" |
| Ole K. Nilssen | Examiner: T. Beha |
| Serial No. 06/178,107 | Group Art [illegible]2 |
| Filed: August 14, 1980 | |

RECEIVED JAN 1? 1982 GROUP 210

AMENDMENT B

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Dear Sir:

In response to the Office Action dated August 4, 1981, please amend the above identified application as follows:

IN THE TITLE:

Please change the title from "INVERTER CIRCUITS" to "ELECTRONIC INVERTER AND BALLAST CIRCUITS"

IN THE CLAIMS:

Please amend claims 1, 10 and 14 as follows:

1. (Amended) In an inverter circuit having at least one pair of alternately conducting transistors in circuit with a DC voltage input and being operable to provide an AC voltage [output] across a pair of outputs, the improvement comprising:

[means comprising a series-connected combination of] an inductor and a capacitor connected in series with each other between said said pair of outputs and in circuit with the transistors [and] to be alternately energized [upon] during alternate conduction thereof; and

means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination.

10. (Amended) The inverter circuit of claim 1 [and] in combination with a load connected in circuit with the inductor and the capacitor between said said pair of outputs, the load

01/11/82 178107 1 102 98.00CK

B2 being operable to limit the voltages developed across the inductor and the capacitor to non-destructive levels.

14. (Amended) In an inverter circuit having at least one pair of alternately conducting transistors in circuit with a DC voltage input and being operable to provide an AC voltage [output] across a pair of outputs, the improvement comprising:

[means comprising a series-connected combination of] an inductor and a capacitor connected in series with one another between said pair of outputs and connected in circuit with the transistors [and] to be alternately energized upon alternate conduction thereof, said inductor and capacitor having a natural resonant frequency; and

B3 means for providing drive current to the transistors to control each conduction period thereof to be shorter in duration than one quarter of the [full] period of [corresponding to] the natural resonant frequency [of the inductor and capacitor combination].

Please cancel without prejudice claims 50, 51, 52 and 53.

Please add claims 54 and 55 as follows:

54. The inverter circuit of claim 32 in which said direct electrical connection is provided through a switch.

55. The inverter circuit of claim 54 in which said switch has one position in which the power supply means is directly connected with the power supply leads to produce a DC output from a first level AC input and a second position in which the power supply means is directly connected with the power supply leads to produce a DC output from a second level AC input which is substantially greater than said first level AC input.

B4

Serial No. 06/178,107

Please add new claims 56-85, as follows:

Sub C1

56. In an inverter the improvement comprising:

a pair of transistors;

a saturable inductor connected with said transistors for causing alternate conduction thereof to produce a substantially squarewave voltage across a pair of output terminals;

an inductor and a capacitor connected in series across said pair of output terminals; and

means for connecting a load in circuit with the capacitor to supply current thereto.

B4 Cont'd

57. The inverter of claim 56 in which said voltage output has a plurality of frequency components and the series connected inductor and capacitor resonate at a frequency not greater than the lowest frequency component of said voltage.

58. The inverter of claim 56 or 57 in which current supplied to the load is substantially sinusoidal and lagging in phase with respect to the output voltage.

59. The inverter of claim 58 in which said load is a fluorescent lamp.

60. The inverter of claim 56 in combination with a load connected across the capacitor by said connecting means which causes the voltage provided thereto to be substantially changed in both amplitude and waveshape relative to the squarewave voltage output.

61. The inverter of claim 56 in which said transistors are connected in series across a DC power supply.

62. The inverter of claim 56 or 61 in which said inductor and capacitor provide impedance matching between the squarewave output voltage and the load.

Serial No. 06/178,107

63. The inverter of claim 62 in which said load is a fluorescent lamp.

64. The inverter of claim 56 in which said load is a fluorescent lamp and said current supplied thereto is substantially constant in amplitude and has a substantially sinusoidal waveshape.

65. The inverter of claim 64 in which said inverter has means for connecting it with a pair of conventional AC utility power lines.

66. The inverter of claim 65 including means for directly connecting one of said pair of power lines with one of said output terminals and one side of said fluorescent lamp.

B4

67. The inverter of claim 56 in which said load is a fluorescent lamp and said series combination resonates to provide a voltage across the capacitor which is substantially greater than that of the squarewave output voltage, and including means for applying the voltage provided across the capacitor to the fluorescent lamp.

68. The inverter of claim 56 in which said load is a fluorescent lamp having a pair of cathodes and said inverter has means for connecting it with a pair of regular utility AC power lines to receive relatively low frequency alternating power therefrom to provide a relatively high frequency voltage across said pair of cathodes.

69. The inverter of claim 68 including means for providing a direct electrical connection between one of said pair of power lines and one of the cathodes of the fluorescent lamp.

70. The inverter of claim 56 in which the impedance of said lamp is substantially less during ongoing operations than during an initial starting period.

Serial No. 06/178,107

71. The inverter of claim 56 in which said load is a fluorescent lamp and connection of said lamp causes the square-wave voltage applied thereto to be transformed to a substantially sinusoidal waveshape.

72. The inverter of claim 56 in which said capacitor functions substantially as a current source with the voltage developed across the capacitor being substantially larger for a load of relatively high impedance than for a load of relatively low impedance.

73. In a half-bridge inverter circuit having a pair of series-connected capacitors connected with one another at a first point and a pair of series connected transistors connected with one another at a second point, said series-connected capacitors being connected in parallel with said series-connected transistors, and in which said inverter provides an output between said first point and said second point having a plurality of frequency components, the improvement comprising:

a series connection of an inductor and a capacitor connected across the first and second points of said inverter circuit, said inductor and capacitor having a series-resonant frequency that is not higher than the lowest frequency component of the output of the said inverter; and

means for connecting a load in circuit with said capacitor.

74. In a half-bridge inverter adapted to be powered from a DC voltage to provide a substantially squarewave output voltage across a pair of output terminals, said DC voltage being derived from the alternating voltage present across a pair of regular electric utility power lines, said inverter comprising two series-connected capacitors connected in parallel with two

series-connected transistors, one of said terminals being the point of connection between the two series-connected capacitors, the improvement comprising:

two single wave rectifiers connected in opposite polarities from one line of said pair of power lines to opposite ends of the two series-connected capacitors; and

a conductor connected between the other line of said pair of power lines to the point of connection between the two series-connected capacitors so that one of the inverter output terminals is directly connected with and referenced to one of the power lines.

B4 cont'd

75. In an inverter for providing a substantially squarewave output voltage across a pair of output terminals, the improvement comprising:

an inductor connected in circuit with the pair of output terminals; and

a load connected with the inductor and having a component of capacitive reactance to cause the voltage developed thereacross to be larger in magnitude than that of said squarewave output voltage.

76. The inverter of claim 75 in which said inductor is a current-limiting inductor connected in series with one of the said pair of output terminals,and said load is connected in series between the said inductor and the other of said output terminals, said load having a capacitive reactance element for causing the power drawn from the said pair of output terminals to have an improved power factor for increased efficiency.

77. The inverter of claim 75 in which said load is a fluorescent lamp connected in series with said inductor and including a capacitor connected in parallel with the lamp for

Serial No. 06/178,107

causing the current therethrough to be substantially sinusoidal.

78. In a half-bridge inverter circuit having two transistors connected in series across a DC power supply, each of said transistors having a set of input control terminals, the improvement comprising:

a pair of transformers connected in circuit with said sets of input control terminals,

means for decoupling said transformers from one another to minimize the effect of the currents and voltages occurring at one of the sets of control terminals on the currents and voltages occurring at the other of the sets of control terminals.

B4

79. In a fluorescent lamp ballast having two output terminals for connection with two input terminals of a fluorescent lamp to provide suitable starting and operating voltages therefor, said two input terminals having a capacitor connected thereacross, the improvement comprising:

means releasibly connecting said fluorescent lamp in circuit with said two output terminals; and

means for preventing said starting and operating voltages from appearing across said output terminals except when the fluorescent lamp is connected therewith to render the output terminals substantially free from electric shock hazard whenever the fluorescent lamp is disconnected.

80. The inverter of claim 79 including means for releasibly connecting a capacitor, a series combination of the inductor with the capacitor releasibly connected across said source of AC voltage, and means for releasibly connecting said load in circuit with the capacitor, said connecting means also connecting said series combination across said source of AC voltage whenever the load is connected with the capacitor, whereby the high voltage of the capacitor is connected in series circuit with the inductor whenever the load is connected and the

Serial No. 06/178,107

capacitor is disconnected from the circuit whenever the load is disconnected.

81. A ballast for a gas discharge lamp having means to receive input power from a source of substantially squarewave voltage comprising:

a series combination of an inductor and a capacitor connected across the voltage source, said series combination having a natural series-resonant frequency which is substantially equal to or less than the fundamental frequency component of said squarewave voltage and causing the gas discharge lamp to be provided with a substantially sinusoidal voltage of magnitude adequate for effective lamp starting and with a limited current of substantially sinusoidal waveshape for continuous lamp operation;

means to connect said gas discharge lamp in parallel circuit with said capacitor; and

means for connecting said series combination in circuit across said source of voltage.

B4 Cont'd

82. In a half-bridge inverter including two transistors connected in series across a DC power supply, each of said transistors having a set of input control terminals, the improvement comprising:

a pair of saturable inductors;

means for coupling said pair of saturable inductors to the control input terminal sets of said pair of transistors, respectively; and

means for de-coupling said pair of saturable inductors magnetically whereby the effect of current and voltages at one of the two sets of transistor input control terminals on the current and voltages occurring at the other set of transistor input control terminals is minimized.

Serial No. 06/178,107

83. In an inverter for providing a substantially square-wave output voltage across a pair of output terminals, the improvement comprising:

a load connected with said pair of output terminals, said load having a reactive impedance; and

means for preventing the inverter from oscillating whenever the load is disconnected from the pair of output terminals.

84. The inverter of claim 83 in which said reactive impedance is a capacitive reactance and said preventing means includes means for terminating the squarewave output voltage whenever the load is removed.

85. The inverter of claim 83 including an inductor connected in circuit with the pair of output terminals.

REMARKS

By the foregoing Amendment, applicant has amended 1, 10 and 14 to more clearly define applicant's invention and to overcome the objection thereto under 35 USC § 112. It is believed that these amendments obviate the basis for this objection, and withdrawal of the objection is therefore respectfully requested.

In addition, applicant has cancelled without prejudice claims 50, 51, 52 and 53 and added new claims 54 and 55 dependent, directly or indirectly, on original claim 32. Allowance of these new claims is respectfully requested.

Finally, applicant has added new claims 56-85, inclusive, and favorable consideration and allowance thereof are respectively solicited.

Claims 1-10, 14-20, 22, 23, 32, 54, 55 and 56-85 are at issue.

Serial No. 06/178,107

Reconsideration of the rejection under 35 USC § 102 on the basis of Gurwicz et al. (A) is respectfully requested. Gurwicz fails entirely to show or suggest applicant's invention as defined in these claims. Claim 1 has been amendod to more clearly define the relationship between the series-connected inductor and capacitor and the AC voltage outputs. The claim specifies that the inverter provides an AC voltage across a pair of outputs and the improvement comprises, inter alia, an inductor and capacitor connected in series with each other between said pair of outputs. In the preferred embodiment of applicant's invention illustrated in Fig. 2, the pair of outputs comprise junction 44 between transistors 42 and 43 and the junction between capacitors 34 and 36. In Gurwicz et al. the corresponding pair of outputs comprise junction A between transistors T1 and T2 and the junction between capacitors C1 and C2. It is abundantly clear that the inductor L1 and capacitor C3 of Gurwicz are connected in parallel with one another between these pair of outputs. Clearly, such a parallel connection is not the series connection specified in claim 1. Further, the advantages obtained in applicant's invention through means of the series L-C connection obviously cannot be obtained by the parallel L-C circuit of Gurwicz et al. and can therefore not be suggested thereby.

Claim 14 has also been amended and specifies more clearly the series connection of the inductor and capacitor between the pair of AC voltage outputs. Claim 14 is therefore believed allowable over Gurwicz et al. for the same reasons set forth above with regard to claim 1.

Independent claim 32 defines an inverter circuit with an improvement comprising, inter alia, means for providing an AC input voltage on two power leads and a power supply in circuit with the AC input voltage and being operable to pro-

vide the DC voltage supply to the inverter which provides a direct electrical connection between one of the power leads and an inductor in circuit with the common connection of two transistors of the inverter. In Gurwicz, on the other hand, the connection between inverter L1 and the AC power is through the diodes of the rectifier bridge. Accordingly, it is believed that claim 32 clearly distinguishes over Gurwicz et al.

Reconsideration and withdrawal of the rejection of claims 1-3 and 5 under 35 USC § 102 over Cox (C) is respectfully solicited. Claim 1, as previously indicated, defines an inverter circuit which is operable to provide an AC voltage across a pair of outputs and which comprises an inductor and capacitor connected in series with each other between said pair of outputs. The series connection of capacitor 18 and secondary transformer winding 2b cannot comprise such an L-C series connection between a pair of AC voltage outputs, for the secondary winding transformer 2b produces the AC output voltage itself. Accordingly, the pair of AC voltage outputs as defined in claim 1, corresponds to the opposite sides of the secondary winding 2b. Thus, the only elements connected between these pair of outputs is the load 20 and capacitor 18. Actually, with this frame of reference, the capacitor 18 is in parallel with secondary winding 2b and thus cannot suggest an inverter circuit having an L-C series connection as specified in claim 1. Allowance of claim 1, claims 2-3 and 5 dependent thereon, is therefore requested.

Serial No. 06/178,107

For the foregoing reasons, favorable consideration and allowance of all claims at issue are respectfully solicited.

Respectfully submitted,

By [signature]
James W. Potthast
Reg. No. 26,792
Attorney for Applicant

Law Offices Of
JAMES W. POTTHAST
Three Illinois Center - Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601

Date December 30, 1981

CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Commissioner of Patents and Trademarks, Washington, D.C. 20231, on the date indicated below

By [signature]

Date December 30, 1981

IT
1-22-82

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
JAN 25 3 00 PM '82
GROUP 210

| | | |
|---|---|---|
| In re application of | ) | "INVERTER CIRCUITS" |
| | ) | |
| Ole K. Nilssen | ) | Examiner: T. Beha |
| | ) | |
| Serial No. 06/178,107 | ) | Group Art Unit 212 |
| | ) | |
| Filed: August 14, 1980 | ) | |

AMENDMENT C-SUPPLEMENTAL

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Dear Sir:

In further response to the Office Action dated August 4, 1981, supplemental to Amendment B, mailed December 30, 1981, please amend the claims as follows:

IN THE CLAIMS:

Please cancel in their entirety claims 56-85 added by Amendment B, without prejudice, and substitute therefor the following claims 86-115:

86. In a ballasting circuit (for a gas discharge lamp) said ballasting circuit comprising an inverter (adapted to be powered) from a source of DC voltage and to provide a substantially square-wave voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals;

means (for connecting said gas discharge lamp in parallel circuit with said capacitor;) and

means for operating the inverter at a frequency that is independent of the natural resonant frequency of the series-combination of said inductor and capacitor.

87. The ballasting circuit of Claim 86 in which the inversion frequency of said inverter is higher than the natural resonant frequency of said series-combination of an inductor and a capacitor.

Serial No. 06/178,107

88. The ballasting circuit of Claim 86 in which the inverter includes

a periodically switched transistor, and

means including a saturable inductor for controlling the switching period of said transistors.

89. The improvement of Claim 86 including means for adjusting the inductance value of said inductor to adjust the amount of light output of said gas discharge lamp.

90. In a half-bridge inverter circuit adapted to be powered from a DC voltage to provide a substantially squarewave output voltage across a pair of output terminals, said DC voltage being derived from the AC voltage present across a pair of regular electric utility power lines, said inverter circuit comprising two series-connected capacitors connected in parallel with two series-connected transistors, one of said output terminals being the point of connection between the two series-connected capacitors, the improvement comprising:

two single-wave rectifiers connected in opposite polarities from one line of said pair of power lines to opposite ends of the two series-connected capacitors; and

a conductor connected between the other line of said pair of power lines to the point of connection between the two series-connected capacitors, said conductor directly connecting one of the inverter output terminals with one of the power lines to reference it thereto.

91. The ballasting circuit of Claim 90 including means for connecting a gas discharge lamp in circuit with said output terminals, said connecting means comprising means for limiting the current provided to said gas discharge lamp.

92. The ballasting circuit of Claim 91 wherein said current limiting means comprises a series-combination of an inductor and a capacitor.

Serial No. 06/178,107

93. In an inverter having a pair of transistors, the improvement comprising:

a pair of output terminals;

means (including a saturable inductor) connected with said transistors for causing alternate conduction thereof to produce a substantially squarewave voltage across the pair of output terminals;

an LC series circuit connected across said pair of output terminals; and

means for connecting a load in parallel circuit with one of the elements of said series circuit.

94. The inverter of Claim 93 in which said LC series circuit has a natural resonance frequency that is substantially equal to or lower than the fundamental frequency of said squarewave voltage.

Sub D3

95. The inverter of Claim 94 wherein said load is a gas discharge lamp.

96. The inverter of Claim 95 wherein said gas discharge lamp is connected in parallel with the capacitive element of said LC series circuit.

97. The inverter of Claim 96 including means for adjusting the inductive element of said LC series circuit to adjust the light output of said gas discharge lamp.

98. In an inverter (adapted to provide) a voltage across a pair of output terminals, the improvement comprising:

a load releasibly connected with said pair of output terminals; and

means for disabling the inverter from providing said voltage across said pair of output terminals whenever the load is disconnected therefrom, thereby rendering the output terminals free from electric shock hazard whenever the load is disconnected.

99. The inverter of Claim 98 in which said inverter includes an inductor in circuit with said output terminals.

Serial No. 06/178,107

100. The inverter of Claim 99 wherein said load includes a capacitive reactance.

101. The inverter of Claim 100 wherein said load also includes a gas discharge lamp.

102. The inverter of Claim 98 including a feedback path for enabling said inverter to self-oscillate.

103. The inverter of Claim 102 in which said feedback path is interrupted whenever the load is disconnected.

104. In a fluorescent lamp ballast having two output terminals for connection with two input terminals of a fluorescent lamp, said ballast providing ~~suitable~~ starting and operating voltages for said fluorescent lamp and said input terminals having a capacitor connected in circuit therewith, the improvement comprising:

means for releasibly connecting said fluorescent lamp in circuit with said two output terminals; and

means for preventing said starting and operating voltages from appearing across said output terminals except when the fluorescent lamp is connected therewith, thereby rendering the output terminals substantially free from electric shock hazard whenever ~~the fluorescent lamp is disconnected.~~

105. In a half-bridge inverter circuit adapted to be powered from a source of DC voltage, said circuit having a pair of series-connected transistors connected across two output terminals of a source of DC voltage said transistors being interconnected at a point and said circuit providing an inverter output between said point and one of said output terminals, the improvement comprising:

a load releasibly connected with said inverter output;

means for providing a voltage across said inverter output whenever the load is connected therewith, and

means for preventing a voltage from appearing across said inverter output whenever the load is not connected, thereby rendering the inverter output free from electric shock hazard when-

Serial No. 06/178,107

ever the load is disconnected.

Sub D6 106. A half bridge inverter circuit for providing a substantially squarewave output voltage from a source of DC voltage, said source having output terminals across which said DC voltage is produced, comprising:

two transistors connected in series across two of said output terminals;

means for interconnecting the two transistors at a point;

a series-combination of an inductor and a capacitor connected between said point and one of the output terminals of said DC voltage source, the natural resonant frequency of said series-combination being lower than the lowest frequency component of said squarewave output voltage; and

a load connected in parallel circuit with said capacitor to receive a voltage thereacross which is transformed in amplitude and waveshape compared with the voltage present between said point ~~and one of the terminals of said source of DC voltage~~.

Cancel

107. The half bridge inverter circuit of Claim 106 including means for varying the inductance of said inductor to vary the magnitude of the voltage provided across the load.

Sub D7 108. The half bridge inverter circuit of Claim 107 wherein the load comprises a gas discharge lamp.

109. In an inverter circuit for providing power to a load and having a positive feedback path for providing self-oscillating inverter action, the improvement comprising:

means for releasibly connecting said load to the inverter circuit; and

means for interrupting the positive feedback path, and thereby stopping the inverter action, whenever the load is disconnected from the inverter circuit.

Sub D8 110. In a ballasting circuit for a gas discharge lamp having an inverter for receipt of power from a source of DC voltage to

Serial No. 06/178,107

provide a substantially squarewave voltage output across a pair of terminals, the improvement comprising:

means including an inductor for connecting said gas discharge lamp in circuit with said pair of output terminals, said inductor limiting the current supplied to the lamp; and

means including a capacitor connected in parallel with said lamp for improving the power factor by which power is drawn from ~~said pair of output terminals.~~

Cnl

111. A circuit operable from a source of alternating voltage for ballasting a gas discharge lamp, comprising:

a series combination of an inductor and a capacitor, said series combination connected across said source of alternating voltage and having a natural resonant frequency which is substantially equal to or lower than the lowest frequency component of said alternating voltage;

means for connecting the gas discharge lamp in parallel circuit with said capacitor; and

means for adjusting the inductance of said inductor to adjust the amount of power applied to said lamp.

Sub D9

112. In an inverter circuit having two transistors connected in parallel, push-pull configuration and each having a collector for providing a substantially squarewave voltage between said collectors, the improvement comprising:

a series-combination of an inductor and a capacitor connected directly between the two collectors, the natural series resonant frequency of said series-combination being substantially equal to or lower than the lowest frequency component present in said squarewave voltage; and

a load connected in parallel circuit with said capacitor which causes the voltage thereacross to be transformed in amplitude and waveshap relative to the voltage present between the two collectors to provide improved power factor loading for the inverter and to have a reduced amount of higher frequency components rela-

Serial No. 06/178,107

D ~~tive to the voltage present between the two collectors.~~

113. The inverter circuit of Claim 112 wherein another capacitor is connected between the two collectors in parallel with said series-combination to reduce the high frequency voltage components in the inverter output.

114. The inverter circuit of Claim 112 in which the load is a gas discharge lamp.

115. A ballast ~~for a fluorescent~~ lamp, said ballast including an inverter for providing a substantially squarewave AC voltage output across two output terminals, comprising:

an inductor and a capacitor connected in series across said two output terminals, said inductor and capacitor in combination having a natural resonant frequency that is lower than the fundamental frequency component of said squarewave AC voltage; and

means for connecting the fluorescent lamp in parallel circuit with said capacitor, said squarewave AC voltage being transformed thereby in waveshape and amplitude to provide a substantially sinusoidal voltage of appropriate magnitude to start and operate the lamp.

REMARKS

The foregoing amendment has been made because claims 56-85 were added by mistake due to an inadvertent miscommunication between the applicant and his attorney. The set of claims intended to be added by applicant are claims 86-115 above.

Respectfully submitted,

By [signature]
James W. Potthast
Reg. No. 26,792
Attorney for Applicant

Law Offices Of
JAMES W. POTTHAST
Three Illinois Center - Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601
(312) 565-1260

Date: January 19, 1982

U.S. DEPARTMENT OF COMMERCE
Patent Office
Address Only: COMMISSIONER OF PATENTS
Washington, D.C. 20231

Beha:cds
178,107

A.U. 212
8/14/80

Paper No. ~~11~~ 12

Ole K. Nilsson

ELECTRONIC INVERTER AND BALLAST CIRCUITS

James W. Potthast
Three Illinois Center- Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601
1-27-82

Please find below a communication from the EXAMINER in charge of this application.

Commissioner of Patents.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE______MONTHS, DAYS FROM THE DATE OF THIS LETTER.

The amendments filed January ~~4~~ 4+21, 1982 ~~is~~ are not fully responsive to the Office Action dated 4 August 1981 because ~~it~~ they fails to meet the requirements of 37 CFR 1.111(c). The responses not only fail to point out the patentable novelty of newly presented claimed ~~56-85~~ 86-115, but also fail~~s~~ to point out why certain of these claims, such as those drawn to the combination of an inverter and a ~~fluorescent lamp~~ gas discharge lamp (e.g. claim ~~59, 64-66~~ 89, 95-97 etc.), should even be considered in light of applicant's earlier election not to prosecute claims to this combination (Paper No. 4). WHB

A proper response should include an argument under the heading "Remarks" in which applicant discusses the references applied against claims ~~56-85~~ 86-115, explaining how these claims avoid the references. The response should also give reasons why claims drawn to the non-elected inventions should even be considered. WHB

Applicant is given on month from the date of this letter to complete the response to avoid a holding of abandonment. 37 CFR 1.135(c).

WHBeha:cds
(703) 557-5050
1-27-82

William H. Beha Jr.
WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

POL-90 (REV. 3/70)

#13

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application

Nilssen

Serial No. 178,107

Filed August 14, 1980

Group 212 Exr. William H. Biehs, Jr.

RECEIVED
FEB 23 2 07 PM '82
GROUP 210

February 23, 1982

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

REQUEST FOR EXTENSION OF TIME

Sir:

It is respectfully requested that the time for filing a response to the outstanding office action dated January 27, 1982 and now due February 27, 1982 be extended one month up to and including March 27, 1982.

The additional time is needed for undersigned to confer further with the applicant in order to prepare a complete and meaningful response.

Further submitted that this request is made in good faith and not for purposes of delay.

Respectfully submitted,

By James Potthast
James Potthast 26,792

Three Illinois Center
Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601
(312) 565-1260

#14 3rd

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

In re application of
Ole K. Nilssen
Serial No. 178,107
Filed: August 14, 1980
For: ELECTRONIC INVERTER AND BALLAST CIRCUITS

MAILED
FEB 26 1982
DIRECTOR
GROUP 210

The Office action of January 27, 1982 under 37 CFR 1.135(c) acknowledged by applicant set a time limit for applicant to complete the response to the Office action of August 4, 1981.

The Examiner considered the missing matter or lack of compliance to be an inadvertent omission. Once an inadvertent omission is brought to the attention of an applicant the question of inadvertence no longer exists and accordingly, no further extension of time will be granted M.P.E.P. 710.02(c).

The SIX month statutory period for response having expired, the application is abandoned and applicant's remedy is by way of a petition to revive.

Original Signed
S. W. Engle
Director, Group 210

James W. Potthast
Three Illinois Center
Suite 1210
303 East Wacker Drive
Chicago, Ill. 60601

3-15-82

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/178,107 | 08/14/80 | NILSSEN | 0 6 |

JAMES W. FOTTHAST
THREE ILLINOIS CENTER - 1210
303 EAST WACKER DRIVE
CHICAGO, ILLINOIS 60601

| EXAMINER | |
|---|---|
| BEHA,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 7 |

DATE MAILED: 03/18/82

NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☐ Applicant's failure to respond to the Office letter, mailed ______________.
2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.
3. ☐ Applicant's failure to timely file the response received ______________ within the period set in the Office letter.
4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of ______________ of the Notice of Allowance.
   - ☐ The issue fee was received on ______________.
   - ☐ The issue fee has not been received in Allowed Files Branch as of ______________.

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, the petition fee of $15, and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc., V. Schuyler, 172 U.S.P.Q. 513.
5. ☑ The reason(s) below.

See the Group Director's letter, mailed Feb. 26, 1982

William H. Beha Jr.

WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

PTOL-1432

MAIL ROOM MAR 15 1982 PATENT & TRADEMARK OFF.

#16 amdt D(P)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

M. Watts #16/D 8/12/83

| | | |
|---|---|---|
| In re application of | ) | "INVERTER CIRCUITS" |
| Ole K. Nilssen | ) | Examiner: T. Beha |
| Serial No. 06/178,107 | ) | Group Art Unit 212 |
| Filed: August 14, 1980 | ) | |

AMENDMENT D

Honorable Commissioner of
Patents and Trademarks
Washington, D. C. 20231

Dear Sir:

In response to the Office Action of January 27, 1982, please amend the claims 89, 91, 95-97, 101, 104, 106, 108, 110, 112 and 114-115, as follows:

IN THE CLAIMS:

D1

89. The improvement of Claim 86 including means for adjusting the inductance value of said inductor to adjust the amount of light output of said gas discharge lamp when connected thereto.

D2

91. The ballasting circuit of Claim 90 including means for connecting a gas discharge lamp in circuit with said output terminals, said connecting means comprising means for limiting the current provided to said gas discharge lamp when connected therewith.

D3

95. The inverter of Claim 94 wherein said load connecting means includes means for connecting [is] a gas discharge lamp as the load.

96. The inverter of Claim 95 wherein said connecting means includes means for connecting said gas discharge lamp [is connected] in parallel with the capacitive element of said LC series circuit.

D3 Serial No. 06/178,107

97. The inverter of Claim 96 including means for adjusting the inductive element of said LC series circuit to adjust the light output of said gas discharge lamp when connected thereto as the load.

D4 101. The inverter of Claim 100 including means for releasably connecting [wherein said load also includes] a gas discharge lamp with said pair of output terminals as said load.

D5 104. In a ~~fluorescent lamp ballast~~ having two output terminals for connection with two input terminals of a fluorescent lamp, said ballast providing suitable starting and operating voltages for [said] a fluorescent lamp and said input terminals having a capacitor connected in circuit therewith, the improvement comprising:

means for releasably connecting [said] a fluorescent lamp in circuit and said two output terminals; and

means for preventing said starting and operating voltages from appearing across said output terminals except when the fluorescent lamp is connected therewith, thereby rendering the output terminals substantially free from electric shock hazard whenever the fluorescent lamp is disconnected.

D6 106. A half bridge inverter circuit for providing a substantially squarewave output voltage from a source of DC voltage, said source having output terminals across which said DC voltage is produced, comprising:

14,48

two transistors connected in series across two of said output terminals;

means for interconnecting the two transistors at a point;

a series-combination of an inductor and capacitor connected between said point and one of the output terminals of said DC voltage source, the natural resonant frequency of said series-combination being lower than the lowest frequency component of said squarewave output voltage; [and]

Serial No. 06/178,107

D6 Parallel

a load; and

means for connecting the [a] load [connected] in parallel circuit with said capacitor to receive a voltage thereacross which is transformed in amplitude and waveshape compared with the voltage present between said point and one of the terminals of said source of DC voltage.

D7

108. The half bridge inverter circuit of Claim 107 wherein the load connecting means includes means for connecting [comprises] a gas discharge lamp in parallel circuit with said capacitor.

D8

110. In a ballasting circuit for a gas discharge lamp having an inverter for receipt of power for a source of DC voltage to provide a substantially squarewave voltage output across a pair of terminals, the improvement comprising:

means including an inductor for connecting [said] a gas discharge lamp in circuit with said pair of output terminals, said inductor limiting the current supplied to the lamp when connected therewith; and

means including a capacitor connectable [connected] in parallel with said lamp when connected in circuit with said pair of output terminals for improving the power factor by which power is drawn from said pair of output terminals.

D9

112. In an inverter circuit having two transistors connected in parallel, push-pull configuration and each having a collector for providing a substantially squarewave voltage between said collectors, the improvement comprising:

a series-combination of an inductor and a capacitor connected directly between the two collectors, the natural series resonant frequency of said series-combination being substantially equal to or lower than the lowest frequency component present in said squarewave voltage; [and]

Serial No. 06/178,107

D9 Canc'ld

a load; and

[a] means for connecting the load [connected] in parallel circuit with said capacitor [which causes] to cause the voltage thereacross to be transformed in amplitude and [waveshap] waveshape relative to the voltage present between the two collectors to provide improved power factor loading for the inverter, [and to have a reduced] said capacitor reducing the amount of higher frequency components relative to the voltage present between the two collectors.

D10

114. The inverter circuit of Claim 112 in which the load connecting means comprises means for connection [is] a gas discharge lamp in parallel circuit with said capacitor.

115. A ballast for a fluorescent lamp, said ballast including an inverter for providing a substantially squarewave AC voltage output across two output terminals, comprising:

an inductor and a capacitor connected in series across said two output terminals, said inductor and capacitor in combination having a natural resonant frequency that is lower than the fundamental frequency component of said squarewave AC voltage; and

means for connecting [the] a fluorescent lamp in parallel circuit with said capacitor, said squarewave AC voltage being transformed thereby in waveshape and amplitude to provide a substantially sinusoidal voltage of appropriate magnitude to start and operate the lamp when connected in parallel circuit with the capacitor.

Serial No.06/178,107

REMARKS

By the foregoing Amendment, applicant has amended Claims 89, 91, 95-97, 101, 104, 106, 108, 110, 112, and 114-115. These amendments have been made to correct an inadvertent inclusion of a gas discharge lamp as a positive element of the claims and to otherwise clarify that such lamp is not part of the claimed combination. Now, the only reference to such a lamp in the claims is with regard to means for connecting such a lamp to the inverter circuit.

With these amendments, it is also believed that all of the claims are drawn to an inverter circuit of the elected Group I invention and that none are drawn to any of the non-elected invention. In the Group II claims, the lamp was directly or indirectly specified as an element of the claimed conbination. Accordingly, the Examiner characterized these claims as being directed to the combination of an inverter and lamp. Again, such a combination is not present in new claims 86-115. Accordingly, it is respectfully requested that all claims be considered by the Examiner in this application.

Claims 1-10, 14-20, 22, 23, 32, 54, 55 and 86-115 are at issue.

A discussion of the reasons why claims 1-10, 14-20, 22, 23, 32, and 54-55 are believed allowable over the cited references is given at page 10 of applicant's Amendment B dated December 30, 1981. These previously given reasons are clearly applicable to the newly added claims.

Claims 86-89, 93,97, 106-108 and 110-115 specify, inter alia, directly or indirectly, that an LC series circuit is coupled across the output of the inverter. As previously noted in applicant's Remarks accompanying Amendment B, with regard to claim 1, neither

Serial No. 06/178,107

Gurwicz et al.(A) nor Cox(C) show or suggest such an LC series circuit. With reference to the inverter outputs, inductor L1 and capacitor C3 of Gurwicz et al. are connected in parallel as are the secondary winding 2B and capacitor 18 of Cox.

Claim 90 and claims 91-92 dependent thereon specify, inter alia, a conductor directly connecting one of the inverter output terminals with one of the AC power lines to reference it thereto. As previously noted in the Remarks accompanying Amendment B, with respect to Claim 32, such connection in Gurwicz is made only therough the diodes of a bridge rectifier and not directly, as claimed.

Claims 98-105 and 109 deal with applicant's concept of disabling the inverter from producing potentially dangerous voltages in response to removal of the load, as discussed at the bottom of page 13 of the specification. It is obvious from only a cursory examination of the references that such a feature is not suggested.

For the foregoing reasons, all of the claims are believed allowable and believed properly included in this application. Favorable consideration and allowance are therefore respectfully requested.

Respectfully submitted,

Ole K. Nilssen

By James W. Potthast

James W. Potthast
Reg. No. 26,792

Law Offices of
JAMES W. POTTHAST
Three Illinois Center -Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601

(312) 565-1260

Date: March 11, 1982

MAIL ROOM MAR 15

15,00-121 Deputy Asst Comm #17 Petition to Revive

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re application of | ) | "INVERTER CIRCUITS" |
| Ole K. Nilssen | ) | Examiner: T. Beha |
| Serial No. 06/178,107 | ) | Group Art Unit 212 |
| Filed: August 14, 1980 | ) | |

RECEIVED
MAR 1 8 1982
DEPUTY ASST. COMM.

VERIFIED PETITION TO REVIVE

Honorable Commissioner of
Patents and Trademarks
Washington, D. C. 20231

Sir:

Pursuant to 37 CFR §137, applicant respectfully petitions the Commissioner to revive the above-identified application as a pending application on the grounds that the delay in filing the enclosed response to the outstanding Office Action of January 27, 1982, and due February 27, 1982, was unavoidable.

Enclosed is a check in the amount of $15.00 as payment of the petition fee.

The outstanding Office Action of January 27, 1982 (Paper No. 11) had a shortened statutory period for response of one month and requested an explanation of newly presented claims 86-115.

Enclosed is Amendment D in response to this Office Action. As is pointed out therein, the Remarks of applicant in distinguishing the cited references from the original claims, are clearly applicable to all of the claims except claim 90 and claims 91-92 dependent thereon. With regard to claims 90-92, a feature was claimed which clearly is not present in any of the cited references. Amendment B contained a full response to all of the issues raised in the Office Action of August 4, 1981.

03/16/82 178107 1 121 15.00CK

Serial No. 06/178,107

Accordingly, it is submitted that the Amendment B and Supplemental Amendment C was fully responsive to the Office Action of August 4, 1981, and met all of the requirements of 37 CFR §1.111. The requirements of §1.111(a) were met, for applicant replied to the Office Action and made request for re-examination or reconsideration and amended the claims in response to objections made by the Examiner. The requirements of §1.111(b) were met, for the applicant made such request in writing and he distinctly and specifically pointed out the supposed errors in the examiner's action and responded to every ground of objection and rejection in the Office Action of August 4, 1981. Clearly, Amendment B and Supplemental Amendment C are the action of an applicant making a bona fide attempt to advance the case to final action. The requirements of §1.111(c) were met, for the applicant clearly pointed out the patentable novelty which he thought the claims at issue presented in view of the state of the art disclosed by the references cited or the objections made. He also showed how these amendments avoided the references or objection with regard to those claims amended. With regard to the new claims, to the extent the issues raised with regard to the old claims were applicable, then applicant's remarks with regard thereto clearly applied.

Nonetheless, upon receiving the Office Action of January 27, 1982, applicant's new undersigned attorney wrote to applicant sending him a copy of the Action and requesting his thoughts before proceeding with preparation of a response.

Because of absences and other delays which were unavoidable, it became clear that the applicant and his undersigned attorney would not be able to prepare, review and file a response by the original due date of January 27, 1982.

Accordingly, on February 23, 1982, four days prior to lapse of the original time of one month set to respond to the Office Action of January 27, 1982, a request for a one month extension of time to respond was filed. As indicated in that request, the additional time was needed for the undersigned attorney to confer further with the applicant in order to prepare a complete and meaningful response. This request for extension of time was made in good faith and not for purposes of mere delay.

It is standard practice of the United States Patent and Trademark Office and it has been the experience of the attorney of applicant that such first requests for extensions of time are normally granted. Accordingly, applicant's undersigned attorney expected this request to be granted and did not take the extraordinary efforts that would have been required in order to file a timely response.

A decision on the request for extension of time was delayed until February 26, 1982, and contained the statement that the six months statutory period for response had expired. This Action was not actually received in the undersigned's office until March 3, 1982, and was not actually seen by the undersigned until March 9, 1982.

Serial No. 06/178,107

As soon as the undersigned obtained the rejection of applicant's request for extension of time, work began on preparation of the enclosed Amendment D and this petition.

If applicant's attorney had been informed on the date of the request for extension of time that the request was denied, he could have, through extraordinary efforts, prepared and timely filed a response. No prior indication had been given that the normal practice of the Patent and Trademark Office granting such first requests for extensions of time would not be followed.

For the foregoing reasons, it is submitted that the applicant's efforts to timely file the enclosed response was inadvertent, unintentional and unavoidable. The only reason it was not timely filed was that the refusal of the request for extension of time which normally is granted was not denied until after the response time had lapsed. At that point in time it was no longer possible for applicant's attorney to file a timely response.

If this petition is not granted, applicant will be irreparably damaged.

For the foregoing reasons, it is respectfully requested that this petition be granted.

Respectfully submitted,

Ole K. Nilssen

By James W. Potthast
James W. Potthast
Reg. No. 27,792

Law Offices of
JAMES W. POTTHAST
Three Illinois Center - Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601
(312) 565-1260

Date: March 11, 1982

MAIL RO
MAR
26

VERIFICATION

James W. Potthast appeared before me today, signed the foregoing Verified Petition to Revive as his free act, and swore under oath that all statements of fact contained therein are true.

Rosemary Phelps
Notary Public

Date: 3/11/82

COPY MAILED

MAR 3 1 1983

DEPUTY ASST. COMM.

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

EK/DLS/mr

Paper No. 18

In re Application of :
Ole K. Nilssen :
Serial No. 178,107 :
Filed: August 17, 1980 : ON PETITION
For: ELECTRONIC INVERTER AND :
BALLAST CIRCUITS :

This is a decision on petition under 37 CFR 1.137, filed March 15, 1982 to revive the above-identified application.

A petition to revive an abandoned application under 35 U.S.C. 133 and 37 CFR 1.137 must be accompanied (1) by an adequate verified showing of the cause of unavoidable delay, (2) by the proposed response to the outstanding Office action and (3) by the petition fee of fifteen dollars ($15). This petition lacks item (1) above.

The record indicates that on Office action was mailed on August 4, 1981 and that two requests for one-month extensions of time, extending the time for response until January 4, 1982, were granted. On January 4, 1982, an amendment was filed by applicant and on January 21, 1982 a supplemental amendment was filed. On January 27, 1982, the examiner held the amendments to be not fully responsive to the Office action under 37 CFR 1.111(c) and a one (1) month period for completing the response was set. On February 23, 1982, a request for extension of time to respond to the examiner's requirement was filed and this request was denied on February 26, 1982 by the Director of Group 210. Accordingly, the application became abandoned.

Petitioner's attorney states that he expected the request to be granted because it had been his experience "that such first requests...are normally granted."

The controlling rule in the instant case is set forth in 37 CFR 1.135(c) and M.P.E.P. 710.02(c). The examiner considered the lack of compliance with the Office action of August 4, 1981 to be an inadvertent omission. The Manual of Patent Examining Procedure states:

> "Once an inadvertent omission is brought to the attention of the applicant the question of inadvertence no longer exists. Therefore, any further time to complete the response would not be appropriate under 37 CFR 1.135(c). Accordingly, no extension of time will be granted in these situations." M.P.E.P. 710.02(c).

Under the circumstances, petitioner has not carried his burden of proof to show that the delay was unavoidable as required by statute and by regulations of the Patent and Trademark Office.

Public Law 97-247, which revised patent and trademark fees provides for the revival of an "unintentionally" abandoned application without a showing that the delay in prosecution or in late payment of the issue fee was "unavoidable" and for the reinstatement of an "unintentionally" lapsed patent without a showing that the late payment of the balance of the issue fee was "unavoidable". Rules implementing these provisions have been promulgated; 37 CFR 1.137(b), 1.155(c), 1.316(c) and 1.317(c). In order to qualify, a petition must be filed within one year of the date of abandonment of the application or within three months of a <u>first</u> decision on a petition alleging "unavoidable" delay.

An "unintentional" petition must be accompanied by the fee required by law. In this instance the fee required by law is $500.00. If applicant can qualify as a "small entity" and does so prior to or together with the payment of the fee, the fee will be one half of the amount indicated. See 37 CFR 1.27 (47 FR 40143, September 10, 1982).

Since this decision represents such a "first decision" on petition based on a showing of "unavoidable" delay, YOU HAVE THREE (3) MONTHS FROM THE DATE OF THIS DECISION OR ONE (1) YEAR FROM THE DATE OF ABANDONMENT, WHICHEVER IS LONGER, IN WHICH TO FILE AN "UNINTENTIONAL" PETITION or your right to do so will be lost.

The petition is denied.

W. Feldman

William Feldman
Deputy Assistant Commissioner for Patents

James W. Potthast
Three Illinois Center #1210
303 East Wacker Dr.
Chicago, Illinois 60601

47H 3/31/83 #500.00 [illegible]

MAIL ROOM 15 JUN 28 1983 PAT. & TRADE MARK OFF.

#19 Petition

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED JUL 5 1983 DEPUTY ASST. COMM.

In re Application of :
NILSSEN : Group Art Unit 212
Serial Number 178,107 : Examiner P. Be[illegible]
Filed: August 17, 1980 :
For: ELECTRONIC CONVERTER AND BALLAST CIRCUIT :

PETITION TO REVIVE UNDER 37 CFR 1.137

Honorable Commissioner of Patents
and Trademarks
Washington, D. C. 20231

Sir:

In accordance with the provision of 37 CFR 1.137(b) it is requested that the above application be reinstated. It is hereby certified that abandonment of this application was unintentional.

The $500.00 fee under 37 CFR 1.17(m) is submitted herewith.

Respectfully submitted,

07/01/83 178107 3 141 500.00 CK

James Potthast
James Potthast
Registration No. 26,792

Three Illinois Center
Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601
(312) 565-1260

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

RLM/DLS/dmj

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 178,107 | 8-14-80 | Ole Nilssen | 6 |

James W. Potthast
Three Illinois Center - Suite 1210
303 East Wacker Drive
Chicago, Illinois 60601

| EXAMINER | |
|---|---|
| Beha | |
| ART UNIT | PAPER NUMBER |
| 212 | 20 |

DATE MAILED:

COPY MAILED

JUL 29 1983

DEPUTY ASST. COMM.

The decision on the petition filed in the above entitled application is as follows:

Re: Petition to revive unintentionally abandoned application; 37 CFR 1.137(b).

☐ Delay in Prosecution Held Unavoidable (35 U.S.C. 133),

Petition Granted ____________

The file is being forwarded to Group 210.

☐ Delayed Payment of Issue Fee Accepted (35 U.S.C. 151),

Petition Granted ____________

☒ Petition Granted July 29, 1983

☐ Petition Denied ____________

☐ Petition Dismissed ____________

By direction of the Deputy
Assistant Commissioner for Patents

Karen A. Babington
for Roger L. Mickey
Office of the Deputy Assistant
Commissioner for Patents
(703) 557-1728

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/178,107 | 08/14/80 | NILSSEN | C 6 |

JAMES W. POTTHAST
THREE ILLINOIS CENTER - 1210
303 EAST WACKER DRIVE
CHICAGO, ILLINOIS 60601

| EXAMINER | |
|---|---|
| BEHA, H | |
| ART UNIT | PAPER NUMBER |
| 212 | 21 |

DATE MAILED: 09/19/83

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[ ] This application has been examined [ ] Responsive to communication filed on 1/4, 1/21 + 3/15/83 [x] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), —— days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [x] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [x] Claims 1-10, 14-20, 22, 23, 32, 54, 55, & 86-115 are pending in the application.

   Of the above, claims 89, 91, 92, 97-105, 108-111, 114 + 115 are withdrawn from consideration.

2. [x] Claims 11-13, 21, 24-31, 33-53, & 56-85 have been cancelled.
3. [ ] Claims ______ are allowed.
4. [x] Claims 1, 14, 32, 54, 55, 86, 87, 90, 93-96, 106, 107 & 112 are rejected.
5. [x] Claims 2-10, 15-20, 22, 23, 88 & 113 are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______. has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

PTOL-326 (Rev. 7-82) EXAMINER'S ACTION

The petition to revive having been granted, prosecution on the merits of this case is resumed.

Newly submitted claims 98-105, 109-11 and 115 are directed to an invention that is independent or distinct from the invention originally claimed for the following reasons: Applicant has already elected without traverse, claims drawn to the subcombination of an inverter circuit classified in Class 363, subclass 131.

Newly added claims 98-105 and 109 are drawn to a previously unclaimed invention--the sub-combination of an inverter with means to disable the inverter upon removal of the load, classified in Class 363, subclass 56.

Newly added claims 110, 111, and 115 are drawn to a previously unclaimed invention of a ballast circuit classified in Class 361, subclass 377.

These inventions are related as subcombinations useable together in a single combination. Likewise the inventions have separate utility with other inventions, as for example, the combination of the selected invention with a permanently connected induction heater.

Because these inventions are distinct for the reasons given above, and have acquired a separate status in the art as shown by their classification, and the search required for one invention is not required

for the other inventions, restriction for examination purposes is proper.

Since applicant has received an action on the merits for the originally presented invention, this invention has been constructively elected by original presentation for prosecution on the merits. Accordingly, claims 98-105, 109-111, and 115 are withdrawn from consideration as being directed to a non-elected invention. See 37 CFR 1.142(b) and MPEP 821.03.

I. Claims 1-10, 14-20, 22, 23, and 32 are directed to an inverter circuit classified in Class 363, subclass 131, elected without traverse in Paper No. 4, and applicant has received an action on such claims.

II. Claims 89, 91, 92, 97, and 114 which applicant has indicated as being readable on the elected invention, are for the combination of an inverter an a lamp when connected thereto, classified in Class 315, subclass 205. Reference is made to Paper No. 2 for the propriety of restricting this subject matter from the elected invention.

Applicant argues that the amendment to the claims are such as to exclude the lamp as a positive element of the claims. The examiner does not agree. Because when the lamp is connected to the inverter, it positively is an element of an inverter-lamp

combination. As to claims 108 and 114, they limit the load of claims 107 and 112 to a lamp.

Accordingly, applicant is required to restrict the claims to the invention previously elected, and thus the claims of Group II are held withdrawn from further consideration by the examiner by the prior election, 37 CFR 1.142(b).

An action on the merits of claims 1-10, 14-20, 22, 23, 32, 54, 55, 86-88, 90, 93-96, 106-108, and 112-113 follows below:

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

Claim 32 is rejected under 35 U.S.C. 102(e) as being anticipated by Gurwicz. The claimed "direct electrical connection" (third last line) is provided through either diode of the right side of the bridge rectifier, and through either C1 or C2.

Claims 54, 55, and 90 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by Rhoads.

Claims 1, 14, 86, 87, and 106 are rejected under 35 U.S.C. 102(e) as being anticipated by Friend.

Friend discloses in figure 1 a half bridge inverter 11, 46, 14, 48, with output terminals defined by the junction of transistors 14, 48 and ground. A series resonant circuit 16, 18 is connected across the output terminals of the inverter. A further output 62, 64 is connected across capacitor 18. As seen from figure 2, the transistor 14, 48 drive pulses appearing between times t1-t2, t3, t4 are of a higher frequency than wave form d. Thus the claimed recitations read on the reference.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art

are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claim 112 is rejected under 35 U.S.C. 103 as being unpatentable over the British reference in view of Stevens.

The claim differs from the British reference by calling for means to connect the load across the capacitor of the LC circuit. But such connection is shown to be old by Stevens, figure 4B, the lamp 11 connected across capacitor 46. To so provide the British reference would not produce any unexpected results.

Claim 112 is rejected under 35 U.S.C. 102(e) as being clearly anticipated by figure 4A of Stevens.

Claims 93-96 are rejected under 35 U.S.C. 103 as being unpatentable over Pintell in view of Stevens.

The claim differs from figure 6 of Pintell by calling for parallel load connecting means across one of the resonant LC elements. In contrast, Pintell connects his load in series with the LC circuit.

But Stevens shows it is old to connect a fluorescent lamp across a resonant capacitor (figs. 4a,

4b). Thus, to provide lamp terminals across Pintell's capacitor 616 would have been a matter of design choice. Nothing unexpected would result.

Claim 107 is rejected under 35 U.S.C. 103 as being unpatentable over Friend as applied to claim 106 above, and further in view of Pintell.

Pintell suggests tuning a resonant circuit by means of a variable inductor 617 (fig. 6a). To so provide Friend would have been obvious.

Claims 2-10, 15-20, 22, 23, 88, and 113 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Figure 1 of the German reference discloses another selectively connected voltage multiplier arrangement. Figure 6 of the Japanese article discloses a charge sweep-out circuit.

Applicant's amendment necessitated the new grounds of rejection. Accordingly, THIS ACTION IS MADE FINAL. See MPEP 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha, Jr. at telephone number 703-557-5050.

Beha/lg

703-557-5050

9/8/83

William H. Beha Jr.

WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

SERIAL NO. 178107 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 21

APPLICANT(S) NILSSEN

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4215392 | 7-80 | RHOADS | 363 | 143 | 12-19-78 |
| | B | 4286316 | 8-81 | FRIEND | 363 | 131 | 2-19-80 |
| | C | 4277728 | 7-81 | STEVENS | 315 | DIG-5 | 5-8-78 |
| | D | 3026486 | 3-62 | PINTELL | 331 | 117 | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | 930082 | 7-63 | GR. BRIT. | — | 363 | 131 | | |
| | M | 2032733 | 1-72 | GERMANY | — | 315 | 205 | | — |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

R J. Illum. Eng. Inst. Japan, Vol. 63, No. 2, pp 66-74, (Feb. 1979), 59171 0055, Class 315/219

S

T

U

EXAMINER: WM Beha | DATE: 8/30/83

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

MAIL ROOM OCT 13 1983 PAT. & TRADEMARK OFF.

cert

212

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
OCT 17 1983
GROUP 210

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/178,107
Filed: August 14, 1980
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

#22 / Response (NE.)
M. Watts 10/19/83

OK to enter WHB 10/23/83

## AMENDMENT E

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

10-31-83

Sir:

In response to Office Action dated September 9, 1983 (Paper No. 21), Applicant herewith provides the following comments.

REVOCATION OF POWER OF ATTORNEY

According to separate document enclosed herewith, Applicant has revoked the Power of Attorney previously granted to James W. Potthast (Reg. No. 26,792). Applicant will hereinafter prosecute the application himself.

IN RE CLAIMS

Independent claims at issue are 1, 14, 32, 86, 90, 93, 106, and 112.

In re Claim 1

Examiner rejects Claim 1 under "102(e)" as being anticipated by Friend. Applicant does not accept this rejection for the following reasons.

a) In Claim 1 Applicant calls for "means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

Of course, as it would in any conventional usage, the term "inversion frequency" refers to the number of inverter cycles per second, and does not in any reasonable way refer to possible harmonics (or harmonic content) of the basic inverter frequency.

From a study of Friend's patent, it is clear that the inversion frequency of his inverter is equal to the natural resonance frequency of his L-C circuit -- otherwise, he would not have reason to refer to his invention as "a resonant circuit power supply" (lines 61-62, column 1), or "a resonant circuit sine wave power supply" (lines 61-62, column 3), or as he similarly indicates in several other places in his specification.

Could his circuit reasonably be referred to as a "resonant circuit power supply" if it did not indeed operate substantially in a resonant mode?

Applicant contends that it would be highly unreasonable to interpret Friend's invention as having "means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

b) Applicant's Claim 1 refers to "an inductor and a capacitor connected in series with each other between said pair of outputs".

Yet, in his invention, Friend employs an "LC parallel resonant circuit" (line 4, column 4), and he also refers to "an inductor 16 of a parallel resonant circuit that also includes capacitor 18" (lines 40-42, column 2).

In his comments related to his rejection of Claim 1 (lines 4-5, fourth paragraph on page 5 of his response), Examiner states that Friend discloses an arrangement wherein "A series resonant circuit 16, 18 is connected across the output terminals of the inverter". Yet, according to Friend, he employs a parallel resonant circuit -- not a series resonant circuit.

In fact, upon analysis of Friend's inverter circuit, it is clear that -- due to the action of the "emitter followers 24 and 52" (line 58, column 3) -- his LC circuit (16 and 18 of Fig. 1) does indeed operate predominantly as an "LC parallel resonant circuit".

In other words, Friend does not show an inverter circuit loaded at its output with a simple series-combination of an inductor and a capacitor -- and especially does not indicate the inversion frequency to be higher than the natural resonance frequency of this series-combination. Rather, he shows a much more complex loading circuit -- one that operates predominantly as a parallel resonant circuit.

If someone simply were to connect a series resonant circuit across an inverter's output -- without providing for an appropriate voltage-limiting load -- the inverter would most likely self-destroy due to the inordinately large amount of current that would then result.

However, instead of providing for a series resonant circuit with voltage-limiting, Friend chose to use an arrangement that might be considered the operational equivalent of a parallel resonant circuit.

<u>In re Claim 14</u>

Examiner rejects Claim 14 under "102(e)" as being anticipated by Friend. Applicant does not accept this rejection for the same reasons that he did not accept Examiner's rejection of Claim 1.

<u>In re Claim 32</u>

Examiner rejects Claim 32 under "102(e)" as being anticipated by Gurwicz. Applicant does not accept this rejection for the following reasons.

In the last paragraph on page 10 in Amendment B, Applicant presented arguments as to why Claim 32 clearly distinguishes over Gurwicz.

In response to those arguments, Examiner contends that the claimed "direct electrical connection" is provided (by Gurwicz) "through either diode of the right side of the bridge rectifier, and through either C1 or C2".

Applicant can not understand what Examiner has in mind. How can an electrical connection be "direct" if it is accomplished <u>through</u> a combination of four other components? (i.e., "through either diode of the right side of the bridge rectifier, and through either C1 or C2")

For an electrical connection to be direct, there must be no intervening components. That is, there must be no impedance elements between the two points which are supposed to be directly connected.

Moreover, due to the very nature of a bridge rectifier operating from a source of sinewave voltage and feeding its output into a set of energy-storing capacitors, <u>most of the time</u> all the diodes in the bridge rectifier are reversely biased; which means that <u>most of the time</u> there exists no electrical connection at all -- much less a "direct electrical connection".

<u>In re Claim 86</u>

Examiner rejects Claim 86 under "103(e)" as being anticipated by Friend. Applicant does not accept this rejection for the following reasons.

a) Applicant refers to the arguments provided in connection with Claim 1. These arguments also pertain to Claim 86.

b) Claim 86 specifies "an inverter adapted to ---- provide a squarewave voltage across a pair of output terminals". The output of Friend's inverter is definitely not a squarewave voltage. In fact, for Friend's very circuit to operate, it is definitely necessary that the inverter's output not be a squarewave voltage. Instead, the inverter's output must be a pulsed voltage -- with significant and distinct periods of no output voltage at all.

Moreover, the very principle of Friend's circuit requires that the repetiton rate of the pulses provided at the inverter's output be substantially equal to the resonant frequency of his LC resonant circuit. That is, the number of pulses per second provided by the inverter must be substantially equal to the number of cycles per second associated with the natural resonance of his LC circuit.

In re Claim 90

Examiner rejects Claim 90 under "102(e)" as being anticipated by Rhoads. Applicant accepts this rejection and herewith cancels Claim 90.

In re Claim 93

Examiner rejects Claim 93 under "103" as being unpatentable over Pintell in view of Stevens. Applicant accepts this rejection and herewith cancels Claim 93.

In re Claim 106

Examiner rejects Claim 106 under "102(e)" as being anticipated by Friend. Applicant does not accept this rejection for substantially the same reasons that he did not accept Examiner's rejection of Claim 1.

In re Claim 112

Examiner rejects Claim 112 under "102(e)" as being anticipated by Stevens. Applicant accepts this rejection and herewith cancels Claim 112.

In re Remaining Claims at Issue

Please cancel dependent claims 94-96. However, the remaining dependent claims should be allowable based on the arguments provided in connection with the independent claims on which they are based.

Concluding Remarks

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art.

However, if Examiner should still have reservations, he is urged to contact Applicant by phone, thereby to attempt to work out any remaining differences.

To the extent that there is patentable subject matter disclosed in the application, and to the extent it is not covered by allowed claims, Examiner is requested -- in accordance with paragraph 707.07(j) in the Manual of Patent Examining Procedure -- to draft for Applicant a set of allowable claims covering such unclaimed allowable subject matter.

Ole K. Nilssen, Applicant

Date: 10-11-83

Phone: 312-658-5615

MAIL ROOM 23 OCT 13 1983 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/178,107
Filed: August 14, 1980
Group Art Unit: 212
Examiner: William H. Beha, Jr.

RECEIVED OCT 17 1983 GROUP 210

Sd 10-4-83

REVOCATION OF POWER OF ATTORNEY

23/Rev of P/atty

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

In re instant Application, I, the applicant, hereby revoke the Power of Attorney that I had previously given to the following attorney: James W. Potthast (Registration Number 26,792) of Three Illinois Center, Suite 1210, 303 East Wacker Drive, Chicago, Illinois 60601.

From now on and until further notice, I shall prosecute this patent application myself.

Please address all correspondence in connection with this application to:

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

Telephone: 312-658-5615

Sincerely,

[signature]

Ole K. Nilssen

Date: 10-11-83

**U.S. DEPARTMEN_ JF COMMERCE**
**Patent and Trademark Office**

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

W. Beha | Art Unit 212
Aug. 14, 1980 | 178,107
Ole K. Nilssen

Paper No. 24

ELECTRONIC INVERTER AND BALLAST CIRCUITS

James W. Potthast
Three Illinois Center, Suite 1210
303 East Wacker Drive,
Chicago, Illinois 60601

NOV 4 1983

This is in response to the communication re the Power of Attorney filed Oct. 13, 1983.

1. ☑ The power of attorney to you in this application has been revoked by the applicant.

2. ☐ In view of the notice in this application of the death of ______ his power of attorney is terminated.

3. ☐ The power of attorney to you in this application has been accepted by the Commissioner of Patents, & Trademarks.

Sarah B. Dempsey
For Director, Operation

4. ☐ The assignee in this application has intervened and appointed an attorney of his own selection. Further correspondence will be held with said attorney. (Rule 36, Rules of Practice.)

5. ☐ The revocation of the power of attorney to ______ has been entered and said attorney has been notified. Further correspondence will be addressed to you.

6. ☐ On ______, the applicant appointed (assignee) ______ as additional attorney in this application. Further correspondence will continue to be addressed to you as specified in the new power of attorney.

7. ☐ On ______, the applicant appointed (assignee) ______ as additional attorney in this application. Further correspondence will be addressed to said attorney. MPEP 403.02

8. ☐ The associate power of attorney to you in this application has been revoked by the attorney of record.

For Director, Operation

RETAIN THIS COPY IN THE APPLICATION FILE

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/175,162 | 08/14/80 | NILSSEN | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, ILLINOIS 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 25 |

DATE MAILED: 10/13/83

Below is a communication from the EXAMINER in charge of this application.

COMMISSIONER OF PATENTS, AND TRADEMARKS

## ADVISORY ACTION

☐ THE PERIOD FOR RESPONSE ~~IS EXTENDED TO RUN~~ EXPIRES THREE MONTHS FROM THE DATE OF THE FINAL REJECTION. 855 O.G. 1103. OR AS OF THE MAILING DATE OF THIS ACTION, WHICHEVER IS LATER.

☐ Appellant's Brief is due in accordance with Rule 192 (a).

Applicant's response to the final rejection, filed ______, has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☐ The proposed amendments to the claim and/or specification will not be entered and the final rejection stands because:
   a. ☐ There is no convincing showing under Rule 116(b).
   b. ☐ They raise new issues that would require further consideration and/or search.
   c. ☐ They raise the issue of new matter.
   d. ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.
   e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

2. ☐ Newly proposed or amended claims ______ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☑ Upon the filing of an appeal, the proposed amendment ☑ will be ☐ will not be, entered and the status of the claims in this application would be as follows:
   a. ☐ Claims ______ would be allowable.
   b. ☐ Claims 1, 14, 32, 54, 55, 86, 87, 106, 107 & 113 would not be allowable.

   However:

   (1) ☐ The rejection of claims ______ on references is deemed to be overcome by applicant's response.
   (2) ☐ The rejection of claims ______ on non-reference grounds only is deemed to be overcome by applicant's response.

4. ☐ The affidavit, exhibit or request for reconsideration has been entered but does not overcome the rejection.

5. ☐ The affidavit or exhibit will not be admitted because applicant has not shown good and sufficient reasons why it was not earlier presented.

6. ☐ The application having been examined under the special accelerated examining procedure (M.P.E.P. 708.02), the proposed amendment has not been considered since it does not prima facie place the application in condition for allowance or in better condition for appeal.

PTOL-303 (Rev. 10-80)

The shortened statutory period for response expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for response expire later than six months from the date of the final rejection. Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a) accompanied by the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee.

Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date that the shortened statutory period for response expires as set forth above.

The amendment filed October 13, 1983 under 37 CFR 1.116 in response to the final rejection will be entered upon the filing of an appeal, but is not deemed to place the application in condition for allowance. Upon the filing of an appeal and entry of the amendment, the status of the claims would be as follows:

Allowed claims: none

Rejected claims: 1, 14, 32, 54, 55, 86, 87, 106, 107 and 113

Claims objected to: 2-10, 15-20, 22, 23, and

88

Claims withdrawn from consideration: 89, 91, 92, 97-105, 108-111, 114 and 115.

Please note that claims 113 is being newly listed as a rejected claim. Claim 113 is rejected under 35 USC 112 paragraph 2 as being incomplete since applicant canceled claim 112, the base claim for dependent claim 113. Claim 113 would nevertheless be allowable if placed in independent form, including all limitations of canceled base claim 112.

At this point of the prosecution, the withdrawn claims should be canceled from the application to narrow the remaining issues.

Thus applicant is encouraged to file yet another amendment prior to appeal correcting the deficiency of claim 113 and canceling the withdrawn claims.

Applicant's arguments filed October 13, 1983 have been fully considered but they are not deemed to be persuasive.

At the outset, it is noted that applicant did not address the rejection of claims 54 and 55, dependent claims based on claim 32. What is applicant's position on these claims in view of Rhoads?

Next as to applicant's comments re claim 1, 14 and 10, it must be remembered that claims are given their broadest reasonable interpretation during prosecution before the Office. Applicant's position regarding the last three lines of claim 1 and similar lines in the other claims is based on limitations and

qualifications missing from the claims. The pulses of figure 2 are of a higher frequency than waveform D, and this is all that the claims require. Besides Friend's pulses appear to meet applicant's own definition of the specification, page 11, lines 14-17.

In a similar manner inductor 16 and capacitor 17 are clearly connected in series between the junction point of transistors 26 and 54. This is all that claim 1 requires.

As to claim 32, the examiner is reading the claimed "direct electrical connection" as including a connection through other components, since it clear applicant is doing the same thing. Compare applicants connection of AC input lead 37 to inductive means 51 (figure 2) by means of a capacitor 52. Applicant cannot distinguish over Gurwicz by using a more restrictive definition of a "direct electrical connection" against a reference than he can support in his own disclosure.

As to claim 86, it appears to the examiner that a "substantially square wave voltage" is developed between transistors 26, 54 and ground, the anticipating output terminals of Friend. Friend's sine wave actually appears across primary winding 62, a feature not relied upon in the rejection. The "substantially square wave voltage" appears in Friend by virtue of feedback diodes 30, 60, in much the same manner as equatable diodes 66, 67 of applicant's inverter (fig. 2)

contribute to this result (specification, pages 9 and 10; figure 3A).

Nevertheless, should applicant go forward with his position that Friend does not produce "a substantially square wave voltage," between the claimed output terminals (the junction of the transistors and ground), then it would be helpful if the position would be supported by test results to this effect. As a standard for comparison, the test results should also show the output waveforms of applicant's claimed inverter.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5050.

Beha/yp

11/9/83

William H. Beha Jr.

WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

MAIL ROOM NOV 29 1983 PAT. & TRADEMARK OFF.

30.0 - 201 - A
B, - 203

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

555426

#26/Pre E
M. Watts 2/7/84

APPLICATION FOR CONTINUATION

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/178,107
Filed: August 14, 1980
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Under paragraph 1.62 of Rules and Practices in Patent Cases, Applicant herewith files a request for continuation in respect to the original application identified above.

In support of this original application, Applicant filed an amendment (Amendment E) on or about October 11, 1983. This amendment was not entered by Examiner; and Applicant herewith requests that this Amendment E be entered.

Applicant has enclosed a VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS.

In connection with subject APPLICATION FOR CONTINUATION, Applicant herewith provides the following Preliminary Amendment.

12/01/83 555426 2 201 150.00 CK
12/01/83 555426 2 203 75.00 CK

PRELIMINARY AMENDMENT

IN RE CLAIMS

Applicant herewith cancels all the claims of the original application identified above; and provides a set of new claims as follows.

116. For an inverter circuit, adapted to be powered from a DC source and to provide an AC voltage of substantially trapezoidal waveshape across a pair of output terminals, an improved loading circuit comprising:

a series-connected combination of an inductor and a capacitor connected across said output terminals, said series-connected combination having a natural resonance frequency that is lower than the fundamental frequency of said AC voltage; and

load means connected in parallel with said capacitor, said load means being of a substantially non-inductive impedance.

117. For (an inverter circuit adapted to be powered from a DC source and to provide an AC voltage across a pair of output terminals,) the improvement comprising:

a series-connected combination of an inductor and a capacitor connected across said output terminals, said series-connected combination having a natural resonance frequency that ~~is not higher~~ than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said output terminals.

Sub H'

118. In an inverter\ adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

a diode means connected across each of said transistors;

thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.

119. In a self-oscillating inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said combination having a natural series-resonance frequency that is approximately equal to or lower than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said center-tap and said mid-point.

120. In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

load means connected between said center-tap and said mid-point; and

connect means connecting said center-tap with one of said power line terminals;

whereby one side of the load means is directly connected with one of said power line terminals.

121. A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide to a load an AC voltage of frequency substantially higher than that of the voltage on said power line, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the load between said mid-point and said center-tap;

whereby one side of said load is directly connected with one of said input terminals.

122. In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage; and

means to permit connection of a load in circuit with said capaitor.

123. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising an inverter adapted to be powered from a source of DC voltage and to provide an AC voltage across a pair of output terminals, said AC voltage being substantially of trapezoidal waveform, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals;

means for connecting said gas discharge lamp in parallel circuit with said capacitor;

means for operating the inverter at a frequency that is not higher than the natural resonant frequency of the series-combination of said inductor and capacitor.

COMMENTS

Anticipating possible objections by Examiner relative to the allowability of the new claims, Applicant herewith provides arguments in their support. More particularly, with reference to Examiner's Advisory Action in response to subject Amendment E, Applicant herewith provides the following comments.

In re Claim 1 of Subject Original Application

On page 4, lines 1-2 of subject Advisory Action, Examiner states: "The pulses of figure 2 are of a higher frequency than waveform D".

Applicant believes that this statement by Examiner represents the gist of the issue in re Claim 1. And, Applicant takes exception to that statement, contending that it is either false or irrelevant -- depending upon interpretation.

The term "are of a higher frequency" in Examiner's statement renders the statement somewhat ambiguous, possibly permitting an interpretation relating to the harmonic content of "The pulses". However, any reasonable interpretation must relate to the fundamental repetiton rate of "The pulses", and not to their harmonic content.

Applicant contends that "The pulses" are provided at a frequency identical to that of "waveform D". Although "The pulses" definitely have harmonics of higher frequencies than does "waveform D", the frequency with which "The pulses" occur must by necessity be identical to the frequency with which "waveform D" appears.

However, in Claim 1 Applicant uses a phraseology that is substantially different from that used by Examiner; and Applicant's phraseology is definitely not ambiguous -- being as follows:

"means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

In any reasonable usage, the term "inversion frequency" refers to the number of cycles per second provided by the inversion means (i.e., the transistors) -- or, the number of inversion cycles per second performed by the inverter -- or, the number of cycles per second of the inverter output voltage. By no reasonable stretch of interpretation can the term "inversion frequency" be construed to mean the harmonics associated with the waveshape of the inverter's output.

Similarly, the term "natural resonant frequency of the inductor and capacitor combination" is completely unambiguous and is simply given by the inverse of the well known expression: $2\pi\sqrt{LC}$, where L and C represent the inductance and the capacitance of the inductor and the capacitor, respectively.

This natural resonance frequency has nothing to do with the frequency of the voltage that may appear on the inductor and/or on the capacitor, nor with the frequency of the current

flowing through these components. The frequency of the voltage actually appearing on the inductor and/or on the capacitor, and the frequency of the current actually flowing through these components, is identical to the frequency of excitation provided by the driving source.

On Page 4, lines 6-9 of subject Advisory Action, Examiner makes the following statement: "inductor 16 and capacitor 17 are clearly connected in series between the junction point of transistors 26 and 54. This is all that claim 1 requires."

Applicant disagrees with Examiner, and wishes to point out to Examiner that "transistors 26 and 54" do not constitute active components of Friend's inverter. Rather, they constitute part of his inverter's loading circuit, and they definitely do not provide for the series-connected inductor and capacitor "to be alternately energized during alternate conduction thereof" -- as called for in Claim 1.

Yet, Friend's inverter does have two inverter transistors, namely transistors 14 and 42 in his Fig. 1; and Applicant has to concede that it is a fact that there is an inductor and a capacitor connected in series across this inverter's output terminals -- just as is called for in Applicant's Claim 1.

Never-the-less, in accordance with the arguments presented hereinabove, Claim 1 should be allowable just on the basis of the distinction provided by the following part of the claim:

"means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

However, for reasons other than simple allowability, Applicant has chosen to rewrite Claim 1. In its rewritten form it now appears as Claim 116.

In re Claim 86 of Subject Original Application

On page 4, lines 20-23 of subject Advisory Action, Examiner states: "a 'substantially square wave voltage' is developed between transistors 26, 54 and ground, the anticipating output terminals of Friend".

In this connection, Applicant wishes to point out that transistors 26 and 54 do not constitute the inverting transistors in Friend's circuit. Rather, the inverting transistors are 14 and 48.

On the contrary, the specific purpose of transistors 26 and 54 (or emitter followers 24 and 52) is that of providing during part of the time of each cycle a low impedance path to ground for the current flowing in the inductor 16.

By studying the detailed operation of Friend's circuit -- particularly lines 3-53 of column 3 -- it should be obvious that the voltage at the junction between transistors 26 and 54 is substantially zero during the time periods t2-t3 and t4-t5 in Friend's Fig. 2a. This is specifically described in and around lines 25-27 and lines 50-52 in Friend's column 3.

Thus, the output of Friend's inverter circuit -- as appearing at the junction between his transistors 26 and 54 -- is clearly not a squarewave. Rather, it is a voltage of waveform similar to that which would have resulted by adding the two waveforms depicted by Friend's Fig. 2a and Fig. 2c.

However, for reasons other than simple allowability, Applicant has chosen to rewrite Claim 86. In its rewritten form it now appears as Claim 123.

Concluding Remarks

The other claims from the original application have also been rewritten -- partly to circumvent Examiner's objections as based on the cited art, and partly to provide for improved claim quality. The arguments and explanations previously provided, particularly in connection with Claims 1 and 86, apply to these other claims as well.

If Examiner should have reservations about the allowability of the new claims, but if he does find that patentable matter is disclosed in subject application, he is asked -- in accordance with paragraph 707.07(j) in the Manual of Patent Examining Procedure -- to draft for Applicant a set of allowable claims covering such unclaimed allowable subject matter.

Ole K. Nilssen

Ole K. Nilssen, Applicant

Date: 11-21-83

Please send all correspondence in connection with subject application to:

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

Phone: 312-658-5615

Applicant or Patentee: Ole K. Nilssen
Serial or Patent No.: ____ Attorney's
Filed or Issued: ____ Docket No.: ____
For: INVERTER CIRCUITS

MAIL ROOM NOV 23 1983 PAT. & TRADE MARK OFFICE

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(b)) - INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled INVERTER CIRCUITS described in

[ ] the specification filed herewith
[x] application serial no. 06/178,107, filed August 14, 1980
[ ] patent no. ____, issued ____.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[x] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole Kristian Nilssen
ADDRESS Caesar Drive, RR-5, Barrington, Illinois 60010
[x] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ____
ADDRESS ____
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ____
ADDRESS ____
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 11-20-83 | | |
| Date | Date | Date |

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/23/83 | NILSSEN, O. | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 27 |

DATE MAILED: 02/29/84

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined [ ] Responsive to communication filed on ______ [ ] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), - days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 116 - 123 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.
3. [ ] Claims ______ are allowed.
4. [✓] Claims 116 - 123 are rejected.
5. [ ] Claims ______ are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

PTOL-326 (Rev. 7-82)

EXAMINER'S ACTION

The title of the invention is not descriptive. A new title is required that is clearly indicative of the invention to which the claims are directed.

Claims 116 to 123 appear in the case.

Claim 119 is rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited in accordance with the disclosure at pages 5-16 of the specification. See MPEP 706.03(n) and 706.03(z). The last three lines of claim 119 find no response in figure 2 of the disclosure. As to the claimed function of the last three lines in the claim, this appears to be found in capacitor 68 of figure 2. See the specification, page 9, bottom incomplete paragraph. But this connection is not as claimed; capacitor 68 is in parallel with transistor 43.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless -
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.
>
> (b) the invention was patented or

described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 120 and 121 are rejected under 35 U.S.C. 102(a) as being clearly anticipated by Rhoads. Note that load means T2, R4, C3 of Rhoads are connected from center-tap A with the bottom AC input line through connect means 36, 51 and 34 (fig. 2A).

Claims 116, 118, and 122 are rejected under 35 U.S.C. 102(a) as being anticipated by Rhoads.

Although it is not described as such, Rhoads circuit (fig. 2A) includes a series connected inductor (primary of T2) and capacitor (C3) connected as claimed, having an inherently lower frequency than the fundamental frequency of the inverter output. The load and the means to connect the load "read on" resistor R4 and its connection to C3.

Claim 123 is rejected under 35 U.S.C. 102(b) as being anticipated by Grunwaldt.

The claim finds full response in figure 2 of the reference showing LC circuit 6, 7, lamp 8 connected in parallel circuit with capacitor 7, and a transformer 5 operating the inverter "at a frequency that is not higher than the natural resonant frequency of the series combination of said inductor and capacitor"

(claim 123, last three lines). Indeed, the inverter operates at the resonant frequency of LC circuit 6,7 through feedback transformer 5.

Claims 117 and 119 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention. The function attributed to the last three lines of each claim appears to be misdescriptive; the stated function of the capacitors is to "restrain[s] the rate of voltage change across the collector and emitter terminals of transistor 42" (claim 117) or to "restrain[s] the rate of voltage ~~use~~ rise on the collectors [of transistors 91, 92]," (claim 119; spec. pages 9 and 16). Thus the claimed and stated functions are in conflict.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person

> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claim 117 is rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of the Swiss reference. Except for the claimed capacitor across the LC circuit (interpreted to be a cross a collector emitter path of a switching transistor), the claim is anticipated by Rhoads. But the Swiss reference shows this provision to be old (see C1, C2 and the Abstract). To so provide Rhoad's inverter would have improved it.

Claim 116 is rejected under 35 U.S.C. 103 as being unpatentable over Official Notice. Official Notice is taken that a series resonant inductor and capacitor connected across the output terminals of an inverter is old. To operate the inverter frequency at less than the resonant frequency, more than the resonant frequency or in phase with the resonant frequency, in and of itself, produces no unexpected results, and to place a load, such as an oscilloscope, across the capacitor would similarly not produce patentable invention. In essence, this is all that is claimed, and it is well settled that expected results are evidence of obviousness.

As to the last paragraph of applicant's Remarks, submitted November 23, 1983, reference is made to the

parent case for an indication of allowable subject matter.

The claims in this case are drawn to more than one distinct invention or inventive concept. Compare, for example, the concepts of claims 116, 122 and 123, with the concepts of claim 117 and 119, or claims 129 and 121, or claim 118. All claims have been examined in the interest of cost effectiveness to both applicant and the Office. Should applicant unduely multiply, combine or permutate these concepts by submitting an undue number of additional claims drawn to each concept, the examiner reserves his right to make a restriction requirement in response to such amendment and force applicant to choose just one inventive concept for further prosecution.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Figure 5 of Walden shows a half-bridge inverter using a resonant LC circuit across the center top of DC source 50, 52 and the midpoint of transistor 42, 44. Pitel shows a resonant circuit (55, 57, 59) at an inverter output.

Any inquiry concerning this communication should be directed to William H. Beha, Jr. at telephone number 703-557-5050.

Beha/lg

703-557-5050

2/27/84

William H. Beha Jr.

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

SERIAL NO. 554426 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 27

APPLICANT(S) NILSSEN

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 3084283 | 4-63 | GRUNWALDT | 315 | DIG 7 | |
| ✓ | B | 3155875 | 11-64 | WENRICH ET AL | 315 | 278 | |
| ✓ | C | 3263122 | 7-66 | GENUIT | 315 | DIG 7 | |
| | D | 4346332 | 8-82 | WALDEN | 363 | 98 ✓ | 8-14-80 |
| | E | 4075476 | 2-78 | PITEL | 315 | 278 | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER: Wm Beha | DATE: 2-8-84

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

$5.00 203 Group 212

MAIL ROOM 40 MAY 29 1984 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#28/Amdt f M. Watts 6/8/84

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

RECEIVED JUN 4 1984 GROUP 210

AMENDMENT A

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

In response to Office Action dated February 29, 1984 (Paper No. 27), Applicant herewith provides the following amendments and comments.

IN RE TITLE

Applicant proposes the following new title:

INVERTER CONTROL AND LOADING CIRCUIT

ARGUMENTS IN RE CLAIM REJECTIONS

Examiner rejects claim 119 on the basis of 35 U.S.C 112, making particular reference to the last three lines in the claim, which read as follows: "capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said center-tap and said mid-point."

Examiner asserts that these three lines find no response in Fig. 2 of the disclosure.

Applicant wishes to point out that the "capacitance means" referred-to in these last three lines is capacitor 68 as connected in series with capacitor 36.

05/31/84 555426 3 203 5.00 CK

Of course, since the inverter is "powered from a DC source", the clear implication is that the capacitance of capacitor 36 be very large in comparison with that of capacitor 68; which implies that in effect capacitor 68 is connected in parallel with the "series-connected combination".

In other words, as far as rate-of-change of voltage is concerned, it makes no difference whether capacitor 68 is connected directly across the "series-connected combination" or connected thereacross by way of capacitor 36.

Technically, the term "capacitor means" of claim 119 refers to the series-combination of capacitors 68 and 36.

In any case, Examiner's rejection of claim 119 on the basis of 35 U.S.C. 112 is clearly erroneous.

Examiner rejects claims 120 and 121 on the basis of 35 U.S.C 102(a) as being clearly anticipated by Rhoads, asserting that "load means T2, R4, C3 of Rhoads are connected from center-tap A with the bottom AC input line".

It appears to Applicant that Examiner misunderstands the operation of Rhoads' circuit. From the circuit itself, as well as from Rhoads' description, it is clear that T2, R4, C3 can in no way be considered as "load means".

According to Rhoads' Fig. 2A, windings 60, 62, 64 and 66 on transformer T2 represent the load connection means for his inverter; and, as stated by Rhoads in column 6, lines 61-64, "the parallel combination of resistor R4 and capacitor C3" is "present for safety reasons".

Examiner should note that the value of R4 is 47 Kohms (column 8, line 14); and, since C3 is 4 microFarads (column 8, line 25) and the inversion frequency 20 Khz (column 5, line 9), the impedance of C3 is only 2 ohms -- which is 23,500 times lower than that of R4. Thus, it is patently clear that C3 in combination with R4 can not constitute any substantive load means -- especially when compared with the power handling capabilities of the main inversion transistors Q1 and Q2, which can provide an output of up to 2000 Watt.

Moreover, except when Rhoads' inverter is loaded -- such as by way of its load-windings 60, 62, 64 and/or 66 -- there will be substantially no current flowing to the parallel combination of C3 and R4. In fact, the only current then flowing would be the current provided by the series combination of R10 and C7; which amount of current will be limited by the 8000 ohm reactance of capacitor C7 to about 20 milliamp; which implies that the voltage across C3 will be limited to about 40 millivolt -- for a power dissipation in R4 of under 0.035 microwatt.

Even aside from the above considerations, it should be clear to anyone of but ordinary skill in the art that T2, R4 and C3 in Rhoads' inverter of Fig. 2A can in no reasonable way be interpreted as a load means: In the absence of indications to the contrary, the impedance of the primary winding of T2 (i.e., the winding with terminals 52 and 54) must be assumed to be of substantially infinite magnitude (especially as compared with the impedance of C4, which is 2 ohm) -- except when there is a substantive load present at one of the transformer's secondary windings.

To anyone of but ordinary skill in the art, it should be unambiguously clear that the load means in Rhoads' inverter is whatever is connected between terminals 52 and 54 of the primary winding of T2.

Hence, Applicant submits that Examiner's rejection of claims 120 and 121 is clearly inappropriate since it is based on the erroneous assumption that the combination of T2, R4 and C3 can be considered a load means for Rhoads' inverter.

Examiner rejects Claims 116, 118 and 122 under 35 U.S.C. 102(a) as being anticipated by Rhoads, stating that "Rhoads circuit (fig. 2A) includes a series connected inductor (primary of T2) and capacitor (C3) connected as claimed, having inherently lower frequency than the fundamental frequency of the inverter output".

In making his rejection, Examiner makes the assumption that the primary winding of T2 in an inductor. This assumption is invalid. There is no indication in Rhoads' specification that this primary winding contains inductance; and, without indication to the contrary, it must be assumed that transformer T2 is substantively an "ideal" transformer (i.e., in its non-loaded condition, a transformer with a substantially infinitely large primary impedance).

In other words, an inductor is an energy-storing element. However, absent special provisions to the contrary, the primary winding of the T2 transformer is not an energy-storing element.

Moreover, as argued hereinabove in connection with claims 120 and 121, it is totally unreasonable to construe R4 as a load.

Hence, Applicant submits that Examiner's rejection of claims 116, 118 and 122 is clearly inappropriate since, inter alia, it is based on the erroneous assumption that the primary winding of Rhoads' transformer T2 is an inductor.

AMENDMENTS TO CLAIMS

Please cancel claims 116, 117, 119 and 123 in their entirety, and substitute the following new claims in their place.

124. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said gas discharge lamp in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause the inverter to self-oscillate at a frequency higher than said natural resonance frequency.

125. The improvement of Claim 124 wherein said feedback means comprises saturable inductor means.

126. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said gas discharge lamp in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency not lower than said natural resonance frequency, said feedback means comprising saturable inductor means.

127. In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance ~~frequency~~

128. In an arrangement for powering a load, said arrangement comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a resonance circuit comprising an inductor and a capacitor connected with said pair of output terminals, said resonance circuit having a natural resonance frequency;

connect means for connecting said load with said resonance circuit; and

feedback means connected with said resonance circuit and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance frequency.

CONCLUDING REMARKS

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art.

From Examiner's response and the various references cited, it has become clear to Applicant that one of the main patentable aspects of subject application relates to the important and basic proposition of having a self-oscillating inverter loaded with a resonant circuit, yet at the same time making this inverter self-oscillate at a frequency that is different from the natural resonance frequency of that resonance circuit.

Of course, the expected result of a self-oscillating inverter loaded by way of a resonant circuit, and especially where the positive feedback is obtained by way of this resonant circuit, is that the frequency of oscillation is equal to the natural resonance frequency of that resonant circuit.

Applicant contends that to accomplish the clearly unexpected result of having a self-oscillating inverter loaded with a resonance circuit, yet self-oscillating at a frequency different from the natural resonance frequency of this resonance circuit, is indeed non-obvious -- both in terms of motivation as well as in terms of implementation.

In order to make a self-oscillating inverter oscillate at a frequency different from that of the natural resonance frequency of its resonant load means, it is necessary to provide for some sort of auxiliary timing means -- a timing means that acts to modify the natural timing associated with this resonant load means. In Applicant's circuit, this auxiliary timing means is provided in the form of the saturable feedback transformers, 47 and 49 in Fig. 2. These two saturable feedback transformers saturate in a time period that is shorter than the natural time period of the resonant load means; which, as a result, provides for an overall inverter oscillating cycle that is shorter than it would have been with an ordinary linear (i.e., non-saturating) feedback means.

Applicant has enclosed a check in the amount of $5.00 (Check #494) to cover the cost of the additional dependent claim.

To the extent that there is patentable subject matter disclosed in the application, and to the extent it is not covered by allowed or allowable claims, Examiner is requested -- in accordance with paragraph 707.07(j) in the Manual of Patent Examining Procedure -- to draft for Applicant a set of allowable claims covering such unclaimed allowable subject matter.

Ole K. Nilssen, Applicant

Date: 5-25-84

Phone: 312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/23/83 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 29 |

DATE MAILED: 07/19/84

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[ ] This application has been examined [✓] Responsive to communication filed on MAY 29 '84 [✓] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 118, 120-122 & 124-128 are pending in the application.

Of the above, claims ______ are withdrawn from consideration.

2. [✓] Claims 116, 117, 119 + 123 have been cancelled.
3. [ ] Claims ______ are allowed.
4. [✓] Claims 118, 120-122, & 124-128 are rejected.
5. [ ] Claims ______ are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

EXAMINER'S ACTION

Applicant is admonished to keep a clear line distinction between the claims of this application and US Application Ser. No. 409620, as amended. Presently, claims 122 and 124-128 of this case are not patentably distinct over claims 17 and 18 of US Application Ser. No. 409,620.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless -
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 118, and 120-122 are rejected under 35 U.S.C. 102(b) as being anticipated by Rhoads.

Reference is made to the last Office action (Paper No. 27, page 3, first three full paragraphs), for an exposition of the examiner's rationale.

Applicant's arguments filed May 29, 1984 have been fully considered but they are not deemed to be persuasive.

At the outset, claims are given the broadest

reasonable interpretation during prosecution before the Office. When the claims are read in this manner, it is clear that they are anticipated by Rhoads.

Thus, as to applicant's remarks that the load means in Rhoad's inverter is whatever is connected between terminals 52 and 54 of the primary winding of 12, it suffices to say that the claims only call for load means connected between a center-tap of a DC source and the midpoint of the two transistors. As to Rhoads, this would clearly include R3, C4. Thus the broad claimed recitation of load means is unambiguously anticipated by the elements including the transformer between points A and D of Rhoads.

As to the Remarks, page 3, bottom half of the page, it suffices to say that the transformer T2 of Rhoads is not an ideal transformer. Indeed the examiner is unaware of a transformer that is "ideal". All transformers have leakage inductance in their windings, some more, some less. See, for example, an example of this in Zansky. And when the inherent leakage inductance of Rhoads transformer primary winding T2 and capacitor C3 are acknowledged to be a series resonant circuit, which they are, then the claimed frequency relationship exists.

Claims 124-128 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention.

In essence the claims are misdescriptive. In particular, the "self-oscillating" frequency of the inverter is precisely the same as the switching frequency of the transistors. Just because the transistors do not conduct over the entire half-cycle of the resonant LC circuit does not detract from the fact that the transistors are precisely synchronized to the resonant circuit at a frequency that is no more or less than that of the resonant circuit.

Thus to distinguish between the inverter self-oscillating frequency and the natural resonant frequency of the LC circuit is misdescriptive, the frequencies being equal to each other.

Claims 124, 127 and 128 are also objected to since they fail to differ substantially from each other and are unduly multiplied. (37 CFR 1.75(b)).

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS

FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136 (a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha, Jr. at telephone number 703-557-5050.

Beha/dmm

703-557-5050

7/17/84

William H. Beha Jr.

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

SERIAL NO. 556426 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 29

## NOTICE OF REFERENCES CITED

APPLICANT(S) NILSSEN

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4392087 | 7-83 | ZANSKY | 363 | 132 | NA |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER WM Behr | DATE 7/9/84

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

30

RECEIVED AUG 03 1984 GROUP 210

MAIL ROOM JUL 27 1984 PAT. & TRADE MARK OFC.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

8/3/84

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 07/19/84 (Paper No. 29), Applicant herewith provides the following arguments, amendments, and comments.

Do not enter WHB 8/15/84

ARGUMENTS IN RE CLAIM REJECTIONS

In re claims 118 and 122

Examiner rejects Claims 118 and 122 under 35 U.S.C. 102(b) as being anticipated by Rhoads, referring to supporting rationale provided in previous Office action (Paper No. 27, page 3, first three full paragraphs).

In support of his rejection, Examiner further states that "claims are given the broadest reasonable interpretation during prosecution before the Office". Applicant is completely in agreement with the intent behind that statement. An important question, however, relates to the part: "broadest reasonable interpretation" -- the question being: what constitutes "reasonable"?

In respect to this question of "reasonable interpretation", Applicant contends that some of Examiner's arguments, specifically those represented by the second full paragraph on page 3 of the latest Office action (Paper No. 29), do not represent "reasonable interpretation".

In that paragraph, Examiner states that "transformer T2 of Rhoads is not an ideal transformer" and that "All transformers have leakage inductance in their windings, some more, some less. See, for example, an example of this in Zansky".

Applicant agrees with Examiner's assertion to the effect that all transformer have leakage inductance; which is quite obvious in that even the smallest piece of connection wire has some inductance. In fact, even capacitors have inductance -- just as inductors have capacitance.

Moreover, Applicant does not dispute the fact that a transformer can be made to have substantially any degree of leakage inductance.

But these basic facts are not relevant to the issue at hand. Rather, the issue that needs to be resolved is that of determining if Rhoads employs leakage inductance as a manifest factor in his circuit. Thus, key questions are: Does leakage inductance provide a substantive effect in Rhoads circuit? Does his circuit operate properly without leakage inductance? --- The answers to these questions are NO and YES, respectively. In fact, his circuit operates properly only on the basis that leakage inductance is substantively negligible.

And, of course, there is no indication in Rhoads' specification to the effect that leakage inductance constitutes any kind of useful or necessary or substantive element of his circuit.

In respect to the Zansky example: Zansky overtly states that he employs the leakage inductance of a transformer; and, from his specification it is clear that this leakage inductance indeed constitutes a substantive element of his circuit. In fact, it constitutes a critical element: his very invention depends on the use of leakage inductance in lieu of an ordinary discrete inductor.

Hence, claims 118 and 122, which both calls for an inductor to be connected in circuit between "said center-tap and said mid-point" can not be rejected on a "102" basis as having been anticipated by Rhoads, since Rhoads does not indicate the required or manifest or substantive presence of such an inductor. Yet, when read in light of the specification, it is clear that in Applicant's circuit, the inductor referred to in claims 118 and 122 does indeed contitute a manifestly substantive element. In fact, his circuit would not operate without it.

Thus, in view of the above arguments, Applicant traverses Examiner's rejection of claims 118 amd 122.

Never-the-less, to further amplify the difference between Rhoads and Applicant's claims 118 and 122, Applicant hereinbelow amends his claims to that effect.

In re claims 120 and 121

Applicant finds Examiner's rejection of these claims as being within limits of the "broadest reasonable interpretation" of Rhoads circuit. Hence, Applicant hereinbelow amends his claims 120 and 121 so as to clearly differentiate over Rhoads.

In re claims 124-128

Examiner rejects claims 124-128 under 35 U.S.C. 112, second paragraph, and states that "the claims are misdescriptive".

Applicant traverses Examiner's rejections for the following reasons.

In support of his rejection, Examiner states that "the 'self-oscillating' frequency of the inverter is precisely the same as the switching frequency of the transistors". Applicant agrees with that statement, but does not understand its relevance. In connection with claims 124-128, Applicant simply does not use the term "switching frequency of the transistors".

On the other hand, what Applicant does use are in effect the following two terms:

i) "self-oscillation frequency of the inverter", which is the actual frequency at which the inverter operates; and

ii) "natural resonance frequency of the inductor-capacitor combination", which is simply the frequency at which the inductor-capacitor combination would oscillate if interacting with one another but without the interference of external factors.

Essential aspects of claims 124-128 relate to the relationship between these two frequencies; and, to appreciate the very significant difference between these two frequencies, Examiner is asked to review Applicant's explanation provided in the last three paragraphs on page 5 of Applicant's APPLICATION FOR CONTINUATION, which was filed on 11/23/83.

To re-iterate:

a) The self-oscillation frequency of the inverter (which is indeed the same as the switching frequency of the transistors) is determined by the frequency with which the switching transistors are turned ON and OFF; and which, in turn, is determined to a substantial degree by the saturation (or timing) characteristics of the saturable feedback transformers 47 and 49 of Applicant's Fig. 2;

b) The natural resonance frequency of the series-combination of the inductor and the capacitor is determined by the product of the inductance of the inductor and the capacitance of the capacitor, and is therefore a purely theoretical entity. It certainly has nothing to do with the saturation characteristics (or the timing characteristics) of the saturable feedback transformers, nor with the frequency of the voltage that is applied to this series-combination.

Examiner also makes the statement that "to distinguish between the inverter self-oscillating frequency and the natural resonant frequency of the LC circuit is misdescriptive, the frequencies being equal to each other". In light of the explanation provided just above, it should be clear to Examiner that the two frequencies are indeed not "equal to each other" -- except under very special circumstances.

The inverter's self-oscillation frequency is determined by a combination of the effect of the natural resonance frequency of the LC series-combination and the saturation (or timing) characteristics of the saturable feedback transformers. Except for the very special condition of having the timing characteristics of the saturable feedback transformers match the cycle-period of this natural resonance frequency, the inverter's self-oscillation frequency is different from the natural resonance frequency of the LC series-combination.

In other words, in his invention Applicant uses two different and independent timing means for determining the inverter's self-oscillating frequency, namely the saturable feedback transformers and the LC series-combination; and the resulting inverter self-oscillation frequency is determined as a composite of the timing characteristics of these two independent timing means.

In fact, an important aspect of Applicant's invention is based on the notion of making the inverter's self-oscillating frequency be different from (specifically: higher than) the natural resonance frequency of the LC series-combination.

To prevent destruction of the inverter's transistors, however, it is necessary that the timing naturally provided by the saturable feedback transformers be not longer than the timing naturally provided by the LC series-combination.

Examiner objects to claims 124, 127 and 128 as being multiplicative.

Applicant can reasonably accept Examiner's objection; and, to overcome this objection, Applicant hereinbelow amends his claim 127.

AMENDMENTS TO CLAIMS

118. (Amendment) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage and being operative to cause current drawn from said AC voltage output to be substantially sinusoidal in waveshape;

means to permit connection of a load (in circuit with) said series-connected combination; and

a diode means connected across each of said transistors;

thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.

120. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

[load] means for connecting an external load in circuit [connected] between said center-tap and said mid-point in such a way that one side of this external load is directly connected with said center-tap, said external load consuming substantially all the power being provided by said AC voltage output; and

connect means connecting said center-tap with one of said power line terminals.[;]

[whereby one side of the load means is directly connected with one of said power line terminals.]

121. (Amended) A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide substantially all of its output power to [a] an external load in the form of an AC voltage of frequency substantially higher than that of the voltage on said power line, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the external load between said mid-point and said center-tap;

whereby one side of said external load is directly connected with one of said input terminals.

122. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage but yet being operative to cause a substantially sinusoidal current to flow through said combination in response to said AC voltage; and

means to permit connection of a load in circuit with said capaitor.

127. In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance frequency, said feedback means comprising saturable inductor means.

## CONCLUDING REMARKS

Applicant wishes to draw Examiner's attention to the fact that one of the main patentable aspects of subject application relates to the important and basic proposition of having a self-oscillating inverter loaded with a resonant circuit, yet at the same time making this inverter self-oscillate at a frequency that is different from the natural resonance frequency of that resonant circuit.

Of course, with a self-oscillating inverter having a resonant circuit in its positive feedback path, it should be expected that the frequency of oscillation be substantially equal to the natural resonance frequency of that resonant circuit. Yet, in Applicant's circuit, such is not the case -- the reason being that of providing in the positive feedback path an additional timing (or frequency-determining) element in the form of saturable transformer means.

Applicant contends that to accomplish the clearly unexpected result of having a self-oscillating inverter loaded with a resonance circuit, yet self-oscillating at a frequency different from the natural resonance frequency of this resonance circuit, is indeed highly unusual as well as non-obvious -- both in terms of motivation as well as in terms of implementation.

Examiner is requested to look at the waveforms associated with Rhoads' invention (see his Fig. 3) in comparison with those associated with Applicant's invention.

In particular, Examiner is asked to note the following.

a) Rhoads' inverter output current as shown in his Fig. 3B is substantially in phase with the inverter output voltage of his Fig. 3A and is definitely not sinusoidal.

b) Applicant's inverter output current as shown in his Fig. 3D is delayed in phase compared with the inverter output voltage of his Fig. 3A and is substantially sinusoidal.

The fact that the current is delayed in respect to the voltage implies that the net effective impedance offered by the LC series-combination to the inverter output is inductive; which further implies that the frequency of the inverter voltage is lower than the natural resonance frequency of the LC series-combination. Of course, had the LC series-combination been in resonance at the inverter frequency, there would have been no delay between the inverter output voltage and the resulting current.

Also, Examiner is asked to note that Rhoads' circuit does not constitute a self-oscillating inverter.

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art. However, if Examiner is still disposed toward a contrary opinion, Applicant requests that Examiner call Applicant on the telephone before formulating a final decision; thereby, in the interest of efficiency of prosecution, to attempt to arrive at an expeditious and mutually satisfactory disposition of subject application.

Ole K. Nilssen, Applicant

Date: 7-25-84

Phone: 312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 555426 | 11/23/83 | NILSSEN | — |

| EXAMINER | |
|---|---|
| BEHA | |
| ART UNIT | PAPER NUMBER |
| 212 | 31 |

DATE MAILED:

# EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Nilssen (3) ____

(2) Ex. Beha (4) ____

Date of Interview Aug. 15, 1984

Type: [x] Telephonic [ ] Personal (copy is given to [ ] applicant [ ] applicant's representative).

Exhibit shown or demonstration conducted: [ ] Yes [x] No. If yes, brief description: ____

Agreement [x] was reached with respect to some or all of the claims in question. [ ] was not reached.

Claims discussed: All

Identification of prior art discussed: Rhoads

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: The amendments to claims 118 and 120-122 were discussed, as well as applicant's remarks dealing with transformer leakage inductance (page 2). The agreement was reached as to these claims. As to claims 124-128, the applicant emphasized the operation of fig 2 and the examiner agreed that the claims properly defined that operation. Thus the examiner agreed to withdraw the Section 112 rejection of these claims.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

[ ] It is not necessary for applicant to provide a separate record of the substance of the interview.

[ ] Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

William A. Beha Jr.
Examiner's Signature

82-3809 PTOL-413 (rev. 1-81)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/23/83 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 32 |

DATE MAILED: 08/20/84

Below is a communication from the EXAMINER in charge of this application.

COMMISSIONER OF PATENTS, AND TRADEMARKS

## ADVISORY ACTION

☑ THE PERIOD FOR RESPONSE ~~IS EXTENDED~~ CONTINUES TO RUN 3 MONTHS FROM THE DATE OF THE FINAL REJECTION. 855 O.G. 1109.

☐ Appellant's Brief is due in accordance with Rule 192 (a).

Applicant's response to the final rejection, filed ________, has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☑ The proposed amendments to the claim and/or specification will not be entered and the final rejection stands because:
   - a. ☐ There is no convincing showing under Rule 116(b).
   - b. ☑ They raise new issues that would require further consideration and/or search.
   - c. ☐ They raise the issue of new matter.
   - d. ☑ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.
   - e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

2. ☐ Newly proposed or amended claims ________ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☑ Upon the filing of an appeal, the proposed amendment ☐ will be ☑ will not be, entered and the status of the claims in this application would be as follows:
   - a. ☑ Claims 124 - 128 would be allowable.
   - b. ☑ Claims 118 & 120 - 122 would not be allowable.

   However:
   - (1) ☐ The rejection of claims ________ on references is deemed to be overcome by applicant's response.
   - (2) ☐ The rejection of claims ________ on non-reference grounds only is deemed to be overcome by applicant's response.

4. ☐ The affidavit, exhibit or request for reconsideration has been entered but does not overcome the rejection.

5. ☐ The affidavit or exhibit will not be admitted because applicant has not shown good and sufficient reasons why it was not earlier presented.

6. ☐ The application having been examined under the special accelerated examining procedure (M.P.E.P. 708.02), the proposed amendment has not been considered since it does not prima facie place the application in condition for allowance or in better condition for appeal.

PTOL-303 (Rev. 10-80)

The shortened statutory period for response expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for response expire later than six months from the date of the final rejection. Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a) accompanied by the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee.

Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date that the shortened statutory period for response expires as set forth above.

The amendment filed July 27, 1984 under 37 CFR 1.116 in response to the final rejection has been considered but is not deemed to place the application in condition for allowance and will not be entered because:

The proposed amendment is not deemed to place the application in better form for appeal by materially simplifying the issues for appeal.

The proposed amendment raises new issues that would require further consideration and/or search.

The new issues are the amendments to claims 118 and 120-122.

The objection to claims 124, 127 and 128 is withdrawn. Claims 124-128 are allowable because they define a relationship between two independent frequency determining elements, namely the series resonant, LC circuit and the saturable core drive circuits and the feedback relationship between the two, resulting in an unexpectedly higher inverter output frequency than the natural resonant frequency of the series LC circuits. This features has not been found in the prior art known to the examiner.

Beha/yp

703-557-5080

8/16/84

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

MAIL ROOM AUG 27 1984 PAT. & TRADEMARK OFF.

75.00 - 203

644155

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

APPLICATION FOR CONTINUATION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 08/20/84 (Paper No. 32), Applicant herewith applies for continuation under paragraph 1.62 of Rules of Practice in Patent Cases.

In support of subject application, Applicant filed an amendment (Amendment B) which was not entered by Examiner. Applicant herewith requests that this Amendment B be entered.

Enclosed herewith is a Verified Statement Claiming Small Entity Status and a check (#635) for the filing fee in the amount of $225.00

Ole K. Nilssen, Applicant

Date: 8-24-84

Phone: 312-658-5615

08/29/84 555426 2 201 150.00 CK
08/29/84 555426 2 203 75.00 CK

contribute to this result (specification, pages 9 and 10; figure 3A).

Nevertheless, should applicant go forward with his position that Friend does not produce "a substantially square wave voltage," between the claimed output terminals (the junction of the transistors and ground), then it would be helpful if the position would be supported by test results to this effect. As a standard for comparison, the test results should also show the output waveforms of applicant's claimed inverter.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5050.

Beha/yp

11/9/83

William H. Beha Jr.

WILLIAM H. BEHA, JR.
EXAMINER
GROUP ART UNIT 212

MAIL ROOM NOV 28 1983 PAT. & TRADEMARK OFF.

10.0r-201-A
B, n-203

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

555426

#26/Pre E
M. Watts 2/7/84

APPLICATION FOR CONTINUATION

In re Patent Application for: INVERTER CIRCUITS 501
Applicant: Ole K. Nilssen
Serial No: 06/178,107
Filed: August 14, 1980
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Under paragraph 1.62 of Rules and Practices in Patent Cases, Applicant herewith files a request for continuation in respect to the original application identified above.

In support of this original application, Applicant filed an amendment (Amendment E) on or about October 11, 1983. This amendment was not entered by Examiner; and Applicant herewith requests that this Amendment E be entered.

Applicant has enclosed a VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS.

In connection with subject APPLICATION FOR CONTINUATION, Applicant herewith provides the following Preliminary Amendment.

12/01/83 555426 2 201 150.00 CK
12/01/83 555426 2 203 75.00 CK

PRELIMINARY AMENDMENT

IN RE CLAIMS

Applicant herewith cancels all the claims of the original application identified above; and provides a set of new claims as follows.

116. For an inverter circuit, adapted to be powered from a DC source and to provide an AC voltage of substantially trapezoidal waveshape across a pair of output terminals, an improved loading circuit comprising:

a series-connected combination of an inductor and a capacitor connected across said output terminals, said series-connected combination having a natural resonance frequency that is lower than the fundamental frequency of said AC voltage; and

load means connected in parallel with said capacitor, said load means being of a substantially non-inductive impedance.

117. For an inverter circuit adapted to be powered from a DC source and to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected across said output terminals, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said output terminals. 117

Sub H'

118. In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

a diode means connected across each of said transistors;

thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.

119. In a self-oscillating inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said combination having a natural series-resonance frequency that is approximately equal to or lower than the fundamental frequency of said AC voltage;

means to permit connection of a load in circuit with said series-connected combination; and

capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said center-tap and said mid-point.

120. In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

load means connected between said center-tap and said mid-point; and

connect means connecting said center-tap with one of said power line terminals;

whereby one side of the load means is directly connected with one of said power line terminals.

121. A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide to a load an AC voltage of frequency substantially higher than that of the voltage on said power line, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the load between said mid-point and said center-tap;

whereby one side of said load is directly connected with one of said input terminals.

122. In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage; and

means to permit connection of a load in circuit with said capaitor.

123. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising an inverter adapted to be powered from a source of DC voltage and to provide an AC voltage across a pair of output terminals, said AC voltage being substantially of trapezoidal waveform, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals;

means for connecting said gas discharge lamp in parallel circuit with said capacitor;

means for operating the inverter at a frequency that is not higher than the natural resonant frequency of the series-combination of said inductor and capacitor.

COMMENTS

Anticipating possible objections by Examiner relative to the allowability of the new claims, Applicant herewith provides arguments in their support. More particularly, with reference to Examiner's Advisory Action in response to subject Amendment E, Applicant herewith provides the following comments.

In re Claim 1 of Subject Original Application

On page 4, lines 1-2 of subject Advisory Action, Examiner states: "The pulses of figure 2 are of a higher frequency than waveform D".

Applicant believes that this statement by Examiner represents the gist of the issue in re Claim 1. And, Applicant takes exception to that statement, contending that it is either false or irrelevant -- depending upon interpretation.

The term "are of a higher frequency" in Examiner's statement renders the statement somewhat ambiguous, possibly permitting an interpretation relating to the harmonic content of "The pulses". However, any reasonable interpretation must relate to the fundamental repetiton rate of "The pulses", and not to their harmonic content.

Applicant contends that "The pulses" are provided at a frequency identical to that of "waveform D". Although "The pulses" definitely have harmonics of higher frequencies than does "waveform D", the frequency with which "The pulses" occur must by necessity be identical to the frequency with which "waveform D" appears.

However, in Claim 1 Applicant uses a phraseology that is substantially different from that used by Examiner; and Applicant's phraseology is definitely not ambiguous -- being as follows:

"means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

In any reasonable usage, the term "inversion frequency" refers to the number of cycles per second provided by the inversion means (i.e., the transistors) -- or, the number of inversion cycles per second performed by the inverter -- or, the number of cycles per second of the inverter output voltage. By no reasonable stretch of interpretation can the term "inversion frequency" be construed to mean the harmonics associated with the waveshape of the inverter's output.

Similarly, the term "natural resonant frequency of the inductor and capacitor combination" is completely unambiguous and is simply given by the inverse of the well known expression: $2\pi\sqrt{LC}$, where L and C represent the inductance and the capacitance of the inductor and the capacitor, respectively.

This natural resonance frequency has nothing to do with the frequency of the voltage that may appear on the inductor and/or on the capacitor, nor with the frequency of the current

flowing through these components. The frequency of the voltage actually appearing on the inductor and/or on the capacitor, and the frequency of the current actually flowing through these components, is identical to the frequency of excitation provided by the driving source.

On Page 4, lines 6-9 of subject Advisory Action, Examiner makes the following statement: "inductor 16 and capacitor 17 are clearly connected in series between the junction point of transistors 26 and 54. This is all that claim 1 requires."

Applicant disagrees with Examiner, and wishes to point out to Examiner that "transistors 26 and 54" do not constitute active components of Friend's inverter. Rather, they constitute part of his inverter's loading circuit, and they definitely do not provide for the series-connected inductor and capacitor "to be alternately energized during alternate conduction thereof" -- as called for in Claim 1.

Yet, Friend's inverter does have two inverter transistors, namely transistors 14 and 42 in his Fig. 1; and Applicant has to concede that it is a fact that there is an inductor and a capacitor connected in series across this inverter's output terminals -- just as is called for in Applicant's Claim 1.

Never-the-less, in accordance with the arguments presented hereinabove, Claim 1 should be allowable just on the basis of the distinction provided by the following part of the claim:

"means for providing drive current to the transistors to control the inversion frequency thereof to be higher than the natural resonant frequency of the inductor and capacitor combination".

However, for reasons other than simple allowability, Applicant has chosen to rewrite Claim 1. In its rewritten form it now appears as Claim 116.

In re Claim 86 of Subject Original Application

On page 4, lines 20-23 of subject Advisory Action, Examiner states: "a 'substantially square wave voltage' is developed between transistors 26, 54 and ground, the anticipating output terminals of Friend".

In this connection, Applicant wishes to point out that transistors 26 and 54 do not constitute the inverting transistors in Friend's circuit. Rather, the inverting transistors are 14 and 48.

On the contrary, the specific purpose of transistors 26 and 54 (or emitter followers 24 and 52) is that of providing during part of the time of each cycle a low impedance path to ground for the current flowing in the inductor 16.

By studying the detailed operation of Friend's circuit -- particularly lines 3-53 of column 3 -- it should be obvious that the voltage at the junction between transistors 26 and 54 is substantially zero during the time periods t2-t3 and t4-t5 in Friend's Fig. 2a. This is specifically described in and around lines 25-27 and lines 50-52 in Friend's column 3.

Thus, the output of Friend's inverter circuit -- as appearing at the junction between his transistors 26 and 54 -- is clearly not a squarewave. Rather, it is a voltage of waveform similar to that which would have resulted by adding the two waveforms depicted by Friend's Fig. 2a and Fig. 2c.

However, for reasons other than simple allowability, Applicant has chosen to rewrite Claim 86. In its rewritten form it now appears as Claim 123.

Concluding Remarks

The other claims from the original application have also been rewritten -- partly to circumvent Examiner's objections as based on the cited art, and partly to provide for improved claim quality. The arguments and explanations previously provided, particularly in connection with Claims 1 and 86, apply to these other claims as well.

If Examiner should have reservations about the allowability of the new claims, but if he does find that patentable matter is disclosed in subject application, he is asked -- in accordance with paragraph 707.07(j) in the Manual of Patent Examining Procedure -- to draft for Applicant a set of allowable claims covering such unclaimed allowable subject matter.

Ole K. Nilssen [signature]

Ole K. Nilssen, Applicant

Date: 11-21-83

Please send all correspondence in connection with subject application to:

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

Phone: 312-658-5615

pplicant or Patentee: Ole K. Nilssen
Serial or Patent No.:
Filed or Issued:
For: INVERTER CIRCUITS

Attorney's Docket No.:

MAIL ROOM
NOV 23 1983
PAT. & TRADEMARK OFFICE

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(b)) - INDEPENDENT INVENTOR

s a below named inventor, I hereby declare that I qualify as an independent inventor s defined in 37 CFR 1.9(c) for purposes of paying reduced fees under section 41(a) nd (b) of Title 35, United States Code, to the Patent and Trademark Office with egard to the invention entitled INVERTER CIRCUITS escribed in

[ ] the specification filed herewith
[x] application serial no. 06/178,107, filed August 14, 1980
[ ] patent no. ______, issued ______.

have not assigned, granted, conveyed or licensed and am under no obligation under ontract or law to assign, grant, convey or license, any rights in the invention to ny person who could not be classified as an independent inventor under 37 CFR 1.9(c) f that person had made the invention, or to any concern which would not qualify as a mall business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR .9(e).

ach person, concern or organization to which I have assigned, granted, conveyed, or icensed or am under an obligation under contract or law to assign, grant, convey, or icense any rights in the invention is listed below:

[x] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

ULL NAME Ole Kristian Nilssen
DDRESS Caesar Drive, RR-5, Barrington, Illinois 60010
[x] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

ULL NAME
DDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

ULL NAME
DDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 11-20-83 | | |
| Date | Date | Date |

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/25/83 | NILSSEN | 6 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 27 |

DATE MAILED: 02/25/87

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined [ ] Responsive to communication filed on ______ [ ] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 116 - 123 are pending in the application.

Of the above, claims ______ are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.

3. [ ] Claims ______ are allowed.

4. [✓] Claims 116 - 123 are rejected.

5. [ ] Claims ______ are objected to.

6. [ ] Claims ______ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).

10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______. has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

The title of the invention is not descriptive. A new title is required that is clearly indicative of the invention to which the claims are directed.

Claims 116 to 123 appear in the case.

Claim 119 is rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited in accordance with the disclosure at pages 5-16 of the specification. See MPEP 706.03(n) and 706.03(z). The last three lines of claim 119 find no response in figure 2 of the disclosure. As to the claimed function of the last three lines in the claim, this appears to be found in capacitor 68 of figure 2. See the specification, page 9, bottom incomplete paragraph. But this connection is not as claimed; capacitor 68 is in parallel with transistor 43.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless -
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.
>
> (b) the invention was patented or

described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 120 and 121 are rejected under 35 U.S.C. 102(a) as being clearly anticipated by Rhoads. Note that load means T2, R4, C3 of Rhoads are connected from center-tap A with the bottom AC input line through connect means 36, 51 and 34 (fig. 2A).

Claims 116, 118, and 122 are rejected under 35 U.S.C. 102(a) as being anticipated by Rhoads.

Although it is not described as such, Rhoads circuit (fig. 2A) includes a series connected inductor (primary of T2) and capacitor (C3) connected as claimed, having an inherently lower frequency than the fundamental frequency of the inverter output. The load and the means to connect the load "read on" resistor R4 and its connection to C3.

Claim 123 is rejected under 35 U.S.C. 102(b) as being anticipated by Grunwaldt.

The claim finds full response in figure 2 of the reference showing LC circuit 6, 7, lamp 8 connected in parallel circuit with capacitor 7, and a transformer 5 operating the inverter "at a frequency that is not higher than the natural resonant frequency of the series combination of said inductor and capacitor"

(claim 123, last three lines). Indeed, the inverter operates at the resonant frequency of LC circuit 6,7 through feedback transformer 5.

Claims 117 and 119 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention. The function attributed to the last three lines of each claim appears to be misdescriptive; the stated function of the capacitors is to "restrain[s] the rate of voltage change across the collector and emitter terminals of transistor 42" (claim 117) or to "restrain[s] the rate of voltage ~~use~~ rise on the collectors [of transistors 91, 92]," (claim 119; spec. pages 9 and 16). Thus the claimed and stated functions are in conflict.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person

having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claim 117 is rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of the Swiss reference. Except for the claimed capacitor across the LC circuit (interpreted to be a cross a collector emitter path of a switching transistor), the claim is anticipated by Rhoads. But the Swiss reference shows this provision to be old (see C1, C2 and the Abstract). To so provide Rhoad's inverter would have improved it.

Claim 116 is rejected under 35 U.S.C. 103 as being unpatentable over Official Notice. Official Notice is taken that a series resonant inductor and capacitor connected across the output terminals of an inverter is old. To operate the inverter frequency at less than the resonant frequency, more than the resonant frequency or in phase with the resonant frequency, in and of itself, produces no unexpected results, and to place a load, such as an oscilloscope, across the capacitor would similarly not produce patentable invention. In essence, this is all that is claimed, and it is well settled that expected results are evidence of obviousness.

As to the last paragraph of applicant's Remarks, submitted November 23, 1983, reference is made to the

parent case for an indication of allowable subject matter.

The claims in this case are drawn to more than one distinct invention or inventive concept. Compare, for example, the concepts of claims 116, 122 and 123, with the concepts of claim 117 and 119, or claims 129 and 121, or claim 118. All claims have been examined in the interest of cost effectiveness to both applicant and the Office. Should applicant unduely multiply, combine or permutate these concepts by submitting an undue number of additional claims drawn to each concept, the examiner reserves his right to make a restriction requirement in response to such amendment and force applicant to choose just one inventive concept for further prosecution.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Figure 5 of Walden shows a half-bridge inverter using a resonant LC circuit across the center top of DC source 50, 52 and the midpoint of transistor 42, 44. Pitel shows a resonant circuit (55, 57, 59) at an inverter output.

Any inquiry concerning this communication should be directed to William H. Beha, Jr. at telephone number 703-557-5050.

Beha/lg

703-557-5050

2/27/84

William H. Beha Jr.

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

| SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|
| 554426 | 212 | 27 |

APPLICANT(S): NILSSEN

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 3084283 | 4-63 | GRUNWALDT | 315 | DIG 7 | |
| ✓ | B | 3155875 | 11-64 | WENRICH ET AL | 315 | 278 | |
| ✓ | C | 3263122 | 7-66 | GENUIT | 315 | DIG 7 | |
| | D | 4346332 | 8-82 | WALDEN | 363 | 98 ✓ | 8-14-80 |
| | E | 4075476 | 2-78 | PITEL | 315 | 278 | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PERTINENT PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| Wm Beha | 2-8-84 |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

$5.00 203 Group 212

MAIL ROOM
40 MAY 29 1984
PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#28/Amdt
f
M. Watts
6/8/84

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

RECEIVED
JUN 4 1984
GROUP 210

AMENDMENT A

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

In response to Office Action dated February 29, 1984 (Paper No. 27), Applicant herewith provides the following amendments and comments.

IN RE TITLE

Applicant proposes the following new title:

INVERTER CONTROL AND LOADING CIRCUIT

ARGUMENTS IN RE CLAIM REJECTIONS

Examiner rejects claim 119 on the basis of 35 U.S.C 112, making particular reference to the last three lines in the claim, which read as follows: "capacitance means connected in parallel with said series-connected combination and operative to reduce rate-of-change of voltage between said center-tap and said mid-point."

Examiner asserts that these three lines find no response in Fig. 2 of the disclosure.

Applicant wishes to point out that the "capacitance means" referred-to in these last three lines is capacitor 68 as connected in series with capacitor 36.

05/31/84 555426 3 203 5.00 CK

Of course, since the inverter is "powered from a DC source", the clear implication is that the capacitance of capacitor 36 be very large in comparison with that of capacitor 68; which implies that in effect capacitor 68 is connected in parallel with the "series-connected combination".

In other words, as far as rate-of-change of voltage is concerned, it makes no difference whether capacitor 68 is connected directly across the "series-connected combination" or connected thereacross by way of capacitor 36.

Technically, the term "capacitor means" of claim 119 refers to the series-combination of capacitors 68 and 36.

In any case, Examiner's rejection of claim 119 on the basis of 35 U.S.C. 112 is clearly erroneous.

Examiner rejects claims 120 and 121 on the basis of 35 U.S.C 102(a) as being clearly anticipated by Rhoads, asserting that "load means T2, R4, C3 of Rhoads are connected from center-tap A with the bottom AC input line".

It appears to Applicant that Examiner misunderstands the operation of Rhoads' circuit. From the circuit itself, as well as from Rhoads' description, it is clear that T2, R4, C3 can in no way be considered as "load means".

According to Rhoads' Fig. 2A, windings 60, 62, 64 and 66 on transformer T2 represent the load connection means for his inverter; and, as stated by Rhoads in column 6, lines 61-64, "the parallel combination of resistor R4 and capacitor C3" is "present for safety reasons".

Examiner should note that the value of R4 is 47 Kohms (column 8, line 14); and, since C3 is 4 microFarads (column 8, line 25) and the inversion frequency 20 Khz (column 5, line 9), the impedance of C3 is only 2 ohms -- which is 23,500 times lower than that of R4. Thus, it is patently clear that C3 in combination with R4 can not constitute any substantive load means -- especially when compared with the power handling capabilities of the main inversion transistors Q1 and Q2, which can provide an output of up to 2000 Watt.

Moreover, except when Rhoads' inverter is loaded -- such as by way of its load-windings 60, 62, 64 and/or 66 -- there will be substantially no current flowing to the parallel combination of C3 and R4. In fact, the only current then flowing would be the current provided by the series combination of R10 and C7; which amount of current will be limited by the 8000 ohm reactance of capacitor C7 to about 20 milliamp; which implies that the voltage across C3 will be limited to about 40 millivolt -- for a power dissipation in R4 of under 0.035 microwatt.

Even aside from the above considerations, it should be clear to anyone of but ordinary skill in the art that T2, R4 and C3 in Rhoads' inverter of Fig. 2A can in no reasonable way be interpreted as a load means: In the absence of indications to the contrary, the impedance of the primary winding of T2 (i.e., the winding with terminals 52 and 54) must be assumed to be of substantially infinite magnitude (especially as compared with the impedance of C4, which is 2 ohm) -- except when there is a substantive load present at one of the transformer's secondary windings.

To anyone of but ordinary skill in the art, it should be unambiguously clear that the load means in Rhoads' inverter is whatever is connected between terminals 52 and 54 of the primary winding of T2.

Hence, Applicant submits that Examiner's rejection of claims 120 and 121 is clearly inappropriate since it is based on the erroneous assumption that the combination of T2, R4 and C3 can be considered a load means for Rhoads' inverter.

Examiner rejects Claims 116, 118 and 122 under 35 U.S.C. 102(a) as being anticipated by Rhoads, stating that "Rhoads circuit (fig. 2A) includes a series connected inductor (primary of T2) and capacitor (C3) connected as claimed, having inherently lower frequency than the fundamental frequency of the inverter output".

In making his rejection, Examiner makes the assumption that the primary winding of T2 in an inductor. This assumption is invalid. There is no indication in Rhoads' specification that this primary winding contains inductance; and, without indication to the contrary, it must be assumed that transformer T2 is substantively an "ideal" transformer (i.e., in its non-loaded condition, a transformer with a substantially infinitely large primary impedance).

In other words, an inductor is an energy-storing element. However, absent special provisions to the contrary, the primary winding of the T2 transformer is not an energy-storing element.

Moreover, as argued hereinabove in connection with claims 120 and 121, it is totally unreasonable to construe R4 as a load.

Hence, Applicant submits that Examiner's rejection of claims 116, 118 and 122 is clearly inappropriate since, inter alia, it is based on the erroneous assumption that the primary winding of Rhoads' transformer T2 is an inductor.

AMENDMENTS TO CLAIMS

Please cancel claims 116, 117, 119 and 123 in their entirety, and substitute the following new claims in their place.

124. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said gas discharge lamp in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause the inverter to self-oscillate at a frequency higher than said natural resonance frequency.

125. The improvement of Claim 124 wherein said feedback means comprises saturable inductor means.

126. In a ballasting circuit for a gas discharge lamp, said ballasting circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said gas discharge lamp in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency not lower than said natural resonance frequency, said feedback means comprising saturable inductor means.

127. In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance ~~frequency~~

7' Cancelled

128. In an arrangement for powering a load, said arrangement comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a resonance circuit comprising an inductor and a capacitor connected with said pair of output terminals, said resonance circuit having a natural resonance frequency;

connect means for connecting said load with said resonance circuit; and

feedback means connected with said resonance circuit and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance frequency.

Dub 17

## CONCLUDING REMARKS

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art.

From Examiner's response and the various references cited, it has become clear to Applicant that one of the main patentable aspects of subject application relates to the important and basic proposition of having a self-oscillating inverter loaded with a resonant circuit, yet at the same time making this inverter self-oscillate at a frequency that is different from the natural resonance frequency of that resonance circuit.

Of course, the expected result of a self-oscillating inverter loaded by way of a resonant circuit, and especially where the positive feedback is obtained by way of this resonant circuit, is that the frequency of oscillation is equal to the natural resonance frequency of that resonant circuit.

Applicant contends that to accomplish the clearly unexpected result of having a self-oscillating inverter loaded with a resonance circuit, yet self-oscillating at a frequency different from the natural resonance frequency of this resonance circuit, is indeed non-obvious -- both in terms of motivation as well as in terms of implementation.

In order to make a self-oscillating inverter oscillate at a frequency different from that of the natural resonance frequency of its resonant load means, it is necessary to provide for some sort of auxiliary timing means -- a timing means that acts to modify the natural timing associated with this resonant load means. In Applicant's circuit, this auxiliary timing means is provided in the form of the saturable feedback transformers, 47 and 49 in Fig. 2. These two saturable feedback transformers saturate in a time period that is shorter than the natural time period of the resonant load means; which, as a result, provides for an overall inverter oscillating cycle that is shorter than it would have been with an ordinary linear (i.e., non-saturating) feedback means.

Applicant has enclosed a check in the amount of $5.00 (Check #494) to cover the cost of the additional dependent claim.

To the extent that there is patentable subject matter disclosed in the application, and to the extent it is not covered by allowed or allowable claims, Examiner is requested -- in accordance with paragraph 707.07(j) in the Manual of Patent Examining Procedure -- to draft for Applicant a set of allowable claims covering such unclaimed allowable subject matter.

Ole K. Nilssen, Applicant

Date: 5-25-84

Phone: 312-658-5615

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/23/83 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| FEHA,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 29 |

DATE MAILED: 07/19/84

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[ ] This application has been examined [✓] Responsive to communication filed on MAY 29/84 [✓] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

**Part II SUMMARY OF ACTION**

1. [✓] Claims 118, 120-122 & 124-128 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.
2. [✓] Claims 116, 117, 119 + 123 have been cancelled.
3. [ ] Claims ______ are allowed.
4. [✓] Claims 118, 120-122, & 124-128 are rejected.
5. [ ] Claims ______ are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

Applicant is admonished to keep a clear line distinction between the claims of this application and US Application Ser. No. 409620, as amended. Presently, claims 122 and 124-128 of this case are not patentably distinct over claims 17 and 18 of US Application Ser. No. 409,620.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless -

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 118, and 120-122 are rejected under 35 U.S.C. 102(b) as being anticipated by Rhoads.

Reference is made to the last Office action (Paper No. 27, page 3, first three full paragraphs), for an exposition of the examiner's rationale.

Applicant's arguments filed May 29, 1984 have been fully considered but they are not deemed to be persuasive.

At the outset, claims are given the broadest

reasonable interpretation during prosecution before the Office. When the claims are read in this manner, it is clear that they are anticipated by Rhoads.

Thus, as to applicant's remarks that the load means in Rhoad's inverter is whatever is connected between terminals 52 and 54 of the primary winding of 12, it suffices to say that the claims only call for load means connected between a center-tap of a DC source and the midpoint of the two transistors. As to Rhoads, this would clearly include R3, C4. Thus the broad claimed recitation of load means is unambiguously anticipated by the elements including the transformer between points A and D of Rhoads.

As to the Remarks, page 3, bottom half of the page, it suffices to say that the transformer T2 of Rhoads is not an ideal transformer. Indeed the examiner is unaware of a transformer that is "ideal". All transformers have leakage inductance in their windings, some more, some less. See, for example, an example of this in Zansky. And when the inherent leakage inductance of Rhoads transformer primary winding T2 and capacitor C3 are acknowledged to be a series resonant circuit, which they are, then the claimed frequency relationship exists.

Claims 124-128 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention.

In essence the claims are misdescriptive. In particular, the "self-oscillating" frequency of the inverter is precisely the same as the switching frequency of the transistors. Just because the transistors do not conduct over the entire half-cycle of the resonant LC circuit does not detract from the fact that the transistors are precisely synchronized to the resonant circuit at a frequency that is no more or less than that of the resonant circuit.

Thus to distinguish between the inverter self-oscillating frequency and the natural resonant frequency of the LC circuit is misdescriptive, the frequencies being equal to each other.

Claims 124, 127 and 128 are also objected to since they fail to differ substantially from each other and are unduly multiplied. (37 CFR 1.75(b)).

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS

FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136 (a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha, Jr. at telephone number 703-557-5050.

Beha/dmm

703-557-5050

7/17/84

William H. Beha Jr.

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

| SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|
| 556426 | 212 | 29 |

APPLICANT(S): NILSSEN

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4392087 | 7-83 | ZANSKY | 363 | 132 | NA |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PERTINENT PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| Wm Beha | 7/9/84 |

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

30/P

MAIL ROOM JUL 27 1984 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED AUG 03 1984 GROUP 210

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 07/19/84 (Paper No. 29), Applicant herewith provides the following arguments, amendments, and comments.

Do not enter WHB 8/15/84

ARGUMENTS IN RE CLAIM REJECTIONS

In re claims 118 and 122

Examiner rejects Claims 118 and 122 under 35 U.S.C. 102(b) as being anticipated by Rhoads, referring to supporting rationale provided in previous Office action (Paper No. 27, page 3, first three full paragraphs).

In support of his rejection, Examiner further states that "claims are given the broadest reasonable interpretation during prosecution before the Office". Applicant is completely in agreement with the intent behind that statement. An important question, however, relates to the part: "broadest reasonable interpretation" -- the question being: what constitutes "reasonable"?

In respect to this question of "reasonable interpretation", Applicant contends that some of Examiner's arguments, specifically those represented by the second full paragraph on page 3 of the latest Office action (Paper No. 29), do not represent "reasonable interpretation".

In that paragraph, Examiner states that "transformer T2 of Rhoads is not an ideal transformer" and that "All transformers have leakage inductance in their windings, some more, some less. See, for example, an example of this in Zansky".

Applicant agrees with Examiner's assertion to the effect that all transformer have leakage inductance; which is quite obvious in that even the smallest piece of connection wire has some inductance. In fact, even capacitors have inductance -- just as inductors have capacitance.

Moreover, Applicant does not dispute the fact that a transformer can be made to have substantially any degree of leakage inductance.

But these basic facts are not relevant to the issue at hand. Rather, the issue that needs to be resolved is that of determining if Rhoads employs leakage inductance as a manifest factor in his circuit. Thus, key questions are: Does leakage inductance provide a substantive effect in Rhoads circuit? Does his circuit operate properly without leakage inductance? --- The answers to these questions are NO and YES, respectively. In fact, his circuit operates properly only on the basis that leakage inductance is substantively negligible.

And, of course, there is no indication in Rhoads' specification to the effect that leakage inductance constitutes any kind of useful or necessary or substantive element of his circuit.

In respect to the Zansky example: Zansky overtly states that he employs the leakage inductance of a transformer; and, from his specification it is clear that this leakage inductance indeed constitutes a substantive element of his circuit. In fact, it constitutes a critical element: his very invention depends on the use of leakage inductance in lieu of an ordinary discrete inductor.

Hence, claims 118 and 122, which both calls for an inductor to be connected in circuit between "said center-tap and said mid-point" can not be rejected on a "102" basis as having been anticipated by Rhoads, since Rhoads does not indicate the required or manifest or substantive presence of such an inductor. Yet, when read in light of the specification, it is clear that in Applicant's circuit, the inductor referred to in claims 118 and 122 does indeed contitute a manifestly substantive element. In fact, his circuit would not operate without it.

Thus, in view of the above arguments, Applicant traverses Examiner's rejection of claims 118 amd 122.

Never-the-less, to further amplify the difference between Rhoads and Applicant's claims 118 and 122, Applicant hereinbelow amends his claims to that effect.

In re claims 120 and 121

Applicant finds Examiner's rejection of these claims as being within limits of the "broadest reasonable interpretation" of Rhoads circuit. Hence, Applicant hereinbelow amends his claims 120 and 121 so as to clearly differentiate over Rhoads.

In re claims 124-128

Examiner rejects claims 124-128 under 35 U.S.C. 112, second paragraph, and states that "the claims are misdescriptive".

Applicant traverses Examiner's rejections for the following reasons.

In support of his rejection, Examiner states that "the 'self-oscillating' frequency of the inverter is precisely the same as the switching frequency of the transistors". Applicant agrees with that statement, but does not understand its relevance. In connection with claims 124-128, Applicant simply does not use the term "switching frequency of the transistors".

On the other hand, what Applicant does use are in effect the following two terms:

i) "self-oscillation frequency of the inverter", which is the actual frequency at which the inverter operates; and

ii) "natural resonance frequency of the inductor-capacitor combination", which is simply the frequency at which the inductor-capacitor combination would oscillate if interacting with one another but without the interference of external factors.

Essential aspects of claims 124-128 relate to the relationship between these two frequencies; and, to appreciate the very significant difference between these two frequencies, Examiner is asked to review Applicant's explanation provided in the last three paragraphs on page 5 of Applicant's APPLICATION FOR CONTINUATION, which was filed on 11/23/83.

To re-iterate:

a) The self-oscillation frequency of the inverter (which is indeed the same as the switching frequency of the transistors) is determined by the frequency with which the switching transistors are turned ON and OFF; and which, in turn, is determined to a substantial degree by the saturation (or timing) characteristics of the saturable feedback transformers 47 and 49 of Applicant's Fig. 2;

b) The natural resonance frequency of the series-combination of the inductor and the capacitor is determined by the product of the inductance of the inductor and the capacitance of the capacitor, and is therefore a purely theoretical entity. It certainly has nothing to do with the saturation characteristics (or the timing characteristics) of the saturable feedback transformers, nor with the frequency of the voltage that is applied to this series-combination.

Examiner also makes the statement that "to distinguish between the inverter self-oscillating frequency and the natural resonant frequency of the LC circuit is misdescriptive, the frequencies being equal to each other". In light of the explanation provided just above, it should be clear to Examiner that the two frequencies are indeed not "equal to each other" -- except under very special circumstances.

The inverter's self-oscillation frequency is determined by a combination of the effect of the natural resonance frequency of the LC series-combination and the saturation (or timing) characteristics of the saturable feedback transformers. Except for the very special condition of having the timing characteristics of the saturable feedback transformers match the cycle-period of this natural resonance frequency, the inverter's self-oscillation frequency is different from the natural resonance frequency of the LC series-combination.

In other words, in his invention Applicant uses two different and independent timing means for determining the inverter's self-oscillating frequency, namely the saturable feedback transformers and the LC series-combination; and the resulting inverter self-oscillation frequency is determined as a composite of the timing characteristics of these two independent timing means.

In fact, an important aspect of Applicant's invention is based on the notion of making the inverter's self-oscillating frequency be different from (specifically; higher than) the natural resonance frequency of the LC series-combination.

To prevent destruction of the inverter's transistors, however, it is necessary that the timing naturally provided by the saturable feedback transformers be not longer than the timing naturally provided by the LC series-combination.

Examiner objects to claims 124, 127 and 128 as being multiplicative.

Applicant can reasonably accept Examiner's objection; and, to overcome this objection, Applicant hereinbelow amends his claim 127.

AMENDMENTS TO CLAIMS

118. (Amendment) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage and being operative to cause current drawn from said AC voltage output to be substantially sinusoidal in waveshape;

means to permit connection of a load (in circuit with) said series-connected combination; and

a diode means connected across each of said transistors;

thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.

120. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

[load] means for connecting an external load in circuit [connected] between said center-tap and said mid-point in such a way that one side of this external load is directly connected with said center-tap, said external load consuming substantially all the power being provided by said AC voltage output; and

connect means connecting said center-tap with one of said power line terminals.[;]

[whereby one side of the load means is directly connected with one of said power line terminals.]

121. (Amended) A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide substantially all of its output power to [a] an external load in the form of an AC voltage of frequency substantially higher than that of the voltage on said power line, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the external load between said mid-point and said center-tap;

whereby one side of said external load is directly connected with one of said input terminals.

122. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage but yet being operative to cause a substantially sinusoidal current to flow through said combination in response to said AC voltage; and

means to permit connection of a load in circuit with said capaitor.

127. In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance frequency, said feedback means comprising saturable inductor means.

CONCLUDING REMARKS

Applicant wishes to draw Examiner's attention to the fact that one of the main patentable aspects of subject application relates to the important and basic proposition of having a self-oscillating inverter loaded with a resonant circuit, yet at the same time making this inverter self-oscillate at a frequency that is different from the natural resonance frequency of that resonant circuit.

Of course, with a self-oscillating inverter having a resonant circuit in its positive feedback path, it should be expected that the frequency of oscillation be substantially equal to the natural resonance frequency of that resonant circuit. Yet, in Applicant's circuit, such is not the case -- the reason being that of providing in the positive feedback path an additional timing (or frequency-determining) element in the form of saturable transformer means.

Applicant contends that to accomplish the clearly unexpected result of having a self-oscillating inverter loaded with a resonance circuit, yet self-oscillating at a frequency different from the natural resonance frequency of this resonance circuit, is indeed highly unusual as well as non-obvious -- both in terms of motivation as well as in terms of implementation.

Examiner is requested to look at the waveforms associated with Rhoads' invention (see his Fig. 3) in comparison with those associated with Applicant's invention.

In particular, Examiner is asked to note the following.

a) Rhoads' inverter output current as shown in his Fig. 3B is substantially in phase with the inverter output voltage of his Fig. 3A and is definitely not sinusoidal.

b) Applicant's inverter output current as shown in his Fig. 3D is delayed in phase compared with the inverter output voltage of his Fig. 3A and is substantially sinusoidal.

The fact that the current is delayed in respect to the voltage implies that the net effective impedance offered by the LC series-combination to the inverter output is inductive; which further implies that the frequency of the inverter voltage is lower than the natural resonance frequency of the LC series-combination. Of course, had the LC series-combination been in resonance at the inverter frequency, there would have been no delay between the inverter output voltage and the resulting current.

Also, Examiner is asked to note that Rhoads' circuit does not constitute a self-oscillating inverter.

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art. However, if Examiner is still disposed toward a contrary opinion, Applicant requests that Examiner call Applicant on the telephone before formulating a final decision; thereby, in the interest of efficiency of prosecution, to attempt to arrive at an expeditious and mutually satisfactory disposition of subject application.

Ole K. Nilssen

Ole K. Nilssen, Applicant

Date: 7-25-84

Phone: 312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 555426 | 11/23/83 | NILSSEN | — |

| EXAMINER | |
|---|---|
| BEHA | |
| ART UNIT | PAPER NUMBER |
| 212 | 31 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Nilssen (3) ____

(2) Ex. Beha (4) ____

Date of Interview Aug. 15, 1984

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: ____

Agreement ☑ was reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: All

Identification of prior art discussed: Rhoads

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: The amendments to claims 118 and 120-122 were discussed, as well as applicant's remarks dealing with transformer leakage inductance (page 2). An agreement was reached as to these claims. As to claims 124-128, the applicant emphasized the operation of fig 2 and the examiner agreed that the claims properly defined that operation. Thus the examiner agreed to withdraw the Section 112 rejection of these claims.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1 – 7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

William A. Beha Jr.
Examiner's Signature

82-3809 PTOL-413 (rev. 1-81)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/555,426 | 11/23/83 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 32 |

DATE MAILED: 08/20/84

Below is a communication from the EXAMINER in charge of this application.

COMMISSIONER OF PATENTS AND TRADEMARKS

## ADVISORY ACTION

☑ THE PERIOD FOR RESPONSE ~~IS EXTENDED~~ CONTINUES TO RUN 3 MONTHS FROM THE DATE OF THE FINAL REJECTION. 855 O.G. 1109.

☐ Appellant's Brief is due in accordance with Rule 192 (a).

Applicant's response to the final rejection, filed ____________, has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☑ The proposed amendments to the claim and/or specification will not be entered and the final rejection stands because:
   a. ☐ There is no convincing showing under Rule 116(b).
   b. ☑ They raise new issues that would require further consideration and/or search.
   c. ☐ They raise the issue of new matter.
   d. ☑ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.
   e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

2. ☐ Newly proposed or amended claims ____________ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☑ Upon the filing of an appeal, the proposed amendment ☐ will be ☑ will not be, entered and the status of the claims in this application would be as follows:
   a. ☑ Claims 124 - 128 would be allowable.
   b. ☑ Claims 118 & 120 - 122 would not be allowable.

   However:

   (1) ☐ The rejection of claims ____________ on references is deemed to be overcome by applicant's response.
   (2) ☐ The rejection of claims ____________ on non-reference grounds only is deemed to be overcome by applicant's response.

4. ☐ The affidavit, exhibit or request for reconsideration has been entered but does not overcome the rejection.

5. ☐ The affidavit or exhibit will not be admitted because applicant has not shown good and sufficient reasons why it was not earlier presented.

6. ☐ The application having been examined under the special accelerated examining procedure (M.P.E.P. 708.02), the proposed amendment has not been considered since it does not prima facie place the application in condition for allowance or in better condition for appeal.

PTOL-303 (Rev. 10-80)

The shortened statutory period for response expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for response expire later than six months from the date of the final rejection. Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a) accompanied by the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee.

Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date that the shortened statutory period for response expires as set forth above.

The amendment filed July 27, 1984 under 37 CFR 1.116 in response to the final rejection has been considered but is not deemed to place the application in condition for allowance and will not be entered because:

The proposed amendment is not deemed to place the application in better form for appeal by materially simplifying the issues for appeal.

The proposed amendment raises new issues that would require further consideration and/or search.

The new issues are the amendments to claims 118 and 120-122.

The objection to claims 124, 127 and 128 is withdrawn. Claims 124-128 are allowable because they define a relationship between two independent frequency determining elements, namely the series resonant, LC circuit and the saturable core drive circuits and the feedback relationship between the two, resulting in an unexpectedly higher inverter output frequency than the natural resonant frequency of the series LC circuits. This features has not been found in the prior art known to the examiner.

Beha/yp

703-557-5080

8/16/84

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

MAIL ROOM AUG 27 1984 PAT. & TRADEMARK OFF.

75.00 - 203

644155

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/555,426
Filed: NOVEMBER 23, 1983
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

APPLICATION FOR CONTINUATION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 08/20/84 (Paper No. 32), Applicant herewith applies for continuation under paragraph 1.62 of Rules of Practice in Patent Cases.

In support of subject application, Applicant filed an amendment (Amendment B) which was not entered by Examiner. Applicant herewith requests that this Amendment B be entered.

Enclosed herewith is a Verified Statement Claiming Small Entity Status and a check (#635) for the filing fee in the amount of $225.00

Ole K. Nilssen, Applicant

Date: 8-24-84

Phone: 312-658-5615

| | | | |
|---|---|---|---|
| 08/29/84 | 555426 | 2 201 | 150.00 CK |
| 08/29/84 | 555426 | 2 203 | 75.00 CK |

AUG 27 1984 PAT. & TRADEMARK OFF.

Applicant or Patentee: Ole K. Nilssen
Serial or Patent No.: 06/555,426
Filed or Issued: 11/ /83
For: IN ...ER CIRCUITS

Attorney's Docket No.: ________

#33
12/19/84

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled
described in

[ ] the specification filed herewith
[X] application serial no. 06/555,426, filed 11/23/83
[ ] patent no. ________, issued ________

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[X] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole K. Nilssen
ADDRESS ... Caesar Drive, Route #5, Barrington, IL 60010
[X] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ________
ADDRESS ________
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ________
ADDRESS ________
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 8-23-84 | | |
| Date | Date | Date |

# 34/Amdt

RECEIVED AUG 03 1984 GROUP 210

MAIL ROOM JUL 30 1984 PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

8/27/84

In re Patent Application for: INVERTER CIRCUITS

Serial No: 06/555,426

Filed: NOVEMBER 23, 1983

Group Art Unit: 212

Examiner: BEHA, WILLIAM H., JR.

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 07/19/84 (Paper No. 29), Applicant herewith provides the following arguments, amendments, and comments.

Do not enter WHB 8/15/84

ARGUMENTS IN RE CLAIM REJECTIONS

In re claims 118 and 122

Examiner rejects Claims 118 and 122 under 35 U.S.C. 102(b) as being anticipated by Rhoads, referring to supporting rationale provided in previous Office action (Paper No. 27, page 3, first three full paragraphs).

In support of his rejection, Examiner further states that "claims are given the broadest reasonable interpretation during prosecution before the Office". Applicant is completely in agreement with the intent behind that statement. An important question, however, relates to the part: "broadest reasonable interpretation" -- the question being: what constitutes "reasonable"?

In respect to this question of "reasonable interpretation", Applicant contends that some of Examiner's arguments, specifically those represented by the second full paragraph on page 3 of the latest Office action (Paper No. 29), do not represent "reasonable interpretation".

In that paragraph, Examiner states that "transformer T2 of Rhoads is not an ideal transformer" and that "All transformers have leakage inductance in their windings, some more, some less. See, for example, an example of this in Zansky".

Applicant agrees with Examiner's assertion to the effect that all transformers have leakage inductance, which is quite obvious in [illegible] piece of connection wire has some inductance. In fact, even capacitors have inductance -- just as inductors have capacitance.

Moreover, Applicant does not dispute the fact that a transformer can be made to have substantially any degree of leakage inductance.

But these basic facts are not relevant to the issue at hand. Rather, the issue that needs to be resolved is that of determining if Rhoads employs leakage inductance as a manifest factor in his circuit. Thus, key questions are: Does leakage inductance provide a substantive effect in Rhoads circuit? Does his circuit operate properly without leakage inductance? --- The answers to these questions are NO and YES, respectively. In fact, his circuit operates properly only on the basis that leakage inductance is substantively negligible.

And, of course, there is no indication in Rhoads' specification to the effect that leakage inductance constitutes any kind of useful or necessary or substantive element of his circuit.

In respect to the Zansky example: Zansky overtly states that he employs the leakage inductance of a transformer; and, from his specification it is clear that this leakage inductance indeed constitutes a substantive element of his circuit. In fact, it constitutes a critical element: his very invention depends on the use of leakage inductance in lieu of an ordinary discrete inductor.

Hence, claims 118 and 122, which both calls for an inductor to be connected in circuit between "said center-tap and said mid-point" can not be rejected on a "102" basis as having been anticipated by Rhoads, since Rhoads does not indicate the required or manifest or substantive presence of such an inductor. Yet, when read in light of the specification, it is clear that in Applicant's circuit, the inductor referred to in claims 118 and 122 does indeed contitute a manifestly substantive element. In fact, his circuit would not operate without it.

Thus, in view of the above arguments, Applicant traverses Examiner's rejection of claims 118 amd 122.

Never-the-less, to further amplify the difference between Rhoads and Applicant's claims 118 and 122, Applicant hereinbelow amends his claims to that effect.

In re claims 120 and 121

[illegible] portion of these claims being within limits of the "broadest reasonable interpretation" of Rhoads circuit. Hence, Applicant hereinbelow amends his claims 120 and 121 so as to clearly differentiate over Rhoads.

In re claims 124-128

Examiner rejects claims 124-128 under 35 U.S.C. 112, second paragraph, and states that "the claims are misdescriptive".

Applicant traverses Examiner's rejections for the following reasons.

In support of his rejection, Examiner states that "the 'self-oscillating' frequency of the inverter is precisely the same as the switching frequency of the transistors". Applicant agrees with that statement, but does not understand its relevance. In connection with claims 124-128, Applicant simply does not use the term "switching frequency of the transistors".

On the other hand, what Applicant does use are in effect the following two terms:

i) "self-oscillation frequency of the inverter", which is the actual frequency at which the inverter operates; and

ii) "natural resonance frequency of the inductor-capacitor combination", which is simply the frequency at which the inductor-capacitor combination would oscillate if interacting with one another but without the interference of external factors.

Essential aspects of claims 124-128 relate to the relationship between these two frequencies; and, to appreciate the very significant difference between these two frequencies, Examiner is asked to review Applicant's explanation provided in the last three paragraphs on page 5 of Applicant's APPLICATION FOR CONTINUATION, which was filed on 11/23/83.

To re-iterate:

a) The self-oscillation frequency of the inverter (which is indeed the same as the switching frequency of the transistors) is determined by the frequency with which the switching transistors are turned ON and OFF; and which, in turn, is determined to a substantial degree by the saturation (or timing) characteristics of the saturable feedback transformers 47 and 49 of Applicant's Fig. 2;

b) The natural resonance frequency of the series-combination of the inductor and the capacitor is determined by the product of the inductance of the inductor and the capacitance of the capacitor, and is therefore a purely theoretical entity. It certainly has nothing to do with the saturation characteristics (or the timing characteristics) of the saturable feedback [illegible] ncy of the voltage th[illegible] applied to this series-combination.

Examiner also makes the statement that "to distinguish between the inverter self-oscillating frequency and the natural resonant frequency of the LC circuit is misdescriptive, the frequencies being equal to each other". In light of the explanation provided just above, it should be clear to Examiner that the two frequencies are indeed not "equal to each other" -- except under very special circumstances.

The inverter's self-oscillation frequency is determined by a combination of the effect of the natural resonance frequency of the LC series-combination and the saturation (or timing) characteristics of the saturable feedback transformers. Except for the very special condition of having the timing characteristics of the saturable feedback transformers match the cycle-period of this natural resonance frequency, the inverter's self-oscillation frequency is different from the natural resonance frequency of the LC series-combination.

In other words, in his invention Applicant uses two different and independent timing means for determining the inverter's self-oscillating frequency, namely the saturable feedback transformers and the LC series-combination; and the resulting inverter self-oscillation frequency is determined as a composite of the timing characteristics of these two independent timing means.

In fact, an important aspect of Applicant's invention is based on the notion of making the inverter's self-oscillating frequency be different from (specifically: higher than) the natural resonance frequency of the LC series-combination.

To prevent destruction of the inverter's transistors, however, it is necessary that the timing naturally provided by the saturable feedback transformers be not longer than the timing naturally provided by the LC series-combination.

Examiner objects to claims 124, 127 and 128 as being multiplicative.

Applicant can reasonably accept Examiner's objection; and, to overcome this objection, Applicant hereinbelow amends his claim 127.

#1

AMENDMENTS TO CLAIMS

118. (Amendment) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage and being operative to cause current drawn from said AC voltage output to be substantially sinusoidal in waveshape;

means to permit connection of a load in circuit with said series-connected combination; and

a diode means connected across each of said transistors;

thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.

#2 #3

120. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

[load] means for connecting an external load in circuit [connected] between said center-tap and said mid-point in such a way that one side of this external load is directly connected with said center-tap, said external load consuming substantially all the power being provided by said AC voltage output; and

connect means connecting said center-tap with one of said power line terminals.[;]

[whereby one side of the load means is directly connected with one of said power line terminals.]

121. (Amended) A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide substantially all of its output power to [a] an external load in the form of an AC voltage of frequency substantially [illegible] said power line, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the external load between said mid-point and said center-tap;

whereby one side of said external load is directly connected with one of said input terminals.

122. (Amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage but yet being operative to cause a substantially sinusoidal current to flow through said combination in response to said AC voltage; and

means to permit connection of a load in circuit with said capaitor.

#2 Cancel

#3

127. In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in circuit with said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at a frequency higher than said natural resonance frequency, said feedback means comprising saturable inductor means.

## CONCLUDING REMARKS

Applicant wishes to draw Examiner's attention to the fact that one of the main patentable aspects of subject application relates to the important and basic proposition of having a self-oscillating inverter loaded with a resonant circuit, yet at the same time making this inverter self-oscillate at a frequency that is different from the natural resonance frequency of that resonant circuit.

Of course, with a self-oscillating inverter having a resonant circuit in its positive feedback path, it should be expected that the frequency of oscillation be substantially equal to the natural resonance frequency of that resonant circuit. Yet, in Applicant's circuit, such is not the case -- the reason being that of providing in the positive feedback path an additional timing (or frequency-determining) element in the form of saturable transformer means.

Applicant contends that to accomplish the clearly unexpected result of having a self-oscillating inverter loaded with a resonance circuit, yet self-oscillating at a frequency different from the natural resonance frequency of this resonance circuit, is indeed highly unusual as well as non-obvious -- both in terms of motivation as well as in terms of implementation.

Examiner is requested to look at the waveforms associated with Rhoads' invention (see his Fig. 3) in comparison with those associated with Applicant's invention.

In particular, Examiner is asked to note the following.

a) Rhoads' inverter output current as shown in his Fig. 3B is substantially in phase with the inverter output voltage of his Fig. 3A and is definitely not sinusoidal.

[illegible] 3B is [illegible] phase compared with the inverter output voltage of his Fig. 3A and is substantially sinusoidal.

The fact that the current is delayed in respect to the voltage implies that the net effective impedance offered by the LC series-combination to the inverter output is inductive; which further implies that the frequency of the inverter voltage is lower than the natural resonance frequency of the LC series-combination. Of course, had the LC series-combination been in resonance at the inverter frequency, there would have been no delay between the inverter output voltage and the resulting current.

Also, Examiner is asked to note that Rhoads' circuit does not constitute a self-oscillating inverter.

Based on the arguments and amendments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art. However, if Examiner is still disposed toward a contrary opinion, Applicant requests that Examiner call Applicant on the telephone before formulating a final decision; thereby, in the interest of efficiency of prosecution, to attempt to arrive at an expeditious and mutually satisfactory disposition of subject application.

Ole K. Nilssen

Ole K. Nilssen, Applicant

Date: 7-25-84

Phone: 312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/644,155 | 08/27/84 | NILSSEN | 0 |

OLE K. NILSSEN
CAESR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 35 |

DATE MAILED: 01/24/85

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined [ ] Responsive to communication filed on ______ [ ] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 118, 120-122 + 124-128 are pending in the application.

Of the above, claims ______ are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.

3. [ ] Claims ______ are allowed.

4. [✓] Claims 118, 120-122, + 124-128 are rejected.

5. [ ] Claims ______ are objected to.

6. [ ] Claims ______ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).

10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______ has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

EXAMINER'S ACTION

Applicant has not complied with one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120 as follows:

The continuing application must contain a specific reference to the parent application(s) in the specification.

This application filed under 37 CFR 1.60 lacks the necessary reference to the prior application. A statement reading "This is a continuation of application Serial No. 555,426, filed November 23, 1983" should be entered following the title of the invention or as the first sentence of the specification. Also, the present status of all parent applications should be included.

The title of the invention is not descriptive. A new title is required that is clearly indicative of the invention to which the claims are directed. The new title should reflect the crux of the invention, not just the general field of invention.

The references cited in the parent applications remain of record in this application.

Claims 118, 120-122 and 124-128 remain in the case.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date

of application for patent in the United States.

Claims 120 and 121 are rejected under 35 U.S.C. 102(b) as being anticipated by Rhoads.

Applicant is again reminded that claims are given their broadest reasonable interpretation. The "external load" is construed to mean the output circuit connected between modes A and D of figure 2A.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 118 and 122 are rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of the British reference or ~~Walden~~ and Locklair.

The claims differ from figure 2A of Rhoads by calling for a series connected resonant LC circuit

having as frequency "not higher" than the fundamental inverter AC output frequency.

But, the British reference and Walden show it is old to place a series resonant LC circuit across the load terminals of an inverter. In the British reference the LC circuit is tuned to (not higher than) the fundamental frequency of the inverter. In Walden, the inverter may operate either above or below the resonant frequency of the LC circuit, operation on either side of resonance producing expected results.

Thus, it would have been obvious to use a series resonant circuit across nodes A and D of Rhoads and to couple a load such as a discharge lamp thereto. And to design the LC circuit coupled to a lamp, as in Walden, to have a natural resonant frequency that is "not higher" or lower than the inverter AC frequency for purpose of regulation is taught by Locklair, figure 2.

In summary, therefore, the broadly recited elements in the broadly recited combination of the claims would have been obvious over the collective teachings of Rhoads, the British reference, or Walden and Locklair.

Claims 120 and 121 are rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden.

Construing the recitation of an "external load" in the narrow sense intended by applicant, Walden shows it is old to use a resonant LC circuit across the output nodes of a bridge inverter and to connect a discharge lamp across the resonating capacitor. Moreover, whether the capacitor is connected to the right or left node of the circuit is patentably immaterial.

Claims 127 and 128 are rejected under 35 U.S.C. 102(b) as being anticipated by Locklair.

Taking claim 127 as exemplary (claim 128 is even broader), Locklair shows a self-oscillating inverter 11-39, output terminals 41, series resonant circuit 45,46 connected across terminals 41 by means of diode bridge 49, connect means 41 or 57,59 for connecting a load (across terminals 41 or resistor 55 across 57,59) "in circuit" with LC circuit 45,46, and feedback means T2, 35, 49, 63, 65, 67 for causing the inverter to self-oscillate at a frequency higher than the natural resonant frequency of the LC circuit (figure 2).

Claims 124-126 are rejected under 35 U.S.C. 102(b) as being anticipated by Locklair.

The recitations relating to a gas discharge lamp are given no patentable weight since the lamp is not part of the claimed combination. In other words, all that the claims generally require is an inverter with output terminals. In this sense the claims are anticipated by Locklair.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5052.

Beha/kmd

703-557-5052

1-22-85

William H. Beha

EXAMINER

TO SEPARATE, HO D TOP AND BOTTOM EDGES, SNAP–APART AND SCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

**NOTICE OF REFERENCES CITED**

| SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|
| 644 155 | 212 | 35 |

APPLICANT(S): NILSSEN

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 3320510 | 5-67 | LOCKLAIR | 331 | 113A | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PERTINENT PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| Wm Beha | 1-15-85 |

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

MAIL ROOM 17 APR 22 1985 PAT. & TRADE MARK OFF.

21C 4-8 041 Beha

Gp 212

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED APR 30 1985 GROUP 210

In re patent application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/644,155
Filed: 08/27/84
Group Art Unit: 212
Examiner: BEHA, WILLIAM H.

I, OLE K. NILSSEN HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 4-16-85

AMENDMENT A

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 01/24/85

COMMENTS RE PROCEDURE AND AUTHORITIES

For purpose of convenient reference, Applicant herewith identifies the following provision from Manual of Patent Examining Procedure (MPEP).

706.02: "After indicating that the rejection is under 35 U.S.C. 103, there should be set forth (1) the difference or differences in the claim over the applied reference(s), (2) the proposed modification of the applied reference(s) necessary to arrive at the claimed subject matter, and (3) an explanation why such proposed modification would be obvious"

Also, Applicant directs Examiner's attention to the following quotations from various court interpretations (Authorities) in respect to patentability under 35 U.S.C. 103. Most of these Authorities (#1-6) were provided to Applicant by the Assistant Commissioner for Patents and represented by him as being the Authorities relied upon by the PTO in determining patentability under 35 U.S.C. 103.

#1. "patentable invention may lie in discovery of source of problem even though remedy may be obvious once source of problem is identified" (In re Sponnoble, 405 F.2d 578, 160 USPQ 237, 1969);

#2. "A patentable invention within the ambit of 35 U.S.C 103 may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the result inherent in their use" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

#3. "Where unobvious aspect of invention resides in recognition of source of problem, Patent Office inquiries should be directed, in part at least, to question of whether such a recognition would have been obvious to one of ordinary skill in the art; inquiry must go beyond the nature of the solution" (In re Roberts, 470 F.2d 1399, 176 USPQ 313, 1973);

#4. "we also believe that a more proper, albeit not exclusive, inquiry in a case such as this is to look further as to the reasons for making the combination" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

#5. "If there is no evidence that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem, which is claimed as an improvement of prior art device, would have been obvious to that hypothetical person". (In re Nomiya, 184 USPQ 608, 1975)

#6. "There must be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand, or use of teaching as evidence of obviousness will entail prohibited hindsight". (In re Nomiya, 184 USPQ 608, 1975)

#7. Application of Miller (57 CCPA 809, 418 F2d 1392, 164 USPQ 46) affirming the patentability of a "new use of a known process, machine, manufacture, composition of matter, or material".

IN RE COMPLIANCE WITH 35 U.S.C. 120

Please insert the following in front of the specification.

"This is a continuation of application Serial No. 555,426, filed November 23, 1983; which was a continuation of application Serial No. 178,107, filed August 14, 1980, now abandoned."

IN RE TITLE

Applicant herewith proposes the following new title:

"INVERTER HAVING SINUSOIDAL GROUND-REFERENCED OUTPUT"

CLAIM AMENDMENTS

Please amend the claims as follows.

118. (Twice amended) In an inverter adapted to be powered from a DC source having a ground-connected center-tap and to provide an AC voltage output, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination: i) having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage, ii) [and] being operative to cause current drawn from said AC voltage output to be substantially sinusoidal in waveshape, and iii) having two terminals, one of which is connected with said center-tap; and

means to permit connection of a load in circuit with said series-connected combination.[; and]

[a diode means connected across each of said transistors;]

[thereby permitting the inductor and the capacitor to: i) receive energy from the DC source by forward conduction of the transistors, and ii) return energy to the DC source by forward conduction of the diodes.]

120. (Twice amended) In an inverter adapted to be powered from a DC source having a center-tap and to provide an AC voltage output, said DC source being powered by way of rectifier means from two power line terminals connected with an ordinary electric utility power line, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

[load] means for connecting an external load in circuit [connected] between said center-tap and said mid-point in such a way that one side of this external load is directly connected with said center-tap, said external load comprising no reactive elements and consuming substantially all the power being provided by said AC voltage output; and

connect means connecting said center-tap with one of said power line terminals.[;]

[whereby one side of the load means is directly connected with one of said power line terminals.]

121. (Twice amended) A frequency converter means adapted to be powered from a pair of input terminals connected with an ordinary electric utility power line and operative to provide substantially all of its output power to [a] an external load in the form of an AC voltage of frequency substantially higher than that of the voltage on said power line, said external load comprising no reactive elements, said frequency converter comprising:

rectifier-filter means connected in circuit with said pair of input terminals and operative to function as a center-tapped source of DC voltage, said source's center-tap being connected directly with one of said input terminals;

a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said center-tapped source of DC voltage and operative to provide said AC voltage between said mid-point and said center-tap; and

connect means operative to connect the external load between said mid-point and said center-tap;

whereby one side of said external load is directly connected with one of said input terminals.

122. (Twice amended) In an inverter adapted to be powered from a DC source having a ground-connected center-tap and to provide an AC voltage output, said AC voltage being of substantially trapezoidal waveshape, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said AC voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination having a natural resonance frequency that is not higher than the fundamental frequency of said AC voltage but yet being operative to cause a substantially sinusoidal current to flow through said combination in response to said AC voltage, said combination having two terminals, one of those terminals being connected with said center-tap; and

means to permit connection of a load in circuit with said [capaitor] capacitor.

124. (Amended) In a ballasting circuit (for a gas discharge lamp,) said ballasting circuit comprising a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said gas discharge lamp in parallel with one of the components of [circuit with] said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause the inverter to self-oscillate at a frequency higher than said natural resonance frequency.

Please cancel claim 126 and replace it with the following new claim.

129. In an inverter powered by a DC voltage and operable to provide substantially all its AC output power from an AC voltage present at a set of output terminals, an L-C resonant circuit being connected with said output terminals and operative to make said AC voltage substantially sinusoidal in waveshape, said L-C circuit having a natural resonance frequency about equal to or higher than the frequency of said AC voltage, said inverter having a set of input terminals, the improvement comprising:

positive feedback means connected in circuit between said output terminals and said input terminals, and operative in cooperation with said L-C circuit to cause said inverter to self-oscillate, thereby to provide said substantially sinusoidal AC voltage at said output terminals, said feedback means comprising saturable inductor means.

127. (Amended) In a circuit for powering a load, said circuit comprising a self-oscillating inverter adapted to provide [an] a substantially sinusoidal AC voltage across a pair of output terminals, the improvement comprising:

a series-combination of an inductor and a capacitor connected across said pair of output terminals, said series-combination having a natural resonance frequency;

connect means for connecting said load in parallel with one of the components of [circuit with] said series-combination; and

feedback means connected in circuit with said series-combination and operative to cause said inverter to self-oscillate at [a] an inverter frequency approximately equal to or higher than said resonance frequency, said feedback means comprising saturable inductor means co-determinative with said series-combination in establishing said inverter frequency.

128. (Amended) In an arrangement for powering a load, said arrangement comprising a self-oscillating inverter adapted to provide [an] a substantially sinusoidal AC voltage across a pair of output terminals, the improvement comprising:

a resonance circuit comprising an inductor and a capacitor connected with said pair of output terminals, said resonance circuit having a natural resonance frequency;

connect means for connecting said load in parallel circuit with said capacitor [with said resonance circuit]; and

feedback means connected with said resonance circuit and operative to cause said inverter to self-oscillate at [a] an inverter frequency approximately equal to or higher than said natural resonance frequency, said feedback means comprising saturable inductor means co-operative with said resonance circuit in establishing said inverter frequency.

ARGUMENTS IN SUPPORT OF CLAIMS

In re Independent Claim 118

Examiner rejected claim 118 under 35 U.S.C. 103 as being unpatentable over Rhoads in view of the British reference or Walden and Locklair.

Applicant traverses Examiner's rejection for the following reasons.

a) The Walden reference did not become public knowledge until 08/24/82, which is well after the date of filing of the parent of the present application; which parent application was filed on 08/14/80. Consequently, in view of Authority #6, there is clearly no basis for applying the Walden reference as evidence of obviousness.

b) The British reference does teach the use of a series-resonant L-C circuit in some connection with the output circuit. However, the L-C series-resonant circuit of the British reference can hardly be considered as being connected "across the load terminals of an inverter", as Examiner asserts. Yet, to make the distinction even clearer, Applicant has amended claim 118 by providing for one side of the L-C series-resonant circuit to be connected with ground.

c) Even if, as Examiner asserts, "it is old to place a series resonant LC circuit across the load terminals of an inverter", it would not therefore be obvious to combine such a feature with the circuit of Rhoads -- especially not in the position where one side of the L-C circuit is connected with ground. Examiner has never-the-less asserted obviousness. However, as required in accordance with MPEP 706.02(c), Examiner has not provided an explanation therefor, nor, in view of Authority #6, has Examiner provided "a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand".

After all, most any invention merely represents a combination of old elements. The questions simply are these: i) is the combination new? and ii) if it is new, does it represent a combination that would obviously have occurred to a person of ordinary skill at the time the invention was made -- without using prohibited hindsight?

So, more specifically, Examiner must answer these questions: 1) at the time invention was made, what apparent reason would a person of ordinary skill in the art have had to combine the British reference with the Rhoads reference so as to arrive at Applicant's claimed invention? and ii) what valuable result would he have expected to attain thereby?

d) Moreover, with reference to Authority #5, except if Examiner provides evidence to the effect that "a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem ---- would have been obvious".

In other words, before a rejection of claim 118 on the basis of obviousness can be considered properly justified, Examiner must: i) identify the problem to which the claimed invention constitutes a solution, ii) provide evidence to the effect that a person of ordinary skill in the art would have expected this problem to exist, and iii) substantiate that this person would have been able to modify the applied reference in such a way as to arrive at the claimed invention.

However, in respect to the invention expressed by claim 118, it would probably be difficult to identify such a problem in that this particular invention is not directed to solving an already recognized problem. Rather, this invention came about in complex relationship with a larger and previously unenunciated opportunity; which larger opportunity, once enunciated, entailed several specific problems to be overcome, one of which related to a need for having the inverter's output referenced to ground.

In Re Independent Claims 120 and 121

Examiner rejected claims 120 and 121 under 35 U.S.C. 102(b) as being anticipated by Rhoads.

Applicant disagrees with Examiner's interpretation of the term "external load". However, to overcome that disagreement, Applicant amended claims 120 and 121 so as to more clearly distinguish them from Rhoads.

Examiner also rejected claims 120 and 121 under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden.

Applicant traverses these rejections on basis of the various arguments provided above in connection with claim 118.

In Re Independent Claim 122

Examiner rejected claim 122 under 35 U.S.C. 103 as being unpatentable over Rhoads in view of the British reference or Walden and Locklair.

Applicant traverses this rejection for the same reasons as were provided in connection with claim 118 above.

In Re Independent Claim 124

Examiner rejected claim 124 under 35 U.S.C. 102(b) as being anticipated by Locklair.

Examiner justifies his rejection by saying that the "recitations relating to a gas discharge lamp are given no patentable weight since the lamp is not part of the claimed combination".

Applicant disagrees with Examiner on two counts:

i) There is no statutory basis for Examiner not to give patentable weight to the recitations relating to a gas discharge lamp. By way of the claim's preamble, a gas discharge lamp has been clearly identified as being a key part of the invention -- if for no other reason that the circuit must obviously function to ballast a gas discharge lamp; something that the Locklair circuit is not capable of doing.

ii) Examiner errs when he states that "the lamp is not part of the claimed combination. The claim (before amendment) comprised the following element: "connect means for connecting said gas discharge lamp in circuit with said series-combination".

Where in Locklair's circuit would Examiner propose to connect a gas discharge lamp? -- And why?

Examiner should note that the Locklair circuit would not function as a ballasting circuit.

Never-the-less, to provide for even clearer distinction between the claimed invention and the Locklair reference, Applicant has amended claim 124.

In Re Dependent Claim 125

Examiner rejected claim 125 on the same basis as he rejected claim 124; and Applicant traverses this rejection on basis of the same arguments he used in traversing the rejection of claim 124.

In Re Independent Claim 126

Examiner rejected claim 126 under 35 U.S.C. 102(b) as being anticipated by Locklair.

Applicant cancelled claim 126 and substituted in its place new claim 129.

Claim 129 basically relates to an inverter: i) being operable to provide its output power by way of a sinusoidal output voltage, and ii) having a tuned L-C combination in circuit with its output. The inverter is made to oscillate by way of positive feedback from the inverter's output, with this positive feedback being provided by way of saturable inductor means in cooperation with the tuned L-C combination.

Examiner is asked to note that this claim is a so-called Jepson-type claim; and all the restrictions identified in the preamble applies to the claimed invention. Hence, by way of specifying sinusoidal inverter output voltage, the Locklair circuit is excluded from consideration. (The Locklair circuit provides for a squarewave output voltage. The frequency control feedback circuit uses sinusoidal current by way of rectifier means and relatively high-resistance means [5100 Ohm] to provide DC control current supposedly operative to affect the saturation characteristics of the saturable feedback transformer.)

In Re Independent Claims 127 and 128

Examiner rejected claims 127 and 128 under 35 U.S.C. 102(b) as being anticipated by Locklair.

Applicant has amended claims 127 and 128, thereby to clearly distinguish over Locklair.

In respect to possible rejection on basis of obviousness, Applicant refers to the arguments provided in connection with claim 118 above.

CONCLUDING REMARKS

Based on the amendments and arguments provided hereinabove, Applicant believes that all the claims as presently constituted are allowable over the cited art. However, if Examiner is disposed toward a contrary opinion, Applicant requests that Examiner call Applicant on the telephone before formulating a final decision; thereby, in the interest of efficiency of prosecution, to attempt to arrive at an expeditious and mutually satisfactory disposition of subject application.

Ole K. Nilssen, Applicant

312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 556 426 | 8/27/84 | NILSSEN | — |

| EXAMINER | |
|---|---|
| BEHA | |
| ART UNIT | PAPER NUMBER |
| 212 | 37 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Nilssen (3) ______

(2) Ex. Beha (4) ______

Date of Interview 6/21 + 6/24/85

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: ______

Agreement ☑ was reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: ALL

Identification of prior art discussed: Fig. 1 of the British reference; Fig. 1 of Locklair.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Mr. Nilssen agreed to withdraw claims 118, 120, 121, 122, 124 and 125 from consideration for the purpose of expediting the prosecution of claims 127-129 to allowance. Mr. Nilssen reserved the right to file a continuation or division (voluntary) of the withdrawn claims in the future. As to claims 127-129, Mr. Nilssen emphasized the novelty thereof being in the combination of the LC circuit with a saturable reactor.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate reocrd of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

William A. Beha
Examiner's Signature

82-3809 PTOL-413 (rev. 1-81)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/644,155 | 08/27/84 | NILSSEN | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 37 |

DATE MAILED: 07/16/85

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[ ] This application has been examined [✓] Responsive to communication filed on 4-22-85 [✓] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [✓] Examiner Interview Summary Sheet,

Part II SUMMARY OF ACTION

1. [✓] Claims 118, 120-122, 124, 125 & 127-129 are pending in the application.

   Of the above, claims 118, 120-122, 124 + 125 are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.
3. [ ] Claims ______ are allowed.
4. [✓] Claims 127-129 are rejected.
5. [ ] Claims ______ are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

PTOL-326 (Rev. 7-82)

EXAMINER'S ACTION

In accordance with the attached Examiner Interview Record, claims 118, 120, 121, 122, and 124 are withdrawn from consideration, applicant reserving the right to file a continuing application including said claims. Applicant is requested to cancel these claims in responding to this Office action.

The title of the invention is not descriptive. A new title is required that is clearly indicative of the invention to which the claims are directed. The title should emphasize the novelty of the remaining claims.

Claims 127-129 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In essence the claims are misdescriptive and confusing. As to the preambles of claims 127 and 128, as well as to the second and third last lines of claim 129, it is misdescriptive to claim "a substantially sinusoidal AC voltage across a pair of [inverter] output terminals" when the disclosure only supports a trapazoidal voltage across inverter output terminals 9(Fig. 2 point M to ground point 37; and Fig. 3A). Compare also the conflicting recitation of a "substantially trapazoidal waveshape" across said terminals, as earlier recited in claim 122, line 4. Thus, there is no support for claiming "a substantially sinusoidal AC voltage across a pair of [inverter] output terminals", and consequently this recitation should be changed.

With further reference to claims 127 and 128, the phrase covering the last three lines is misdescriptive or at best confusing. During the prosecution of these and similar claims in the past, applicant has taken pains to clearly distinguish the inverter frequency determined by the saturable core from the resonant frequency of the LC circuit. It is therefore inconsistent with applicant's earlier positions and also misdescriptive or at best confusing to now claim that the inverter frequency is somehow "co-determined" by the combined saturable inductor and the resonant circuit. This confusion should be resolved by clearly claiming the operative relationships of the saturable inductor and the resonant circuit by means of structure.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless-
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claim 129 is rejected under 35 U.S.C. 102(b) as being anticipated by Figure 6 of Pintell or fig. 1 of Locklair.

With reference to pertinent features of claim 129, figure 6 of Pintell shows a pair of output terminals

across secondary winding 612, series resonant LC circuit 616, 617 and positive feedback means comprising saturable transformer 620. The inverter frequency determined by saturable transformer 620 is approximately equal to the natural resonance frequency of the series LC circuit (column 5, lines 15-20).

As to Locklair, reference is made to the last Office action for what the reference shows. As to applicant's Remarks filed April 22, 1985, page 10, it suffices to say that applicant's inverter also provides a squarewave output voltage (fig. 3A).

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 127 and 128 are rejected under 35 U.S.C. 103 as being unpatentable over Pintell in view of Walker.

As explained above, Pintell discloses a self-oscillating inverter as recited, but connects a load in series with the resonance circuit. In contrast, the claims call for load "connect means" in parallel with at one component of the resonance circuit (claim 127), that component being a capacitor (claim 128).

But in the lamp art it is common to connect the lamp load across the capacitor of an output series resonant circuit; see figures 1, 5 and 6 of Walker. To so provide Pintell would have been obvious where a lamp load was either required or desired.

Claim 129 is rejected under 35 U.S.C. 102(b) as being anticipated by fig. 2 of Corry.

figure 2 of the reference meets all of the broad limitations of the claims.

As demonstrated by the cited art, the claims are simply too broad to define over seemingly different self-oscillating inverters from those disclosed by applicant's figures 2 and 7. Note, for example that none of claims 127-129 even recite the type of inverter (e.g. half-bridge, double-ended, etc.) or the type of switch (transistor) used in the inverter. Nor do the claims specify the load current feedback aspect between the inverter frequency- setting saturable inductor and the resonant circuit (which in claims 128 and 129 need not even be series-connected). Then too a significant feature is the quarter cycle conduction of transistors 42 and 43 in relation to the frequency of the LC circuit

as shown in figures 3B and 3D, which is also not claimed.

It appears to the examiner that allowable subject matter exists if it were claimed by adding at least the features mentioned above. Thus, claims amended to contain all limitations set forth above will be given favorable consideration in the next Office action.

Applicant's amendment necessitated the new grounds of rejection. Accordingly, THIS ACTION IS MADE FINAL. See MPEP 706.07(a).

Applicant is reminded of the extension of time policy set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5052.

Beha/dmm

7/12/85

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

SERIAL NO. 644155 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 37

NOTICE OF REFERENCES CITED

APPLICANT(S) NILSSEN

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 3026486 | 3-62 | PINTELL | 331 | 113 A | |
| | B | 3141110 | 7-64 | CORRY | 351 | 113A | |
| | C | 4071812 | 1-78 | WALKER | 363 | 17 | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

R

S

T

U

EXAMINER Wm Beha | DATE 6/25/85

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

21C

38/J.(NE) Sudger) 8-1-85

MAIL ROOM JUL 24 1985 U.S. PATENT & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED JUL 26 1985 GROUP 210

Patent application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/644,155
Filed: 08/27/84
Group Art Unit: 212
Examiner: BEHA, WILLIAM H.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS 7-21-85

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 07/16/85

INTRODUCTORY COMMENTS

During the telephone interviews referred to in subject Office Action, Applicant agreed to cancel claims 118, 120-122 and 124-125 while being under the impression that claims 127-129 were essentially allowable. However, in his latest office action, Examiner rejected claims 127-129. Moreover, Applicant can not see any way in which claims 127-129 can be modified so as to become both allowable and valuable. (Applicant has a strong aversion to obtaining "junk" claims -- i.e., claims that are so narrow as to afford virtually no useful protection, or claims that most any inventor familiar with the art can invent around.)

In reviewing the situation, Applicant has decided that -- in order to attain the most valuable patent coverage available from subject application -- the most reasonable path to pursue is that of focusing on the following basic inventive concept:

"Electronic frequency converter means powered from an ordinary electric utility power line by way of a pair of input terminals and operative to provide a substantially sinusoidal output voltage across a pair of output terminals, the frequency of said output voltage being substantially different than that of the voltage on said power line, one of said output terminals being electrically connected with one of said input terminals."

In view of that concept, as well as with reference to the claims provided hereinbelow, the following new title in proposed.

"FREQUENCY CONVERTER HAVING SINUSOIDAL INPUT-REFERENCED OUTPUT".

IN THE CLAIMS

Please cancel claims 118, 120-122, 124-125 and 127-129 in their entirety and substitute the following new claims in their place.

130. An arrangement comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output; and

inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a pair of AC output terminals, one of said AC output terminals being electrically connected with one of said AC input terminals, said inverter circuit comprising an L-C tank circuit having a capacitor and an inductor, said tank circuit being resonant at or near said relatively high frequency, one terminal of said capacitor being connected with one of said AC output terminals.

131. In an inverter adapted to be powered from a DC source having a center-tap and to provide an essentially squarewave voltage output, said DC source being connected with and powered from an ordinary electric utility power line by way of a pair of supply conductors, said center-tap being electrically connected with one of said supply conductors, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said squarewave voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination: i) having a natural resonance frequency that is equal to or near the fundamental frequency of said squarewave voltage output, ii) and being operative to provide a substantially sinusoidal voltage across a pair of output terminals.

132. The improvement of claim 131 wherein one of said output terminals is connected with said center-tap.

133. The improvement of claim 132 wherein said center-tap is grounded.

134. A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals; and

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, one of these AC output terminals being electrically connected with one of said AC input terminals.

135. A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals, said squarewave voltage having a fundamental frequency that is substantially higher than the frequency of the voltage on said power line; and

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, the frequency of this sinusoidal voltage being equal to said fundamental frequency, one of the AC output terminals being connected with one of said AC input terminals by way of an impedance means that represents an effective short circuit at said fundamental frequency.

CONCLUDING REMARKS

Due to the misunderstanding resulting from the referenced telephone interviews, Applicant mistakenly told Examiner to cancel claims 118, 120-122 and 124-125, which claims in effect represented the invention now claimed in the new claims 130-135.

As a result, Applicant was deprived of Examiner's response in respect to the merits of these cancelled claims. Consequently, due to the misunderstanding, Applicant believes that Examiner should withdraw the finality of his latest Office Action.

All the new claims presented hereinabove should be allowable over the art of record.

Ole K. Nilssen, Applicant

Date: 7-21-85

312-658-5615

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/644,155 | 08/27/84 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 39 |

DATE MAILED: 08/05/85

Below is a communication from the EXAMINER in charge of this application.

COMMISSIONER OF PATENTS AND TRADEMARKS

## ADVISORY ACTION

☑ THE PERIOD FOR RESPONSE ~~IS EXTENDED~~ CONTINUES TO RUN 3 MONTHS FROM THE DATE OF THE FINAL REJECTION. 855 O.G. 1109.

☐ Appellant's Brief is due in accordance with Rule 192 (a).

Applicant's response to the final rejection, filed ______, has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☑ The proposed amendments to the claim and/or specification will not be entered and the final rejection stands because:

a. ☐ There is no convincing showing under Rule 116(b).
b. ☑ They raise new issues that would require further consideration and/or search.
c. ☐ They raise the issue of new matter.
d. ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.
e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

2. ☐ Newly proposed or amended claims ______ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☐ Upon the filing of an appeal, the proposed amendment ☐ will be ☐ will not be, entered and the status of the claims in this application would be as follows:

a. ☐ Claims ______ would be allowable.

b. ☐ Claims ______ would not be allowable.

However:

(1) ☐ The rejection of claims ______ on references is deemed to be overcome by applicant's response.
(2) ☐ The rejection of claims ______ on non-reference grounds only is deemed to be overcome by applicant's response.

4. ☐ The affidavit, exhibit or request for reconsideration has been entered but does not overcome the rejection.

5. ☐ The affidavit or exhibit will not be admitted because applicant has not shown good and sufficient reasons why it was not earlier presented.

6. ☐ The application having been examined under the special accelerated examining procedure (M.P.E.P. 708.02), the proposed amendment has not been considered since it does not prima facie place the application in condition for allowance or in better condition for appeal.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

40/and S.
11-21-85
L. Lyons

21C

38/J(NLE) Audger
8-1-85

MAIL ROOM JUL 24 1985 PAT. & TRADEMARK OFFICE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
JUL 26 1985
GROUP 210

In patent application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/644,155
Filed: 08/27/84
Group Art Unit: 212
Examiner: BEHA, WILLIAM H.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS 7-21-85

Ole K. Nilssen

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 07/16/85

INTRODUCTORY COMMENTS

During the telephone interviews referred to in subject Office Action, Applicant agreed to cancel claims 118, 120-122 and 124-125 while being under the impression that claims 127-129 were essentially allowable. However, in his latest office action, Examiner rejected claims 127-129. Moreover, Applicant can not see any way in which claims 127-129 can be modified so as to become both allowable and valuable. (Applicant has a strong aversion to obtaining "junk" claims -- i.e., claims that are so narrow as to afford virtually no useful protection, or claims that most any inventor familiar with the art can invent around.)

In reviewing the situation, Applicant has decided that -- in order to attain the most valuable patent coverage available from subject application -- the most reasonable path to pursue is that of focusing on the following basic inventive concept:

"Electronic frequency converter means powered from an ordinary electric utility power line by way of a pair of input terminals and operative to provide a substantially sinusoidal output voltage across a pair of output terminals, the frequency of said output voltage being substantially different than that of the voltage on said power line, one of said output terminals being electrically connected with one of said input terminals."

In view of that concept, as well as with reference to the claims provided hereinbelow, the following new title in proposed.

"FREQUENCY CONVERTER HAVING SINUSOIDAL INPUT-REFERENCED OUTPUT".

IN THE CLAIMS

Please cancel claims 118, 120-122, 124-125 and 127-129 in their entirety and substitute the following new claims in their place.

130. An arrangement comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output; and

inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a pair of AC output terminals, one of said AC output terminals being electrically connected with one of said AC input terminals, said inverter circuit comprising an L-C tank circuit having a capacitor and an inductor, said tank circuit being resonant at or near said relatively high frequency, one terminal of said capacitor being connected with one of said AC output terminals.

131. In an inverter adapted to be powered from a DC source having a center-tap and to provide an essentially squarewave voltage output, said DC source being connected with and powered from an ordinary electric utility power line by way of a pair of supply conductors, said center-tap being electrically connected with one of said supply conductors, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said squarewave voltage output being provided between said center-tap and said mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination: i) having a natural resonance frequency that is equal to or near the fundamental frequency of said squarewave voltage output, ii) and being operative to provide a substantially sinusoidal voltage across a pair of output terminals.

132. The improvement of claim 131 wherein one of said output terminals is connected with said center-tap.

133. The improvement of claim 132 wherein said center-tap is grounded.

134. A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals; and

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, one of these AC output terminals being electrically connected with one of said AC input terminals.

135. A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals, said squarewave voltage having a fundamental frequency that is substantially higher than the frequency of the voltage on said power line; and

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, the frequency of this sinusoidal voltage being equal to said fundamental frequency, one of the AC output terminals being connected with one of said AC input terminals by way of an impedance means that represents an effective short circuit at said fundamental frequency.

CONCLUDING REMARKS

Due to the misunderstanding resulting from the referenced telephone interviews, Applicant mistakenly told Examiner to cancel claims 118, 120-122 and 124-125; which claims in effect represented the invention now claimed in the new claims 130-135.

As a result, Applicant was deprived of Examiner's response in respect to the merits of these cancelled claims. Consequently, due to the misunderstanding, Applicant believes that Examiner should withdraw the finality of his latest Office Action.

All the new claims presented hereinabove should be allowable over the art of record.

Ole K. Nilssen, Applicant

Date: 7-21-85

312-658-5615

MAIL ROOM OCT 15 1985 PAT. & TRADE.

170.00 - 201 - H
17.00 - 202 - H

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

787692

501

In re Patent Application for: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/644,155
Filed: 08/27/84
Group Art Unit: 212
Examiner: BEHA, WILLIAM H., JR.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 10-11-85

APPLICATION FOR CONTINUATION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Commissioner:

In response to Office Action dated 08/05/85, (Paper No. 39), Applicant herewith applies for continuation under paragraph 1.62 of Rules of Practice in Patent Cases.

In support of subject application, Applicant filed an amendment (Amendment B) which was not entered by Examiner.

Applicant herewith requests that this Amendment B be entered.

Enclosed herewith is a Verified Statement Claiming Small Entity Status and a check (#889) for the filing fee in the amount of $187.00

Ole K. Nilssen, Applicant

Date: 10-11-85

Phone: 312-658-5615

MAIL ROOM
OCT 15 1985
41
PAT. & TRADEMARK

Applicant or Patentee: Ole K. Nilssen
Serial or Patent No.:
Filed or Issued:
For:

Attorney's Docket No.:

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled INVERTER CIRCUITS described in

[ ] the specification filed herewith
[X] application serial no. 06/644,155, filed 08/27/84
[ ] patent no. , issued

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[X] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole Kristian Nilssen
ADDRESS Caesar Drive, RR-5, Barrington, Illinois 60010
[X] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 10-11-85 | | |
| Date | Date | Date |

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | O |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 41 |

DATE MAILED: 12/09/85

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined [ ] Responsive to communication filed on ______ [ ] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), —— days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of Informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 130 – 135 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.
3. [ ] Claims ______ are allowed.
4. [✓] Claims 130 – 135 are rejected.
5. [ ] Claims ______ are objected to.
6. [ ] Claims ______ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

Applicant has not complied with one or more of the following conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120:

The continuing application must contain a specific reference to the parent application(s) in the specification..

Claims 130-135 remain in the case.

Claims 130-135 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In essence, the claims are misdescriptive, confusing and incomplete. As to claim 130, providing a sinusoidal voltage at a pair of AC output terminals is misdescriptive since the disclosure as filed only supports a trapazoidal voltage across the inverter output terminals (figure 2, point M and ground, and figure 3A).

Moreover, as to claims 130-135, claiming a substantially square wave output at the inverter output terminals is also misdescriptive since figure 3 A shows a trapazoidal wave, with rise and fall times V and II being finite. A wave having finite rise and fall times does not come under the definition of a "substantially square wave" a wave characterized by a lack of rise and fall times.

Still further as to claim 130, it is noted that it is incomplete, the LC circuit "dangling" with no apparent relationship to the rest of the inverter or to any output terminals. As to the recitation of "one of said AC output terminals 'being electrically connected with one of said AC input terminals'", it is difficult to imagine what this means since every element in figure 2 is powered

by and thus "electrically connected "with the AC input terminals. Thus this recitation is confusing. Claims 131-133 suffer the same defect.

Assuming however, that the phrase may mean physically and directly connecting an AC input terminal with an AC output terminal; this phrase then becomes misdescriptive of figure 2, since such relationship does not occur upon the application of 240 volts through a bridge rectifer (27-31) to the inverter.

As to claim 131, it is misdescriptive to call capacitors 34-36 a DC source and switches 42, 43 an inverter; capacitors 34, 36 are part of half-bridge inverter and must be grouped as such (see figure 5 of Walden). Moreover, the second paragraph fails to define the output terminals with relation to the LC circuit or the inverter. The claim also lacks the rectifier means to supply DC. Thus the claim is incomplete.

Claim 134 is also incomplete, failing to associate the output terminals with the LC circuit and with the "inverter output terminals". Moreover, it is not seen why the LC circuit is part of the inverter in claims 130 and it is part of an inverter output circuit in claim 134 and also claim 135. This loose use of circuit designations and interconnections is confusing.

With reference to claim 135, this claim is utterly confusing when viewed in light of the prosecution history. First applicant took pains to define the inverter frequency determined by the saturable core from from the resonant frequency of the LC circuit. Thereafter (claims 127, 128) applicant maintained that the inverter fre-

quency is somehow co-determined by the combined saturable inductor and resonant circuit. New claim 135 puts this issue back to square one. Moreover, the last three lines are meaningless.

The time has come to stop quibbling over this issue using semantics and to amend the claims using structure, e.g., the saturable reactor and the LC circuit, as well as the relationship therebetween. Anything less will not meet the Section 112, paragraph 2 requirement. In its present form, therefore, claim 135 is structurally incomplete utterly confusing and basically functional.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 130 and 134 are rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden and Elms.

Fig. 2A of Rhoads discloses the combination of rectifier means BR1 and a half bridge inverter Q1, Q2 and

C1, C2 to be old. Switch S1 determines whether the full bridge rectifier BR1 supplies its output across the series connected capacitors C1, C2. When connected as a voltage doubler switch S1 connects one AC input terminal to the junction of capacitors C1, C2.

The claims differs from Rhoads by calling for an LC tank circuit connected across the inverter output terminals. But this difference is shown by Schultz (fig. 1). And to place an output terminal near an input termin-is taught by Elms, terminal 30.

Claims 130, 134 and 135 are rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Steigerwald et al.

Except for the claimed LC circuit the claims are met by Rhoads. But Steigerwald et al. show a resonant tank circuit of the type claimed and to use same for a specific load (cooking) would have been obvious. It is noted that the claims are drawn to any load, thus a circuit having the claimed features for a specific load is pertinent to the broadly claimed terminals.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Laudis shows a DC source with a grounded center tap.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number (703) 557-5052.

Beha/vsh
(703) 557-5052
12-05-85

William H. Beha

WILLIAM H. BEHA JR
SENIOR EXAMINER
GROUP ART UNIT

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON.

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

**NOTICE OF REFERENCES CITED**

SERIAL NO. 787 692 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 4

APPLICANT(S): NILSSEN

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 4215392 | 7-80 | RHOADS | 363 | 143 | 12-19-78 |
| ✓ | B | 3026486 | 3-62 | PINTELL | 331 | 117 | |
| | C | 2971166 | 2-61 | SCHUTZ | 363 | 132 | |
| | D | 4426564 | 1-84 | STEIGERWALD ET AL | 363 | 132 | 12-26-79 |
| | E | 3733541 | 5-73 | ELMS | 363 | 37 | |
| | F | 3331011 | 7-67 | LANDIS | 363 | 136 | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER: WM Behn | DATE: 12/2/85

*A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

# The following was found to be missing from the Official PTO File Wrapper

Paper # 42

DIGIPAT®

PATENT / TRADEMARK DOCUMENT & RESEARCH SERVICES

Your source for complete patent and trademark services.

2001 Jefferson Davis Highway, Suite 1111, Arlington, VA 22202

Phone: 703-413-3667 800-362-5950
Fax: 703-413-3668 888-362-3657

www.digipat.com

#43 Return of Papers

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

MAILED
MAR 2 8 1986
DIRECTOR GROUP 210

DATE: March 25, 1986

TO: Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

FROM: Gerald Goldberg
Director, Group 210

SUBJECT: RETURN OF PAPER UNDER 37 CFR 1.3
SERIAL NO. 06/787,692

Returned herewith is applicant's Amendment A (Paper No. 42) filed March 10, 1986 in patent application Serial Number 06/787,692. Said paper is returned to applicant under 37 CFR 1.3 for failure to conduct business with the U. S. Patent and Trademark Office with decorum and courtesy.

Examples of applicant's failure to conduct business with decorum and courtesy are found in the following excerpts from Paper No. 42:

Page 4, lines 41-42:

> "As is well known among those who are competent in the art of inverters,"

Page 5, paragraph 1:

> "When Examiner states ---- he demonstrates a gross lack of understanding of basic electrical engineering."

Page 8, lines 27-29:

> "It is evident from Examiner's remarks that he has very little understanding of basic electronic circuits: too little to permit him to properly prosecute instant application."

Page 9, paragraph 1:

> n) It appears to Applicant that Examiner's understanding of the art of inverters and electronic circuits is far too limited to permit effective prosecution of the instant application; which limited understanding has resulted in the raising and handling of a large number of unnecessary issues.

Page 11, paragraph 2:

> Applicant encloses a copy of his latest letter to the Commissioner, and suggests that Examiner read it: it would be conducive to more effective prosecution of this and future applications. Also, Applicant would be interested in hearing any comments Examiner might have in respect to the proposals contained in the letter.

The last Office action mailed December 9, 1985 set a shortened statutory period for response to expire three (3) months from the date thereof. Applicant's response was timely filed on March 10, 1986 with a certificate of mailing.

Following is a suggested format for the certificate of mailing under 37 CFR 1.8(c) which should be included with all correspondence:

"I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on....." .

Name of applicant, assignee, or registered representative

Signature

Date

APPLICANT IS GIVEN ONE (1) MONTH FROM THE DATE OF THIS LETTER IN WHICH TO FILE A PROPER RESPONSE TO THE OUTSTANDING OFFICE ACTION OF DECEMBER 9, 1985.

Gerald Goldberg
GERALD GOLDBERG
DIRECTOR, GROUP 210

MAIL ROOM APR 3 1986 PAT. & TRADE MARK

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#44 Bowling 4/14/86

RECEIVED APR 07 1986 GROUP 210

In re application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: BEHA, WILLIAM H.

RECEIVED APR 9 1986 DIRECTOR, GROUP 210

AMENDMENT A

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Pursuant to letter from Director of Group 210 dated 03/26/86, Applicant herewith provides the following sanitized response to Office Action dated 12/09/85.

COMMENTS RE PROCEDURE AND AUTHORITIES

For purpose of convenient reference, Applicant herewith identifies the following provision from Manual of Patent Examining Procedure (MPEP). (The underlining is provided by Applicant.)

706.02: "After indicating that the rejection is under 35 U.S.C. 103, there should be set forth (1) the difference or differences in the claim over the applied reference(s), (2) the proposed modification of the applied reference(s) necessary to arrive at the claimed subject matter, and (3) an explanation why such proposed modification would be obvious"

Also, Applicant directs Examiner's attention to the following quotations from various court interpretations (Authorities) in respect to patentability under 35 U.S.C. 103. Several of these Authorities (#1-#6) were provided to Applicant by the Assistant Commissioner for Patents and represented by him as being the Authorities relied upon by the PTO in determining patentability under 35 U.S.C. 103.

#1. "patentable invention may lie in discovery of source of problem even though remedy may be obvious once source of problem is identified" (In re Sponnoble, 405 F.2d 578, 160 USPQ 237, 1969);

#2. "A patentable invention within the ambit of 35 U.S.C 103 may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the result inherent in their use" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

#3. "Where unobvious aspect of invention resides in recognition of source of problem, Patent Office inquiries should be directed, in part at least, to question of whether such a recognition would have been obvious to one of ordinary skill in the art; inquiry must go beyond the nature of the solution" (In re Roberts, 470 F.2d 1399, 176 USPQ 313, 1973);

#4. "we also believe that a more proper, albeit not exclusive, inquiry in a case such as this is to look further as to the reasons for making the combination" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

#5. "If there is no evidence that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem, which is claimed as an improvement of prior art device, would have been obvious to that hypothetical person". (In re Nomiya, 184 USPQ 608, 1975)

\- #6. "There must be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand, or use of teaching as evidence of obviousness will entail prohibited hindsight". (In re Nomiya, 184 USPQ 608, 1975)

#7. Application of Miller (57 CCPA 809, 418 F2d 1392, 164 USPQ 46) affirming the patentability of a "new use of a known process, machine, manufacture, composition of matter, or material".

#8. In re Gordon (221 USPQ 1125 -- Fed. Cir. 1984), especially as discussed in an article by Alton D. Rollins (Primary Examiner, Art Unit 129) in the May (1984) issue of Journal of the Patent Office Society.

#9. In Richdel, Inc. v. Sunspool Corp. (714 F.2d 1573 -- Fed Cir. 1983), Chief Judge Markey presented a detailed rejection of the doctrine of combination patents: "It was error for the district court to derogate the likelihood of finding patentable invention in a combination of old elements. No species of invention is more suspect as a matter of law than any other. Attempted categorization for the purpose of determining various "rules" detracts from what should be the sole question: whether the claimed invention would have been obvious within the meaning of paragraph 103. Most, if not all, inventions are combinations and mostly of old elements".

#10. In Adams (356 F.2d 998 -- CCPA 1966), the Board (of Appeals) was reversed because "neither reference contains the slightest suggestion to use what it discloses in combination with what is disclosed in the other." (356 F.2d at 1002)

#11. In Imperato (486 F.2d 585 -- CCPA 1973): although combining the references' teachings yielded the result claimed, the CCPA held that the combination was not obvious "unless the art also contains something to suggest the desirability of the combination".

#12. In Sernaker (702 F.2d at 995-96), the CAFC interpreted Imperato to mean that "prior art references in combination do not make an invention obvious unless something in the prior art references would suggest the advantage to be derived from combining their teachings".

IN THE SPECIFICATION

On top of page 1 of the specification, please add the following statement.

K' --This application is a continuation of Serial No. 644,155 filed on 08/27/84, which was a continuation of Serial No. 555,426 filed on 11/23/83, which was a division of Serial No. 178,107 filed on 08/14/80.--

IN THE CLAIMS

In re Claims 130-135

Examiner rejected claims 130-135 under 35 U.S.C. 112, second paragraph.

Applicant traverses these rejections for the following reasons.

a) In the fifth paragraph on page 2 of his office action, Examiner makes the following statement:

"As to claim 130, providing a sinusoidal voltage at a pair of AC output terminals is misdescriptive since the disclosure as filed only supports a trapezoidal voltage across the inverter output terminals (figure 2, point M and ground, and figure 3A)."

Examiner is asked to look at Fig. 3D, wherein is depicted a "VOLTAGE ACROSS C"; which voltage is indeed sinusoidal. With reference to Fig. 2, this capacitor C is designated by the numeral 52 (see line 6 of the first paragraph on page 9 of the disclosure); which capacitor is connected directly across the inverter's output to the LOAD. Thus, there is indeed provided "a sinusoidal voltage at a pair of AC output terminals".

Hence, the above-referenced statement by Examiner is erroneous.

b) In the sixth paragraph on page 2 of his office action, Examiner makes the following statement:

"as to claims 130-135, claiming a substantially square wave output of the inverter terminals is also misdescriptive since figure 3 A shows a trapazoidal wave, with rise and fall times V and II being finite. A wave having finite rise and fall times does not come under the definition of a "substantially square wave" a wave characterized by lack of rise and fall times".

In response to this statement of Examiner, Applicant makes the following observations.

i) Claim 130 makes no reference to a "square wave voltage"; therefore Examiner's statement does not relate to claim 130.

ii) It is indeed true that Fig. 3A illustrates a trapezoidally-shaped wave. However, the "trapezoidalness" has been exaggerated for the purpose of clear description of what actually takes place during the transition period between the maximum negative amplitude to the maximum positive amplitude, and vice versa. In reality, as with virtually every inverter, the output voltage is a trapezoidal voltage with rise and fall times that are very short compared with the duration of a complete cycle. As is well known among those of ordinary skill in the art of inverters, although the inverter's output voltage in reality is of trapezoidal waveform, it is common to refer to it as a squarewave; and it would certainly be reasonable to refer to it as "a substantially squarewave voltage".

iii) When Examiner states that "a wave having finite rise and fall times does not come under the definition of a 'substantially square wave'", he makes a statement that Applicant believes to be totally erroneous and without foundation in the art of electrical engineering. A squarewave "characterized by lack of rise and fall times" simply does not and can not exist. Under presently known laws of physics, it is absolutely necessary that a squarewave have finite rise and fall times. There simply exist no inverter having a squarewave output voltage "characterized by lack of rise and fall times". Thus, so-called squarewaves actually and necessarily have trapezoidal or trapezoidal-like waveshape.

c) In the last paragraph on page 2 of the office action, Examiner refers to claim 130 and states that "the LC circuit is 'dangling' with no apparent relationship to the rest of the inverter".

In claim 130, there is a statement to the effect that "one terminal of said capacitor being connected with one of said AC output terminals"; which does provide for a relationship to the rest of the circuit.

In this connection, Applicant wishes to make clear that a claim should be read and interpreted in light of the specification.

However, if Examiner should find it desirable, Applicant would be willing to add a statement to claim 130 to the effect that the tank circuit is connected in circuit with the AC output terminals.

d) With reference to the last four lines on page 2 and the first three lines on page 3 of the office action, Examiner again refers to claim 130; and Applicant again refers to the need for interpreting the claim in light of the specification.

Examiner states that "every element of figure 2 is powered by and thus 'electrically connected' with the AC input terminals". Following that reasoning, every element and particle of the whole universe are "electrically connected" with each other, in that even the smallest motion of an electron transmits its effects into the vast regions of space, thereby making itself affect all other particles of matter in the universe.

Reading the claim in light of the specification should make it clear that "electrically connected" refers to direct or "wired" electrical connection.

If Examiner should find it necessary, Applicant would be willing to modify claim 130 such as to make it clear that "electrically connected" means "electrically connected substantially without any intervening impedance".

# The following was found to be missing from the Official PTO File Wrapper

Pages 6 & 7

DIGIPAT®

PATENT / TRADEMARK DOCUMENT & RESEARCH SERVICES

Your source for complete patent and trademark services.

2001 Jefferson Davis Highway, Suite 1111, Arlington, VA 22202

Phone: 703-413-3667
800-362-5950

Fax: 703-413-3668
888-362-3657

www.digipat.com

j) Also in the third full paragraph on page 3, Examiner states that "it is not seen why the L-C circuit is part of the inverter in claims 130 and it is part of an inverter output circuit in claim 134 and also in claim 135".

In this connection, Applicant wishes to point out that claim 130 comprises an "inverter circuit"; which inverter circuit, in turn, comprises "an L-C tank circuit".

On the other hand, claims 134 and 135 each comprise an "inverter" (note: not an "inverter circuit"), and this "inverter" does not (necessarily) comprise an L-C tank circuit.

Examiner is requested to read and interpret the claims more accurately, thereby to avoid much unproductive prosecution effort.

k) In respect to Examiner's statements in the last paragraph on page 3, Applicant makes the following observations:

i) Now as before, the inverter frequency as determined by the saturable core may or may not be the same as the resonant frequency of the L-C circuit. However, this issue is mostly irrelevant in connection with claim 135.

ii) Claim 135 states that "the frequency of this sinusoidal voltage being equal to said fundamental frequency"; which statement implies that the higher harmonics of the inverter's squarewave voltage output must have been filtered away, which indeed will be the case if the L-C circuit has a natural resonance frequency that is anywhere near that of the (fundamental frequency of the) squarewave output voltage.

l) In lines 3-4 on page 4 of the office action, Examiner states (in respect to claim 135) that "the last three lines are meaningless". To Applicant, the last three lines of claim 135 are perfectly clear. They deal with the issue of "physically and directly connecting an AC input terminal with an AC output terminal", as was raised by Examiner in the first full paragraph on page 3 of the office action.

m) In the first full paragraph on page 4 of the office action, Examiner in effect asserts that Applicant's claims do not contain enough structure to be allowable under Section 112, second paragraph. To this, Applicant contends that -- to any person of ordinary skill in the art of electronic inverters -- each individual element of each claim is readily understandable and attainable on the basis of present art. The required structure is provided by the various specified combinations of the various individual elements.

ARGUMENTS IN SUPPORT OF CLAIMS

In re Independent Claim 130

Examiner rejected claim 130 under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden and Elms.

Applicant traverses this rejection for the following reasons.

a) In the last two lines on page 4 and in the first line on page 5 of the office action, Examiner states that "Fig. 2A of Rhoads discloses the combination of rectifier means BR1 and a half-bridge inverter Q1, Q2 and C1, C2 to be old".

Applicant accepts that proposition; but so what?

b) In fact, Applicant is willing to accept that, if having the motivation for doing so, a person of ordinary skill in the art would be able to attain the invention of claim 130 from elements of the applied references.

However, in view of Authorities #5, #6, #10, #11 and #12, even if a claimed invention may be attained by combination the three applied references, there is no reason to consider this combination to be obvious except if:

i) (#5) there is evidence "that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist" -- the "problem" referring to the problem for which the claimed invention represents a solution;

(In this connection, it is obvious that the "problem" referred-to in #5 must be a problem that for its solution requires all the elements of the claimed invention. General (or "motherhood") problems which may be solved by a variety of different inventions obviously do not qualify as "problems" in the context of Authority #5.)

ii) (#6) there "be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand";

(What would that reason be? Examiner has provided no explanation, merely an assertion of obviousness.);

iii) (#10) at least one of the references contains a "suggestion to use what it discloses in combination with what is disclosed in the other" references;

iv) (#11) one of the references contains "something to suggest the desirability of the combination";

v) (#12) "something in the prior art references would suggest the advantage to be derived from combining their teachings".

However, Applicant can find no indication in any one of the three applied references to the effect that it would be advantageous to combine it with the teachings of the other two.

c) In view of Authority #9, it is irrelevant merely to show that a claimed invention can be attained by a "combination of old elements".

d) It is noted that the three references belong to three different patent classifications, indicating that they represent three entirely different arts. Thus, for this reason <u>in addition</u> to the reasons provided above, unless there are indications in the Rhoads reference to the effect that it would be desirable to combine the teachings therein with teachings like those provided by Walden and Elm, it is totally illogical to assert that the combination is an obvious one. In clear fact, the combination of the three references must be regarded as an arbitrary combination.

<u>CONCLUDING REMARKS</u>

In view of the arguments herein presented, it is clear to Applicant that all the claims are allowable over the cited art. However, as specifically indicated, Applicant would be willing to add some structure to some of the claims, if that were to be sufficient for Examiner to allow all the claims.

Applicant has more than 100 application pending at the Patent Office; and he has now reached the firm conclusion that the Patent Office is doing its mandated job with in a highly ineffective manner. Applicant has written to the Commissioner in respect to this problem, and has made specific suggestions for improvements, but has only obtained "Dear John" letters in return.

So, in order to bring about appropriate changes in the operating procedures of the Patent Office, Applicant has decided that he will routinely appeal improperly rejected claims -- without spending much time arguing with Examiners. If his claims are then similarly rejected by the Board of Appeals at the PTO, Applicant will then routinely bring his applications to the Court of Appeals for the Federal Circuit for a final decision.

Moreover, Applicant will present and argue his case for improving PTO procedures in whatever appropriate forum he can find, including the appropriate committee of Congress, in order to press for improvements.

Applicant encloses a copy of his latest letter to the Commissioner, and request of Examiner to read it as it contains arguments of a general nature significantly related to the prosecution of instant application.

Also, Applicant would be interested in hearing any comments Examiner might have in respect to the procedures proposed in the letter.

I, the Applicant, hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231 on 3-29-86.

Ole K. Nilssen, Applicant

Date: 3-29-86

312-658-5615

January 26, 1986

MAIL ROOM APR 3 1986 PAT. & TRADE MARK

OLE K. NILSSEN
CAESAR DRIVE
BARRINGTON, IL

Part of Paper # 44

RECEIVED
APR 07 1986
GROUP 210

Donald J. Quigg
Commissioner of Patents and Trademarks
Washington, DC 20231

Dear Mr. Quigg:

This letter concerns a significant problem relating to national productivity. The problem relates to the operation of the United States Patent and Trademark Office (PTO) and the effective cost of obtaining high quality patents therefrom.

The writer of this letter -- who, as indicated by the enclosed background material, is an inventor who personally owns and prosecutes about 0.25% of all patents presently pending at the PTO within the category of "ELECTRICAL" -- has a unique vantage point from which to view and evaluate the operation of the PTO, as well as to perceive some of the ramifications of this operation.

Purposes of this letter are: i) to enunciate the indicated problem and to bring it to your attention, ii) to present a proposed solution aimed at mitigating the problem, iii) to solicit your cooperation in attempting to improve this proposed solution, and iv) to induce you to implement the proposed solution or an improved version thereof.

The reason for directing the letter to your personal attention has its root in: i) the reading by the writer of one of your published articles and in the resulting judgement on his part that you might be conducive to appreciating and understanding the issues involved herein, and ii) the fact that the writer has on two previous occasions written to the PTO in respect to proposals for improving its procedures, but have only received letters (from Assistant Commissioner for Patents) indicating non-interest on part of the PTO.

THE PROBLEM

The indicated problem relates to the poor quality of patents normally resulting from the examination procedures used by the PTO. In particular, the writer alleges that the quality of patents issued by the PTO is very far from being as high as it reasonably could be, and results in the following consequences:

a) Inadequate protection for many significant inventions;

b) Far fewer significant patents than otherwise would be the case;

c) An excessive number of substantially worthless patents;

d) Excessive uncertainty as to the validity, coverage, and strength of patents; and

e) As consequence of above, a significantly lower national productivity as compared with what is potentially attainable.

While it is generally possible to attain good quality patents in spite of the limitations of the PTO, the cost in time and money makes it in most cases unattainable in reality.

The above-mentioned consequences are particularly important in view of the major problems presently encountered by large parts of American industry in terms of being "put out of business" by imports from foreign countries -- imports of products that were in many cases originally invented in the U.S. not so long before.

In fact, problems of competition from abroad based on technology invented in the U.S. have become serious even in the field of high technology products -- a field wherein U.S. companies used to have a completely dominant position.

Hence, for reasons additional to those already well recognized, the writer contends that the quality of the patents issuing from the PTO is of significant concern relative to our national interests.

THE GENERAL APPROACH TO SOLUTION

One potentially major weapon against unfair competition of this nature would be that of providing for the economically feasible possibility of attaining improved patent protection: improved in terms of permitting the cost-effective attainment of patents having stronger, clearer, broader, and more enforceable claims -- all completely within the confines of present statutes and recognized authorities.

In particular, from the writer's point of view, by improving the operating procedures of the PTO, it would clearly be possible to achieve a situation wherein it would be economically feasible for patentees to attain very much higher quality patents -- without imposing any unreasonable requirements on the PTO.

(Of course, an additional important weapon against such unfair competition from abroad could be had by modifying the statutes: by lengthening the term of patent protection. After all, why should a musical composition having little if any utilitarian value get protection for over 50 years; while a technological composition having utilitarian value (namely, an invention) get protection for only 17 years?)

QUALIFICATIONS OF THE WRITER

With reference to the enclosed background material, the writer has a graduate degree in electronics engineering from an accredited school and has had more than 20 years of industrial experience in the area of research, product development and engineering. Most of these years were spent in various project and/or R&D management positions with three different major U.S. corporations.

The writer has published a substantial number of papers in the field of electronic circuits and systems, and he has about 50 U.S. patents issued in his name.

Presently, the writer works full time in his own business, which is that of "making and marketing intellectual property". In particular, he has licensed a number of inventions to various companies and he is currently involved in efforts at licensing many more, as well as in efforts at generating and protecting still additional inventions suitable for licensing.

At the present time, the writer has about 95 patents pending at the PTO. He is personally the inventor behind each one of these pending patents, and he is personally responsible for all details of their prosecution. In this connection, he has had repeated occasions personally to deal with quite a number of different Examiners and to observe their salient characteristics: their similarities and differences in prosecution modus operandi.

The writer has found his overall productivity to be very severely reduced on account of inefficient prosecution of patent applications on part of the PTO.

The writer has verified the essential truth in the old cliche that there are as many standards of patentability as there are Examiners.

ELEMENTS OF PROBLEM

Key elements of the problem associated with the prosecution of patents through the PTO relate to the issue of perceiving and determining patentability under 35 U.S.C. 103.

From the writer's viewpoint, Examiners have been given discretionary authority far beyond their ability to handle in a responsible and efficient manner, particularly in view of their "productivity" constraints.

In order to understand the nature of the various elements of the problem, it is necessary to identify different key components of an invention.

For convenience in subsequent discussion, an invention may be accurately thought of as belonging to one of three types.

a) An invention may represent an unobvious solution to an obvious problem;

b) an invention may represent an obvious solution to an unobvious problem; or

c) an invention may represent an unobvious solution to an unobvious problem.

In this connection, it is to be understood: i) that an unobvious problem refers to any situation that was not perceived as a problem (or as an opportunity, for that matter) by a person of ordinary skill in the art at the time the invention was made, and ii) that an unobvious solution refers to any solution that could not expectedly have been provided (to a known or obvious problem) by a person of ordinary skill in the art at the time the invention was made.

As should be abundantly clear from fundamental reasoning, an invention representing a solution to an unobvious problem is just as much of an invention as is an invention representing an unobvious solution to an obvious problem; and -- according to authorities already recognized by the PTO -- such inventions are indeed both patentable.

In view of above definitions, the various elements of PTO's problem in connection with rationally determining patentability under 35 U.S.C. 103 may be identified.

As set forth below --MPEP 706.02 and/or "Graham v. John Deere Co." notwithstanding -- and judging on the basis of actual behavior by Examiners, the PTO does not in reality require their Examiners to rationally present and justify their decisions in respect to rejecting a claim under 35 U.S.C. 103.

1. Examiners generally do not clearly identify the art to which the claimed invention belongs. Without providing an express definition of this art, an Examiner is free to (and apt to) operate on a fuzzy and/or "floating" definition, thereby making it hard both for Examiner and Applicant to argue the case on a consistent and rational basis.

2. Examiners generally do not clearly identify the key characteristics of a person of ordinary skill in the defined art. Without providing an express definition of this person, an Examiner is free to (and apt to) operate on a fuzzy and/or "floating" definition, thereby making it hard both for Examiner and Applicant to argue the case on a rational basis.

3. Examiners generally do not provide a description of an obvious problem for which the claimed invention represents a solution. Without having an express description of such a problem, an Examiner is free to (and apt to) operate on a fuzzy and/or "floating" description, thereby making it hard both for Examiner and Applicant to argue the case on a rational basis.

In this connection, it is clearly not sufficient for Examiner just to describe a general problem for which many different inventions or combinations can provide solutions, including already patented inventions and/or available products. Rather, based on the authority of fundamental logic and straight-forward reasoning, it is clearly necessary to describe a problem that requires for its solution all of the features of the claimed invention.

This lack of appreciation for the necessity of defining a problem for which the claimed invention represents a solution represents perhaps the most important element of the overall problem associated with the alleged inefficient operation of the PTO.

4. Even if they do alledge an obvious problem to exist, Examiners generally do not provide evidence of the existence of such an obvious problem.

And, of course, absent evidence of such an obvious problem, it is wholly inappropriate to reject a claim under 35 U.S.C. 103.

5. Examiners generally do not provide a rationale for their selection and/or combination of references. Absent an express rationale to such effect, it becomes impossible to argue the case on a rational basis.

In this connection, Examiners generally do not identify a reasonable starting point for their considerations. Clearly, without having some sort of rational starting point (such as a quotation from a given reference), it is not going to be possible to provide a credible rationale for identifying and/or combining other references.

6. Examiners generally do not provide adequate explanations in respect to how they have in mind modifying and/or combining references in order to arrive at the claimed invention. Clearly, without knowing at least one way in which a set of references are supposed to be modified and/or combined, it becomes non-feasible for Applicant to argue the case on a rational basis.

In this connection, the writer can cite numerous cases presently under prosecution wherein Examiner argues that it is not required of him to provide details in respect to how to combine the applied references such as to attain the claimed invention. Yet, Applicant -- having much more than just ordinary skill in the art -- can not see any way in which the applied references can be combined in such manner as to achieve all the fetures of the claimed invention.

On the other hand, Applicant can see several ways in which a person of but average skill in the art might consider attempting to accomplish the combination, but where -- upon actually attempting to do so (even if just on paper) -- he would discover that for one or another (perhaps subtle) reason the combination could not be successfully completed.

Now, obviously, when a situation exists where an Examiner asserts that this and/or that reference can be modified and/or combined in such manner as to attain the claimed invention, and where several different possibilities for modification and/or combinations might exist, the burden must be on the Examiner to specifically and completely identify at least one specific modification and/or combination that attains all the features of the claimed invention. Otherwise, the burden on Applicant would be absolutely unreasonable: he would then have to attempt to guess and analyze every conceivable way in which Examiner might possibly have in mind to accomplish his proposed modification and/or combination.

7. Examiners at the PTO apparently operate on the general assumption that a person of ordinary skill in the art should be familiar in complete detail, not only with all the published art in his own field of expertise, but also with all the published art in all fields. Moreover, they apparently reason that this person of ordinary skill in the art has all of this art in his mind all of the time, thereby enabling him routinely to make any kind of obvious combinations from these many references.

This type of reasoning, which the PTO states as being based on authoritative court precedents, is clearly unreasonable (not to say totally ludicrous). It reveals a profound lack of understanding as to how the real world of engineering and invention operates. No one, not even the most extra-ordinary person, would have direct and detailed knowledge of more than a tiny fraction of all the published art in a given field of expertise, let alone of all the published art in all fields of expertise.

Based on this type of reasoning, Examiners argue that it is appropriate to combine any number of prior art references and argue obviousness on the basis of what this combination might reasonably suggest to a person of ordinary skill in the art.

Clearly, no person of ordinary disposition would spend a vast amount of time to look through a vast number of prior art references simply to see what combinations he could thereby identify.

Instead, a person of ordinary disposition would not seek to combine prior art references except if he had a rational motivation for doing so; and such rational motivation would have to be of such nature as to be clearly perceived and understood by this person.

CONCLUDING THOUGHTS IN RE PROBLEM

In respect to determining patentability under 35 U.S.C. 103, Examiners generally do not provide an evaluation analysis that is complete and rational. Far too large a part of the analysis is relegated to an unenunciated "gut feel" level; which level is not amenable to rational discussion and decision making.

As a result, to compensate for the uncertainties invariably resulting from such non-rational analysis, resulting patents generally become so encumbered with limitations as to be of little or no commercial value. Moreover, they become suspect as to validity.

It is the opinion of the writer that over 90% of all issued patents are of such nature as to be essentially worthless. In fact, they may be considered as having negative value in that they represent flak operative to obscure and derogate the value of the remaining patents.

[Of course, most patent attorneys can't be expected to care much, since their clients don't know the difference anyway. Thus, there exists a real cozy and mutually beneficial relationship between patent attorneys and patent examiners: the attorneys get their watered-down claims without much effort, thereby permitting them with minimal efforts to satisfy their mostly naive clients; and, on the other hand, the examiners don't have to spend much effort on the examination since the allowed claims are so special (and narrow) as to be almost certainly unobvious (as well as correspondingly worthless) to any person of ordinary skill in the art.]

ELEMENTS OF PROPOSED SOLUTION

The problems discussed above can be greatly mitigated by providing at the PTO an improved operating procedure in connection with evaluating a claimed invention for patentability under 35 U.S.C. 103.

Underlying the following considerations is the notion that it is not necessary for every Examiner to have the ability to think clearly in order to produce a high quality patentability examination; it is only necessary for the person in overall charge to think clearly, and to institute an operational procedure that minimizes the requirements of competence on part of the Examiners.

In particular, the writer proposes -- as a first and preferred alternative -- that the PTO adopt the following explicit procedure for evaluating a given invention in respect to patentability.

1. A first Examiner should be required to expressly define the art to which the claimed invention belongs.

2. This first Examiner should also be required to expressly define the key characteristics of a person of ordinary skill in the defined art.

3. Of course, to make the PTO procedure consistent and efficient, for most situations, the above definitions could be standardized and drawn from a library of "boiler-plate" expressions.

4. Then, the first Examiner should evaluate the claimed invention for novelty. And, if he finds the claimed invention to have been anticipated, or if finds it to be non-patentable for any reason other than for possible obviousness under 35 U.S.C. 103, the Examiner should so communicate to the Applicant.

5. However, if -- either initially or after amendments resulting from dealings with Applicant -- the first Examiner finds that the claimed invention would be patentable except for possible obviousness under 35 U.S.C. 103, he should be required to expressly identify the best "starting position" for a patentability evaluation under 35 U.S.C. 103. This "starting position" should generally be explicitly derived from a single reference drawn from the defined art; although it might perhaps, on some occasions, be appropriate to form the "starting position" by explicitly combining parts from two or more closely related references from the defined art.

6. Now, combined with the express definitions of the prior art and of the person of ordinary skill therein, the expressly identified "starting position" should be provided to a second Examiner, who -- without having been exposed to the invention under evaluation -- should be required to expressly identify any suggestions provided to him by the expressly identified "starting position". In so doing, the second Examiner should play the role of being the person defined as being of ordinary skill in the defined art.

Of course, based on what he finds in the material provided to him in the form of the "starting position", the second Examiner may now identify and use any number of additional references, including any number of persons of ordinary skill in the defined art.

After having studied the "starting position" and any references having resulted therefrom, the second Examiner should be required to provide an explicit description of the suggestions he had been able to perceive from the "starting position" provided him.

7. Then, if the second Examiner had indeed succeeded in arriving at the claimed invention (or the substantially equivalent thereof) from the "starting position" provided to him, it would be appropriate for the PTO to reject the claimed invention as being unpatentable under 35 U.S.C. 103. Otherwise, of course, the claimed invention would have to be allowed.

In the writer's opinion, the first and preferred alternative described by sections 1-7 above constitutes a realistic procedure for determining patentability under 35 U.S.C. 103. Its salient feature is that it would substantially eliminate the problem of hindsight in connection with evaluating a claimed invention. And, according to the experience of the writer, the (probably unwitting) reliance on hindsight constitutes a major and most insidious factor in such evaluation under PTO's present procedures.

However, if it were to turn out that the first and preferred alternative should be unacceptable, the writer suggests the following second alternative procedure for evaluating a given invention for patentability.

a) First, an Examiner should be required to expressly define the art to which the claimed invention belongs.

b) The Examiner should then be required to expressly define the key characteristics of a person of ordinary skill in the defined art.

c) Of course, as in the first preferred alternative, to make the PTO procedure consistent and efficient, for most situations, the above definitions could be standardized and drawn from a library of "boiler-plate" expressions.

d) Then, if Examiner finds that the claimed invention would be patentable except for possible obviousness under 35 U.S.C. 103, he should first investigate for "obviousness of problem". That is, he should attempt to identify an obvious problem for which the claimed invention represents a solution. However, this obvious problem <u>must be of such nature</u> as to require for its solution <u>all</u> of the features of the claimed invention.

If Examiner can not identify such an obvious problem, he can not reject the claimed invention under 35 U.S.C. 103.

However, if Examiner does succeed in identifying such an obvious problem, he must be required to provide an express decription of this problem, and he must provide evidence to the effect that this expressly described problem was indeed obvious to the defined person of ordinary skill in the defined art.

If he can provide no credible evidence to that effect, Examiner must allow the claimed invention.

e) On the other hand, if Examiner does succeed in substantiating "obviousness of problem", his next task must be that of attempting to establish "obviousness of solution". Thus, he must be required to expressly identify a "starting position" and a "trail of reason" clearly and obviously leading from the "starting position" to the claimed invention.

If Examiner finds it necessary to invoke more than a single reference in order to substantiate "obviousness of solution", he should be required to provide evidence to the effect that the additional reference(s) were suggested by the "starting position".

Also, Examiner should be required to provide an express description of at least one specific way in which the cited reference(s) can be modified and/or combined in such a way as to attain the claimed invention.

In the writer's opinion, the second alternative procedure described by sections a-e above -- while not as desirable as the first alternative procedure -- would represent a major improvement over the procedure presently used by the PTO.

CONCLUDING REMARKS

From the writer's perspective, the PTO presently operates at a very low level of effectiveness as compared with what is reasonably attainable with but modest changes in operating procedure. The result of this low effectiveness ultimately translates into reduced national productivity and competitiveness vis-a-vis foreign industry.

The main limitation in the PTO's present operating procedure relates to its methods for determining patentability under 35 U.S.C. 103. In particular, the presently used procedure gives rise to severe problems in connection with effects of hindsight.

The writer has proposed two alternative approaches for improving the PTO's operating procedure. Of these two, the writer prefers one that requires the use of two separate Examiners for each patent application: one Examiner would be used for doing the prior art definition and basic search; the other Examiner would thereafter have to attempt to attain the claimed invention from the result of the search -- without knowing the specific nature of the claimed invention.

Of the two proposed approaches, the preferred one would be the most cost-effective. In the writer's opinion, it would -- for results of a given quality -- significantly reduce the amount of Examiner man-hours required by the PTO for disposing of a typical patent application.

In conclusion, Mr. Quigg, the writer requests of you seriously to consider modifying PTO's operating procedure along the lines herein suggested. As a first step in such a direction, the writer would be willing to visit with you in Washington, thereby to permit a more in-depth discussion of the issues and proposed solutions.

Sincerely,

Ole K. Nilssen

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 45 |

DATE MAILED: 06/10/86

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined ☑ Responsive to communication filed on 4/3/86 ☑ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ______ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474
6. ☐ ______

**Part II SUMMARY OF ACTION**

1. ☑ Claims 130 - 135 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.
2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☑ Claims 130 - 135 are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ______. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).
10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ______, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ______; filed on ______.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

PTOL-326 (Rev. 7-82) EXAMINER'S ACTION

There being no amendment to the claims, claims 130-135 are rejected under 35 USC112, second paragraph for the reasons stated on pages 2-4 of the last Office action.

Similarly, claims 130, 134 and 135 are rejected under 35 USC 103 for the reasons stated on pages 4 and 5 of the last Office action.

Applicant's arguments filed April, 3, 1986 have been fully considered but they are not deemed to be persuasive.

At the outset, it is noted applicant has offerred to amend claim 130 without actually doing so (Remarks, page 5). The Office considers the claims as they are, not as they might be amended, and thus the hypothetical amendment will not be further considered.

As to the Remarks, page 4, para. (a), the AC output terminals are interpreted to mean the inverter output terminals across which a trapazoidal wave appears. It is appropriate to note here a common problem with applicant's claims giving rise to this type of confusion, namely, that claim 130 as well as the remaining claims are simply incomplete, failing to recite sufficient meaningful structure and interrelationships between the structure to "particularly point out and distinctly claim" the invention, including a relationship between AC output terminals and the inverter.

As to the issue of trapezoidal waveforms (pages 4 and 5), applicant himself has earlier claimed a trapezoidal waveshape, see for example claim 122. The loose, use of squarewave voltage and trapezoidal waveform in the same case remains confusing.

As to page 5, paragraph c, connecting an LC circuit to a node does not make a complete circuit.

As to page 5, paragraph d, claims are given their broadest reasonable consideration in prosecution before the Office, and it is believed that the examiner's interpretation is reasonable.

As to page 9 and the motivation issue, it would have been obvious to use a voltage multiplier/full wave rectifier arrangement feeding an inverter for use with diverse input voltage sources, as in Rhoads. Any connection to ground as a result of this expedient follows naturally and thus obviously from the use of such a well known input rectifier/multiplier arrangement.

Lastly, as to the argument about non-analogous art (page 10), it suffices to say that the three references are all classified in Class 363, the conversion art, and that one skilled in the conversion art would be expected to know their content, their teachings and their suggestions.

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5052.

Beha/dc

703/557/5052

6/4/86

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

65.00-219-GP-212

MAIL ROOM SEP 8 1986 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

SM 9-13-86

RECEIVED

SEP 12 1986

GROUP 210

46/Notice of Appeal

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filed: 10/15/85
Art Unit: 212
Examiner: WILLIAM H. BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 09-07-86

NOTICE OF APPEAL

88-3439

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Office Action dated 06/10/86, Applicant herewith files Notice of Appeal in re subject application.

A check (#1087) for the requisite fee of $65.00 is enclosed.

Ole K. Nilssen, Applicant

Date: Sep. 7, 1986

312-658-5615

050 09/12/86 787692 1 219 65.00 CK

LOC 21D 21X Stat *65 220 Gp 212

MAIL ROOM SEP 8 1986 U.S. PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

SEP 15 1986

21X

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filing Date: 10/16/85
Art Unit: 212
Examiner: WILLIAM H. BEHA

130

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 09-04-86

Exam Answer due 9-10-86

## APPEAL BRIEF

86-3439

47/Brief

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Pursuant to Notice of Appeal, Applicant herewith provides a Brief in accordance with 37 U.S.C. 1.192.

Enclosed is a check (#1089) in the amount of $65.00 to cover the requisite fee.

At issue is the propriety of rejection by Examiner on basis of 35 U.S.C. 103 of claims 130-135. Three copies of these claims are enclosed.

Claims 130 and 134 were rejected under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden and Elms, all of record; and claims 130 and 134-135 were similarly rejected over Rhoads in view of Steigerwald et al., also of record.

In addition, claims 130-135 were rejected under 35 U.S.C. 112, second paragraph.

Three copies of the drawings of subject application are also enclosed.

## PRO SE APPLICANT

It is emphasized that subject application and appeal are being prosecuted by Applicant without the benefit of counsel.

5 090 09/12/86 787692 1 220 65.00 CK

## CONCISE EXPLANATION OF INVENTION

The claimed invention is illustrated in Fig. 1 and constitutes a power supply arrangement comprising:

a) rectifier means (28 and 31) connected with an ordinary 120Volt/60Hz power line by way of a pair of AC input terminals (33 and 37) and operative to provide a (voltage-doubled) DC output voltage at a (center-tapped) DC output, the DC output voltage being provided between: i) terminal 38 (the B+ terminal), ii) terminal 39 (the B- terminal), and iii) terminal 37 (the center-tap or neutral terminal); and

b) an inverter circuit, which principally consists of: i) switching transistors 42 and 43, ii) saturable positive feedback current transformers 47 and 49, and iii) an L-C tank circuit consisting of inductor 51 and capacitor 52;

the inverter circuit being: i) connected with the (center-tapped) DC output, ii) operative to provide a sinusoidal output voltage of relatively high frequency (see Fig. 3D) across a pair of AC output terminals;

the AC output terminals being the terminals of the capacitor (52), one of which output terminals being connected with one of the AC input terminals (37);

the L-C tank circuit being resonant at or near the relatively high frequency.

<u>AUTHORITIES</u>

In connection with this appeal, Applicant makes reference to the following court interpretations (Authorities) relative to patentability under 35 U.S.C. 103. Of these Authorities, #1-#6 were provided to Applicant by the Assistant Commissioner for Patents and represented by him as being the Authorities relied upon by the PTO in determining patentability under 35 U.S.C. 103.

#1. "patentable invention may lie in discovery of source of problem even though remedy may be obvious once source of problem is identified" (<u>In re Sponnoble</u>, 405 F.2d 578, 160 USPQ 237, 1969);

#2. "A patentable invention within the ambit of 35 U.S.C 103 may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the result inherent in their use" (<u>In re Sponnoble</u>, 405 F.2d 578, 160 USPQ 243, 1969);

#3. "Where unobvious aspect of invention resides in recognition of source of problem, Patent Office inquiries should be directed, in part at least, to question of whether such a recognition would have been obvious to one of ordinary skill in the art; inquiry must go beyond the nature of the solution" (In re Roberts, 470 F.2d 1399, 176 USPQ 313, 1973);

#4. "we also believe that a more proper, albeit not exclusive, inquiry in a case such as this is to look further as to the reasons for making the combination" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

#5. "If there is no evidence that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem, which is claimed as an improvement of prior art device, would have been obvious to that hypothetical person". (In re Nomiya, 184 USPQ 608, 1975)

#6. "There must be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand, or use of teaching as evidence of obviousness will entail prohibited hindsight". (In re Nomiya, 184 USPQ 608, 1975)

#7. In Richdel, Inc. v. Sunspool Corp. (714 F.2d 1573 -- Fed Cir. 1983), Chief Judge Markey presented a detailed rejection of the doctrine of combination patents: "It was error for the district court to derogate the likelihood of finding patentable invention in a combination of old elements. No species of invention is more suspect as a matter of law than any other. Attempted categorization for the purpose of determining various "rules" detracts from what should be the sole question: whether the claimed invention would have been obvious within the meaning of paragraph 103. Most, if not all, inventions are combinations and mostly of old elements".

#8. In Adams (356 F.2d 998 -- CCPA 1966), the Board (of Appeals) was reversed because "neither reference contains the slightest suggestion to use what it discloses in combination with what is disclosed in the other." (356 F.2d at 1002)

#9. In Imperato (486 F.2d 585 -- CCPA 1973): although combining the references' teachings yielded the result claimed, the CCPA held that the combination was not obvious "unless the art also contains something to suggest the desirability of the combination".

#10. In Sernaker (702 F.2d at 995-96), the CAFC interpreted Imperato to mean that "prior art references in combination do not make an invention obvious unless something in the prior art references would suggest the advantage to be derived from combining their teachings".

#11. In Environmental Design (713 F.2d at 698), the CAFC stated: "That all elements of an invention may have been old (the normal situation), or some old and some new, or all new, is however, simply irrelevant" [to obviousness].

#12. In Fromson v. Advance Offset Plate (755 F.2d 1556), the CAFC stated as follows. (Underlining by Applicant)

"Where, as here, nothing of record plainly indicates that it would have been obvious to combine previously separate process steps into one process, it is legal error to conclude that a claim to that process is invalid under paragraph 103."

#13. In Kimberly-Clark Corporation v. Johnson & Johnson (745 F.2d at 1449), the CAFC stated as follows. (Underlining by Applicant)

"examining all the references of record, we fail to find a clear suggestion of the claimed subject matter. ---- The holding of invalidity on ground of obviousness is therefore reversed.".

#14. In Kansas Jack (719 F.2d at 1144), the CAFC stated that "one may not use the teachings of the present invention as a guide to interpretation of the prior art".

ARGUMENTS IN SUPPORT OF APPEAL

In Re Independent Claim 1

Claim 1 may be considered exemplary.

Examiner rejected claim 1 under 35 U.S.C. 103 as being unpatentable over Rhoads in view of Walden and Elms.

Applicant traverses this rejection for the following reasons.

a) In view of Authority #5, Examiner has not provided evidence of a problem for which the claimed invention constitutes a solution; and, of course, without evidence of pre-existing awareness by person of ordinary skill on the art of such a problem, it is meaningless to classify an invention which solves that problem as being obvious.

That is, Examiner has not provided evidence with respect to obvious motivation for a person of ordinary skill in the art to seek to attain the claimed invention.

In the fourth paragraph on page 3 of his office action dated 06/10/86, Examiner makes the following statement with respect to motivation:

"it would have been obvious to use a voltage multiplier/full wave rectifier arrangement feeding an inverter for use with diverse input voltage sources".

This statement constitutes an unsupported assertion.

In view of Authority #8, there is no suggestion in any one of the applied references to the effect that it would be advantageous to use what it discloses in combination with what is disclosed in the other two references.

In other words, Examiner has not provided evidence of motivation.

b) Particularly in view of Authorities #12 and #13, not one of the applied references contains a plain or clear suggestion to the effect that it would be advantageous to combine its teachings with the teachings of the other references.

In Re "112" Rejections

Applicant traverses these rejections for the following reasons.

Again using claim 1 as an example, it is clear that the claimed invention is expressed in claim 1 as a combination of two elements, both of which are expressed in the well-accepted format of MEANS AND FUNCTION.

The first element of claim 1 describes a "rectifier means" together with its connections (connected with an ordinary electric utility power line by way of a pair of AC input terminals, etc.) and its function (operative to provide a DC voltage at a DC output, etc.).

The second element of claim 1 describes an "inverter circuit" (a means) together with its function (to provide a sinusoidal output voltage at a pair of AC output terminals, etc.) and its connections (one of its AC output terminals being connected with one of the AC input terminals, etc.).

When interpreted in light of the specification, there is no doubt in Applicant's mind but that claim 1 is clearly understandable by a person having ordinary skill in the art.

In Re Claims 131-135

In substance, the arguments provided hereinabove in connection with claim 1 pertain to claims 131-135 as well.

Reference to Previous Arguments by Applicant

Attached hereto are copies of pages 3-10 of Applicant's response to Examiner's office action dated 12/09/85.

The remarks provided on those pages have direct relevance to instant Appeal and are herewith incorporated into instant Appeal Brief.

CONCLUDING REMARKS

In view of the arguments provided hereinabove, it is clear that Examiner erred in rejecting the claims at issue.

In case of questions, the Chief Examiners are invited to call Applicant on the telephone, thereby to attempt to reach a mutually acceptable disposition of subject application in a cost-effective manner.

Ole K. Nilssen, Applicant

Date: 9-4-86

312-568-5615

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 48 |
| | 11/07/86 |

DATE MAILED:

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined ☑ Responsive to communication filed on 9/8/86 ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), —— days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474
6. ☐ ______

Part II SUMMARY OF ACTION

1. ☑ Claims 130 - 135 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☑ Claims 130 - 135 are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ______. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).
10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on ______ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ______, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ______; filed on ______
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

The final rejection is being withdrawn and ex-parte prosecution before the examiner is being resumed in view of the discovery of a reference to Frank et al clearly anticipating some of the claims and rendering other claims obvious over 35USC103. Frank et al was discovered during the search of an unrelated case, and it demonstrates just how unduely broad applicant's claims are. Please add the following rejections to the grounds of rejection already of record.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless-
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

Claims 130, 134 and 135 are rejected under 35 U.S.C. 102(e) as being anticipated by Franke et al.

Figure 1 of Franke et al. as modified by figure 2 (col. 2, lines 48 et. seq.), anticipates the recitations of the claims. In particular, the load of figure 2 is considered to be transformer 4 having its left hand terminal connected to an AC output terminal at the junction of capacitor 22, and this junction being connected by a wire to an AC input terminal at point I.

Please note also that Franke et al clearly anticipates applicant's basic invention concept as set forth

by him during prosecution of the parent application Ser. No. 644,155, in Amendment B, filed July 24, 1985, page 1 bottom two paragraphs.

The text of those sections of Title 35 U. S. Code not included in this action can be found in a prior Office action.

Claims 131 and 132 are rejected under 35 U.S.C. 103 as being unpatentable over Franke et al in view of Gurwicz et al.

The claims differ from Fanke et al who uses SCR's 14 and 15 as inverter switches, by calling for switching transistors instead.

Gurwicz et al show a converter using switching transistors in combination with a resonant circuit, as claimed.

One skilled in the converter art knew at the time the invention was made the advantages and limitations of halfbridge inverters using SCR's and transistors as switching elements. He would have known that SCR's are used in high power applications, and that transistors are used in low power applications as in Gurwicz et al., the choice being made in accordance with the requirements of the load. Moreover, he would have known that SCR's are generally more expensive than transistors.

Accordingly, it would have been obvious to use a transistorized inverter for a low power load such as a lamp circuit.

Claims 133 is rejected under 35 U.S.C. 103 as being unpatentable over the references as applied to claim 132 above, and further in view of Official Notice or Landis.

The claim further differs from Franke et al by calling for the DC source center tap, which is connected to one of the AC input terminals, to be grounded.

But Official Notice is taken of the fact that one of a pair of ordinary electric utility power lines is commonly grounded in household or commerical use for safety reasons. To so provide one of Franke et al's pair of input lines would have been obvious. Besides, Landis suggests grounding the center tap of a half-bridge inverter. And lastly, ground is where one puts it, witness the positive or negative ground systems in cars, for example. This is the type of design expedient expected of one skilled in the art.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5052.

Beha/dc

703/557/5052

11/4/86

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

TO SEPARA . E, HOLD TOP AND BOTTOM EDGES, SNAP–APART / .RD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

SERIAL NO. 787 692 | GROUP ART UNIT 212 | ATTACHMENT TO PAPER NUMBER 48

## NOTICE OF REFERENCES CITED

APPLICANT(S) NILSSEN

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4266134 | 5-81 | FRANKE ET AL | 378 | 105 | 12-13-78 |
| | B | 4227243 | 10-80 | GURWICZ ET AL | 363 | 132 | 6-22-78 |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER Wm Beha | DATE 10/30/86

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

MAIL ROOM FEB 9 1987 PATENT & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA

RECEIVED MAR 2 1987 GROUP 210

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 3-5-87

AMENDMENT B

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 11/07/86.

INITIAL REMARKS

In the first paragraph on page 2 of his latest office action, Examiner states that:

"Frank et al was discovered during the search of an unrelated case, and it demonstrates just how unduely broad applicant's claims are".

Would Examiner please explain to Applicant what official definition exists in respect to what constitutes an "unduely broad" claim.

Exactly what is an unduly broad claim?

In Applicant's view, an unduly broad claim is nothing more than a claim that is so broad as to be covered by some prior art reference.

100 02/27/87 787692 1 103 40.00 CK

Contrary to Examiner's allegation to the effect that Applicant's claims are unduly broad, the actual situation is that Examiner's search was unduly narrow -- as amply demonstrated by the belated finding of a more appropriate reference.

As a result of the inadequate breadth of Examiner's initial search, Applicant's Amendment A and the pending appeal have been rendered inappropriate, thereby having caused Applicant to waste a great deal of valuable time and energy.

As a minimum, the PTO should refund the fees already paid by Applicant in connection with submissions of the Notice of Appeal and the Appeal Brief.

IN THE CLAIMS

To better distinguish over the applied references, Applicant amends and adds claims as follows.

130. (Amended) An arrangement comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;[ and]

self-oscillating inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a pair of AC output terminals, one of said AC output terminals being electrically connected with one of said AC input terminals, said inverter circuit comprising an L-C tank circuit having a capacitor and an inductor, said tank circuit being resonant at or near said relatively high frequency, one terminal of said capacitor being connected with one of said AC output terminals; and

gas discharge lamp means connected with the AC output terminals and operative to be properly powered therefrom, the gas discharge lamp means thereby being electrically connected with one of the AC input terminals.

131. (Amended) In [an] self-oscillating inverter adapted to be powered from a DC source having a center-tap and to provide an essentially squarewave voltage output, said DC source being connected with and powered from an ordinary electric utility power line by way of a pair of supply conductors, said center-tap being electrically connected with one of said supply conductors, said inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across said DC source, said squarewave voltage output being provided between said center-tap and said mid-point, the [improvement] modification comprising:

a series-connected combination of an inductor and a capacitor connected between said center-tap and said mid-point, said series-connected combination: i) having a natural resonance frequency that is equal to or near the fundamental frequency of said squarewave voltage output, ii) and being operative to provide a substantially sinusoidal voltage across a pair of output terminals; and

gas discharge lamp means connected with the pair of output terminals and operative to be powered therefrom.

Cont'd

134. (Amended) A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals;[ and]

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, one of these AC output terminals being electrically connected with one of said AC input terminals; and

gas discharge lamp means connected with the AC output terminals and operative to be powered therefrom.

135. (Amended) A combination comprising:

rectifier means connected with an ordinary electric utility power line by way of a pair of AC input terminals and operative to provide a DC voltage at a DC output;

inverter connected with said DC output and operative to provide a substantially squarewave voltage at a pair of inverter output terminals, said squarewave voltage having a fundamental frequency that is substantially higher than the frequency of the voltage on said power line;[ and]

L-C tank circuit connected with said inverter output terminals and operative to convert said squarewave voltage into a substantially sinusoidal voltage and to provide this sinusoidal voltage at a pair of AC output terminals, the frequency of this sinusoidal voltage being equal to said fundamental frequency, one of the AC output terminals being connected with one of said AC input terminals by way of an impedance means that represents an effective short circuit at said fundamental frequency; and

gas discharge lamp means connected with the AC output terminals and operative to be powered therefrom.

136. In a self-oscillating inverter powered from a source of DC voltage and operative to provide an AC voltage across a pair of output terminals, the modification comprising:

a series-combination of an inductor and a capacitor connected across the pair of output terminals, the series-combination having a natural resonance frequency;

gas discharge lamp means effectively connected in parallel with the capacitor; and

feedback means connected in circuit with the series-combination and operative to cause the inverter to self-oscillate at a frequency higher than the natural resonance frequency.

137. The modification of claim 136 wherein the feedback means comprises saturable inductor means operative, at least in part, to determine the frequency of the AC voltage.

138. In a self-oscillating inverter adapted to provide an AC voltage across a pair of output terminals, the modification comprising:

a series-combination of an inductor and a capacitor connected across the pair of output terminals, the series-combination having a natural resonance frequency;

gas discharge lamp means effectively connected in parallel with the capacitor; and

feedback means comprising saturable inductor means connected in circuit with the series-combination and operative to cause the inverter to self-oscillate at a frequency near the natural resonance frequency.

Cancelled 137

CONCLUDING REMARKS

Examiner's attention is directed to papers #31 and #32 wherein Examiner indicated that the by-now-cancelled claims 124-128 would be allowable; which claims had previously been rejected under 35 U.S.C. 112 only.

The amended claims and the new claims are now largely directed to the subject matter represented by the cancelled claims 124-128, except for having been further limited such as, for instance, by including a gas discharge lamp means in each claim.

In considering the various claims in respect to obviousness, it is particularly important to keep in mind the very basic concepts expressed by Authorities #5, #7, #9 and #12 (see pages 3-4 of Appeal Brief). Also, it is important that it be possible at least to arrive at the claimed invention by way of some feasible combination of the applied references.

Moreover, in particular view to Authority #5, for a claim to be rejected under 35 U.S.C. 103, it is necessary for Examiner to provide evidence to the effect that the problem for which the claimed invention represents a solution must have been apparent to a person of ordinary skill in the art.

Thus, as long as not directly anticipated in some timely reference, an invention representing a solution to a non-obvious problem, including a non-obvious use of an old "process", is definitely patentable, even if the solution provided by the invention may be obvious after the problem is enunciated.

Moreover, it is not enough for Examiner to simply assert that the problem is obvious. Rather, he has to provide evidence to the effect that the problem for which the claimed invention represents a solution was indeed apparent to a person of ordinary skill in the art at the time the invention was made.

And, of course, this problem must be specific enough so as to require for its solution all the features of the claimed invention.

In view of the arguments and amendments provided hereinabove, Applicant now believes that all the claims are allowable over the cited art. However, if Examiner should reach a substantially different conclusion, he is asked to call Applicant on the telephone, thereby to attempt in an expeditious and cost-effective manner to arrive at a mutually satisfactory disposition of subject application.

Enclosed is a check for $40.00 (#1071) to cover the fee for the additional claims.

Ole K. Nilssen, Pro Se Applicant

Date: 2-5-87

312-658-5615

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 50 |

DATE MAILED: 03/24/87

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

1. [x] The communication filed 2/9/87 is ~~informal~~/non-responsive for the reason(s) checked below and should be corrected. APPLICANT IS GIVEN ONE MONTH FROM THE DATE OF THIS LETTER OR UNTIL THE EXPIRATION OF THE PERIOD FOR RESPONSE SET IN THE LAST OFFICE ACTION (WHICHEVER IS LONGER) WITHIN WHICH TO CORRECT THE INFORMALITY.

   a. [ ] The amendment to claim(s) ____________, filed ____________, fails to comply with the provisions of 37 C.F.R. 1.121 and is accordingly held to be non-responsive. A supplemental paper correcting the informal portions and complying with the rule is required.

   b. [ ] The paper is unsigned. A duplicate paper or ratification, properly signed, is required.

   c. [ ] The paper is signed by ____________, who is not of record. A ratification or a new power of attorney with a ratification, or a duplicate paper signed by a person of record, is required.

   d. [ ] The communication is presented on paper which will not provide a permanent copy. A permanent copy, or a request that a permanent copy be made by the Office at applicant's expense, is required, see M.P.E.P. 714.07.

   e. [x] Other See attached letter

2. [ ] In accordance with applicant's request, THE PERIOD FOR RESPONSE FROM THE OFFICE ACTION DATED ____________ IS EXTENDED TO RUN ____________ MONTH(S).
No further extension will be granted unless approved by the Commissioner. 37 C.F.R. 1.136 (b)

3. [ ] Receipt is acknowledged of papers submitted under 35 U.S.C. 119 which papers have been made of record in the file.

4. [ ] Other

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

NOTICE TO APPLICANT

The amendment filed on February 9, 1987 amending all claims drawn to the elected invention and presenting only claims drawn to a nonelected invention is nonresponsive. See MPEP 821.03. The remaining claims are not readable on the elected invention because they are drawn to non-elected inventions as explained in the restriction requirement below. Applicant is given a one month time limit or until the expiration of the response period set in the last Office action, whichever is longer, to complete the response. NO EXTENSION OF THIS TIME LIMIT WILL BE GRANTED UNDER EITHER 37 CFR 1.136(a) or (b) BUT THE PERIOD FOR RESPONSE SET IN THE LAST OFFICE ACTION MAY BE EXTENDED UP TO A MAXIMUM OF SIX MONTHS.

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 130-135 as originally presented, drawn to the subcombination of a rectifier and an inverter, classified in Class 363, subclass 37.

II. Claims 130-135, as amended, drawn to the combination of a rectifier, an inverter and a gas discharge lamp, classified in Class 315, subclass 200R.

III. Claims 136, 138, drawn to the subcombination of a self oscillating inverter and a gas discharge lamp, classified in Class 315, subclass 226.

The inventions are distinct, each from the other, because of the following reasons:

Inventions I and III are related as subcombinations disclosed as useable together in a single combination.

The subcombinations are distinct from each other if they are shown to be separately useable. In the instant case, invention I has separate utility such as a power supply for an X-Ray device. See MPEP 806.05(d).

Inventions II and I are related as combination and subcombination.

Inventions in this relationship are distinct if it can be shown that (1) the combination as claimed does not require the particulars of the subcombination as claimed for patentability, and (2) that the subcombination has utility by itself or in a materially different combination. MPEP 806.05(c).

In this case, the combination as claimed does not require the particulars of the subcombination for patentability because claim 134, for example, does not require a "self oscillating" inverter, as does claim 130, nor does it require one of the AC output terminals connected with any one of the AC input terminals "by way of an impedance means that represents an effective short circuit at said fundamental frequency," as claimed in claim 135. These are just two indicators of many more evidencing that the combination (claim 134) does not require ALL the limitations of the subcombination. In essence claim 134 is an evidence claim to this effect. Additionally, the subcombination has separate utility such as a power supply for an X-Ray device.

Because these inventions are distinct for the reasons given above and:

1) have acquired a separate status in the art as shown by their separate classification,

2) have acquired a separate status in the art because of their recognized divergent subject matter, and

3) the search required for Groups I, II and III is different for each Group,

restriction for examination purposes as indicated is proper.

Still further, reference is made to a progenitur case in which claims drawn to the combination of a power supply and a gas discharge lamp were restricted out from those claims drawn only to a power supply. The rationale for insisting on restriction has not changed since then. Accordingly, claims 130-137, drawn to the combination of a rectifier, inverter and gas discharge lamp or an inverter and a gas discharge lamp will not be examined in this application, applicant having constructively elected for procecution claims drawn only to a power supply by his original presentation of claims.

Beha/vsh
(703) 557-5080
03-24-87

William H. Beha
WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR, W SALCE | |
| ART UNIT | PAPER NUMBER |
| 212 | 23 51 |

DATE MAILED: 04/17/87

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) MR. Nilssen (3) ______

(2) MR. Salce SPE ART UNIT 212 (4) ______

Date of Interview 4-16-87

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: ______

Agreement ☐ was reached with respect to some or all of the claims in question. ☑ was not reached.

Claims discussed: 130-138

Identification of prior art discussed: NONE

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: After reviewing this application I informed Mr. Nilssen that I agree with Mr. Beha's Action Dated 3/24/87. (also on Page 4 line 12, No. 137 should be 138).

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

PTOL 413 (rev. 1-81)

[signature] R. Salce
Examiner's Signature

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

#52 m
AD
4/28/87

MAIL ROOM 18 APR 21 1987 PAT. & TRADE MARK OFC.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
APR 27 1987
GROUP 210

In re application entitled: INVERTER CIRCUITS
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA

AMENDMENT C

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 4-17-87

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 03/24/87.

INITIAL REMARKS

In his Amendment B, Applicant inquired about a refund of the fees paid in connection with the now-obsoleted Notice of Appeal and Appeal Brief. Examiner did not respond to that inquiry.

From subject Office Action, it was unclear to Applicant as to what Examiner required Applicant to do. To clarify, Applicant talked with Supervisory Examiner Salce on the telephone, and he explained to Applicant that the only choices available to Applicant in respect to instant application are the following:

* Abandonment with possible Continuation; and
* Re-amendment of the claims so as to re-establish the claims as claiming an invention within the classification of the initially elected invention, and then to argue the allowability of the re-amended claims.

Applicant elects to pursue the latter alternative.

IN THE CLAIMS

Claims 130-138 are cancelled and the following new claims are presented in their place.

139. The combination of:

rectifier means: i) connected with an ordinary electric utility power line by way of a first and a second AC input terminal, and ii) operative to provide a DC voltage at a DC output;

self-oscillating inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a pair of AC output terminals, one of the AC output terminals being electrically connected with the first AC input terminal, the inverter-circuit comprising an L-C circuit: i) having a capacitor and an inductor, ii) being connected in circuit with the AC output terminals in such manner that the capacitor is effectively connected across the AC output terminals, and iii) being resonant at or near said relatively high frequency; and

load means connected with the AC output terminals and operative to absorb most of the power being provided therefrom.

140. The combination of:

rectifier means connected with an ordinary electric utility power line by way of a first and a second AC input terminal and operative to provide a DC voltage at a DC output;

self-oscillating inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a load means connected with a pair of AC output terminals, the load means being operative to absorb most of the power being provided from the AC output terminals, one of the AC output terminals being at substantially the same electrical potential as that of the first AC input terminal, the inverter circuit comprising an L-C tank circuit connected in circuit with the AC output terminals and having a capacitor and an inductor, the L-C tank circuit being resonant at or near said relatively high frequency, one terminal of the capacitor being connected with the first AC output terminal.

141. The combination of:

rectifier means: i) connected with an ordinary electric utility power line by way of a first and a second AC input terminal, and ii) operative to provide a DC voltage at a DC output;

self-oscillating inverter connected with said DC output and operative to provide a substantially squarewave output voltage of relatively high frequency across a pair of squarewave output terminals, one of the squarewave output terminals being electrically connected with the first AC input terminal, the inverter-circuit comprising an L-C series-circuit: i) having a capacitor and an inductor, ii) being connected with the squarewave output terminals in such manner that one of the terminals of the capacitor is connected with the first AC input terminal, iii) having a load means connected across the capacitor, and iv) being resonant at or near said relatively high frequency, thereby to provide a substantially sinusoidal high-frequency voltage across the load means, which load means is operative to absorb most of the real power being provided from the squarewave output terminals.

142. In a self-oscillating inverter adapted to be powered from a DC source having a center-tap and to provide an essentially squarewave voltage output, the DC source being connected with and powered from an ordinary electric utility power line by way of a pair of supply conductors, the center-tap being electrically connected with one of the supply conductors, the inverter comprising a pair of alternatingly conducting switching transistors connected by way of a mid-point in series across the DC source, the squarewave voltage output being provided between the center-tap and the mid-point, the improvement comprising:

a series-connected combination of an inductor and a capacitor connected between the center-tap and the mid-point, the series-connected combination: i) having one of the terminals of its capacitor connected with the center-tap, ii) having a natural resonance frequency equal to or near the fundamental frequency of the squarewave voltage output, and iii) being operative to provide a substantially sinusoidal voltage across a load means effectively connected in parallel with the capacitor, the load means being operative to absorb most of the real power being provided from the squarewave voltage output.

143. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means having control input means, the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

144. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means comprising a first and a second transistor connected in circuit with the DC terminals, each transistor having a control input, the transistors being operative, in response to drive signals provided at their control inputs, to alternatingly conduct, thereby to cause the inverter means to provide a substantially squarewave voltage across a pair of squarewave output terminals;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control inputs, the feedback means comprising saturable inductor means and being operative to provide the drive signals, thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows to the load means; and ii) the saturable inductor means and the L-C series-circuit jointly determine the frequency of self-oscillation.

ARGUMENTS IN SUPPORT OF CLAIMS

In evaluating the present claims, Examiner should make note of the following points.

a) There is nothing in the Franke reference to indicate that the L-C series-circuit shown there is resonant at the inversion frequency. Instead, it appears that the Franke inverter may be operating at a frequency substantially lower than the natural resonance frequency of his L-C series-circuit.

b) Franke's inverter is driven by control circuit 21, which control circuit is not synchronized with the natural oscillations of the L-C circuit.

c) There is nothing in the Franke reference to show that the voltage provided to the load is sinusoidal. Instead, what appears to be the case is that the output voltage is provided in the form of bursts or trains of decaying sinusoidal voltages.

d) By way of claims 143 and 144, Applicant has re-introduced the basic claims (124-128) previously allowed (in Paper #32), and then rejected (in Paper #35) as anticipated by Locklair.

Now, however, Applicant has provided more structure. In particular, to clearly distinguish over Locklair and Pintell, the invention is now restricted by having the load connected in parallel with the tank-capacitor of the L-C series-circuit.

Ole K. Nilssen, Pro Se Applicant

Date: 4-17-87

312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/... | 07/... | NILSSEN | |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR, | |
| ART UNIT | PAPER NUMBER |
| | 53 |

DATE MAILED: 05/15/87

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[ ] This application has been examined [✓] Responsive to communication filed on 4-21-87 [✓] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [ ] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ____

Part II SUMMARY OF ACTION

1. [✓] Claims 139 - 144 are pending in the application.

   Of the above, claims ____ are withdrawn from consideration.

2. [✓] Claims 130 - 139 have been cancelled.
3. [✓] Claims 139, 140 + 142 are allowed.
4. [✓] Claims 141, 143 + 144 are rejected.
5. [ ] Claims ____ are objected to.
6. [ ] Claims ____ are subject to restriction or election requirement.
7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. [ ] The corrected or substitute drawings have been received on ____. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).
10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ____, has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).
11. [ ] The proposed drawing correction, filed ____, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ____; filed on ____.
13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. [ ] Other

As to applicant's request for a refund in connection with fees associated with the Notice of Appeal and the Appeal Brief, applicant is advised to address a "Request for Refund," Refund Section, Finance Branch, Patent and Trademark Office. The examiner lacks authority to make the determination whether or not a refund is due.

Claim 141 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In essence the claim appears to be incomplete, subparagraph iii being missing from the last sub-pragraph.

Applicant is advised to keep a clear partentable line of demarkation between the claims of this case and co-pending application Ser. No. 929,004, so as to avoid any issue of obvious type double patenting. This is especially true of claims 143 and 144 which essentially differ from claims 10-12 of the referenced application by a rectifier means source for a battery. This expedient is age old and obvious causing the claims to overlap.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having

> ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualities as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 143 and 144 are rejected under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell, cited in earlier progenitus cases.

Walker discloses a DC source 10, a square wave inverter 12, and a series resonant circuit LC connected to the output of square wave oscillator 12. Col. 2, lines 57 and 58 teach that the source of direct current power 10 may be a rectifier. A lamp load 20 is connected in parallel with capacitor C to receive a sinusoidal voltage developed by capacitor C.

The claims differ from Walker by calling for a specific self-oscillating inverter having saturable inductor means associated with the LC circuit the feedback path.

Pintell in figure 6 discloses a self-oscilalting inverter of the type claimed. The inverter includes first and second transistors 616' 616" LC series circuit 616, 617, and feedback means 620, 621, 622' and 622," including a saturable inductor means 620 to co-determine the frequency of the inventer.

A load L is connected in series with the LC circuit 616 and 617, thereby drawing a sinusoidal current through it. Where the load L is linear, a sinusoidal voltage will also appear across load terminals defined

by the right hand side of inductor 617 and the top of primary winding 621. Column 1 of Pintell suggests that the various inverter embodiments for generating sinusoidal waves are highly efficient.

Thus it would have been obvious to use Pintell's inverter of figure 6 in the generally disclosed square wave oscillator configuration shown on the front page of Walker. Where a sinusoidal load voltage is required, it would have been obvious to connect the load across capacitor C as in Walker. Where a sinusoidal current was desired through the load, it would have been obvious to connect it as in Pintell. Since both of these expedients are known, the claimed subject matter viewed as a whole would have been obvious.

Alternatively, the claims would have been obvious over Pintell in view of Walker.

Except for the claimed rectifier means serving as a DC source and the load connected across the series resonant capacitor to develop a sinusoidal voltage there across, the claims are anticipated by Figure 6 of Pintell.

But Walker teaches using a rectifier for a DC source. Thus this provision is an obvious provision.

And whether a load in combination with a series resonant circuit requires a sinusoidal current or a sinusoidal voltage is determined by the peculiarities of the load itself. As for the general proposition of

placing a load in series with the circuit to derive a sinusoidal load current, as shown by Pintell, or in parallel with the capacitor of the LC circuit to device a sinusoidal AC voltage, as shown by Walker, this would have been obvious to one skilled in the art having both references before him and having a knowledge of basic electronic circuits. Where, as here, a sinusoidal load voltage was required, it would have been obvious to place load L of Pintell in parallel rather than in series with capacitor 616, as suggested by Walker.

Applicant's arguments filed April 21, 1987 have been fully considered but they are not deemed to be persuasive.

As to sub-paragraph d on page 6 of the Remarks, and the sub-pargaraph following it, it suffices to say that Walker teaches the feature of a load connected in parallel with the tank capacitor of an LC series resonant circuit.

Claims 139, 140 and 140 are allowable over the prior art of record.

Applicant's amendment necessitated the new grounds of rejection. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP 706.07(a).

Applicant is reminded of the extension of time policy set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE **THREE MONTHS** FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE

DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number (703) 557-5052.

Beha/ds

703/557-5052

6/10/87

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

Hudgens 7-15-87

54/N

MAIL ROOM JUL 7 1987 PAT. & TRADE. OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED JUL 15 1987 GROUP 210

21C - CENTRAL FILE

St. 061

In re application entitled: INVERTER CIRCUITS DT 6/15/87

Applicant: Ole K. Nilssen

Serial No: 06/787,692

Filed: 10/15/85

Group Art Unit: 212

Examiner: WILLIAM H. BEHA

AMENDMENT A

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 7-4-87

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant provides the following response to Office Action dated 06/15/87.

IN RE TITLE

Please change the title to:

INVERTER WITH RESONANT L-C CIRCUIT

IN THE CLAIMS

In claim 141:

a) in line 15, please remove the term "iv)" and replace it with the term --iii)--.

b) in line 16, please remove the term "v)" and replace it with the term --iv)--.

REMARKS

Examiner rejected claims 143-144 under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell.

Applicant traverses these rejections for the following reasons.

a) Claims 143 and 144 both comprise the feature:

"whereby ... the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation".

This feature is neither described nor suggested by Walker and/or Pintell, whether taken individually or in combination.

In the next-to-last paragraph on page 3 of his latest office action, with respect to Pintell's Fig. 6, Examiner states that:

"The inverter includes ... LC series circuit 616, 617, and feedback means ... including a saturable inductor means 620 to co-determine the frequency of the inverter".

Applicant can find no indication in Pintell to the effect that his saturable inductor means (620) is operable to co-determine the frequency of the inverter.

In column 5, lines 15-20, Pintell states with respect to the saturable feedback transformer: "this transformer saturating at a rate commensurate with the discharge rate of condenser 616 through inductance 617 so as to be in resonance with the operating frequency of the system".

The fact that the saturable transformer is so constituted as to be "in resonance with the system" does not in any way mean that it is co-determinative of the frequency of the system.

b) In addition to the feature of "co-determination", each of claims 143-144 comprises the feature of:

"load means effectively connected in parallel with the tank- capacitor".

-This feature, as combined with the feature of saturable inductor means and L-C circuit being co-determinative of inverter frequency, is neither described nor suggested by Walker and/or Pintell, either individually or in combination. Moreover, neither of these two references provides any indications to the effect that it might be desirable to provide this combination.

From extensive and directly relevant real-life engineering experience, Applicant can testify -- and herewith does so testify -- to the effect that there is very little that is obvious in terms of changing inverter topography between a series-excited/series-loaded L-C inverter circuit (such as that of Pintell) and a series-excited/parallel-loaded L-C inverter circuit (such as that of Walker or Applicant).

c) In re Sung Nam Cho (Appeal No. 86-973) the Board of Appeals concluded that the examiner has misstated the law by "equating that which is within the capabilities of the skilled designer with obviousness".

In instant case, it appears to Applicant that Examiner is doing exactly that, namely "equating that which is within the capabilities of the skilled designer with obviousness".

Clearly, the issue is one of sufficient motivation; which is to say: there must be some clear evidence to the effect that there would be some obvious reason why a "skilled designer" would seek to make the changes required of the applied references in such manner as to attain the invention as specifically claimed -- it being irrelevant whether or not this "skilled designer" finds it ever so simple to actually effect the changes.

In instant case, Examiner has provided no evidence with respect to obvious sufficient motivation for combining Pintell with Walker, or vice versa.

d) Also, based on a recent CAFC decision, "obvious to try" should not be equated with obviousness.

CONCLUDING REMARKS

In view of the amendment of claim 141, and the arguments relative to claims 143-144, Applicant believes all claims to be allowable over the cited prior art.

In case Examiner were to disagree, Applicant requests of Examiner to call Applicant on the telephone, thereby to attempt to resolve any remaining issues in an expedient and cost-effective manner. The cost of prosecuting appeal, both to the tax payers and to Applicant personally, is quite significant and -- with but a modicum of good will and flexibility on part of Examiner -- may be avoided.

Ole K. Nilssen, Pro Se Applicant

Date: 7-4-87

312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 797 692 | 10/15/85 | NILSSEN | — |

| EXAMINER | |
|---|---|
| BEHA | |
| ART UNIT | PAPER NUMBER |
| 212 | 55 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Nilssen (3) ____

(2) Ex. Beha (4) ____

Date of interview: July 24, 1987

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: ____

Agreement ☐ was reached with respect to some or all of the claims in question. ☑ was not reached.

Claims discussed: 143 + 144

Identification of prior art discussed: Printell + Walker

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Mr. Nilssen's arguments re claims 143 + 144 were discussed but not resolved. The examiner suggested amending claims 143 + 144 with a limitation drawn to the connection of an AC input terminal connected to a square wave output terminal, or alternatively, with limitations directed to a half-bridge inverter, so as to make the claims allowable but Mr. Nilssen rejected the proposal, preferring to prosecute the broader claims 143 + 144 as they exist.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1 – 7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☑ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

William H. Beha
Examiner's Signature

PTOL-413 (rev. 1-81)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | U |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 56 |

DATE MAILED: 07/28/87

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined ☑ Responsive to communication filed on 7/7/87 ☑ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ——— days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474
6. ☑ Examiner Interview Summary Sheets

Part II SUMMARY OF ACTION

1. ☑ Claims 139 – 144 are pending in the application.

Of the above, claims ________ are withdrawn from consideration.

2. ☐ Claims ________ have been cancelled.
3. ☑ Claims 139 – 142 are allowed.
4. ☑ Claims 143 + 144 are rejected.
5. ☐ Claims ________ are objected to.
6. ☐ Claims ________ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ________. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).
10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on ________ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ________, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ________; filed on ________.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

The text of those sections of Title 35 U.S. Code not included in this action can be found in a prior Office action.

Claims 143 and 144 are rejected under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell. or alternatively, Pintell in view of Walker.

Reference is made to the last Office Action, (Page No. 530) pages 3-5, for a comprehensive exposition of the examiner's rationale.

Applicant's arguments filed July 4, 1987 have been fully considered but they are not deemed to be persuasive.

As to page 2, paragraph a), it is suggested that Pintell, col. 5, lines 15-20 meet the limitation of the claims, since the claims call for the inverter to self-oscillate at a frequency "equal to...the natural resonant frequency of the Serial L-C circuit." This is what lines 15-20 mean. Thus the result being the same, it follows that the "co-determination" limitation is the same.

As to paragraphs b and c it suffices to say that the desired load determines the connection in series with the LC circuit or in parallel with a reactive component thereof. Where, as in applicant's case, a lamp load is desired, Walker suggests placing it across the resonant capacitor. The motivation for doing so comes from Walker and is sufficient.

Claims 139-142 are allowable over the prior art of record.

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Beha/ds

703/557-5080

7/25/87

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

# The following was found to be missing from the Official PTO File Wrapper

Paper # 57

DIGIPAT®

PATENT / TRADEMARK DOCUMENT & RESEARCH SERVICES

Your source for complete patent and trademark services.

2001 Jefferson Davis Highway, Suite 1111, Arlington, VA 22202

Phone: 703-413-3667
800-362-5950

Fax: 703-413-3668
888-362-3657

www.digipat.com

58 ~~58~~
paper number

RECEIVED
AUG 07 1987
GROUP 210

REQUEST FOR ACCESS

DATE: 8-3-87

SERIAL NUMBER: 178107

FILING DATE: 8-14-80

APPLICANTS: Nilssen

SIR:

REQUEST IS HEREBY RESPECTFULLY MADE FOR ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION REFERRED TO IN US PATENT NUMBER 4677345 OR PRINTED APPLICATION ________.

RESPECTFULLY SUBMITTED,

[signature]

OFFICIAL USE ONLY

Initials
File Information Unit

$65.00-219-
GP
212

#59
11/16/87

MAIL ROOM
OCT 30 1987
PAT. & T.M. OFFICE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
NOV 16 1987
GROUP 210

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filed: 10/15/85
Art Unit: 212
Examiner: WILLIAM H. BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 10-27-87

NOTICE OF APPEAL

88-3439

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Office Action dated 07/28/87, Applicant herewith files Notice of Appeal in re subject application.

A check (#2487) for $65.00 to cover the requisite fee is enclosed.

Ole K. Nilssen, Pro Se Applicant

Date: 10-7-87

070 11/09/87 787692 1 219 65.00 CK

312-658-5615

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

MAILED
JAN 21 1988
DIRECTOR, GROUP 210

In re application of
Ole K. Nilssen
Serial No. 06/787,692
Filed: October 15, 1985
For: INVERTER WITH RESONANT L-C CIRCUIT

Returned herewith is appellant's Appeal Brief filed December 28, 1987 in Patent Application, Serial No. 787,692. The brief is returned to appellant under 37 CFR 1.3 for his failure to conduct business with the U. S. Patent and Trademark Office with decorum and courtesy.

This is not the first instance of applicant's failure to conduct business with decorum and courtesy in this case. See, for example, the letter returning earlier papers, mailed March 26, 1986.

Applicant is advised that the subject matter disparaging the examiner's skill (Brief, pages 4-6) is as out of place in this brief as it was in the earlier returned papers.

Moreover, the brief should be limited to addressing the grounds of rejection stated by the examiner. Allegations of a personal nature of the type included in the concluding remarks, accompanied with a challenge to the Examiner to provide credible evidence of competency at this stage of the prosecution, have no place in a brief.

The period for filing a brief continues to run from the filing date of the Notice of Appeal, that is, November 30, 1987.

William H. Beha
William H. Beha
Senior Examiner
Art Unit 212

CONCUR: Gerald Goldberg
Director, Group 210 Gerald Goldberg

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

# The following was found to be missing from the Official PTO File Wrapper

Paper #60

DIGIPAT®

PATENT / TRADEMARK DOCUMENT & RESEARCH SERVICES

Your source for complete patent and trademark services.

2001 Jefferson Davis Highway, Suite 1111, Arlington, VA 22202

Phone: 703-413-3667
800-362-5950

Fax: 703-413-3668
888-362-3657

www.digipat.com

ordered 11/8

MAIL ROOM NOV 1 1990 PAT. & TRADEMARK OFF.

RECEIVED NOV 1990

Group 212

61/Betts

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/07/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 10-28-90

PETITION RE IMPROPER FINAL REJECTION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant herewith petitions Commissioner, under paragraph 37 CFR 1.181a: (i) to instruct Examiner to change his final office action dated 09/26/90 to a non-final office action; (ii) to remove Examiner from the prosecution of instant application.

The finality of Examiner's most recent office action is inappropriate for the reason that it contained an initial rejection of claims 139-142. Thus, Applicant was never provided an opportunity to respond to Examiner's initial rejection of these claims 139-142.

In other words, Examiner rejected claims 139-142 without ever providing Applicant with an opportunity to traverse these rejections.

Also, Examiner improperly denied entry of Applicant's Amendment E; which Amendment E -- prior to Examiner's initial rejection -- provided for amendments to claims 139-142.

Also, with reference to the file history of this and other of applications of his, Applicant petitions the Commissioner for removal of Examiner Beha from prosecution of Applicant's applications for the following reasons:

(a) an unusually gross incompetency in respect to the understanding/interpretation of the facts and circumstances associated with the subject matter pertinent to the applications being prosecuted, coupled with an inordinate lack of appreciation of his own incompetency;

(b) a particular deficiency in the skills needed to advance an application to a fruitful conclusion;

(c) an inordinately high tendency to resort to technical and other obvious subterfuges in dealing with Applicant; and

(d) an apparent strong tendency to pursue a personal agenda in conflict with the purposes of the U.S. Patent and Trademark Office.

Ole K. Nilssen, Pro Se Applicant

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#62 Appeal Brief

MAIL ROOM FEB 3 1988 U.S. PAT. & TRADEMARK OFF.

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM H. BEHA

RECEIVED FEB 18 1988 GROUP 210

REVISED APPEAL BRIEF

88-3439

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 1-29-88

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Pursuant to Notice of Appeal, which -- according to Examiner's communication dated 01/21/88 -- was filed on November 30, 1987, and in response to Examiner's communication dated January 21, 1988, Applicant herewith provides a Revised Brief in accordance with 37 U.S.C. 1.192.

Applicant submitted an original Appeal Brief on 12/26/87. However, that original Appeal Brief was returned to Applicant for failure to comply with 37 CFR 1.3 relating to "decorum and courtesy". The occasion for this holding of insufficient "decorum and courtesy" related to Applicant's allegation and arguments to the effect that Examiner does not possess ordinary skill in the art relevant to the claimed invention and is therefore not qualified to render any official opinions with respect to what might be obvious versus unobvious to a person who does possess ordinary skill in the relevant art.

The $65.00 fee for instant Revised Appeal Brief was paid (Check #1089) in connection with as-yet-unprocessed Appeal Brief submitted on 09/04/86.

Moreover, the $65.00 fee for the Notice of Appeal submitted 10/27/87 was inadvertently paid twice: once with Check #1087 accompanying a first Notice of Appeal submitted on 09/02/86, and once with Check #2487 accompanying a second Notice of Appeal submitted on 10/27/87. Thus, one of these fees should be refunded.

At issue is the propriety of Examiner's rejection of claims 143 and 144 under 35 U.S.C. 103 as being unpatentable over Walker and Pintell.

PRO SE APPLICANT

Subject application and appeal are being prosecuted by Applicant without the benefit of counsel.

CONCISE EXPLANATION OF INVENTION

The invention is consisely described by claim 143, as follows.

143. The combination of:

rectifier means (27/28/29/31) connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals (38/39);

inverter means (24) having control input means (bases of transistors 42/43), the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals (conductor 37 and junction 44) in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor (52) and a tank-inductor (51), and being effectively connected across the squarewave output terminals;

load means (26) effectively connected in parallel with the tank-capacitor; and

feedback means (47/49) connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means (53/54) effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

AUTHORITIES

In general, Applicant wishes to rely on the authority of Natural Law, Common Law, and Statutory Law. In particular, Applicant wishes to rely on paragraph 103 of the Patent Law as interpreted in accordance with Natural Law (i.e., reality, facts, truths) and Common Law (esp. common/ordinary usage of words, terms, phrases, language).

Thus, in paragraph 103, the term "person having ordinary skill in the art" is interpreted by way of the plain meaning of the words actually used -- as interpreted in light of definitions and explanations provided by well accepted ordinary dictionaries of the English language.

Also, Applicant wishes to rely on the authorities identified in the attached write-up entitled "AUTHORITIES".

ARGUMENTS IN SUPPORT OF ALLOWABILITY

Examiner rejected claims 143 and 144 under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell or, alternatively, vice versa.

Applicant traverses these rejections for the following reasons.

(a) Examiner asserts that:

"it would have been obvious to use Pintell's inverter of figure 6 in the generally disclosed square wave oscillator configuration shown on the front page of Walker".

In view of Authority #8, Examiner seems to be mis-interpreting the law by "equating that which is within the capabilities of the skilled designer with obviousness".

In particular, Examiner has provided no evidence to the effect that there existed an obvious advantage in combining Pintell with Walker (or vice versa) in such exact manner as to attain the claimed invention as specifically defined.

What might this obvious advantage be?

Clearly, without expected advantage, no motivation could possibly exist.

Equally clearly, absent expected advantage, Examiner's proposed combination must be viewed as arbitrary: concocted for the purpose of attaining the claimed invention, not because it leads to an advantage plainly and clearly suggested by the applied references.

In other words, starting with Walker -- who already teaches apparently adequate means to provide a sinusoidal output voltage to a load parallel-connected with an L-C circuit -- what obvious advantage would be expected from incorporating the teachings of Pintell in such exact manner as to arrive at the claimed invention as it is specifically defined?

Or, starting with Pintell -- who already teaches apparently adequate means to provide a sinusoidal current to a load series-connected with the an L-C circuit -- what obvious advantage would be expected from incorporating the teachings of Walker in such exact manner as to arrive at the claimed invention as it is specifically defined?

In other words, what might be the plain and clear rationale of a person of ordinary skill in the relevant art for selecting -- from among the tens of thousands of references associated with this art, all of which presumably present in his mind's library -- Pintell to combine with Walker or, conversely, Walker to combine with Pintell in such exact manner as to attain the claimed invention as specifically defined?

(b) Examiner then makes the following two statements:

(1) "Where a sinusoidal load voltage is required, it would have been obvious to connect the load across capacitor C as in Walker"; and

(2) "Where a sinusoidal current was desired through the load, it would have been obvious to connect it as in Pintell".

Assuming, for sake of argument, that those statements were true, in what way do they constitute evidence of obviousness with respect to combining the two references?

In fact, the two statements would rather seem to lead to the following conclusion:

(x) where a sinusoidal load voltage be desired, Walker's arrangement would seem appropriate; but

(y) where a sinusoidal load current be desired, Pintell's circuit would seem appropriate.

Hence, Examiner has not proven that there existed obvious motivation for combining the two references, let alone combining them in such exact manner as to attain the claimed invention as it is specifically defined.

Ole K. Nilssen, Pro Se Applicant

Date: 1-29-88

CLAIMS

143. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means having control input means, the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

144. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means comprising a first and a second transistor connected in circuit with the DC terminals, each transistor having a control input, the transistors being operative, in response to drive signals provided at their control inputs, to alternatingly conduct, thereby to cause the inverter means to provide a substantially squarewave voltage across a pair of squarewave output terminals;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control inputs, the feedback means comprising saturable inductor means and being operative to provide the drive signals, thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows to the load means; and ii) the saturable inductor means and the L-C series-circuit jointly determine the frequency of self-oscillation.

AUTHORITIES

1. "patentable invention may lie in discovery of source of problem even though remedy may be obvious once source of problem is identified" (In re Sponnoble, 405 F.2d 578, 160 USPQ 237, 1969);

2. "A patentable invention within the ambit of 35 U.S.C. 103 may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the result inherent in their use" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

3. "Where unobvious aspect of invention resides in recognition of source of problem, Patent Office inquiries should be directed, in part at least, to question of whether such a recognition would have been obvious to one of ordinary skill in the art; inquiry must go beyond the nature of the solution" (In re Roberts, 470 F.2d 1399, 176 USPQ 313, 1973);

4. "we also believe that a more proper, albeit not exclusive, inquiry in a case such as this is to look further as to the reasons for making the combination" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

5. "If there is no evidence that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem, which is claimed as an improvement of prior art device, would have been obvious to that hypothetical person". (In re Nomiya, 184 USPQ 608, 1975)

6. "There must be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand, or use of teaching as evidence of obviousness will entail prohibited hindsight". (In re Nomiya, 184 USPQ 608, 1975)

7. In Geiger v. PTO (Appeal No. 86-1103 at the CAFC) the CAFC stated that: i) obviousness "can not be establsihed by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination", and ii) "one skilled in the art might find it obvious to try various combinations ... However, this is not the standard of 35 U.S.C. 103".

#8. In re Sung Nam Cho (Appeal No. 86-973 at the PTO) the Board of Appeals concluded that the examiner had misstated the law by "equating that which is within the capabilities of the skilled designer with obviousness".

#9. In Richdel, Inc. v. Sunspool Corp. (714 F.2d 1573 -- Fed Cir. 1983), Chief Judge Markey presented a detailed rejection of the doctrine of combination patents: "It was error for the district court to derogate the likelihood of finding patentable invention in a combination of old elements. No species of invention is more suspect as a matter of law than any other. Attempted categorization for the purpose of determining various "rules" detracts from what should be the sole question: whether the claimed invention would have been obvious within the meaning of paragraph 103. Most, if not all, inventions are combinations and mostly of old elements".

#10. In Adams (356 F.2d 998 -- CCPA 1966), the Board (of Appeals) was reversed because "neither reference contains the slightest suggestion to use what it discloses in combination with what is disclosed in the other." (356 F.2d at 1002)

#11. In Imperato (486 F.2d 585 -- CCPA 1973): although combining the references' teachings yielded the result claimed, the CCPA held that the combination was not obvious "unless the art also contains something to suggest the desirability of the combination".

#12. In Sernaker (702 F.2d at 995-96), the CAFC interpreted Imperato to mean that "prior art references in combination do not make an invention obvious unless something in the prior art references would suggest the advantage to be derived from combining their teachings".

#13. In Environmental Design (713 F.2d at 698), the CAFC stated: "That all elements of an invention may have been old (the normal situation), or some old and some new, or all new, is however, simply irrelevant" [to obviousness].

#14. In Fromson v. Advance Offset Plate (755 F.2d 1556), the CACF stated as follows. (Underlining by Applicant)

"Where, as here, nothing of record plainly indicates that it would have been obvious to combine previously separate process steps into one process, it is legal error to conclude that a claim to that process in invalid under paragraph 103."

#15. In Kimberly-Clark Corporation v. Johnson & Johnson (745 F.2d at 1449), the CAFC stated as follows. (Underlining by Applicant)

"examining all the references of record, we fail to find a clear suggestion of the claimed subject matter. ---- The holding of invalidity on the ground of obviousness is therefore reversed."

#16. In Kansas Jack (719 F.2d at 1144), the CAFC stated that "one may not use the teachings of the present invention as a guide to interpretation of the prior art".

Selected Paragraphs from MPEP (Underlining by Applicant)

706.02 Rejection on Prior Art

"After indicating that the rejection is under 35 U.S.C. 103, there should be set forth (1) the difference or differences in the claim over the applied reference(s), (2) the proposed modification of the applied reference(s) necessary to arrive at the claimed subject matter, and (3) an explanation why such proposed modification would be obvious"

706.07 Final Rejection

"present practice does not sanction hasty and ill-considered final rejections. The applicant who is seeking to define his invention in claims that will give him the patent protection to which he is justly entitled should receive the cooperation of the examiner to that end, and not be prematurely cut off in the prosecution of his case"

"The examiner should never lose sight of the fact that in every case the applicant is entitled to a full and fair hearing, and that a clear issue between applicant and examiner should be developed, if possible, before appeal is prosecuted"

"In making the final rejection, all oustanding grounds of rejection of record should be carefully reviewed, and any such grounds relied on in the final rejection should be reiterated. They must also be clearly developed to such an extent that applicant may readily judge the advisability of an appeal"

"where a single previous Office action contains a complete statement of a ground of rejection, the final rejection may refer to such a statement and also should include a rebuttal of any arguments raised in the applicant's response"

MAIL ROOM FEB 14 1 1988 PAT. & TRADE MARK OFF.

210
21X 7
2-19

DAC
#62
Petition to
Review
Director's
Decision

MAIL ROOM FEB 14 1 1988 PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

504

PETITION TO THE COMMISSIONER

RECEIVED
FEB 25 1988 -41
DEPUTY ASST. COMM.
181

In re Serial No: 06/787,692
Filed: 10/15/85
Applicant: Ole K. Nilssen
Group Art Unit: 212
Examiner: WILLIAM H. BEHA
Group Director: GERALD GOLDBERG

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 1-30-88

PETITIONER: Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

Telephone: 312-658-5615

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Under 37 C.F.R. 1.181(a), the above named Petitioner (hereinafter "Applicant") herewith petitions Commissioner to instruct the above-named Examiner and Director to rescind the decision expressed in their letter dated 01/21/88 and to enter in the file for the above-identified application the Appeal Brief originally submitted by Applicant.

A copy of Applicant's Appeal Brief is enclosed as is also a copy of Examiner's communication relative to that Appeal Brief.

MAIL ROOM
14 FEB 1 1988
PAT & TRADE MARK OFC.

MAIL ROOM
STAMP CANCELLED AND PAPER RETURNED
1988
PAT & TRADE MARK OFC.

RECEIVED
STAMP CANCELLED AND PAPER RETURNED
GROUP 210

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM H. BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 12-26-87

APPEAL BRIEF

88-3439

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Pursuant to Notice of Appeal, Applicant herewith provides a Brief in accordance with 37 U.S.C. 1.192.

The $65.00 fee for instant Appeal Brief was paid (Check #1089) in connection with as-yet-unprocessed Appeal Brief submitted on 09/04/86.

Moreover, the $65.00 fee for the Notice of Appeal submitted 10/27/87 was inadvertently paid twice: once with Check #1087 accompanying a first Notice of Appeal submitted on 09/02/86, and once with Check #2487 accompanying a second Notice of Appeal submitted on 10/27/87. Thus, one of these fees should be refunded.

At issue is the propriety of Examiner's rejection of claims 143 and 144 under 35 U.S.C. 103 as being unpatentable over Walker and Pintell.

PRO SE APPLICANT

Subject application and appeal are being prosecuted by Applicant without the benefit of counsel.

CONCISE EXPLANATION OF INVENTION

The invention is consisely described by claim 143, as follows.

143. The combination of:

rectifier means (27/28/29/31) connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals (38/39);

inverter means (24) having control input means (bases of transistors 42/43), the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals (conductor 37 and junction 44) in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor (52) and a tank-inductor (51), and being effectively connected across the squarewave output terminals;

load means (26) effectively connected in parallel with the tank-capacitor; and

feedback means (47/49) connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means (53/54) effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

AUTHORITIES

Applicant wishes to rely on the authority of sound reasoning as well as on those authorities identified in the attached copy of a write-up entitled AUTHORITIES.

ARGUMENTS IN SUPPORT OF ALLOWABILITY

Examiner rejected claims 143 and 144 under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell or, alternatively, vice versa.

Applicant traverses these rejections for the following reasons.

(a) Examiner asserts that:

"it would have been obvious to use Pintell's inverter of figure 6 in the generally disclosed square wave oscillator configuration shown on the front page of Walker".

In view of Authority #8, Examiner seems to be misinterpreting the law by "equating that which is within the capabilities of the skilled designer with obviousness".

In particular, Examiner has provided no evidence to the effect that there existed an obvious advantage in combining Pintell with Walker (or vice versa) in such exact manner as to attain the claimed invention as specifically defined.

What might this obvious advantage be?

Clearly, without expected advantage, no motivation could possibly exist.

Equally clearly, absent expected advantage, Examiner's proposed combination must be viewed as arbitrary: concocted for the purpose of attaining the claimed invention, not because it leads to an obvious advantage.

In other words, starting with Walker -- who already teaches apparently adequate means to provide a sinusoidal output voltage to a load parallel-connected with an L-C circuit -- what obvious advantage would be expected from incorporating the teachings of Pintell in such exact manner as to arrive at the claimed invention as it is specifically defined?

Or, starting with Pintell -- who already teaches apparently adequate means to provide a sinusoidal current to a load series-connected with the an L-C circuit -- what obvious advantage would be expected from incorporating the teachings of Walker in such exact manner as to arrive at the claimed invention as it is specifically defined?

In other words, what might be the plain and clear rationale of a person of ordinary skill in the relevant art for selecting -- from among the tens of thousands of references associated with this art, all of which presumably present in his mind's library -- Pintell to combine with Walker or, conversely, Walker to combine with Pintell in such exact manner as to attain the claimed invention as specifically defined?

(b) Examiner then makes the following two statements:

(1) "Where a sinusoidal load voltage is required, it would have been obvious to connect the load across capacitor C as in Walker"; and

(2) "Where a sinusoidal current was desired through the load, it would have been obvious to connect it as in Pintell".

Assuming, for sake of argument, that those statements were true, in what way do they constitute evidence of obviousness with respect to combining the two references?

In fact, the two statements would rather seem to lead to the following conclusion:

(x) where a sinusoidal load voltage be desired, Walker's arrangement would seem appropriate; but

(y) where a sinusoidal load current be desired, Pintell's circuit would seem appropriate.

Hence, Examiner has not proven that there existed obvious motivation for combining the two references, let alone combining them in such exact manner as to attain the claimed invention as it is specifically defined.

CONCLUDING REMARKS

By way of his office actions, Examiner has led Applicant to believe that Examiner may not posses ordinary skill in the art to which the claimed invention belongs; which means that Examiner may not posses adequate skills to properly examine instant application.

Applicant herewith makes an official allegation to the effect that Examiner does not posses ordinary skill in the art relevant to the proper examination of this application.

Clearly, without possessing ordinary skill in the art to which a given subject matter belongs, it is meaningless -- with respect to that given subject matter -- for a person to render judgements in respect to: i) what is obvious and what is unobvious to a person who does have ordinary skill in this subject matter, ii) what is usual and what is unusual, iii) what is common practice and what is not, iv) what is safe practice and what is not, v) what is feasible to do and what is not, vi) what is practicable and what is not, vii) what works and what

does not, viii) what kinds of circuits and/or elements are combinable and what kinds are not, ix) how circuits function and how they do not function, x) what may be regarded as prima facie so versus prima facie not so; xi) what are common perceptions, understandings, attitudes, prejudices, etc.; xii) how to properly interpret and apply facts and circumstances; xiii) what types of circuit modifications are feasible versus what types are not; xiv) what kinds of circuit changes are apt to be problematic versus what kinds are not; xv) what constitutes appropriate and/or feasible expedients in a given circuit, arrangement or situation versus what does not; xvi) etc.

Hence, if Examiner does not possess ordinary skill in the art relevant to the examination of instant application, he is simply not qualified to render judgements relative to what is obvious and/or what is unobvious.

Similarly, if Examiner does not posses ordinary skill in the art to which instant subject matter belongs, he is not in the position of carrying on an intelligent discussion in respect to that subject matter. As a net result, it becomes a totally unreasonable burden for Applicant to try to educate Examiner to a degree sufficient to permit Examiner to deal intelligently and knowledgably with such subject matter.

For instance, in the last paragraph of page 2 of his Amendment D (dated 07/04/87), Applicant makes the following statement:

"there is very little that is obvious in terms of changing inverter topography between a series-excited/series-loaded L-C inverter circuit (such as that of Pintell) and a series-excited/parallel-loaded L-C inverter circuit (such as that of Walker or Applicant)".

This statement refers to a situation which is well known to a person possessing ordinary skill in the art of inverters loaded by tuned L-C circuits, especially so in respect to series-excited/parallel-loaded L-C inverter circuits; and, except if Examiner possesses at least that ordinary degree of skill, Examiner is simply not competent to render judgement relative to what is versus what is not appropriate and/or workable with respect to such L-C loaded inverter arrangements.

Except if Examiner were to provide credible evidence to the effect that he does possess ordinary skill in the art relevant to the proper examination of this application and its claimed subject matter, Applicant will proceed in the prosecution on the basis that Examiner has acknowledged Applicant's allegation to the effect that Examiner does <u>not</u> possess ordinary skill in the art relevant to the proper examination of this application and the subject matter claimed therein.

Even though Applicant believes that it ought to be entirely unnecessary, if absolutely required in order to attain allowance of the disputed claims, he is willing -- in spite of the substantial amounts of time, effort and cost involved -- to provide expert testimony to the effect of verifying and/or substantiating the correctness of any or all of the various allegations of facts made by Applicant in this Appeal Brief.

Clearly, in view of the applied references and the arguments presented above, Examiner erred in not allowing the claims at issue.

If the Examiners in Chief should disagree with Applicant in respect to the allowability of the claims at issue, they are requested to call Applicant on the telephone, thereby to attempt to clarify and/or resolve any remaining issues; thereby, in turn, to attempt to avoid -- both for the taxpayers generally as well as for Applicant -- the substantial costs associated with an appeal to the CAFC.

Ole K. Nilssen <u>Pro Se</u> Applicant

312-658-5615

Date: 12-10-87

MAIL ROOM
14 FEB 1 1990
PAT. & TRADE MARK OFF.

CLAIMS

143. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means having control input means, the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

144. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means comprising a first and a second transistor connected in circuit with the DC terminals, each transistor having a control input, the transistors being operative, in response to drive signals provided at their control inputs, to alternatingly conduct, thereby to cause the inverter means to provide a substantially squarewave voltage across a pair of squarewave output terminals;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control inputs, the feedback means comprising saturable inductor means and being operative to provide the drive signals, thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows to the load means; and ii) the saturable inductor means and the L-C series-circuit jointly determine the frequency of self-oscillation.

MAIL ROOM
14 FEB 1 1988
PAT. & TRADE MARK OFC.

AUTHORITIES

1. "patentable invention may lie in discovery of source of problem even though remedy may be obvious once source of problem is identified" (In re Sponnoble, 405 F.2d 578, 160 USPQ 237, 1969);

2. "A patentable invention within the ambit of 35 U.S.C. 103 may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the result inherent in their use" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

3. "Where unobvious aspect of invention resides in recognition of source of problem, Patent Office inquiries should be directed, in part at least, to question of whether such a recognition would have been obvious to one of ordinary skill in the art; inquiry must go beyond the nature of the solution" (In re Roberts, 470 F.2d 1399, 176 USPQ 313, 1973);

4. "we also believe that a more proper, albeit not exclusive, inquiry in a case such as this is to look further as to the reasons for making the combination" (In re Sponnoble, 405 F.2d 578, 160 USPQ 243, 1969);

5. "If there is no evidence that a person of ordinary skill in the art at time of applicant's invention would have expected problem to exist at all, it is not proper to conclude that invention which solves this problem, which is claimed as an improvement of prior art device, would have been obvious to that hypothetical person". (In re Nomiya, 184 USPQ 608, 1975)

6. "There must be a reason apparent at time invention was made to person of ordinary skill in the art for applying the teaching at hand, or use of teaching as evidence of obviousness will entail prohibited hindsight". (In re Nomiya, 184 USPQ 608, 1975)

7. In Geiger v. PTO (Appeal No. 86-1103 at the CAFC) the CAFC stated that: i) obviousness "can not be establsihed by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination", and ii) "one skilled in the art might find it obvious to try various combinations ... However, this is not the standard of 35 U.S.C. 103".

#8. In re Sung Nam Cho (Appeal No. 86-973 at the PTO) the Board of Appeals concluded that the examiner had misstated the law by "equating that which is within the capabilities of the skilled designer with obviousness".

#9. In Richdel, Inc. v. Sunspool Corp. (714 F.2d 1573 -- Fed Cir. 1983), Chief Judge Markey presented a detailed rejection of the doctrine of combination patents: "It was error for the district court to derogate the likelihood of finding patentable invention in a combination of old elements. No species of invention is more suspect as a matter of law than any other. Attempted categorization for the purpose of determining various "rules" detracts from what should be the sole question: whether the claimed invention would have been obvious within the meaning of paragraph 103. Most, if not all, inventions are combinations and mostly of old elements".

#10. In Adams (356 F.2d 998 -- CCPA 1966), the Board (of Appeals) was reversed because "neither reference contains the slightest suggestion to use what it discloses in combination with what is disclosed in the other." (356 F.2d at 1002)

#11. In Imperato (486 F.2d 585 -- CCPA 1973): although combining the references' teachings yielded the result claimed, the CCPA held that the combination was not obvious "unless the art also contains something to suggest the desirability of the combination".

#12. In Sernaker (702 F.2d at 995-96), the CAFC interpreted Imperato to mean that "prior art references in combination do not make an invention obvious unless something in the prior art references would suggest the advantage to be derived from combining their teachings".

#13. In Environmental Design (713 F.2d at 698), the CAFC stated: "That all elements of an invention may have been old (the normal situation), or some old and some new, or all new, is however, simply irrelevant" [to obviousness].

#14. In Fromson v. Advance Offset Plate (755 F.2d 1556), the CACF stated as follows. (Underlining by Applicant)

"Where, as here, nothing of record plainly indicates that it would have been obvious to combine previously separate process steps into one process, it is legal error to conclude that a claim to that process in invalid under paragraph 103."

COPY MAILED

MAY 27 1988

DEPUTY ASST. COMM.

UNITED STATE) 'EPARTMENT OF COMMERCE
Patent and Tra. .nark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

FS/JVN/tm
Paper No. 64

In re Application of :
Ole K. Nilssen :
Serial No. 787,692 : ON PETITION
Filed: October 15, 1985 :
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

This is a decision on the petition under 37 CFR 1.181, filed February 1, 1988, requesting review of the decision of the Director of Examining Group 210.

The file record discloses that a timely appeal brief was filed December 28, 1987. That brief was returned to petitioner by the Director of Group 210 since he found the concluding remarks to have violated 37 CFR 1.3. Additionally, the Director of Group 210 stated that "the period for filing a brief continues to run from the filing date of the Notice of Appeal, that is, November 30, 1987".

Petitioner request review of the Group Director's decision with regard to the appeal brief's compliance with 37 CFR 1.3. In addition, petitioner requests the Commissioner to inform the petitioner in respect to the level of skill possessed by the subject examiner.

37 CFR 1.3 requires that applicants conduct their business with the Patent and Trademark Office with decorum and courtesy. Papers presented in violation of that requirement can be returned.

A review of the appeal brief clearly discloses a lack of decorum and courtesy in reference to the Examiner's ability. A review of the record has revealed that in an Office action, paper No. 43, mailed March 26, 1986 this Office has returned amendment A, paper No. 42, filed March 10, 1986 for similar reasons. There is no excuse for applicant's lack of decorum and courtesy in official proceedings. The Office should not and will not tolerate a lack of decorum from applicant. Accordingly, the decision of the Director of Group 210 to return the appeal brief to applicant was correct.

Serial No. 787,692



The application file is being forwarded to Group 210.

The petition is granted to the extent that the decision of the Director has been reviewed but is denied with respect to making any change therein.

James E. Denny
Deputy Assistant Commissioner for Patents

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

All communications respecting this application should give the serial number, date of filing and name of the applicant.

PAPER NO. 65

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

William Beha
S.N. 787,692

Art Unit 212
10/15/85

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Il 60010

Before the Board of Appeals

OLE K. NILSSEN

FOR
APPELLANT

Examiner's Answer

RECEIVED
25 1988
BOARD OF PATENT APPEALS
AND INTERFERENCES

88-3439

Form PTOL-84 (Rev. 6-81)

#65

All communications respecting this application should give the serial number, date of filing and name of the applicant.

PAPER NO. ____

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

William Beha
S.N. 787,692

Art Unit 212
10/15/85

Before the Board of Appeals

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Il 60010

MAILED

JUN 17 1988

GROUP 210

88-3439

OLE K. NILSSEN

FOR
APPELLANT

RECEIVED

1988

BOARD OF PATENT APPEALS
AND INTERFERENCES

Examiner's Answer

Form PTOL-84 (Rev. 6-81)

MAILED

JUN 17 1988

GROUP 210



Examiner's Answer

This appeal involves claims 143 and 144.

Claims 139 to 142 are allowed.

Appellant's brief presents arguments relating to the fee. As in Paper No. 53 page 2, top paragraph, appellant is advised to address a "Request for Refund", Refund Section, Finance Branch, Patent and Trademark Office for action on his request.

A correct copy of appealed claims 143 and 144 follows page 4 of the brief.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Appellant has not separately argued the patentability of claim 144 under 35 USC 103. Accordingly, this claim will stand or fall with the patentability of claim 143.

The prior art of record relied on is:

| | | |
|---|---|---|
| 4,071,812 | Walker | 1-1978 |
| 3,026,486 | Pintell | 3-1962 |

The invention is drawn to a highly efficient inverter power supply for use with a fluorescent lamp.

The prior art relied upon in this appeal is described in the grounds of rejection.

GROUNDS OF REJECTION

Claims 143 and 144 are rejected under 35 U.S.C. 103 as being unpatentable over Walker in view of Pintell.

Walker discloses a DC source 10, a square wave oscillator inverter 12, and a series resonant circuit LC connected to the output of square wave oscillator 12. Col. 2, lines 57 and 58 teach that the source of direct current power 10 may be a rectifier. A lamp load 20 is connected in parallel with capacitor C to receive a sinusoidal voltage developed by capacitor C. Thus Walker discloses the old combination of a rectifier, a self-oscillating inverter, and LC circuit and a lamp load.

The claims differ from Walker by calling for a specific highly efficient, self-oscillating inverter having saturable inductor means associated with the LC circuit in the feedback path.

Pintell in figure 6 discloses a self-oscillating inverter of the type claimed. The inverter includes first and second transistors 616', 616", LC series circuit 616, 617, and feedback means 620, 621, 622' and 622", including a saturable inductor means 620 to co-determine the frequency of the inverter.

A load L is connected in series with the LC circuit 616 and 617, thereby drawing a sinusoidal current

through it. Where the load L is linear, a sinusoidal voltage will also appear across load terminals defined by the right hand side of inductor 617 and the top of primary winding 621. Column 1 lines 31-44 of Pintell suggests that the various inverter embodiments for generating sinusoidal waves are highly efficient (close to 100% efficiency, col. 1, lines 43 and 44).

Thus it would have been obvious to use Pintell's inverter of figure 6 in the generally disclosed square wave oscillator configuration shown on the front page of Walker. And where a sinusoidal load voltage was required, as for a fluorescent lamp, it would have been obvious to connect the lamp across capacitor C as in Walker. Where a sinusoidal current was desired through the load, it would have been obvious to connect it as in Pintell. This is the kind of design choice expected of one skilled in the art. Since both of these load connections were well known, and their choice was routine, the claimed subject matter viewed as a whole would have been obvious.

Alternatively, the claims would have been obvious over Pintell in view of Walker.

Except for the claimed rectifier means serving as a DC source and the load connected across the series resonant capacitor to develop a sinusoidal voltage there-across, the claims are anticipated by Figure 6 of Pintell.

But Walker teaches using a rectifier for a DC source. Thus this provision is an obvious provision.

And whether a load in combination with a series resonant circuit requires a sinusoidal current or a sinusoidal voltage is determined by the peculiarities of the load itself. As for the general proposition of placing a load in series with the LC circuit to derive a sinusoidal load current, as shown by Pintell, or in parallel with the capacitor of the LC circuit to device a sinusoidal AC voltage, as shown by Walker, this would have been obvious to one skilled in the art having both references before him and having a knowledge of basic electronic circuits. Where, as here, a sinusoidal load voltage was required for a lamp, it would have been obvious to place load L of Pintell in parallel rather than in series with capacitor 616, as suggested by Walker.

REBUTTAL

As to point (a) on page 3 of the brief, attention is invited to the appellant's specification, page 3, top paragraph, citing the need for reliable and highly efficient inverter circuits which can be employed to provide high voltage outputs suitable for energizing discharge lamps. But this need for high efficiency and the solution to this need using an inverter of the type claimed is an old need that has been solved by Pintell's inverters having close the 100% efficiency. This is the advantage of using Pintel's inverter arrangement.

As to point (b) on page 4 of the brief it is suggested that one skilled in the art has sufficient

mental capacity to properly connect a specific load to an LC circuit. Where the load is a fluorescent lamp, as in appellant's specification, one skilled in the art would have connected it across capacitor 616 of Pintell as taught by Walker.

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

William Beha

William Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

ds/Beha
703/557-5052
6/14/88

MAIL ROOM
JUN 24 1988
PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

65 Reply Brief

BEFORE THE BOARD OF APPEALS

RECEIVED
JUN 2 ? 1988
GROUP 210

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 6-21-88

REPLY BRIEF

88-3139

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Answer to Applicant's previously submitted Appeal Brief, Applicant provides a Reply Brief in the form of the following comments and arguments.

AUTHORITIES

The authorities to be relied upon in this Reply Brief are:

(1) Natural Law (i.e., the Laws of Nature): verifiable reality, facts, truths, the Laws of Physics, the Laws of Mathematics/Reason/Logic, etc.;

(2) Common Law: esp. definitions/usage of words/language;

(3) Statutory Law: esp. paragraph 103 of the Patent Law;

(4) Case Law: esp. recent desicions by the CAFC.

Natural Law preceeds and is superior to both Common Law and Statutory Law. Case Law is inferior to both Common Law and Statutory Law, as well as to Natural Law.

Thus, Statutory Law and Common Law are valid only as long as they do not conflict with Natural Law; and Case Law is valid only as long as it does not conflict with Natural Law, Common Law and/or Statutory Law.

In particular, the main specific authority to be relied upon in this Reply Brief is paragraph 103 of the Patent Law as interpreted in accordance with Natural Law and Common Law.

More particularly, in accordance with Common Law (which, by unavoidable necessity, must include the English language), paragraph 103 is herein interpreted in accordance with the plain meaning of the words and phrases used therein -- plain meaning being herein defined as the meaning expressed by the words and phrases when interpreted in accordance with common definitions and usage of English words and phrases -- as for instance in accordance with Webster's New Collegiate Dictionary.

Paragraph 103 relates to obviousness and refers to subject matter which "would have been obvious ... to a person having ordinary skill in the art to which said subject matter pertains".

In particular, Applicant interprets the words "ordinary" and "skill" in accordance with common usage (i.e., Common Law); which is to say, in accordance with the way those words are commonly interpreted and understood, such as they are, for instance, interpreted in Webster's New Collegiate Dictionary.

It is noted that paragraph 103 says nothing about a "hypothetical" person as defined and used in Case Law, and as often referred-to by the PTO.

Clearly, if the framers of the Patent Law had meant the phrase "person having ordinary skill" in paragraph 103 to be defined in a special non-standard or unusual manner, they would have had the brains to so stipulate.

Moreover, in Case Law, the characteristics attributed to the so-called "hypothetical" person are such as to make this "hypothetical" person non-appropos as a definition for the term "person having ordinary skill" for the reason that a person having those characteristics would clearly be in conflict with Natural Law in that a person of such characteristics are not known to exist at all, much less to exist in the sense of being "ordinary".

Thus, the "person having ordinary skill" of paragraph 103 can not in any principled manner be defined to have the characteristics attributed to the so-called "hypothetical" person.

Hence, any Case Law -- such as for instance enunciated in Standard Oil Co. v. American Cyanamid Co., 774F.2d 448,227 USPQ 293 (Fed.Cir. 1985) -- that "authorizes" the use of the "hypothetical" person in determining obviousness under paragraph 103 is clearly wrong as a matter of superior law -- i.e., as matter of fact.

Moreover, for any person to render a reasonable judgement or opinion in respect to a certain matter or situation (legal or otherwise), he must have a correspondingly reasonable background and literacy (i.e., skill, knowledge, vocabulary) with respect to that certain matter or situation (i.e., he must have an appropriate basis of authority to be in the position to render such judgement or opinion). Thus, to render a meaningful (i.e., informed, legally relevant) opinion in regard to a given area of Law, a person must possess an appropriate background and literacy with respect to that area of Law.

In particular, if an examiner is to render an opinion with respect to Natural Law (as indeed he is whenever he makes a determination of patentability of an invention), it is imperative that he has the appropriate background/literacy relative to the particular area of Natural Law underlying that particular invention. Otherwise, his opinion could not in any principled manner be considered to be authoritative.

Thus, clearly, if an examiner's opinion is not authoritative (i.e., not based on an appropriate background and literacy) it constitutes an uninformed opinion and it can have no legal relevancy; which is to say: it can have no evidentiary weight.

COMMENTS IN RE EXAMINER'S ANSWER

Applicant assumes that, in order to reject as unpatentable a claimed invention pertaining to a particular subject matter, it is necessary for the Examiner to present evidence to the effect that the claimed invention would have been obvious to "a person having ordinary skill in the art pertinent to said subject matter".

On that assumption, Applicant traverses Examiner's rejection of claims 143 and 144 for the reason that Examiner has not provided evidence of obviousness.

Examiner presents Walker and Pintell as "evidence" of obviousness.

However, a prior art reference by itself does not constitute evidence. Rather, before such a prior art reference can constitute legally relevant evidence it must be interpreted by a person capable of effecting such interpretation in a competent manner.

In other words, a prior art reference can constitute evidence only when presented in combination with competent interpretation of the subject matter contained therein.

However, Examiner has not provided any evidence to the effect that the interpretation of Walker and Pintell upon which Examiner has relied constitutes competent interpretation. Thus, in fact, Examiner has not provided evidence in support of his holding of obviousness.

In instant situation, in order to provide competent interpretation of Walker and Pintell (as pertinent to the subject matter of the claimed invention), such interpretation clearly must be effected by a person possessing skill equivalent to that of "a person having ordinary skill in the art pertinent to said subject matter". Otherwise, that person's opinions with respect to such subject matter would have to be regarded as strictly uninformed opinions of no evidentiary weight.

Thus, for Walker and/or Pintell to constitute legally relevant evidence with respect to obviousness of the claimed invention, it is an absolute unavoidable necessity that the person interpreting Walker and/or Pintell possess the particular skill equivalent to that of "a person having ordinary skill in the art pertinent to said subject matter".

Clearly, Examiner has provided no evidence whatsoever with respect to the particular skill of the person having rendered the interpretation of Walker and Pintell upon which Examiner rejected the claimed invention as being obvious.

Apparently, Examiner has based his rejection upon his own interpretation and opinions with respect to the facts and circumstances associated with the applied references and how these facts and circumstances pertain to the subject matter of the claimed invention. Thus, is appears that Examiner has used his own interpretation and opinion as the basis for his finding of obviousness. Yet, Examiner has not provided any evidence of actually possessing the qualifications necessary to effect such interpretations and to render such opinions.

In other words, Examiner seems to have formed his opinions on the basis of his own prima facie interpretations relative to the particular art associated with the claimed invention and the applied references; however, not having provided any evidence to the effect that he possesses even ordinary skill in that particular art, Examiner's own prima facie interpretations can obviously not have any legal relevance in instant context.

CONCLUDING REMARKS

Clearly, without possessing ordinary skill in the art to which a given subject matter belongs, it is irrelevant in an evidentiary sense -- with respect to that given subject matter -- for a person to render opinions in respect to: i) what is obvious and/or what is unobvious to a person who does possess ordinary skill in that subject matter, ii) what is usual and what is unusual, iii) what is common practice and what is not, iv) what is safe practice and what is not, v) what is feasible to do and what is not, vi) what is practicable and what is not, vii) what works and what does not, viii) what kinds of circuits and/or elements are combinable and what kinds are not, ix) how circuits function and how they do not function, x) what may be regarded as prima facie so versus prima facie not so; xi) what constitutes a commonly prevailing attitude/ prejustice and what does not; xii) what is cost-effective and what is not; xiii) what are commonly accepted assumptions/premises and what are not; xiv) what constitutes a net advantage versus what does not constitute a net advantage; xv) what are commonly expected consequences of a given modification and/or combination; xvi) what words and phrases have particular meaning and how those words/phrases should be interpreted; xvii) etc.

Moreover, it is simply not possible to carry on a productive or even a meaningful discussion with such a person in respect to such subject matter. He simply does not possess the particular background, culture, vocabulary, pre-dispositions associated with having ordinary skill in that subject matter. He would simply lack the literacy associated with that particular subject matter; which means that he would not be capable of properly comprehending, interpreting, relating and/or combining facts and references related to that subject matter.

Lacking evidence to the contrary, Applicant takes the position that Examiner might not possess ordinary skill in the particular art pertinent to instant application -- where the words "ordinary" and "skill" are interpreted in accordance with their plain meaning, etc. Hence, absent such evidence:

(1) Examiner's prima facie impressions and/or opinions with respect to facts and circumstances of and/or within that particular art must be considered as uninformed opinions, therefore carrying no evidentiary weight;

(2) Examiner must be considered unqualified to render opinions (especially official opinions) relative to what is obvious and/or unobvious (to "a person having ordinary skill in the art"), how circuits work and how they do not work, which features are combinable and which are not, etc.; and

(3) Examiner must be considered unqualified to carry on a meaningful debate/discussion/argument relative to what would be obvious versus what would be unobvious, etc.

In conclusion -- partly because he has not supplied evidence to the effect that he himself possesses ordinary skill in the particular art pertinent to the claimed invention, yet in his conclusion has apparently relied upon his own opinions and interpretations with respect to facts and circumstances of and related to that particular art -- Examiner has not provided any kind of legally relevant evidence to the effect of showing that the claimed invention would have been obvious to a person having ordinary skill in the particular art pertinent thereto.

Ole K. Nilssen, Pro Se Applicant

312-658-5615

Date: 6-20-88

AP212

MAIL ROOM
JUN 24 1988
PAT. & TRADE MARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

21C

BEFORE THE BOARD OF APPEALS

RECEIVED
JUN 2 1988
GROUP 210

In re Application of: Ole K. Nilssen
Entitled: INVERTER CIRCUITS
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 6-21-88

REPLY BRIEF

88-3439

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Answer to Applicant's previously submitted Appeal Brief, Applicant provides a Reply Brief in the form of the following comments and arguments.

AUTHORITIES

The authorities to be relied upon in this Reply Brief are:

(1) Natural Law (i.e., the Laws of Nature): verifiable reality, facts, truths, the Laws of Physics, the Laws of Mathematics/Reason/Logic, etc.;

(2) Common Law: esp. definitions/usage of words/language;

(3) Statutory Law: esp. paragraph 103 of the Patent Law;

(4) Case Law: esp. recent desicions by the CAFC.

Natural Law preceeds and is superior to both Common Law and Statutory Law. Case Law is inferior to both Common Law and Statutory Law, as well as to Natural Law.

Thus, Statutory Law and Common Law are valid only as long as they do not conflict with Natural Law; and Case Law is valid only as long as it does not conflict with Natural Law, Common Law and/or Statutory Law.

In particular, the main specific authority to be relied upon in this Reply Brief is paragraph 103 of the Patent Law as interpreted in accordance with Natural Law and Common Law.

More particularly, in accordance with Common Law (which, by unavoidable necessity, must include the English language), paragraph 103 is herein interpreted in accordance with the plain meaning of the words and phrases used therein -- plain meaning being herein defined as the meaning expressed by the words and phrases when interpreted in accordance with common definitions and usage of English words and phrases -- as for instance in accordance with Webster's New Collegiate Dictionary.

Paragraph 103 relates to obviousness and refers to subject matter which "would have been obvious ... to a person having ordinary skill in the art to which said subject matter pertains".

In particular, Applicant interprets the words "ordinary" and "skill" in accordance with common usage (i.e., Common Law); which is to say, in accordance with the way those words are commonly interpreted and understood, such as they are, for instance, interpreted in Webster's New Collegiate Dictionary.

It is noted that paragraph 103 says nothing about a "hypothetical" person as defined and used in Case Law, and as often referred-to by the PTO.

Clearly, if the framers of the Patent Law had meant the phrase "person having ordinary skill" in paragraph 103 to be defined in a special non-standard or unusual manner, they would have had the brains to so stipulate.

Moreover, in Case Law, the characteristics attributed to the so-called "hypothetical" person are such as to make this "hypothetical" person non-appropos as a definition for the term "person having ordinary skill" for the reason that a person having those characteristics would clearly be in conflict with Natural Law in that a person of such characteristics are not known to exist at all, much less to exist in the sense of being "ordinary".

Thus, the "person having ordinary skill" of paragraph 103 can not in any principled manner be defined to have the characteristics attributed to the so-called "hypothetical" person.

Hence, any Case Law -- such as for instance enunciated in Standard Oil Co. v. American Cyanamid Co., 774F.2d 448,227 USPQ 293 (Fed.Cir. 1985) -- that "authorizes" the use of the "hypothetical" person in determining obviousness under paragraph 103 is clearly wrong as a matter of superior law -- i.e., as matter of fact.

Moreover, for any person to render a reasonable judgement or opinion in respect to a certain matter or situation (legal or otherwise), he must have a correspondingly reasonable background and literacy (i.e., skill, knowledge, vocabulary) with respect to that certain matter or situation (i.e., he must have an appropriate basis of authority to be in the position to render such judgement or opinion). Thus, to render a meaningful (i.e., informed, legally relevant) opinion in regard to a given area of Law, a person must possess an appropriate background and literacy with respect to that area of Law.

In particular, if an examiner is to render an opinion with respect to Natural Law (as indeed he is whenever he makes a determination of patentability of an invention), it is imperative that he has the appropriate background/literacy relative to the particular area of Natural Law underlying that particular invention. Otherwise, his opinion could not in any principled manner be considered to be authoritative.

Thus, clearly, if an examiner's opinion is not authoritative (i.e., not based on an appropriate background and literacy) it constitutes an uninformed opinion and it can have no legal relevancy; which is to say: it can have no evidentiary weight.

COMMENTS IN RE EXAMINER'S ANSWER

Applicant assumes that, in order to reject as unpatentable a claimed invention pertaining to a particular subject matter, it is necessary for the Examiner to present evidence to the effect that the claimed invention would have been obvious to "a person having ordinary skill in the art pertinent to said subject matter".

On that assumption, Applicant traverses Examiner's rejection of claims 143 and 144 for the reason that Examiner has not provided evidence of obviousness.

Examiner presents Walker and Pintell as "evidence" of obviousness.

However, a prior art reference by itself does not constitute evidence. Rather, before such a prior art reference can constitute legally relevant evidence it must be interpreted by a person capable of effecting such interpretation in a competent manner.

In other words, a prior art reference can constitute evidence only when presented in combination with competent interpretation of the subject matter contained therein.

However, Examiner has not provided any evidence to the effect that the interpretation of Walker and Pintell upon which Examiner has relied constitutes competent interpretation. Thus, in fact, Examiner has not provided evidence in support of his holding of obviousness.

In instant situation, in order to provide competent interpretation of Walker and Pintell (as pertinent to the subject matter of the claimed invention), such interpretation clearly must be effected by a person possessing skill equivalent to that of "a person having ordinary skill in the art pertinent to said subject matter". Otherwise, that person's opinions with respect to such subject matter would have to be regarded as strictly uninformed opinions of no evidentiary weight.

Thus, for Walker and/or Pintell to constitute legally relevant evidence with respect to obviousness of the claimed invention, it is an absolute unavoidable necessity that the person interpreting Walker and/or Pintell possess the particular skill equivalent to that of "a person having ordinary skill in the art pertinent to said subject matter".

Clearly, Examiner has provided no evidence whatsoever with respect to the particular skill of the person having rendered the interpretation of Walker and Pintell upon which Examiner rejected the claimed invention as being obvious.

Apparently, Examiner has based his rejection upon his own interpretation and opinions with respect to the facts and circumstances associated with the applied references and how these facts and circumstances pertain to the subject matter of the claimed invention. Thus, is appears that Examiner has used his own interpretation and opinion as the basis for his finding of obviousness. Yet, Examiner has not provided any evidence of actually possessing the qualifications necessary to effect such interpretations and to render such opinions.

In other words, Examiner seems to have formed his opinions on the basis of his own prima facie interpretations relative to the particular art associated with the claimed invention and the applied references; however, not having provided any evidence to the effect that he possesses even ordinary skill in that particular art, Examiner's own prima facie interpretations can obviously not have any legal relevance in instant context.

CONCLUDING REMARKS

Clearly, without possessing ordinary skill in the art to which a given subject matter belongs, it is irrelevant in an evidentiary sense -- with respect to that given subject matter -- for a person to render opinions in respect to: i) what is obvious and/or what is unobvious to a person who does possess ordinary skill in that subject matter, ii) what is usual and what is unusual, iii) what is common practice and what is not, iv) what is safe practice and what is not, v) what is feasible to do and what is not, vi) what is practicable and what is not, vii) what works and what does not, viii) what kinds of circuits and/or elements are combinable and what kinds are not, ix) how circuits function and how they do not function, x) what may be regarded as prima facie so versus prima facie not so; xi) what constitutes a commonly prevailing attitude/ prejustice and what does not; xii) what is cost-effective and what is not; xiii) what are commonly accepted assumptions/premises and what are not; xiv) what constitutes a net advantage versus what does not constitute a net advantage; xv) what are commonly expected consequences of a given modification and/or combination; xvi) what words and phrases have particular meaning and how those words/phrases should be interpreted; xvii) etc.

Moreover, it is simply not possible to carry on a productive or even a meaningful discussion with such a person in respect to such subject matter. He simply does not possess the particular background, culture, vocabulary, pre-dispositions associated with having ordinary skill in that subject matter. He would simply lack the literacy associated with that particular subject matter; which means that he would not be capable of properly comprehending, interpreting, relating and/or combining facts and references related to that subject matter.

Lacking evidence to the contrary, Applicant takes the position that Examiner might not possess ordinary skill in the particular art pertinent to instant application -- where the words "ordinary" and "skill" are interpreted in accordance with their plain meaning, etc. Hence, absent such evidence:

(1) Examiner's prima facie impressions and/or opinions with respect to facts and circumstances of and/or within that particular art must be considered as uninformed opinions, therefore carrying no evidentiary weight;

(2) Examiner must be considered unqualified to render opinions (especially official opinions) relative to what is obvious and/or unobvious (to "a person having ordinary skill in the art"), how circuits work and how they do not work, which features are combinable and which are not, etc.; and

(3) Examiner must be considered unqualified to carry on a meaningful debate/discussion/argument relative to what would be obvious versus what would be unobvious, etc.

In conclusion -- partly because he has not supplied evidence to the effect that he himself possesses ordinary skill in the particular art pertinent to the claimed invention, yet in his conclusion has apparently relied upon his own opinions and interpretations with respect to facts and circumstances of and related to that particular art -- Examiner has not provided any kind of legally relevant evidence to the effect of showing that the claimed invention would have been obvious to a person having ordinary skill in the particular art pertinent thereto.

Ole K. Nilssen, Pro Se Applicant

312-658-5615

Date: 6-20-88

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | U |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 67 |

DATE MAILED: 07/13/88

Please find below a communication from the EXAMINER in charge of this application.

Commissioner of Patents.

The reply brief filed June 24, 1988 has not been entered. It is not directed only to new points of arguments in the examiner's answer. See 37 CFR 1.193(b).

The application is being forwarded to the Board of Appeals.

Beha/vsh
(703) 557-5080
07-12-88

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

PTOL-90 (REV. 8/84)

1-Patent Application File Copy

Art Unit 212

MAILED

NOV 30 1989

PAT & TM OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Paper No. 68

ON BRIEF

Appeal No. 88-3439

dem

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

---

*Ex parte* Ole K. Nilssen

- - -

Application for Patent filed October 15, 1985, Serial No. 787,692; which is a continuation of application Serial No. 644,155, filed August 27, 1984, now abandoned; which is a continuation of application Serial No. 555,426, filed November 23, 1983, now abandoned; which is a continuation of application Serial No. 178,107, filed August 14, 1980, now abandoned. Inverter With Resonant D-C Circuits.

---

Ole K. Nilssen, *pro se*.

---

Senior Examiner - William H. Beha, Jr.

---

Before Urynowicz, Krass and Cardillo, Examiners-in-Chief.

Cardillo, Examiner-in-Chief.

This is a decision on the appeal under 35 U.S.C. 134 from the examiner's rejection of claims 143 and 144. Claims 139 to 142, the only other claims remaining in this application, have been allowed by the examiner.

We reproduce representative claim 143 as follows:

143. The combination of:

rectifier means connected with an ordinary electric utility power line and operative to provide a DC voltage across a set of DC terminals;

inverter means having control input means, the inverter means being connected with the DC terminals and operative to provide a substantially squarewave voltage across a pair of squarewave output terminals in response to a drive signal being provided to the control input means;

an L-C series-circuit having a tank-capacitor and a tank-inductor, and being effectively connected across the squarewave output terminals;

load means effectively connected in parallel with the tank-capacitor; and

feedback means connected in circuit between the squarewave output terminals and the control input means, the feedback means: i) comprising saturable inductor means effectively connected with the control input means, and ii) being operative to provide the drive signal; thereby to cause the inverter to self-oscillate at a frequency equal to or higher than the natural resonance frequency of the L-C series-circuit;

whereby: i) most of the real power provided from the squarewave output terminals flows into the load means, and ii) the saturable inductor means and the L-C series-circuit are co-determinative of the frequency of self-oscillation.

The references of record relied on by the examiner are:

| | | |
|---|---|---|
| Pintell | 3,026,486 | Mar. 20, 1962 |
| Walker | 4,071,812 | Jan. 31, 1978 |

References relied on by the board:

| | | |
|---|---|---|
| Franke et al. (Franke)[1] | 4,266,134 | May 5, 1981 (filed Dec. 13, 1978) |

Bedford et al. (Bedford)[2], Principles of Inverter Circuits, John Wiley and Sons, Inc., 1964, pages 287 to 300.

Claims 143 and 144 stand rejected under 35 U.S.C. 103. As evidence of obviousness, the examiner cites Walker and Pintell considered together.

Instead of repeating the positions of the examiner and appellant, we make reference to the answer and the revised appeal

---

[1]Of record in the application.

[2]Cited by the board and attached to this decision

brief[3] for the respective details thereof.

## OPINION

At the outset, we note that appellant has argued patentability in general without regard to the specific limitations set forth in any particular claim. Accordingly, all of the appealed claims will stand or fall together. In re Wood, 582 F.2d 638, 199 USPQ 137 (CCPA 1978) and In re Hellsund, 474 F.2d 1307, 177 USPQ 170, 172 (CCPA 1973). Also note 37 CFR 1.192 which provides (in its pertinent portion) that the brief "...must set forth the ...arguments on which the appellant will rely to maintain the appeal" (emphasis added).

We have carefully reviewed the evidence before us in light of the arguments presented. We will sustain the rejection of claims 143 and 144 as we find the evidence of record to be sufficient to establish that the subject matter of these claims would have been obvious to the artisan in the manner dictated by 35 U.S.C. 103.

Appellant suggests that the qualifications of the examiner (revised appeal brief, page 1) are at issue with regard to the rejection before us. Moreover, appellant apparently suggests that the use by the patent community of the objective concept of a hypothetical person of ordinary skill in the art is not directly sanctioned by 35 U.S.C. 103. Neither line of reasoning can be given any weight in our considerations due to the recent repudiation of such arguments by our reviewing court in a decision involving appellant. See In re Nilssen, 851 F.2d 1401, 7 USPQ2d 1500, 1501 to 1502 (Fed. Cir. 1988).

---

[3]Appellant's first appeal brief was not entered since it was returned to appellant. This return was upheld on petition (Paper No. 64). This first brief is, accordingly, not considered by us. The reply brief filed June 24, 1988 (Paper No. 65) was refused entry (Paper No. 66) and, likewise, can play no part in our decision.

Turning next to appellant's main argument, we find an assertion that the examiner is in error in that he has equated that which is within the capabilities of the skilled designer with obviousness. In this regard, appellant argues that the examiner has provided no evidence that there is any expected obvious advantage in the proposed modification of Walker by the teachings of Pintell (or vice versa). Accordingly, it is appellant's position that the examiner's proposed combination of reference teachings is "arbitrary; concocted for the purpose of attaining the claimed invention, not because it leads to an advantage plainly and clearly suggested by the applied references". (revised appeal brief, page 3). At the heart of appellant's argument we find a rationale which is an indirect attack on the concept that the artisan (hypothetical person of ordinary skill in the art) could, in reality, be aware of all relevant prior art and select these particular references from the thousands available to arrive at appellant's claimed invention (revised appeal brief, page 4).

Taking appellant's last contention first, we note that any decision as to § 103 obviousness must be a reconstruction based upon hindsight reasoning tied to the limitations of the claims being considered. Our reviewing court's precedent states (In re McLaughlin, 443 F.2d 1392, 170 USPQ 209, 212 (CCPA 1971)) that:

> Any judgment on obviousness is in a sense necessarily a reconstruction based upon hindsight reasoning, but so long as it takes into account only knowledge which was within the level of ordinary skill at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, such a reconstruction is proper.

In addition, our reviewing court heard similar reality based arguments by appellant in the above noted Nilssen decision and dismissed them as contrary to its long established precedent

at 7 USPQ2d 1502 as follows:

> Nilssen urges this court to establish a 'reality-based' definition whereby, in effect, references may not be combined to formulate obviousness rejections absent an express suggestion in one prior art reference to look to another specific reference. We reject that recommendation as contrary to our precedent which holds that for the purpose of combining references, those references need not explicitly suggest combining teachings, much less specific references. See, e.g., In re Sernaker, 702 F.2d 989,995, 217 USPQ 1, 6 (Fed. Cir. 1983); In re McLaughlin, 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA 1971).

Taking appellant's contention that there must be a plain and clear advantage suggested by the applied references next, we find it to be a factual statement but not so limiting as appellant apparently believes. In the first instance, we note that a plain and clear suggestion does not require absolute predictability (only a reasonable expectation of success, see In re O'Farrell, 853 F.2d 894, 903, 7 USPQ2d 1673, 1681 (Fed. Cir. 1988)). Moreover, there is no requirement that this suggestion relates to the specific advantages noted by appellant in his specification as to his claimed structure. See In re Heck, 699 F.2d 1331, 1332-3, 216 USPQ 1038, 1039 (Fed. Cir. 1983); In re Lintner, 458 F.2d 1013, 1016, 173 USPQ 560, 562-3 (CCPA 1972); In re Gershon, 372 F.2d 535, 152 USPQ 602, 605 (CCPA 1967) and In re Jacoby, 309 F.2d 513, 516, 135 USPQ 317, 319 (CCPA 1962).

Appellant's position as to both references focuses upon the details of preferred embodiments and/or the "invention" of the particular patent and suggests that the artisan would have had no reason to modify these operable detailed embodiments. The problem with this approach is that it relegates reference teachings to preferred embodiments or disclosed inventions which are contrary to the precedent of our reviewing court which

requires a reference to be considered for all reasonable suggestions. Note, for example, In re Burckel, 592 F.2d 1175, 201 USPQ 67 (CCPA 1979); In re Lamberti, 545 F.2d 747, 192 USPQ 278 (CCPA 1976); In re Simon, 461 F.2d 1387, 174 USPQ 114 (CCPA 1972) and the Heck decision (cited, supra). With regard to this last decision, it is well settled that the use of patents as references is not limited to that which the patentees describe as their invention (or their particular problems of concern). Instead, such patents are literature of the art and relevant as to all of their suggestions.

In our view, Walker suggests that his device of Figure 6 (or the even more broadly disclosed device of Figure 1) can be driven by a rectified voltage (column 2, lines 56 to 61) and operated with feedback from a sense winding to provide self-oscillating frequency control through 14. In this regard we note Figures 1 and 6 and the descriptions thereof at column 2, lines 55 to column 3, line 12 (with special attention to column 3, lines 7 to 12 and the fact that "[t]he specific connection topology of the current sensor 16 and the rate of change sensor 18 are, however, not critical to the operation of the inverter circuit and these components may be of any type and connected in any manner known to the art") as well as the remainder of column 3 with column 4 and column 5, lines 1 to 17.

Pintell teaches that his Figure 6 saturable feedback transformer has an advantage that it "allows oscillations in the system to build up from zero amplitude when battery 613 is first connected in circuit" (see column 5, lines 15 to 31). We note that Pintell is concerned with L-C resonance effects and feedback control of the self-oscillating frequency just as Walker is.

Given the suggestion of Walker and the advantageous showing of Pintell relied on by the examiner, we are convinced

that the examiner has established a prima facie case of obviousness. There is a clear and plain suggestion of the combination of the reference teachings in the references and there is at least a reasonable expectation of success evident here. Accordingly, the examiner has done far more than equate that which is within the skill of the designer with that which is obvious.

Even if we consider Walker's preferred embodiment of Figure 7 relative to appellant's claims 143 and 144, we find nothing that is part of appellant's claimed subject matter which is not met or suggested by Walker (note In re Pearson, 444 F.2d 1399, 181 USPQ 641 (CCPA 1969) and the fact that anticipation is the epitome of obviousness). Walker shows his feedback means between the squarewave output terminals and the control input and that these means include "saturable inductor means effectively connected with the control input means". Column 5, line 17 to column 6, line 24 generally describe Figure 7, while column 5, line 58 to column 6, line 8 particularly describe the Walker feedback means as including both an inductive (W4, W3) and a saturable (Q5 or Q6) part which together make up saturable inductor means connected with the control input (Q4 and Q3 control Q1, Q2)[4]. We note that we consider it to be axiomatic that claim limitations are not to be effectively narrowed in scope by reading limitations from the specification into their broad terms which lack express statements as to such narrowing language. See In re Queener, 796 F.2d 461, 230 USPQ 438 (Fed. Cir.

---

[4]We take further note that Walker incorporates the Anderson et al. patent (3,781,638) by reference thereto (column 1, lines 30 to 38) and that this patent has a feedback control saturable magnetic core. Moreover, we note the description of Figure 4 (column 4, lines 41 to 49) as to such saturated cores and their characteristics. Even if we were to interpret this broad language as requiring a saturable inductor core (which we do not), Walker itself suggests using such well known cores.

1986); In re Sneed, 710 F.2d 1544, 218 USPQ 385 (Fed. Cir. 1983) and In re Heck, supra.

Allowed claims 139 and 141 do not appear to us to include any limitations which can be said to be different from the showing of Figure 7 of Walker or to define unobvious subject matter thereover. We note in particular that all of 10 is broadly, a rectifier means and that it is connected to the 120 V, 60 HZ terminals which clearly indicate an ordinary electric utility line. The series L-C circuit of L1, C is described as is a sinusoidal AC voltage across C, which is where the load is connected. Either C terminal can be said to be electrically connected to either of the 120V, 60HZ terminals through the power supply components since a traceable circuit path is an electrical connection even if it includes such electrical components (such as a diode). We note the decisions cited above as to the reading of claim limitations in a reasonable manner without specification details being read into claims lacking an express statement thereof.

Allowed claim 142 requires a center tap in the DC source but Walker shows a center tap relative to his diode bridge that is (via a diode and a wire) electrically connected to the lower 120V, 60HZ terminal and to the + output.

Allowed claims 139 to 141 further do not, in our view, include limitations which define unobvious subject matter over the Figure 2 showing of Franke. The artisan must be presumed to be familiar with the art beyond specific reference disclosures (see In re Jacoby, 309 F.2d 513, 135 USPQ 317 (CCPA 1962)). In this regard we note the Bedford text as to L-C filters being tuned to the inverter fundamental frequency to provide sinusoidal voltage across a capacitor such as the Figure 2 capacitor of Franke. We do not believe it is reasonable to presume that the oscillatory L-C elements of Franke are not related to inverter

frequency as appellant apparently does, simply because Franke does not specifically disclose this text book knowledge. As to self-oscillating inverters, we consider inverters with internal triggering of any form (such as from 21 of Franke) to meet this broad claim language.

As to allowed claim 142 and the Figure 2 showing of Franke (considered with the well known textbook knowledge of Bedford), the only difference we see is the use of transistors as inverter switches. Pintell teaches the advantageous use of inverter switching transistors, however.

In view of the above noted considerations as to allowed claims 139 to 142 and the reference teachings of Walker, Franke, Bedford and Pintell, we remand this application (pursuant to 37 CFR 1.196(d)) to the examiner for the consideration of the pertinency of a rejection of claims 139, 141 and 142 as anticipated under 35 U.S.C. 102(b) or, in the alternative, as obvious under 35 U.S.C. 103 over Walker. The examiner is to also consider the pertinency of a rejection of calims 139 to 142 under 35 U.S.C. 103 as being obvious over Franke considered with Bedford as to claims 139 to 141 with the further consideration of Pintell as to claim 142.

## SUMMARY

We have sustained the examiner's rejection of claims 143 and 144 under 35 U.S.C. 103.

We have also remanded the application to the examiner under 37 CFR 1.196(d) to reconsider the indicated allowability of claims 139 to 142.

Effective August 20, 1989, 37 CFR 1.196 was amended to include section 1,196(e) which indicates that any decision including a remand (as here) cannot be considered a final one.

Appeal No. 88-3439

Any request for reconsideration or modification of this decision by the Board of Patent Appeals and Interferences based upon the same record must be filed within one month from the date hereof (37 CFR 1.197).

A period of two months is set in which the appellant may submit to the Primary Examiner an appropriate amendment, or a showing of facts or reasons, or both, in order to avoid the grounds set forth in the Statement of the Board of Patent Appeals and Interferences under the provisions of 37 CFR 1.196(d).

Upon conclusion of the proceedings before the Primary Examiner on remand, this case should be returned to the Board by the Primary Examiner so that the Board may either adopt its decision as final or render a new decision on all of the claims on appeal, as it may deem appropriate. Such return is unnecessary if the application is abandoned, allowed or again appealed.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR 1.136(a). See the final rule notice, 54 F.R. 29548 (July 13, 1989), 1105 O.G. 5 (August 1, 1989).

AFFIRMED - 37 CFR 1.196(d)

Stanley M. Urynowicz Jr.
Stanley M. Urynowicz, Jr.
Examiner-in-Chief

Errol A. Krass
Errol A. Krass
Examiner-in-Chief

BOARD OF PATENT APPEALS AND INTERFERENCES

Raymond F. Cardillo, Jr.
Raymond F. Cardillo, Jr.
Examiner-in-Chief

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

TO SEPARATE, H~~ ~ TOP AND BOTTOM EDGES, SNAP-~ ~SCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. | GROUP ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|---|---|
| NOTICE OF REFERENCES CITED | | 787,692(06) | 212 | 68 |
| | | APPLICANT(S): Ole K. Nilssen | | |

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | | | | | | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Bedford et al. (Bedford), Principles of Inverter Circuits, John Wiley and Sons, Inc., 1964, pages 287 to 300. |
| S | |
| T | |
| U | |

| EXAMINER | DATE | |
|---|---|---|
| WM Beha (cited by the board) | 9-7/90 | |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

#69 GP 212

MAIL ROOM JAN 26 1990 PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF APPEALS

In re Application of: Ole K. Nilssen
Entitled: INVERTER WITH RESONANT L-C CIRCUIT
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM BEHA

I, OLE K. NILSSEN, HEREWITH CERTIFY ... DATE OF DEPOSIT ... U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 1-20-90

AMENDMENT E

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to the Board's action dated 11/30/89, Applicant amends his claims. The amended claims are provided by way of a five page document enclosed herewith and entitled AMENDED CLAIMS in Serial No. 06/787,692.

The amended claims include new claims 145 and 146; which new claims were substituted for cancelled claims 143 and 144.

Applicant notes that the action from the Board is not to be considered a Final Action.

## REMARKS

With respect to the allowabily of claims 139-142, Applicant notes that -- by his amendments -- he has obviated what appears to constitute a key concern of the Board; which concern is expressed in lines 3-17 of page 8 of its action.

Moreover, in regard to the possible obviousness of amended claims 139-142 over Franke, Applicant notes that Franke's teachings relate to an SRC-type inverter means which, in contrast with the claimed combinations, is driven as opposed to being self-oscillating.

If Examiner were to agree with the Board's position to the effect that claims 139-142 would have been obvious over Franke, Applicant requests of Examiner to explain how he would propose to modify Franke in such manner at to attain the claimed invention as it is expressly defined in and by claims 139-142. Also, Examiner would need to provide an explanation as to what would motivate a skilled artisan to seek to modify Franke in such exact manner as to attain the claimed invention.

Otherwise and inter alia, Applicant believes new claims 145-146 to be patentable over the cited prior art for the following reasons.

(a) Claims 145-146 both specify details with respect to the waveforms of the transistor driving voltages as well as the (emitter-to-collector) current flowing through the transistors. None of the cited references provide for or suggest such driving voltages and waveforms.

(b) Claim 146 additionally provides for a feature whereby the magnitude of the power supplied to the load is controlled by way of controlling the inversion frequency; which feature is neither described nor suggested by any of the cited references.

Ole K. Nilssen, Pro Se Applicant

312-658-5615

Date: 12-7-89

MAIL ROOM
JAN
57
1990
PAT. & TRADEMARK OFC.

AMENDED CLAIMS in Serial No. 06/787,692

139. (Amended) The combination of:

rectifier means: i) connected with an ordinary electric utility power line by way of a first and a second AC input terminal, and ii) operative to provide a DC voltage at a DC output;

self-oscillating inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a pair of AC output terminals, one of the AC output terminals being electrically connected with the first AC input terminal by way of a linear conductance means, such as a plain electric conductor, the inverter-circuit comprising an L-C circuit: i) having a capacitor and an inductor, ii) being connected in circuit with the AC output terminals in such manner that the capacitor is effectively connected across the AC output terminals, and iii) being resonant at or near said relatively high frequency; and

load means connected with the AC output terminals and operative to absorb most of the power being provided therefrom.

140. (Amended) The combination of:

rectifier means connected with an ordinary electric utility power line by way of a first and a second AC input terminal and operative to provide a DC voltage at a DC output;

self-oscillating inverter circuit connected with said DC output and operative to provide a sinusoidal output voltage of relatively high frequency across a load means connected with a pair of AC output terminals, the load means being operative to absorb most of the power being provided from the AC output terminals, one of the AC output terminals being at all times at substantially the same electrical potential as that of the first AC input terminal, the inverter circuit comprising an L-C tank circuit connected in circuit with the AC output terminals and having a capacitor and an inductor, the L-C tank circuit being resonant at or near said relatively high frequency, one terminal of the capacitor being connected with the first AC output terminal.

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | O |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA, JR, W | |
| ART UNIT | PAPER NUMBER |
| 212 | 70 |

DATE MAILED: 02/14/90

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

1. [x] The communication filed 1/25/90 is ~~informal~~/non-responsive for the reason(s) checked below ~~and should be corrected~~.
~~APPLICANT IS GIVEN ONE MONTH FROM THE DATE OF THIS LETTER OR UNTIL THE EXPIRATION OF THE PERIOD FOR RESPONSE SET IN THE LAST OFFICE ACTION (WHICHEVER IS LONGER) WITHIN WHICH TO CORRECT THE INFORMALITY.~~

a. [ ] The amendment to claim(s) ________, filed ________, fails to comply with the provisions of 37 C.F.R. 1.121 and is accordingly held to be non-responsive. A supplemental paper correcting the informal portions and complying with the rule is required.

b. [ ] The paper is unsigned. A duplicate paper or ratification, properly signed, is required.

c. [ ] The paper is signed by ________, who is not of record. A ratification or a new power of attorney with a ratification, or a duplicate paper signed by a person of record, is required.

d. [ ] The communication is presented on paper which will not provide a permanent copy. A permanent copy, or a request that a permanent copy be made by the Office at applicant's expense, is required, see M.P.E.P. 714.07.

e. [x] Other See attached letter

2. [ ] In accordance with applicant's request, THE PERIOD FOR RESPONSE FROM THE OFFICE ACTION DATED ________ IS EXTENDED TO RUN ________ MONTH(S).
No further extension will be granted unless approved by the Commissioner. 37 C.F.R. 1.136 (b)

3. [ ] Receipt is acknowledged of papers submitted under 35 U.S.C. 119 which papers have been made of record in the file.

4. [x] Other This application is abandoned.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

Applicant's reply received on January 25, 1990 to the board's decision dated November 30, 1989 is deemed to be non-responsive for several reasons:

At the outset, the new grounds of rejection raised by the board does not reopen prosecution except as to the subject matter to which the new rejection was applied. Applicant's substitution of claims 145 and 146 for the claims affirmed on appeal (claims 143 and 144) is clearly improper. Moreover, it is clear that claims 145 and 146 are drawn to different subject matter, see paragraph (a) on page 2 of applicant's reply. This is also improper (Ex parte Comstock, 1923 CD 82). Thus claims 145 and 146 are clearly out of place in this response, and they have not been entered.

As to amended claims 139-142, applicant's reply is non-responsive because it fails to point out <u>how</u> and <u>why</u> the recitations of the claims define novelty over, or are non-obvious over, Walker (37 CFR 1.111(b) and 1.119). The reply is similarly non-responsive because it fails to point out <u>how</u> and <u>why</u> the claims are non-obvious over Franke considered with Bedford as to claims 139 to 141 with the further consideration of Pintell as to claims 142.

Applicant has been notified repeatedly of the requirements of 37 CFR 1.111(b) in other cases before this examiner. In the examiner's opinion, therefore, the listed deficiencies are no longer "inadvertent" or "unintentional".

Accordingly, this application is abandoned for failure to perfect a correct response to the board's rejection of claims 139-142 within the time frame allowed.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number 703-557-5052.

Beha/dhk
(703) 557-5052
2-12-90

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

MAIL ROOM MAR 16 1990 PAT. & TRADEMARK OFF.

UP212 #70/Petition DLI 8-?-90

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

PETITION TO THE COMMISSIONER

RECEIVED
1990
GROUP 210

PETITIONER: Ole K. Nilssen
Caesar Drive
Barrington, IL 60010

Re: Patent Application Serial No. 06/787,692
Filed: 10/15/85
Title: INVERTER WITH RESONANT L-C CIRCUIT
Art Unit: 212
Examiner: William H. Beha

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 2-23-90

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Office Action dated 02/14/90, the above-named Petitioner herewith requests of Commissioner -- under 37 CFR 1.181 -- to:

(1) reverse Examiner's holding of abandonment of subject application;

(2) reverse Examiner's refusal to enter new claims 145 and 146; and

(3) remove this particular Examiner from the prosecution of this and the several others of Petitioner's applications presently being handled by this Examiner.

In support of this Petition, Petitioner provides the following comments.

(a) On November 30, 1989, Petitioner received a Board action with respect to an Appeal related to subject application. In this action, the Board remanded the application to Examiner to reconsider the indicated allowability of certain claims that Examiner had previously allowed.

(b) In its action, the Board stated that any Board decision which includes a remand (as here) can not be considered a final one. Consequently, Petitioner interprets the Board's action as a non-final office action to his application; which, as far as Petitioner can understand, provides for Petitioner an unrestricted opportunity to amend his claims.

(c) So, in response to the Board's comments regarding the previously allowed claims and the non-finality of its office action, Petitioner -- in his Amendment E -- amended his previously allowed claims in such manner as to obviate the Board's concerns, and he also used the opportunity to substitute two new claims for the two confirmed-rejected claims.

(d) In his response to Petitioner's Amendment E, Examiner states that:

"Applicant's reply ... to the board's decision ... is deemed to be non-responsive for several reasons".

The first reason for non-responsivenes cited by Examiner is expressed thusly:

"the new grounds of rejection raised by the board does not reopen prosecution except as to the subject matter to which the new rejection was applied".

On that basis, Examiner refused entry of the new claims.

Petitioner believes Examiner's position to be incorrect in that he recites no procedural authority -- such as a paragraph from 37 CFR or from MPEP -- in support of his position.

In any case, even if Examiner's position were to be based on correct procedure, Petitioner's actions would not in any manner indicate non-responsiveness. Rather, they would indicate over-responsiveness.

The second reason for non-responsiveness cited by Examiner relates to Petitioner's amendments of the previously allowed claims and (with reference to 37 CFR 1.111b and 1.119) is expressed thusly:

"applicant's reply is non-responsive because it fails to point out how and why the recitations of the claims define novelty over, or are non-obvious over, Walker".

Examiner has no reasonable basis for this statement.

In commenting on the amended claims (claims 139-142), in the next-to-last paragraph on page 1 of his Amendment E, Applicant (Petitioner) refers to lines 3-17 on page 7 of the Board's opinion (which deals with anticipation by Walker), and states that the amendements have obviated what to Petitioner appeared to be the Board's concerns.

That is, in the next-to-last paragraph on page 1 of his Amendment E, Applicant does point out how and why the amended claims distinguish over Walker. To provide more detailed explanations than provided in that next-to-last paragraph would be unnecessary and probably offensive to a person having ordinary skill in the art pertinent hereto.

The third reason for non-responsiveness cited by Examiner also relates to Petitioner's amendments of the previously allowed claims and is expressed thusly:

"The reply is similarly non-responsive because it fails to point out how and why the claims are non-obvious over Franke considered with Bedford".

Examiner has no reasonable basis for this statement either.

In the last paragraph on page 1 of his Amendment E, Applicant does point out how and why the amended claims distinguish over Franke. To provide more detailed explanations than provided in that last paragraph would be unnecessary and probably offensive to a person having ordinary skill in the art pertinent hereto.

It is not clear to Applicant why Examiner introduced the Bedford reference in connection with the rejection over Franke. The Board proposed the possible rejection of claims 139-142 over Franke; but, as far as Applicant can see, did not add the Bedford reference to that proposed rejection.

(e) Contrary to what Examiner apparently believes, the Board did not formally reject claims 139-142. Rather, by remanding the application to Examiner for him to reconsider the indicated allowability of claims 139-142, the Board merely suggested to Examiner that claims 139-142 might not be allowable.

Thus, until Examiner does in fact disallow claims 139-142 (in their original form), they stand as being allowable.

Hence, absent an official Examiner's action to the effect of accepting, rejecting or modifying the Board's mere suggestion of non-allowability, claims 139-142 stand officially allowed; and it seems totally inappropriate for Examiner to hold the application abandoned when it contains claims that have been officially allowed by Examiner and not officially rejected by the Board.

Of course, with the original claims standing allowed, the amended claims would be allowable de facto.

On top of all that, the Board made a clear statement to the effect that its office action could not be considered as being a final one.

(f) On several previous occasions, relative to this and other applications pending before this Examiner, Petitioner expressed his concerns (as via various petitions) about his inability to deal productively with this particular Examiner.

The fact that this particular Petition constitutes Paper No. 71 in the course of this application's procecution under subject Examiner is illustrative of the situation.

In Applicant's view, the reason for this extraordinary absence of productive results is related to a basic conflict between the modus operandi of this particular Examiner and that of this particular Petitioner.

From Petitioner's perspective, Examiner is: (i) overly zealous in the execution of his duties; (ii) frequenctly disregardful of proper procedure; and (iii) exceptionally lacking in skill pertinent to the particular arts associated with Petitioner's applications.

For the sake of improved productivity, both for the PTO and for the Petitioner, Petitioner herewith requests of the Commissioner to assign to another examiner this as well as all other of Petitioner's applications presently pending before this particular Examiner.

## CONCLUDING REMARKS

In his latest office action, Examiner expresses his opinion to the effect that Petitioner's Amendment E was intentionally deficient. That is, Examiner believes that Petitioner submitted a response to the Board action that was intentionally deficient.

Petitioner -- who, of course, is the only person in the position to know the fact in this case -- herewith states and verifies that he did not in any way submit a response that was intentionally deficient.

Quite the contrary.

Even now, after haveing been expressly informed of Examiner's position, Petitioner still believes that his response to the Board's action was and is totally appropriate.

Moreover, on basis of very extensive dealings with other examiners at the PTO, Petitioner is totally convinced that most any other examiner at the PTO would have found Petitioner's response to be totally appropriate.

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

02 AUG 1990

Group 210
Art Unit 212
dli

Paper No. 71

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 : DECISION ON PETITION
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

This letter is responsive to the petition filed March 1, 1990 requesting that the Commissioner:

1. reverse the Examiner's holding of abandonment of the subject application;

2. reverse the Examiner's refusal to enter new claims 145 and 146; and

3. remove the examiner from this as well as several other applications, reassigning those applications to another examiner.

In response to Petitioner's request to withdraw the holding of abandonment, it is noted that the response dated January 25, 1990, included no explanation of how the claims are patentably distinguished from the Walker reference. Thus, the amendment was not responsive to the Board of Appeals decision (note MPEP 1214.01). Accordingly, the examiner should have written an Action, incorporating the rejection suggested by the Board of Appeals into that Action, and made the Action FINAL. This was not done. Accordingly, the application is being returned to the examiner for withdrawal of the holding of abandonment and the entry of the appropriate Action. The only matters to be considered by the examiner are those not affirmed by the Board of Appeals. Thus, the only claims open to the possibility of further prosecution are claims 139 to 142. The petition as to this matter is **GRANTED**.

In response to Petitioner's second request, MPEP 1214.01 clearly states that on a remand from the Board of Appeals to the examiner under 37 CFR 196(d), the considerations are limited to the issues of the suggested rejection. Petitioner's substitution of claims 145 and 146 for claims 143 and 144, respectively, which latter claims were not included in the 37 CFR 196(d) rejection, is not a permissible response to the suggestion of rejection by the Board of Appeals. Thus, the examiner's refusal to consider claims 145 and 146 was proper. The petition as to this matter is **DENIED**.

In response to Petitioner's third request, an application will not be reassigned to another examiner at the request of the applicant except under the most extreme circumstances of compelling reasons, such as a conflict of interest. Furthermore, the Patent and Trademark Office assigns examiners to an art area based on the examiners' professional experience, and educational and technical training. In the present situation, Senior Examiner Beha has been examining in the electrical converter and inverter art for many years. His extensive education and experience coupled with an extraordinarily distinguished record clearly qualify him to examine the present application. Petition to reassign this application is **DENIED**.

SUMMARY

Petition to reverse the holding of abandonment is **GRANTED**.

Petition to reverse the refusal to enter claims 145 and 146 is **DENIED**.

Petition to replace the examiner is **DENIED**.

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

310.00 - 241

DAC #72

2/14/90

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application for: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA

RECEIVED
JUL 25 1990
DEPUTY ASST. COMM.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 7-14-90

PETITION FOR REVIVAL

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant herewith petitions Commissioner, under paragraph 1.137(b) in Rules of Practice in Patent Cases, to revive subject application.

Applicant herewith verifies that subject application was unintentionally abandoned.

Enclosed herewith are:
(1) A check (#3439) for $310.00 to cover the fee therefor;
(2) A Verified Statement re Small Entity Status.
(3) A response to the outstanding office action.

Applicant believes that Examiner's holding of abandonment (on 02/14/90) of subject application was improper; and, on 02/23/90, Applicant submitted a petition to have Examiner's action overturned. However, Applicant has not yet had any response from the Patent Office with respect to his Petition; and, since time is of the essence, Applicant can not afford to wait any longer for a response to his Petition.

Ole K. Nilssen, Pro Se Applicant

"OFFICIAL SEAL"
ELLEN J. NILSSEN
Notary Public, State of Illinois
My Commission Expires 5/30/92

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

SEAL

Sworn to and subscribed before me this 14th day of July, 1990.

Notary Public

070 LH 07/20/90 06787692 1 241 310.00 CK

Applicant or Patentee: K. Nilssen — Attorney's Docket No.:
Serial or Patent No.:
Filed or Issued:
For:

JUL 19 1990

RECEIVED
JUL 25 1990
DEPUTY ASST. COMM.

**VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR**

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled INVERTER WITH RESONANT L-C CIRCUIT described in

[ ] the specification filed herewith
[X] application serial no. 06/787,692, filed 10/15/85.
[ ] patent no. ________, issued ________.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[X] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole K. Nilssen
ADDRESS Caesar Drive, Barrington, IL 60010
[X] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 7-13-90 | | |
| Date | Date | Date |

JUL 19 1990

#73

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: Ole K. Nilssen
Entitled: INVERTER WITH RESONANT L-C CI[RCUIT]
Serial Number: 06/787,692
Filing Date: 10/15/85
Art Unit: 212
Examiner: WILLIAM BEHA

RECEIVED
JUL 25 1990
DEPUTY ASST. COMM.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 7-21-90

AMENDMENT F

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Examiner's Communication dated 02/14/90, Applicant provides the following comments.

(a) Applicant makes reference to his Petition with respect to having Examiner's holding of abandonment rescinded. This Petition is dated 02/13/90 and was submitted in direct response to Examiner's Communication dated 02/14/90. However, as of the present date, Applicant has not received any response to this petition.

(b) In his Communication, with respect to claims 139-142, Examiner holds that Applicant failed to point out how and why the recitations of the claims define novelty over, or are non-obvious over, Walker. Applicant totally fails to see the basis for and the pertinence of Examiner's position, but will never-the-less attempt as best he can to "point out how and why the recitations of the claims define novelty over, or are non-obvious over, Walker". Applicant points out as follows:

(1) Claim 139 recites a combination of:

(i) "rectifier means ... connected with an ordinary electric utility power line by way of a first and a second AC input terminal ..."; and

(ii) "... inverter circuit ... operative to provide a sinusoidal output voltage ... across a pair of AC output terminals, one of the AC output terminals being electrically connected with the first AC input terminal by way of a linear conductance means, such as a plain electric conductor ...".

Nowhere does Walker describe or suggest such a combination.

(2) Claim 140 recites a combination of:

(i) "rectifier means connected with an ordinary electric utility power line by way of a first and second AC input terminal ..."; and

(ii) "... inverter circuit ... operative to provide a sinusoidal output voltage ... across a load means connected with a pair of AC output terminals, ... one of the AC output terminals being at all times at substantially the same electrical potential as that of the first AC input terminal ...".

Nowhere does Walker describe or suggest such a combination.

(3) Claim 141 recites a combination of:

(i) "rectifier means ... connected with an ordinary electric utility power line by way of a first and a second AC input terminal ..."; and

(ii) "... inverter ... operative to provide a substantially squarewave output voltage ... across a pair of squarewave output terminals, one of the squarewave output terminals being electrically connected with the first AC input terminal by way of a substantially linear conductance means, such as a plain electric conductor ...".

Nowhere does Walker describe or suggest such a combination.

(4) Claim 142 expressly defines an:

"... inverter ... powered from a DC source having a center-tap ... the DC source being connected with ... an ordinary electric utility power line by way of a pair of supply conductors, the center-tap being electrically connected <u>without any intervening non-linear impedance means</u> with one of the supply conductors ...".

Nowhere does Walker describe or suggest such a feature.

(c) With respect to claims 139-141, Examiner further states that Applicant "fails to point out how and why the claims are non-obvious over Franke considered with Bedford". Although Applicant believes that -- since Examiner has in fact not yet rejected claims 139-141 over Franke and Bedford (the Board only requested of Examiner to reconsider the allowability of these claims) -- it is inappropriate of Examiner to require Applicant "to point out how and why the claims are non-obvious over Franke considered with Bedford". Never-the-less, Applicant will point out as follows:

(5) Exemplary claim 139 expressly recites the combination of:

"... inverter circuit ... operative to provide a sinusoidal output voltage ... across a pair of AC output terminals ..."; and

"load means connected with the AC output terminals ...".

Franke neither describes nor suggests this feature.

As would readily be perceived by a person having but ordinary skill in the art pertinent hereto, in Franke the voltage provided across the output terminals is manifestly non-sinusoidal.

Nor does Bedford offer anything that even remotely might suggest how to modify Franke so as to make his output voltage sinusoidal -- or, for that matter, why such a modification should even be desirable.

Ole K. Nilssen, Pro Se Applicant

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

JVN/JVN/mdt.9

Paper No. 74

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

COPY MAILED
SEP 24 1990
DEPUTY ASST COMM.

In re Application of :
Ole K. Nilssen :
Serial No. 06/787,692 :
Filed: October 15, 1985 :

ON PETITION

This is a decision on the petition under 37 CFR 1.137(b), filed July 19, 1990, to revive the above-identified application.

The petition is dismissed as moot in view of the August 2, 1990 decision on the petition filed on March 1, 1990.

The application file is being forwarded to Group 210.

Jeffrey V. Nase
Supervisory Petitions Examiner
Office of the Deputy Assistant
Commissioner for Patents

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/787,692 | 10/15/85 | NILSSEN | 0 |

EXAMINER: BEHA JR, W

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| ART UNIT | PAPER NUMBER |
|---|---|
| 212 | 75 |

DATE MAILED: 09/26/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined ☐ Responsive to communication filed on ______ ☑ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), —— days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ ______

Part II SUMMARY OF ACTION

1. ☑ Claims 139 - 142 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☑ Claims 139-142 are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ______. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on ______. has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ______, has been ☐ approved; ☐ disapproved (see explanation).
12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ______ ; filed on ______.
13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

EXAMINER'S ACTION

In accordance with the Group Director's Decision on Petition (Paper No. 71), dated 02 August 1990, prosecution in this case is being resumed.

In compliance with the decision, the holding of abandonment is being withdrawn. Moreover, applicant's "amendment E" (Paper No. 69), filed January 25, 1990, has not been entered. Claims 143 and 144 have been canceled.

Accordingly, an action on previously allowed claims 139-142 follows below:

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

Claims 139, 141 and 142 are rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over Walker.

Reference is made to the board's decision, page 8, first and second full paragraphs, for a comprehensive exposition of the underlying rationale. These paragraphs are incorporated herein by reference.

Claims 139 to 142 are rejected under 35 U.S.C. § 103 as being unpatentable over Franke in view of Bedford as to claims 139 to 141, with further consideration of Pintell as to claim 142.

Reference is made to the board's decision, the paragraph bridging pages 8 and 9, and the first full paragraph of page 9,

for a comprehensive exposition of the underlying rationale. These paragraphs are incorporated by reference into this rejection.

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number (703) 557-5052.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

Beha/dmm
August 08, 1990

96
Paper Number

REQUEST FOR ACCESS

DATE: Oct. 3, 1990
SERIAL NUMBER: 178107
FILING DATE: 8-14-80
APPLICANTS: OLE NILSSEN

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER ______________ OR PRINTED APPLICATION ______________.

RESPECTFULLY SUBMITTED,

[signature]

OFFICIAL USE ONLY

CW 210 GP
Initials
File Information Unit

#77
Paper Number

REQUEST FOR ACCESS

DATE: 10/9/90
SERIAL NUMBER: 06/178,107
FILING DATE: Aug. 14, 1980
APPLICANTS: OLE K. NILSSEN

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 4677345 OR PRINTED APPLICATION ________________.

RESPECTFULLY SUBMITTED,

Morton J. Rosenberg

OFFICIAL USE ONLY

PROCESSED BY
OCT 30 1990
F.I.U.
Initials
File Information Unit

D. Day

UNITED S...ES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Group 210
Art Unit 212
dli

16 NOV 1990

Paper No. 78

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 :
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

Returned herewith is the "Petition of Improper Final Rejection" filed November 1, 1990, in Patent Application 06/787,692. The Petition is returned to Petitioner under 37 CFR 1.3 for failure to conduct business with the U.S. Patent and Trademark Office with decorum and courtesy.

This is not the first instance of Petitioner's failure to conduct business with decorum and courtesy in this case. See, for example, the letters returning earlier papers, mailed March 26, 1986, and January 21, 1988. Note, also, that the Petitioner asked to have the return of papers on January 21, 1988, overturned by the Commissioner of Patents, and that on May 27, 1988, Deputy Assistant Commissioner for Patents James Denny affirmed that in fact language such as that presently objected to was not within the decorum required by 37 CFR 1.3.

Petitioner is advised that the subject matter disparaging the Examiner's skill (Petition, paragraph spanning pages 1 and 2) is out of place in this petition, just as it was in the earlier returned papers.

Moreover, the Petition must be limited to addressing the grounds of the petition, i.e., that the Final Rejection was premature.

Further, Petitioner is cautioned that any further such comments regarding the Examiner in this or any other application will be dealt with similarly.

The period for filing a response to the Final Rejection remains three months from the date of the Final Rejection.

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

MAIL ROOM
NOV 26 1990
82
PAT. & TRADEMARK OFF.

GP 212
#79/Petition
DLI
12-24-90

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 07/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA
Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 11-20-90

REVISED PETITION RE IMPROPER FINAL REJECTION

NOV 29

Commissioner of Patents and Trademarks
Washington, D.C. 20231

In response to Communication dated 11/16/90 from Director of Group 210, still under paragraph 37 CFR 1.181a, Applicant herewith submits a revised petition to Commissioner; by which petition Applicant requests Commissioner to instruct Examiner to change his final office action dated 09/26/90 to a non-final office action.

The finality of Examiner's most recent office action is inappropriate for the reason that it contained an initial rejection of claims 139-142. Thus, Applicant was never provided an opportunity to respond to Examiner's initial rejection of these claims 139-142.

In other words, Examiner rejected claims 139-142 without ever providing Applicant with an opportunity to traverse these rejections.

Also, Examiner improperly denied entry of Applicant's Amendment E; which Amendment E -- prior to Examiner's initial rejection -- provided for amendments to claims 139-142.

Ole K. Nilssen, Pro Se Applicant

UNITED S.. .TES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

24 DEC 1990

Group 210
Art Unit 212
dli

Paper No. 80

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 : DECISION ON PETITIONS
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

Two Petitions are before the Group Director for decision. First for consideration is a PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION, filed on November 23, 1990, following a decision by the undersigned resulting in the return of earlier filed Petition papers with respect to an allegedly improper final rejection. The papers had been returned as not falling within decorum requirements of 37 CFR 1.3. This "first" petition has been forwarded to undersigned for reconsideration of the issue. The second Petition is entitled REVISED PETITION RE IMPROPER FINAL REJECTION, and embodies a request for review under 37 CFR 1.181 with respect to the Examiner's designation of a rejection as "final." Both the "first" and "second" Petitions are addressed within this single Decision letter.

Specifically with respect to the "first" petition, it is once again noted that comments personally disparaging the Examiner have been presented within correspondence directed to the Official application file record. This issue has been addressed repeatedly. All such papers deemed to fail in conducting business with the Patent and Trademark Office with decorum and courtesy will be returned. The subject petition is DISMISSED.

The "second" Petition, now in acceptable form with respect to 37 CFR 1.3, references a Board of Patent Appeals and Interferences decision of November 30, 1989, affirming the rejection of certain claims on appeal. In its decision, the Board recommended specific rejections of previously allowed claims, and remanded the application to the Examiner, permitting Petitioner a period of two (2) months within which to respond to the recommended rejection by submitting to the Examiner an appropriate amendment and/or a showing of facts to overcome said recommended rejection.

At the heart of this issue is the following series of events. After the Board's presentation of recommended rejections, Petitioner availed himself of the opportunity to present an "appropriate response" as afforded under 37 CFR 1.196d. This response was ultimately determined to be inappropriate, and the Examiner subsequently rendered an Office Action wherein he maintained the proposed rejections, repeating and embracing the Board's own rationale (as he is required to do under the noted Rule). The Examiner made the Official Action FINAL.

It would appear from this record of events that a clear issue was developed on the question of patentability of the claims on remand. The Examiner is well aware of Office policy that dictates bringing prosecution to as speedy conclusion as possible. While Petitioner is to be dealt with justly, needs of the general public for timely determination of claim scope cannot be ignored. On the other hand, present practice does not sanction hasty and ill-considered final rejections.

On review, and for the record, the decision at bar seems neither hasty nor ill-considered. Inasmuch as the Board's suggested rejection on new grounds is, in fact, a recommendation as opposed to a first rejection on those grounds (normally to be followed by a second or final rejection), the question as to whether Petitioner technically received a full hearing on this point is fairly raised. In this context it is noted that general PTO practice with respect to final rejections seeks to avoid a situation where an applicant is confronted for the first time with a ground of rejection in an action closing prosecution. Clearly this is not the case in this special situation where the Board has effectively communicated the rejection to Petitioner, and opportunity for appropriate relief is available under the Rules of Practice. It is also noted, with respect to the issue of timeliness, that Petitioner has received as much as four actions (rejections) in addition to the Examiner's Answer on Appeal. The Examiner's designation of the subject Action as "FINAL" is deemed appropriate in terms of both fairness and timeliness. Thus the Petition is DENIED. The finality of the outstanding rejection stands, and the period set for appropriate response thereto continues to run for THREE MONTHS.

It is noted that the Board, following conclusion of the proceedings before the Examiner, will either adopt its earlier decision as final or will render a new decision based on all appealed claims, as it considers appropriate. Such final action by the Board will give rise to alternatives available to Petitioner following a decision by the Board.

In SUMMARY, the "first" Petition (seeking reconsideration of an earlier Petition returned for non-compliance with 37 CFR 1.3) is DISMISSED and the associated papers are returned for non-compliance with 37 CFR 1.3. The "second" Petition (seeking to change the designation of a final action to non-final status) is DENIED.

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

UNITED TES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

15 FEB 1991

Group 210
Art Unit 212
dli

Paper No. 81

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 : DECISION ON PETITION
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

Returned herewith is Petitioner's communication dated January 16, 1991. This petition is being returned. By enclosing a paper that was previously returned as unacceptable under 37 CFR 1.3, (petition filed November 1, 1990), Petitioner is attempting to enter into the record indirectly that which the Office would not permit to be entered directly.

Under no circumstances will Petitioner be permitted to add to the record of the above-identified application any material deemed unacceptable under 35 CFR 1.3.

Petition is **RETURNED**.

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

MAIL ROOM FEB 22 1991 PAT. & TRADEMARK OFF.

06/787692

#82 Petition to Review Director Decision

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re: Decisions of the Director of Group 210

Petitioner: Ole K. Nilssen

PETITION RE IMPROPER RETURN OF PRIOR PETITION

RECEIVED MAR 27 1991 DEPUTY ASST. COMM. 181

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 2-21-91

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Petitioner herewith petitions Commissioner, under paragraph 37 CFR 1.181a, to review the actions of the Director for Group 210 with respect to: (i) his decision with respect to Applicant's PETITION RE IMPROPER FINAL REJECTION, which was submitted 10/28/90; and (ii) his return of Applicant's REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION, which was submitted on 01/13/91.

In the Petitioner's view, the Director's responses to the above- identified petitions were utterly improper; and the Petitioner requests of the Commissioner to rectify those decisions.

Attached hereto, in reverse chronological order, are copies of all the pertinent documents related to instant situation:

1. DECISION ON PETITION, dated 15 FEB 1991;
   (This "DECISION" was in fact no decision)
2. REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION, dated JAN 16, 1991;
3. PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION, dated NOV 23, 1990.
4. Paper No. 78, dated 16 NOV 1990;
5. PETITION RE IMPROPER FINAL REJECTION, dated NOV 1, 1990;

The Director's reason for returning Petitioner's most recent petition relates to an alleged lack of courtesy on part of Petitioner in dealing with Patent Office personnel; which alleged lack of courtesy involves Petitioner's delineation (at page 2 of his PETITION RE IMPROPER FINAL REJECTION) of his reasons for requesting the removal of a certain examiner from the prosecution of one of Petitioner's pending patent applications.

In the Petitioner's viewpoint, the Patent Office -- just like any other well run business or other organization -- should be more than glad to hear comments from one of its "customers" with respect to the performance of one of its employees, whether those comments reflect good performance or bad performance.

Of course, when occasionally the Petitioner comments favorably with respect to the perfomance of an examiner, no further action results.

However, when occasionally the Petitioner comments unfavorably with respect to the performance of an examiner, the Office seems to get up in arms, at least as reflected by the Group 210 Director's reaction to the Petitioner's comments with respect to one of the examiners in his Group.

Is it Office policy that it does not wish to hear any sort of criticism with respect to its performance?

Is it Office policy to classify criticism of an examiner as constituting lack of "decorum" and therefore as being unacceptable?

Ole K. Nilssen, Pro Se Petitioner

UNITED ST/ S DEPARTMENT OF COMMERCE
Patent and ·, ademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Group 210
Art Unit 212
dli

Paper No. 82

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 :
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

DECISION ON PETITION

Returned herewith is Petitioner's communication dated January 16, 1991. This petition is being returned. By enclosing a paper that was previously returned as unacceptable under 37 CFR 1.3, (petition filed November 1, 1990), Petitioner is attempting to enter into the record indirectly that which the Office would not permit to be entered directly.

Under no circumstances will Petitioner be permitted to add to the record of the above-identified application any material deemed unacceptable under 35 CFR 1.3.

Petition is **RETURNED**.

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

MAIL ROOM JAN 16 1991 PAT. & TRADEMARK OFC.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA
Director: DONALD G. KELLY
Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 1-13-91

REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

On 11/01/90 Applicant filed a PETITION RE IMPROPER FINAL REJECTION. A copy of this Petition is attached hereto.

On 11/16/90 the Director of Group 210 responded to this Petition by returning it to Applicant without acting thereupon. A copy of the Director's letter is attached hereto.

The Director's stated reason for returning Applicant's Petition is that of non-compliance with the decorum requirements of 37 CFR 1.3.

Applicant then submitted a new petition entitled "PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION", which new petition was filed on 11/23/90.

Applicant received a response to this new petition dated 12/24/90; which response was improper.

The facts of the situation are as follows.

(a) In an action by the Board of Appeals dated 11/30/89, the Board recommended for the Examiner to consider rejection of certain claims already allowed by Examiner.

(b) In response to this recommendation, Applicant submitted an Amendment E dated 01/20/90; which Amendment was found by Examiner to be non-responsive and was not entered. At the same time, Examiner placed Applicant's application in the state of abandonment.

(c) Applicant then submitted a petition to Commissioner on 02/23/90, arguing that Examiner inappropriately abandoned Applicant's aplication.

(d) Finally, not having received a response to his petition, Applicant submits a "PETITION FOR REVIVAL" ON,07/14/90.

(e) On 02/08/90, Applicant receives a response to his petition submitted on 02/23/90; which petition was granted, thereby reversing Examiner's holdong of abandonment.

(f) The "PETITION FOR REVIVAL" was granted on 11/24/90.

(g) On 10/23/90 Applicant submitted a "PETITION FOR REFUND OF FEE"; which petition has not yet been acted upon.

(h) On 09/26/90 Applicant receives a final Office Action from Examiner; which final Office Action rejects said certain claims for the first time; which certain claims were never amended; which is to say: they were original unamended claims.

(i) On 10/28/90 Applicant submits a "PETITION RE IMPROPER FINAL REJECTION"; arguing that it was improper for Examiner to reject Applicant's original unamended claims for the first time in a final office action.

(j) On 11/16/90 Applicant gets his Petition returned without action for the alleged reason of "failure to conduct business with the U.S. Patent and Trademark Office with decorum and courtesy". Apparently, the PTO does not wish to hear anything from an applicant to the effect that the applicant considers one of its examiners imcompetent and unfit.

(k) On 11/20 Applicant submits two petitions: one entitled "PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION", and one entitled "REVISED PETITION RE IMPROPER FINAL REJECTION". In these petitions, Applicant attempts as best he can to circumvent the PTO's apparently very acute sensibilities regarding the issue of conducting business with the PTO "with decorum and courtesy".

(l) On 12/24/90 the Director of Group 210 denied Applicant's petition with respect to overturning the finality of Examiner's first-time rejection of Applicant original virgin claims. The

Director's "reasoning" appears to be that Applicant availed himself of the opportunity to respond to the Board's recommendation to reject Applicant's claims, and that therefore it was indeed appropiate for Examiner to make his initial action on these claims a final action.

However, while it is true that Applicant attempted to avail himself of the opportunity to respond to the Board's recommendation, his attempted response was rebuffed by Examiner: it was never entered; which clearly means that -- as far as instant case is concerned -- this attempted response is a nullity: it does not exist for the reason that it was not entered.

Hence, the basic fact remains that Examiner rejected Applicant's original unamended claims for the first time in a final office action; which according to the PTO's own rules is inappropriate.

So, Applicant herewith petitions Commissioner to overturn the Director's decision and reverse the finality of Examiner's latest office action.

Ole K. Nilssen, Pro Se Applicant

GP212

MAIL ROOM NOV 23 1990 70 PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA
Director: DONALD G. KELLY
Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 11-30-90

PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION

RECEIVED NOV 27 1990 GROUP 210

Commissioner of Patents and Trademarks
Washington, D.C. 20231

On 11/01/90 Applicant filed a PETITION RE IMPROPER FINAL REJECTION. A copy of this Petition is attached hereto.

On 11/16/90 the Director of Group 210 responded to this Petition by returning it to Applicant without acting thereupon. A copy of the Director's letter is attached hereto.

The Director's stated reason for returning Applicant's Petition is that of non-compliance with the decorum requirements of 37 CFR 1.3.

In Applicant's opinion, his Petition was well within the decorum requirements of 37 CFR 1.3.

The fact is that Applicant has -- on basis of his own rather extensive professional background (as testified-to in the attached Affidavit) as well as on the basis of an extended period of interaction with subject Examiner -- reached the opinion that this Examiner is unusually incompetent, etc. -- just as explained in the Petition.

Applicant does not understand how he can ask the Commissioner to take an action involving the removal of an examiner from the prosecution of a given application without providing an explanation as to why such request is made. Yet, that very explanation centrally involves Applicant's opinion with respect to the examiner's competency and attitude.

Is it so that the PTO does not wish to hear any comments with respect to possible incompetency and/or inappropriate attitude on part of one of its examiners?

On basis of the above presentations and arguments, Applicant herewith Petitions Commissioner to accept Applicant's previous Petition for consideration on its merits.

Ole K. Nilssen, Pro Se Applicant

MAIL ROOM
NOV 23 1990
PAT. & TRADEMARKS

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Group 210
Art Unit 212

16 NOV 1990

Paper No. 78

In re application of

Ole K. Nilssen :
Serial Number: 06/787,692 :
Filed: October 15, 1985 :
For: INVERTER WITH RESONANT :
L-C CIRCUIT :

Returned herewith is the "Petition of Improper Final Rejection" filed November 1, 1990, in Patent Application 06/787,692. The Petition is returned to Petitioner under 37 CFR 1.3 for failure to conduct business with the U.S. Patent and Trademark Office with decorum and courtesy.

This is not the first instance of Petitioner's failure to conduct business with decorum and courtesy in this case. See, for example, the letters returning earlier papers, mailed March 26, 1986, and January 21, 1988. Note, also, that the Petitioner asked to have the return of papers on January 21, 1988, overturned by the Commissioner of Patents, and that on May 27, 1988, Deputy Assistant Commissioner for Patents James Denny affirmed that in fact language such as that presently objected to was not within the decorum required by 37 CFR 1.3.

Petitioner is advised that the subject matter disparaging the Examiner's skill (Petition, paragraph spanning pages 1 and 2) is out of place in this petition, just as it was in the earlier returned papers.

Moreover, the Petition must be limited to addressing the grounds of the petition, i.e., that the Final Rejection was premature.

Further, Petitioner is cautioned that any further such comments regarding the Examiner in this or any other application will be dealt with similarly.

The period for filing a response to the Final Rejection remains three months from the date of the Final Rejection.

[signature]

Donald G. Kelly, Director
Patent Examining Group 210
Industrial Electronics,
Physics and Related Elements

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Illinois 60010

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

SM/JVN/sh.3

Paper No. 83

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, Ill 60010

COPY MAILED

MAR 29 1991

DEPUTY ASST. COMM.

In re Application of :
Ole K. Nilssen :
Serial No. 787,892 : ON PETITION
Filed: October 15, 1985 :

This is a decision on the petition under 37 CFR 1.181, filed February 22, 1991, requesting review of the decision of the Director of Examining Group 210.

The petition is granted to the extent that the decision of the Group Director has been reviewed but is dismissed with respect to making any change therein.

The file record indicates that a petition to the Group Director was filed November 1, 1990. That petition was returned to petitioner by the Director of Group 210 since he found the remarks contained therein to have violated 37 CFR 1.3.

Petitioner request review of the Group Directors decision with regard to that petitions compliance with 37 CFR 1.3.

37 CFR 1.3 requires that applicants conduct their business with the Patent and Trademark Office with decorum and courtesy. Papers presented in violation of the requirement can be returned.

A review of that petition clearly discloses a lack of decorum and courtesy in reference to the Examiner's ability. A review of the record indicates petitioner has previously petitioned to have the Group Director's decision reviewed with regard to an appeal brief which violated 37 CFR 1.3. As was stated in that decision, there is no excuse for applicant's lack of decorum and courtesy in official proceedings. The Office should not and will not tolerate a lack of decorum from applicant. Accordingly, the decision of the Director of Group 210 to return the petition to applicant was correct.

The copy of the petition submitted November 1, 1990 is being returned in accordance with 37 CFR 1.3.

The application is being forwarded to Group 210.

Jeffrey V. Nase
Supervisory Petitions Examiner
Office of the Assistant Commissioner
for Patents

ATTACHMENT: Copy of November 1, 1990 petition

06/787692 #84 GR 212

MAIL ROOM APR 8 1991 85 PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

211 #84

RECEIVED APR 11 1991 GROUP 210

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,892
Filed: 10/15/85
Group Art Unit: 212
Examiner: WILLIAM H. BEHA
Director: DONALD G. KELLY
Petitions Examiner: JEFFREY V. NASE
Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS 4-4-91

[signature]

RE-REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

On 11/01/90 Applicant filed a PETITION RE IMPROPER FINAL REJECTION.

On 11/16/90 the Director of Group 210 responded to this Petition by returning it to Applicant without acting thereupon.

The Director's stated reason for returning Applicant's Petition is that of non-compliance with the decorum requirements of 37 CFR 1.3.

Applicant then submitted a new petition entitled "PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION", which new petition was filed on 11/23/90.

Applicant received a response to this new petition dated 12/24/90; which response was clearly improper.

Applicant then submitted a REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION; which repeated petition was filed on 02/22/91.

Applicant received a response to this repeated petition dated 03/29/91; which response was also clearly improper.

With respect to the facts of the situation, Applicant refers to the previously submitted papers as well as to the attached copy (without attachments) of his REPEATED PETITION RE IMPROPER RESPONSE TO PREVIOUS PETITION.

The Petitions Examiner's 03/29/91 decision is improper for the following reasons:

(1) The Petitions Examiner failed to provide a definition of the term "decorum and courtesy".

Applicant, who -- with reference to perviously submitted Affidavit -- is both well educated and well experienced, can not understand in what way he failed to conduct business with the Patent and Trademark Office with "decorum and courtesy".

(2) The Petitions Examiner merely asserts that Applicant failed to conduct business with the Patent and Trademark Office with "decorum and courtesy": which, in the absence of a proper definition for the term "decorum and courtesy", compounds the impropriety of the Petitions Examiner.

That is, the Petitions Examiner utterly failed to provide an explanation as to why and/or in what manner Applicant failed to conduct business with the PTO with "decorum and courtesy" (however that term might be defined).

For instance, exactly what did Applicant state that was considered to be tantamount to failing to conduct business with the PTO with "decorum and courtesy?"

Then, if indeed the Petitions Examiner were to identify a statement violating the "decorum and courtesy" requirement, on basis of what legal rationale did the Petitions Examiner arrive at a decision with respect to the unacceptability of such statement?

(2) The Petitions Examiner utterly failed to cite legal authority on basis of which Applicant's remarks might be deemed to constitute failure to conduct business with the PTO with "decorum and courtesy".

Is it so that the PTO does not wish to hear any complaint about any of its examiners?

Or, if a complaint is going to be made about the examining competence and/or attitude of an examiner, is it unacceptable of the complainer to describe how and/or to what degree he finds the examiner to be incompetent?

If an applicant wishes to petition to have an examiner removed from the examination of his application, is this applicant prevented from expressing his complaint about the examiner in the best way he knows how?

If not, what are the rules governing what an applicant may and/or may not state?

CONCLUDING REMARKS

Applicant points out that his remarks regarding Examiner's lack of competence were addressed to the Group Director, not to the Examiner himself. Moreover, Applicant did identify evidence for his allegations; which evidence consisted of the file wrapper of the particular application underlying instant petition.

Finally, as seen from Applicant's perspective, if the PTO had been the least concerned with keeping its "customers" happy, it should encourage each and every one of its "customers" who might have a complaint to express such complaint to the PTO, thereby to help the PTO to improve its service to its "customers".

However, what Applicant does see from the PTO is an attitude equivalent to that he would expect to find in the Soviet Union, where the "bureaucrat is king" and the "customer be damned".

Perhaps the PTO might consider the possibility of adopting the attitude of successful private corporations, where the "customer is always right".

Clearly, if Applicant had had a free choice in the matter, he would long since have removed his business from the particular examiner in question; which examiner has been treating Applicant as if Applicant were getting a free service from the Public and for which he should be humbly thankful; whereas, in reality, Applicant pays for the services he receives from the PTO, including a good part the examiner's salary.

So, Applicant repeats his petition to the Commissioner:

(i) Rescind the finality of Examiner's latest office action; and

(ii) In the interest of cost-effectivity, remove this particular examiner from the prosecution of Applicant's various patent applications.

Ole K. Nilssen, Pro Se Applicant

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/737,692 | 10/15/85 | NILSSEN | 0 |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR,W | |
| ART UNIT | PAPER NUMBER |
| 212 | 85 |

DATE MAILED: 04/25/91

## NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☑ Applicant's failure to respond to the Office letter, mailed 9/28/90, by 3/26/91.
2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.
3. ☐ Applicant's failure to timely file the response received ______ within the period set in the Office letter.
4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of ______ of the Notice of Allowance.

   ☐ The issue fee was received on ______.

   ☐ The issue fee has not been received in Allowed Files Branch as of ______.

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (l), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.
5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by ______ as required in the last Office action.

   ☐ The corrected and/or substitute drawings were received on ______.
6. ☑ The reason(s) below.

The most recent petition in this application, filed April [illegible], 1991, is [illegible] and [illegible] of the application being abandoned. The period set in the action mailed [illegible] 28, 1990 has not been stayed with all the petitions that have been filed, and accordingly the application is abandoned.

This most recent petition will be placed in the file, but could be considered, subject to the application becoming revived.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

PTO-1432 (REV. 8-80)

525 - 241

#86 DAC

MAIL ROOM JUL 11 1991 PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application for: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85

F 920 7/26/91

Group Art Unit: 212
Examiner: WILLIAM H. BEHA

Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 7-8-91

PETITION FOR REVIVAL

RECEIVED JUL 19 1991 DEPUTY A/C PATENTS

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant herewith petitions Commissioner, under paragraph 1.137(b) in Rules of Practice in Patent Cases, to revive subject application.

Applicant herewith verifies that subject application was unintentionally abandoned.

Enclosed herewith are:

(1) A check (#3819) for $525.00 to cover the fee therefor:

(2) A Verified Statement re Small Entity Status.

A response to the outstanding office action has previously been submitted in the form of Amendment E submitted by Applicant on 01/20/90 (Paper No. 69), but which Examiner -- according to office action dated 09/26/90 (see lines 5-7 at page 2 of that office action) -- refused to enter into the record.

Also outstanding is a petition submitted by Applicant on 04/04/91; to which petition Applicant awaits a proper response from the Commissioner.

Applicant believes that Examiner's holding of abandonment (dated 04/25/91) of subject application was improper; and on 04/04/91 Applicant submitted a petition to have Examiner's holding of abandonment overturned. However, because the application had been held abandoned by Examiner, this particular petition is apparently being prevented by Examiner from being responded-to by the proper petitions officer. The only response Applicant has had to this petition if from Examiner, who held the petition to be moot in view of his prior abandonment of the application.

In connection with the outstanding petition, Applicant requests of Commissioner to take a look at two recent actions from the Board of Patent Appeals and Interferences; which two recent actions are identified as Appeal Nos. 90-2235 (Serial No. 07/153,572) and 91-1294 (Serial No. 07/250,990). These appeals both pertain to applications being examined by subject Examiner (Mr. Beha), and demonstrate the problems Applicant refers to in subject outstanding petition.

080 BF 07/17/91 06787692 1 241 525.00 CK

Ole K. Nilssen, Pro Se Applicant

"OFFICIAL SEAL"
ELLEN J. NILSSEN
Notary Public, State of Illinois
My Commission Expires 5/30/92

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

SEAL

Sworn to and subscribed before me this 8th day of July, 1991.

Notary Public

Applicant or Patentee: Ole . Nilssen Attorney's
Serial or Patent No.: Docket No.:
Filed or Issued:

MAIL ROOM JUL 11 1991 PAT. & TRADEMARK OFF.

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR

As a below named Inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled INVERTER WITH RESONANT L-C CIRCUIT described in

[ ] the specification filed herewith
[x] application serial no. 06/787,692, filed 10/15/85.
[ ] patent no. ______, issued ______.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

RECEIVED JUL 1 9 1991 DEPUTY ASST. COMM.

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[x] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole K. Nilssen
ADDRESS Caesar Drive, Barrington, IL 60010
[X] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME
ADDRESS
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 7-8-91 | | |
| Date | Date | Date |

UNITED STA. ES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231 JVN/ald.9

Paper No. 87

COPY MAILED

SEP 2 0 1991

DEPUTY ASST COMM.

Ole K. Nilssen
Caesar Drive, RR-5
Barrington, IL 60010

In re Application of :
Ole K. Nilssen :
Serial No. 06/787,692 :
Filed: October 15, 1985 :
Attorney Docket No. :

ON PETITION

This is a decision on the petition under 37 CFR 1.137(b), filed July 11, 1991, to revive the above-identified application.

The petition is dismissed.

Any request for reconsideration of this decision must be submitted within TWO (2) MONTHS from the mail date of this decision. Extensions of time under 37 CFR 1.136(a) are permitted. The reconsideration request should include a cover letter entitled "Renewed Petition under 37 CFR 1.137(b)."

A petition to revive an abandoned application under 37 CFR 1.137(b) must be accompanied (1) by a verified statement that the abandonment was unintentional, (2) by the proposed response to the outstanding Office action, and (3) by the petition fee required by law (37 CFR 1.17(m)). This petition lacks item (2) above.

The application became abandoned for failure to file a response within the meaning of 37 CFR 1.113 to the final rejection of September 26, 1990, within the time period for response. The proposed response required for consideration of a petition to revive must be a Notice of Appeal (and fee required by law), an amendment that prima facie places the application in condition for allowance, or the filing of a continuing application. Since the amendment submitted does not prima facie place the application in condition for allowance, the response required must be a Notice of Appeal and requisite fee, or the filing of a continuing application under the terms set forth in 1031 O.G. 11.

Further correspondence with respect to this matter should be marked on the front page of the communication to the attention of

the Office of the Assistant Commissioner for Patents, Crystal Park Two, Suite 913, and addressed as follows:

Commissioner of Patents and Trademarks
Box DAC
Washington, D.C. 20231

Telephone inquiries should be directed to the Petitions Information Staff at (703) 557-4282.

Jeffrey V. Nase
Supervisory Petitions Examiner
Office of the Assistant Commissioner
for Patents

MAIL ROOM
SEP 30 1991
PAT. & TRADEMARK OFF.

315.00 201

A

#1 768105 # 88

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Inventor: OLE K. NILSSEN
Serial No: 06/787,692
Filing Date: 10/15/85

which is a continuation of:
Serial No: 06/644,155
Filed: 08/27/84

which is a continuation of:
Serial No: 06/555,426
Filed: 11/23/83, now abandoned

which is a continuation of:
Serial No: 06/178,107
Filed: 08/14/80, now abandoned

which is a Continuation-in-Part of:
Serial No: 05/973,741
Filed: 12/28/78, now abandoned

Group Art Unit: 212
Examiner: WILLIAM H. BEHA

Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 9-26-91

## FILE WRAPPER CONTINUATION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Under paragraph 1.62 of Rules of Practice in Patent Cases, a "File Wrapper" Continuation Application is herewith filed.

~~The~~ orignal claims have been cancelled and new claims ~~145-162~~ 147-165 are presented in a document attached hereto and entitled "CLAIMS in FWC of Serial No. 06/787,692".

A check for $315.00 (Check #3899) to cover the application fee is attached hereto as is also a Verified Statement re Small Entity Status.

REMARKS

The new claims are so constructed as to clearly and patentably distinguish over the cited references.

In particular, the new claims are drawn to the embodiment of Fig. 2 and should be interpreted with specific reference to the waveforms of Fig. 3.

Applicant hopes that Examiner will find the new claims understandable without further elaborations.

Ole K. Nilssen, Pro Se Applicant

CLAIMS in FWC of Serial No. 06/787,692

01

Rule 126

147 ~~145~~. An arrangement comprising:

DC source means operative to provide a DC voltage at a pair of DC terminals;

inverter means connected with the DC terminals and operative to provide an AC voltage at a pair of AC terminals; the AC voltage having a cycle period; the inverter means including a periodically conducting transistor having a pair of control terminals receptive of a control signal; the inverter means also including a control signal source operative to provide the control signal; the control signal rendering the transistor conductive for a brief period of time once during each cycle period; the duration of the brief period of time being shorter than half the duration of the cycle period;

gas discharge lamp means having a set of lamp terminals; and

circuit means connected between the AC terminals and the lamp terminals; the circuit means being operative to cause a lamp current to flow through the gas discharge lamp means in response to the AC voltage.

148 ~~146~~. The arrangement of claim 147 ~~145~~ wherein the AC voltage is characterized by having a waveshape that is substantially trapezoidal.

149 ~~147~~. The arrangement of claim 147 ~~145~~ wherein the instantaneous magnitude of the AC voltage alternates once each cycle period, between a first substantially constant-magnitude voltage level and a second substantially constant-magnitude voltage level, existing for a first duration at the first substantially constant-magnitude voltage level and for a second duration at the second substantially constant-magnitude voltage level; the first duration being substantialy equal to the second duration.

150 ~~148~~. The arrangement of claim 149 ~~147~~ wherein the first duration is substantially shorter than half of the complete duration of the cycle period.

151 ~~149~~. The arrangement of claim 150 ~~148~~ wherein the first duration is shorter than half of the complete duration of the cycle period by at least one tenth. new

152 ~~150~~. The arrangement of claim 147 ~~145~~ wherein: (i) the DC source means is powered from a pair of power line conductors connected with an ordinary electric utility power line; and (ii) one of the lamp terminals is connected with one of the power line conductors without any intervening impedance means.

153 ~~151~~. The arrangement of claim 147 ~~145~~ wherein the control signal is a periodic voltage having a peak-to-peak magnitude substantially larger than twice the forward voltage drop of a semiconductor diode junction.

154 ~~152~~. The arrangement of claim 147 ~~145~~ wherein the inverter includes two transistors series-connected across the DC terminals.

155 ~~153~~. The arrangement of claim 147 ~~145~~ wherein the control signal source includes a saturable inductor means.

156 ~~154~~. The arrangement of claim 155 ~~153~~ wherein the circuit means includes an LC circuit having a natural resonance frequency approximately equal to the fundamental frequency of the AC voltage.

157 ~~155~~. The arrangement of claim 156 ~~154~~ wherein the LC circuit includes a capacitor and an inductor series-connected across the AC terminals.

158 ~~156~~. The arrangement of claim 147 ~~145~~ wherein the duration of the brief period of time is shorter than half the duration of the cycle period by about one tenth or more.

159 ~~157~~. The arrangement of claim 147 ~~145~~ wherein:

(a) the instantaneous magnitude of the AC voltage alternates once each cycle period between a first substantially constant-magnitude voltage level and a second substantially constant-magnitude voltage level, existing for a first duration at the first substantially constant-magnitude voltage level and for a second duration at the second substantially constant-magnitude voltage level; the first duration being substantialy equal to the second duration; and

(b) the duration of the brief period is substantially shorter than the first duration.

160 ~~158~~. The arrangement of claim 159 ~~157~~ wherein the duration of the brief period is shorter than the first duration by about one tenth or more.

~~159~~ 161. The arrangement of claim ~~145~~ 147 wherein the fundamental frequency of the AC voltage is substantially higher than that of the power line voltage usually provided by an ordinary electric utility power line.

~~160~~ 162. An arrangement comprising:

DC source means operative to provide a DC voltage between a first and a second DC terminal;

inverter means connected with the DC terminals and operative to provide an AC voltage between a first and a second AC terminal; the AC voltage having a fundamental cycle period; the fundamental cycle period consisting of a first and a second half cycle; the duration of the first half cycle being about equal to the duration of the second half cycle; the inverter means including a periodically conducting transistor operative to cause the potential of the first AC terminal to be substantially equal to the potential of the first DC terminal during a certain part of the first half cycle and to be substantially different from the potential of the first DC terminal during the remainder of the fundamental cycle period; the duration of said certain part being shorter than the duration of the first half cycle by a substantial amount;

gas discharge lamp means having a set of lamp terminals; and

circuit means connected between the AC terminals and the lamp terminals; the circuit means being operative to cause a lamp current to flow through the gas discharge lamp means in response to the AC voltage.

~~161~~ 163. The arrangement of claim ~~160~~ 162 wherein the duration of said certain part is shorter than the duration of the first half cycle by about one tenth or more.

~~162~~ 164. The arrangement of claim ~~161~~ 163 wherein the duration of said certain part is shorter than four fifths of the duration of the first half cycle.

~~163~~ 165. The arrangement of claim ~~160~~ 162 wherein the AC voltage is characterized by having a substantially trapezoidal waveshape.

07 768105

Applicant or Patentee: Ol K. Nilssen ____ Attorney's
Serial or Patent No.: ____ Docket No.: ____
Filed or Issued: ____
For: ____

MAIL ROOM SEP 30 1991 PAT. & TRADEMARK

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled
described in

[ ] the specification filed herewith
[X] application serial no. 06/787,692, filed 10/15/85.
[ ] patent no. ____, issued ____.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[X] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME Ole K. Nilssen
ADDRESS ____ Caesar Drive, Barrington, IL 60010
[X] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ____
ADDRESS ____
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

FULL NAME ____
ADDRESS ____
[ ] INDIVIDUAL [ ] SMALL BUSINESS CONCERN [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| | | |
|---|---|---|
| Ole K. Nilssen | | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| [signature] | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| 9-25-91 | | |
| Date | Date | Date |

01 768105

#63
#89

MAIL ROOM
SEP 30 1991
52
PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re Application: INVERTER WITH RESONANT L-C CIRCUIT
Applicant: Ole K. Nilssen
Serial No: 06/787,692
Filed: 10/15/85

Group Art Unit: 212
Examiner: WILLIAM H. BEHA

Applicant's Phone Number: 708-658-5615

RECEIVED
MAR 09 1992 -1
DEPUTY ASST COMM.

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 9-26-91

RENEWED PETITION UNDER 37 CFR 1.137(b)

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Applicant herewith requests Commissioner to reconsider his decision with respect to the previoulsy submitted Petition for Revival.

In accordance with suggestion by the Petitions Examiner, Applicant herewith encloses a File-Wrapper-Continuation application as his response to the outstanding office action.

Ole K. Nilssen, Pro Se Applicant

UNITED STATI EPARTMENT OF COMMERCE
Patent and Trac_nark Office
ASSISTANT SECRETARY AND COMMISSIONER OF
PATENTS AND TRADEMARKS
Washington, D.C. 20231 DCS/JVN/dcs.3

Paper No. 64 90

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

COPY MAILED

MAR 1 0 1992

DEPUTY ASST. COMM.

In re Application of
Ole K. Nilssen
Serial No. 06/787,692
Filed: October 15, 1985
Attorney Docket No.

ON PETITION

This is a decision on the petition under 37 CFR 1.137(b), filed September 30, 1991, to revive an unintentionally abandoned application.

The petition is granted.

Since this application is being revived for purposes of continuity only and since continuity has been established by this decision reviving the application, the application is again abandoned in favor of filewrapper continuing application, Serial No. 07/768,105, filed September 30, 1991.

The application is being forwarded to Group 210.

Jeffrey V. Nase, Director
Office of Petitions
Office of the Assistant Commissioner
for Patents

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/768,105 | 09/30/91 | NILSSEN | 0 |

| EXAMINER |
|---|
| BEHA JR,W |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| ART UNIT | PAPER NUMBER |
|---|---|
| 2102 | 91 |

DATE MAILED: 06/29/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined ☐ Responsive to communication filed on ________ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ ________

Part II SUMMARY OF ACTION

1. ☑ Claims 147 – 165 are pending in the application.
   Of the above, claims ________ are withdrawn from consideration.
2. ☑ Claims 139 – 144 have been cancelled.
3. ☐ Claims ________ are allowed.
4. ☑ Claims 147 – 165 are rejected.
5. ☐ Claims ________ are objected to.
6. ☐ Claims ________ are subject to restriction or election requirement.
7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ________. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on ________ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed on ________, has been ☐ approved. ☐ disapproved (see explanation).
12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ________ ; filed on ________
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

EXAMINER'S ACTION

PTOL-326 (Rev. 9-89)

Applicant's paper entitled "File Wrapper Continuation," filed September 30, 1991 states:

> The original claims have been canceled and new claims 145-162 are presented in a document attached hereto...

For purposes of this action, it is therefore assumed that said paper implicitly cancels all claims lower than claim 145.

In an amendment filed January 25, 1990, applicant attempted to add claims 145 and 146. Entry of those claims was denied. However, 37 CFR 1.126 requires that when claims are later added, they must be numbered by the applicant consecutively beginning with the number next following the highest numbered claim previously presented, whether entered or not. Accordingly, the new claims 145-162 (there are two claims numbered 162) of the File Wrapper Continuation have been renumbered sequentially claims 147-165. Applicant is advised to change his numbering accordingly.

This application filed under 37 C.F.R. § 1.62 lacks the necessary reference to the prior application. A statement reading "This is a continuation-in-part of application Serial No. 06/787,692, filed October 15, 1985" should be entered following the title of the invention or as the first sentence of the specification. Also, the present status of the parent application(s) should be included.

This is deemed to be a continuation-in-part rather than a

continuation, because claims 151, 153, 158, 160, 163 and 164 add new matter to the application, which new matter has neither express nor inherent support in the parent application Ser. No. 06/787,692.

In the absence of the necessary reference to earlier applications, and also in some cases, because certain claims are not entitled to an earlier filing data because they add new matter not expressly or inherently disclosed in earlier applications, claims 147-165 are entitled to an earliest filing date of September 30, 1991.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 147-150, 152, 154-157, 159, 161, 162 and 165 are rejected under 35 U.S.C. § 102(b) as being clearly anticipated by Nilssen 4,677,345.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which

the invention was made.

> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 151, 153, 158, 160, 163 and 164 are rejected under 35 U.S.C. § 103 as being unpatentable over Nilssen 4,677,345.

The claims differ from the express and inherent teachings of Nilssen '345 by the specified claimed durations. But they are obvious to one of ordinary skill as being in a range of acceptable durations (but not necessarily inherent).

This rejection cannot be overcome by necessary reference to prior applications.

Claims 147-150, 155-157, 159, 161, 162 and 165 are rejected under 35 U.S.C. § 101 as claiming the same invention as that of claims 7 and 8 of prior U.S. Patent No. 4,677,345. This is a double patenting rejection.

These claims are drawn to the inherent function of the apparatus of claims 7 and 8 of Nilssen 4,677,345. Applicant cannot extend his monopoly of identical subject matter using this technique, because it is prohibited by 35 USC 101 allowing only one patent for one invention.

And if applicantcan make a convincing case that the duration limitations of claims 151, 153, 158, 160, 163 and 164 are

inherent, then applicant is put on notice that these claims will be subject to the same double patenting rejection as the other claims above.

Claims 162-165 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The claims are misdescriptive because the recitation of claim 165, lines 16 and 17 has no basis in a waveform that has been previously described as" a substantially square-wave output voltage" (claim 141) or similar words to that effect (claims 142-144).

Claim 150 is rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claim 150 includes an improper negative limitation, i.e., "without any intervening impedance means." The claim must describe what the structure is, not what it is not. Thus claim 150 falls short of 35 USC 112, para. 2.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that

> the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 147-151, 153 and 155-165 are rejected under 35 U.S.C. § 103 as being unpatentable over Walker in view of P~~r~~intal.

Reference is made to the Board of Appeals decision (Paper No. 68, pages 6, line 11 to page 8, line 17), and to the Examiners Answer, mailed June 17, 1988, pages 3-5), for the underlying rationale.

New claims 147 et seq., broadly claim a DC source means, an inverter means and a gas discharge means, in combination. In paper No. 68, the board has decided that claims drawn to a DC source means and an inverter means, each means defined in more limiting terms than claims 147 et seq., are unpatentable over Walker and Printel considered together. It follows, that less limited DC source means and inverter means are unpatentable for the same reasons.

As to the addition of a specific lamp load to the combination, this has been taught by Walker col. 6, lines 54-58, all along.

As to the claimed inverter voltage AC waveform, these are the obvious result of combining Walker and Pintel.

Claim 152 is rejected under 35 U.S.C. § 101 as claiming the same invention as that of claims 1 and 7 of prior U.S. Patent No. 5,047,690. This is a double patenting rejection.

Claim 152 is drawn to the same corresponding structure a claims 1 and 7 of Nilssen 5,047,690. The claimed inverter AC voltage of claim 152 (essentially trapezoidal) is deemed to be identical to the inverter AC voltage of patented claim 1 (squarewave), since in both instances they arise out of, and describe the same waveform (figure 3A).

Claims 152 and 154 are rejected under 35 U.S.C. § 103 as being unpatentable over Walker in view of Pintel as applied to claim 147 above, and further in view of Elms.

The claims further differ from claim 147 by calling for a lamp terminal connected to the power line (claim 152) and an inverter including two series connected transistors (claim 154). These differences are the natural result of 1) using a half bridge inverter and 2) providing for selective connection to 110 or 220V AC, as shown by Elms.

One uses a half bridge inverter over a double ended inverter to protect the transistors against excessive voltages. One uses a selective input to different sources to increase inverter utility. Thus these differences are obvious differences.

Any inquiry concerning this communication should be directed to William H. Beha at telephone number (703) 308-1776.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

Beha/dc
June 23, 1992

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

NOTICE OF REFERENCES CITED

SERIAL NO. 768 105

GROUP ART UNIT 2102

ATTACHMENT TO PAPER NUMBER 91

APPLICANT(S) NILSSEN

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | A | 3026486 | 3-62 | PINTELL | 331 | 117 | |
| ✓ | B | 4071812 | 1-78 | WALKER | 363 | 17 | |
| | C | 3733541 | 5-73 | ELMS | 315 | 349 | |
| | D | 5047690 | 9-91 | NILSSEN | 315 | 224 | |
| | E | 4677345 | 1-87 | NILSSEN | 315 | 209 R | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

EXAMINER Wm Beha

DATE 6-22-92

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

MAIL ROOM JUL 6 1992 PAT. & TRADEMARK OFC.

RECEIVED JUL 1 0 1992 GROUP 210

Bd of Appeal 212 #92 9-21-92 HP

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re application: INVERTER WITH RESONANT L-C CIRCUIT
Inventor: OLE K. NILSSEN
Serial No: 07/768,105
Filing Date: 09/30/91

Group Art Unit: 2102
Examiner: WILLIAM H. BEHA

Applicant's Phone Number: 708-658-5615

I, OLE K. NILSSEN, HEREWITH CERTIFY THAT THE DATE OF DEPOSIT WITH THE U.S. POSTAL SERVICE OF THIS PAPER OR FEE IS: 7-3-92

EXPRESS ABANDONMENT

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Instant Applicant is herewith EXPRESSLY ABANDONED.

This application is abandoned for the following reasons:

(1) Over an extensive period of time, involving numerous applications, Applicant has come to realize that Examiner Beha lacks the skill and attitude required to properly examine Applicant's applications;

(2) More particularly, Applicant has found Examiner Beha -- in comparison with other examiners at the PTO -- to exhibit an unusually low level of technical and professional competence, combined with an excessive degree of zealousness, further compounded by basic insufficiency in reasoning power and intellectual honesty;

(3) Applicant has repeatedly requested of the PTO to have his applications prosecuted before some other examiner; which repeated requests have been denied; and

(4) Applicant has finally concluded that the cost of properly prosecuting patent applications before Examiner Beha is so high in terms of wasted time and lost opportunities as not to be cost-effective.

Ole K. Nilssen, Pro Se Applicant

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/769,105 | 09/30/91 | NILSSEN | O |

OLE K. NILSSEN
CAESAR DRIVE, RR-5
BARRINGTON, IL 60010

| EXAMINER | |
|---|---|
| BEHA JR,W | |
| ART UNIT | PAPER NUMBER |
| 2102 | 93 |

DATE MAILED: 09/24/92

## NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☐ Applicant's failure to respond to the Office letter, mailed ______.
2. ☒ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.
3. ☐ Applicant's failure to timely file the response received ______ within the period set in the Office letter.
4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of ______ of the Notice of Allowance.
   - ☐ The issue fee was received on ______.
   - ☐ The issue fee has not been received in Allowed Files Branch as of ______.

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (l), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.
5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by ______ as required in the last Office action.
   - ☐ The corrected and/or substitute drawings were received on ______.
6. ☐ The reason(s) below.

William H. Beha

WILLIAM H. BEHA, JR.
SENIOR EXAMINER
GROUP ART UNIT 212

PTO-1432 (REV. 8-83)

94
Paper Number

REQUEST FOR ACCESS

DATE: 12-21-93
SERIAL NUMBER: 787,692
FILING DATE: 10-15-85
APPLICANTS: Nilssen

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5,047,690 OR PRINTED APPLICATION ________________.

RESPECTFULLY SUBMITTED,

B. Harris

| OFFICIAL USE ONLY |
|---|
| ________________<br>Initials<br>File Information Unit |

APPEALS & INTERFERENCES
JUN 28 1994

#95 (NE)
Paper Number

REQUEST FOR ACCESS

DATE: 6-28-94
SERIAL NUMBER: 768105 W/S1 787692
FILING DATE: 9-30-91
APPLICANTS: Nilssen

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5047690 OR PRINTED APPLICATION ______________.

RESPECTFULLY SUBMITTED,

Deborah L Harris

| OFFICIAL USE ONLY |
| --- |
| Initials<br>File Information Unit |

#96
Paper Number

REQUEST FOR ACCESS

DATE: 9-21-94

SERIAL NUMBER: 06/787692 → 07/768105

FILING DATE: 10-15-85

APPLICANTS: OLE K. NILSSEN

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5214356 OR PRINTED APPLICATION ______.

RESPECTFULLY SUBMITTED,

Barbara J. Hendley

OFFICIAL USE ONLY

PROCESSED BY
OCT 26 1994
FIU
Initials
File Information Unit

#97

Paper Number

REQUEST FOR ACCESS

DATE: 9-1-94

SERIAL NUMBER: 07/768,105

FILING DATE: ____

APPLICANTS: Nilssen

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5214356 OR PRINTED APPLICATION ____.

RESPECTFULLY SUBMITTED,

Nancy Perry /SPS

OFFICIAL USE ONLY

PROCESSED BY
OCT - 4 1994
FIU

TS

Initials
File Information Unit

#98

Paper Number

REQUEST FOR ACCESS

DATE: 10/27/94

SERIAL NUMBER: 644155

FILING DATE: Aug 27 1984

APPLICANTS: Nielsen

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5214356 OR PRINTED APPLICATION __________.

RESPECTFULLY SUBMITTED,

T. DeLaurentis

OFFICIAL USE ONLY

PROCESSED BY
OCT 27 1994
FIU

KD

Initials
File Information Unit

# The following was found to be missing from the Official PTO File Wrapper

Paper #99

DIGIPAT®

PATENT / TRADEMARK DOCUMENT & RESEARCH SERVICES

Your source for complete patent and trademark services.

2001 Jefferson Davis Highway, Suite 1111, Arlington, VA 22202

Phone: 703-413-3667 800-362-5950

Fax: 703-413-3668 888-362-3657

www.digipat.com

100/ Request for access 8-15-95

Paper Number

# REQUEST FOR ACCESS

DATE: Aug 14 1995

SERIAL NUMBER: 555426

FILING DATE: 11-23-83

APPLICANTS: Ole Nilssen

SIR:

THE UNDERSIGNED HEREBY RESPECTFULLY REQUESTS ACCESS TO THE FILE HISTORY OF THE FOLLOWING ABANDONED APPLICATION WHICH WAS REFERRED TO IN U.S. PATENT NUMBER 5432409 OR PRINTED APPLICATION __________.

RESPECTFULLY SUBMITTED,

Kathy Link

(Bonini + Klut)

OFFICIAL USE ONLY

Initials
File Information Unit

#101
paper number

## REQUEST FOR ACCESS

Date: 12/7

Serial Number: 07/768 105

Filing Date:

Applicants: Ole K Nilssen

Sir,

Request is hereby respectfully made for access to the file history of the following abandoned application referred to in U.S. patent number 5047690 or printed application number ________.

Respectfully submitted,

Winston Joseph

OFFICIAL USE ONLY

initials

FILE INFORMATION UNIT

#102
paper number

REQUEST FOR ACCESS

Date: 12/12/95

Serial Number: 07/768,105 * → * AB 178,107 8/14/80
AB 555,426 11/23/83
AB 644,155 8/27/84
AB 787,692 10/15/85

Filing Date: ______

Applicants: Nilssen

Sir.

Request is hereby respectfully made for access to the file history of the following abandoned application referred to in U.S. patent number 5,446,347 or printed application number ______.

Respectfully submitted,
B.A. Harris

OFFICIAL USE ONLY

initials

FILE INFORMATION UNIT

#103
paper number

REQUEST FOR ACCESS

RECEIVED
JUL 11 1996
GROUP 2500

Date: 7-11-96

Serial Number: 787692

Filing Date: 10-15-85

Applicants. Nilssen

Sir.

Request is hereby respectfully made for access to the file history of the following abandoned application referred to in U.S. patent number 5341067 or printed application number __________.

Respectfully submitted,

Eva McElroy

OFFICIAL USE ONLY

initials

FILE INFORMATION UNIT

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14

PROCESSED BY
FEB 1 0 1998
FIU

| In re Application of | |
|---|---|
| Application Number: 07/768105 | Filed: 9.30.91 |
| Group Art Unit | Examiner: Nilssen. |

Paper No. #10S

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number 5371441, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ______, filed ______, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ______, filed ______, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______
LSA
______

Signature: Atti

Date: 2-10-98

Typed or printed name: ATTIA

FOR PTO USE ONLY
Approved by: [initials] (Initials)
Unit: File Information

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, persons are required to respond to a collection of inform... unless it displays a valid OMB control number.
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

PROCESSED BY
MAR 1 9 1998
FIII

| In re Application of | | |
|---|---|---|
| Application Number: 178,107 | Filed: 8-14-80 | |
| Group Art Unit: | Examiner: | |

Paper No. #105

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5,185,560, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ______________, filed ______________, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ______________, filed ______________, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______________________________________

______________________________________

______________________________________

Tommy Foster
Signature

3-19-98
Date

FOSTER, TOMMY
Typed or printed name

FOR PTO USE ONLY
Approved by: D. Day (Initials)
Unit: FT.4.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(

| | |
|---|---|
| In re Application of | Nilssen |
| Application Number: 07/768,105 | Filed |
| Group Art Unit: 2102 | Examiner: Beha |

Paper No. 106

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5047690, column ____.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. 555,426, filed 1-23-83, on page ____ of paper number ____

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ____, filed ____, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

_______________

_______________

_______________

Sharon Bender — Signature

4-27-98 — Date

Sharon Bender — Typed or printed name

FOR PTO USE ONLY — PROCESSED BY
Approved by: (initials)
Unit: FIII

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a

| | |
|---|---|
| In re Application of | |
| Application Number: 07\768105 | Filed |
| Group Art Unit | Examiner |

Paper No. #7

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5371991, column ____.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ____, filed ____, on page ____ of paper number ____.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ____, filed ____, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______

______

______

Henry Dunn
Signature

HENRY DUNN
Typed or printed name

PROCESSED BY
Date
NAT
FIII

FOR PTO USE ONLY

Approved by: ____ (Initials)

Unit: ____

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the indi[vidual] case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, [Patent] and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PROCESSED BY
APR 9 1999

| Application Number | Filed |
|---|---|
| 06/787107 | |
| Group Art Unit | Examiner |
| | |

Paper No. #108

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number 5047690 column ___

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, Application No. ___ filed ___ on page ___ paper number ___

___ (C) an application that claims the benefit of the filing date of an application that is open to pu[blic] inspection, i.e., Application No. ___ filed ___

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

___

___

___

Eric White — Signature

4/9/99 — Date

ERIC WHITE — Typed or printed name

FOR PTO USE ONLY
Approved by: [initials]
Initials
Unit: File Inform.

[illegible fine print]

Approved for use ... Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

| In re Application of | |
|---|---|
| Application Number: 06/178,107 | Filed: Aug. 14, 1980 |
| Group Art Unit | Examiner |

Paper No. ________

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5432409, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ____________, filed ____________, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ____________, filed ____________, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______________________________

______________________________

______________________________

B.A. Harris
Signature

Date ____________

B.A. Harris
Typed or printed name

| FOR PTO USE ONLY |
|---|
| Approved by: ________ (initials) |
| Unit: ________ |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. ... to complete this form should be sent to the ... DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: ...

PTO/SB/68 (11-98)
Approved for use through 10/31/99. OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

PROCESSED BY
MAY 4 1999
FMI

| In re Application of | |
|---|---|
| Application Number: 06-787692 | Filed: 10-15-85 |
| Group Art Unit | Examiner |

Paper No. 110

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

___ (A) referred to in United States Patent Number 5,371,441, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ______, filed ______, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ______, filed ______, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______

______

______

[signature] Signature — 5-4-99 Date

ADRIAN
Typed or printed name

FOR PTO USE ONLY
Approved by: [initials] (Initials)
Unit: FIW

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. Approved for use through 10/31/99. OMB 0651-0031 Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

PROCESSED BY
JUN 2 3 1999
F

| | |
|---|---|
| In re Application of | Nilssen |
| Application Number: 07/748105 | Filed |
| Group Art Unit | Examiner |

Paper No. #10

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5343124, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ______________, filed ______________, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ______________, filed ______________, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______________________________

______________________________

______________________________

Judy Gill
Signature

6-23-99
Date

Judy Gill
Typed or printed name

| FOR PTO USE ONLY |
|---|
| Approved by: [initials] (Initials) |
| Unit: FT 2/4 |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.

Approved for use through ...
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

PROCESSED BY
SEP 2 0 1999

In re Application of

| Application Number | Filed |
| --- | --- |
| 06/555,426 | Nov. 28, 1983 |

| Group Art Unit | Examiner |
| --- | --- |
| | 07/768,105 o/w 9/17/99 |

Paper No. #11

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5432409, column ______.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ______________, filed ______________, on page ______ of paper number ______.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ______________, filed ______________, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______________________________

______________________________

______________________________

B.A. Harris — Signature

9-20-99 — Date

B.A. Harris — Typed or printed name

| FOR PTO USE ONLY | |
| --- | --- |
| Approved by: | [initials] (initials) |
| Unit: | File Info |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. ... to complete this form should be sent to the ... SEND FORMS TO THIS ADDRESS ...

PTO/SB/68 (11-98)
Approved for use through 10/31/99. OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)

RECEIVED
JAN 1 8 2001
File Information Unit

| In re Application of | |
|---|---|
| Application Number: 07/768,105 | Filed: 9/30/1991 |
| Group Art Unit | Examiner |

Paper No. # 112

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

✓ (A) referred to in United States Patent Number 5,510,681, column ____.

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ________, filed ________, on page ____ of paper number ____.

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ________, filed ________, or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

______________________________

______________________________

______________________________

B A Harris — Signature

1/18/01 — Date

B A Harris — Typed or printed name

| FOR PTO USE ONLY |
|---|
| Approved by: [initials] (Initials) |
| Unit: File Information Unit |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.
Patent and Trademark Office U.S. DEPARTMENT OF COMMERCE

**REQUEST FOR ACCESS OF ABANDONED APPLICATION UNDER 37 CFR 1.14(a)**

RECEIVED
MAR 2 8 2001
File Information Unit

| In re Application of | |
|---|---|
| Nilssen | |
| Application Number | Filed |
| 07/968,105 | 9-30-91 |
| Group Art Unit | Examiner |
| | |

Paper No. #43

Assistant Commissioner for Patents
Washington, DC 20231

I hereby request access under 37 CFR 1.14(a)(3)(iv) to the application file record of the above-identified ABANDONED application, which is: (CHECK ONE)

X (A) referred to in United States Patent Number 5185560 column ____

___ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11, i.e., Application No. ____ filed ____ on page ____ of paper number ____

___ (C) an application that claims the benefit of the filing date of an application that is open to public inspection, i.e., Application No. ____ filed ____ or

___ (D) an application in which the applicant has filed an authorization to lay open the complete application to the public.

Please direct any correspondence concerning this request to the following address:

____

____

____

Anne Murphy — Signature
3-28-01 — Date

Anne MURPHY — Typed or printed name

FOR PTO USE ONLY
Approved by: [initials] (Initials)
Unit: [handwritten]

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PTO/SB/68 (04-01)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR ACCESS TO AN APPLICATION UNDER 37 CFR 1.14(e)

| In re Application of | |
|---|---|
| Application Number 07/768105 | Filed 9/30/91 |
| Art Unit | Examiner |

RECEIVED
MAY 29 2003
File Information Unit

Paper No. 26

Assistant Commissioner for Patents
Washington, DC 20231

1. [X] I hereby request access under 37 CFR 1.14(e)(2) to the application file record of the above-identified ABANDONED Application, which is not within the file jacket of a pending Continued Prosecution Application (CPA) (37 CFR 1.53(d)) and is: (CHECK ONE)

[X] (A) referred to in:

United States Patent Application Publication No. ______, page ____, line ______,

United States Patent Number 5551068 ______, line ______, or

an International Application which was filed on or after November 29, 2000 and which designates the United States, WIPO Pub. No. ______, page ____, line ____.

[ ] (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11(b) or 1.14(e)(2)(i), i.e., Application No. ______, paper No. ______, page ______, line ______.

2. [ ] I hereby request access under 37 CFR 1.14(e)(1) to an application in which the applicant has filed an authorization to lay open the complete application to the public.

Kitty Hoffman
Signature

Kitty Hoffman
Typed or printed name

5-29-03
Date

FOR PTO USE ONLY
Approved by: V (initials)
Unit: ______

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PTO/SB/68 (04-01)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS TO AN APPLICATION UNDER 37 CFR 1.14(e)

RECEIVED
JUL 0 3 2003
File Information Unit

| | |
|---|---|
| In re Application of Ole K. Nilssen (07/768,105) | |
| Application Number 06/178,167 | Filed 8-14-80 |
| Art Unit | Examiner |

Paper No. #115

Assistant Commissioner for Patents
Washington, DC 20231

1. ☐ I hereby request access under 37 CFR 1.14(e)(2) to the application file record of the above-identified *ABANDONED* Application, which is not within the file jacket of a pending Continued Prosecution Application (CPA) (37 CFR 1.53(d)) and is: (CHECK ONE)

☑ (A) referred to in:

United States Patent Application Publication No. ________, page ____, line ____,

United States Patent Number 5,233,270, column FF, line ____, or

an International Application which was filed on or after November 29, 2000 and which designates the United States, WIPO Pub. No. ________, page ____, line ____.

☐ (B) referred to in an application that is open to public inspection as set forth in 37 CFR 1.11(b) or 1.14(e)(2)(i), i.e., Application No. ________, paper No. ____, page ____, line ____.

2. ☐ I hereby request access under 37 CFR 1.14(e)(1) to an application in which the applicant has filed an authorization to lay open the complete application to the public.

[signature]
Signature

7/3/03
Date

Specialized Patent Service
Typed or printed name

FOR PTO USE ONLY
Approved by: A. Bryant (initials)
Unit: FIU

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PTO/SB/68 (07-03)
Approved for use through 7/31/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR ACCESS TO AN ABANDONED APPLICATION UNDER 37 CFR 1.14

*Bring completed form to:*
File Information Unit
Crystal Plaza Three, Room 1D01
2021 South Clark Place
Arlington, VA
Telephone: (703) 308-2733

RECEIVED
AUG 1 1 2003
File Information Unit

In re Application of
Nilssen

Application Number: 07/768105
Filed: 9-30-91

Paper No. #26

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is identified in, or to which a benefit is claimed, in the following document (as shown in the attachment):

United States Patent Application Publication No. ______________, page, __________ line ________.

United States Patent Number 5428266, column __________, line, ____________ or

WIPO Pub. No. __________________, page __________, line __________.

**Related Information about Access to Pending Applications (37 CFR 1.14):**
Direct access to pending applications is not available to the public but copies may be available and may be purchased from the Office of Public Records upon payment of the appropriate fee (37 CFR 1.19(b)), as follows:
For published applications that are still pending, a member of the public may obtain a copy of:
the file contents;
the pending application as originally filed; or
any document in the file of the pending application.
For unpublished applications that are still pending:
(1) If the benefit of the pending application is claimed under 35 U.S.C. 119(e), 120, 121, or 365 in another application that has: (a) issued as a U.S. patent, or (b) published as a statutory invention registration, a U.S. patent application publication, or an International patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
the file contents;
the pending application as originally filed; or
any document in the file of the pending application.
(2) If the application is incorporated by reference or otherwise identified in a U.S. patent, a statutory invention registration, a U.S. patent application publication, or an International patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
the pending application as originally filed.

[signature]
Signature

8-11-03
Date

J. LICODINE
Typed or printed name

______________________
Registration Number, if applicable

703-416-9333
Telephone Number

FOR PTO USE ONLY
Approved by: [initials] (Initials)
Unit: FIU

This collection of information is required by 37 CFR 1.14. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS

PTO/SB/68 (07-03)
Approved for use through 7/31/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR ACCESS TO AN ABANDONED APPLICATION UNDER 37 CFR 1.14

*Bring completed form to:*
File Information Unit
Crystal Plaza Three, Room 1D01
2021 South Clark Place
Arlington, VA
Telephone: (703) 308-2733

RECEIVED
SEP 2 4 2004
File Information Unit

In re Application of

| Application Number | Filed |
|---|---|
| 07/768,105 | 11/23/83 |

Paper No. 48

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is identified in, or to which a benefit is claimed, in the following document (as shown in the attachment):

United States Patent Application Publication No. 5185560, page ________, line ________,

United States Patent Number ________________, column ________, line, ________ or

WIPO Pub. No. ________________, page ________, line ________.

**Related Information about Access to Pending Applications (37 CFR 1.14):**
Direct access to pending applications is not available to the public but copies may be available and may be purchased from the Office of Public Records upon payment of the appropriate fee (37 CFR 1.19(b)), as follows:
For published applications that are still pending, a member of the public may obtain a copy of:
- the file contents;
- the pending application as originally filed; or
- any document in the file of the pending application.

For unpublished applications that are still pending:
(1) If the benefit of the pending application is claimed under 35 U.S.C. 119(e), 120, 121, or 365 in another application that has: (a) issued as a U.S. patent, or (b) published as a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
- the file contents;
- the pending application as originally filed; or
- any document in the file of the pending application.

(2) If the application is incorporated by reference or otherwise identified in a U.S. patent, a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
- the pending application as originally filed.

Azeb Coffey (signature)
Signature

9/24/04
Date

Azeb Castdoy
Typed or printed name

FOR PTO USE ONLY
RECEIVED
SEP 2 4 2004
File Information Unit
Approved by: ________ (initials)
Unit: ________

________________
Registration Number, if applicable

703-486-1150
Telephone Number

This collection of information is required by 37 CFR 1.14. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. ... 2021 South Clark Place, Arlington, VA.

PTO/SB/68 (07-03)
Approved for use through 7/31/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR ACCESS TO AN ABANDONED APPLICATION UNDER 37 CFR 1.14

*Bring completed form to:*
File Information Unit
Crystal Plaza Three, Room 1D01
2021 South Clark Place
Arlington, VA
Telephone: (703) 308-2733

RECEIVED
DEC 0 8 2004
File Information Unit

In re Application of
Fwc

| Application Number | Filed |
|---|---|
| 07/768105 | |

Paper No. #49

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is identified in, or to which a benefit is claimed, in the following document (as shown in the attachment):

United States Patent Application Publication No. ____________, page, ________ line ________.

United States Patent Number ______________, column ________, line, __________ or

WIPO Pub. No.________________, page ________, line ________.

**Related Information about Access to Pending Applications (37 CFR 1.14):**
Direct access to pending applications is not available to the public but copies may be available and may be purchased from the Office of Public Records upon payment of the appropriate fee (37 CFR 1.19(b)), as follows:
For published applications that are still pending, a member of the public may obtain a copy of:
the file contents;
the pending application as originally filed; or
any document in the file of the pending application.
For unpublished applications that are still pending:
(1) If the benefit of the pending application is claimed under 35 U.S.C. 119(e), 120, 121, or 365 in another application that has: (a) issued as a U.S. patent, or (b) published as a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
the file contents;
the pending application as originally filed; or
any document in the file of the pending application.
(2) If the application is incorporated by reference or otherwise identified in a U.S. patent, a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
the pending application as originally filed.

[signature]
Signature

12/08/04
Date

KIEN VU
Typed or printed name

RECEIVED
DEC 0 8 2004
File Information Unit

Registration Number, if applicable

703.764.1491
Telephone Number

FOR PTO USE ONLY
Approved by: [initials] (Initials)
Unit:

This collection of information is required by 37 CFR 1.14. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. BRING TO: File Information Unit, Crystal Plaza Three, Room 1D01, 2021 South Clark Place, Arlington, VA.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR ACCESS TO ABANDONED APPLICATION UNDER 37 CFR 1.14

RECEIVED
JUN 2 0 2005
File Information Unit

Bring completed form to:
File Information Unit
Crystal Plaza Three, Room 1D01
2021 South Clark Place
Arlington, VA
Telephone: (703) 308-2733

In re Application of

Application Number: 07-768105

Filed: Sep 30, 1991

Paper No. #2

I hereby request access under 37 CFR 1.14(a)(1)(iv) to the application file record of the above-identified ABANDONED application, which is identified in, or to which a benefit is claimed, in the following document (as shown in the attachment):

United States Patent Application Publication No. ______, page, ______ line ______.

United States Patent Number 5510681, column ______, line, ______ or

WIPO Pub. No. ______, page ______, line ______.

Related Information about Access to Pending Applications (37 CFR 1.14):
Direct access to pending applications is not available to the public but copies may be available and may be purchased from the Office of Public Records upon payment of the appropriate fee (37 CFR 1.19(b)), as follows:
For published applications that are still pending, a member of the public may obtain a copy of:
- the file contents;
- the pending application as originally filed; or
- any document in the file of the pending application.

For unpublished applications that are still pending:
(1) If the benefit of the pending application is claimed under 35 U.S.C. 119(e), 120, 121, or 365 in another application that has: (a) issued as a U.S. patent, or (b) published as a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
- the file contents;
- the pending application as originally filed; or
- any document in the file of the pending application.

(2) If the application is incorporated by reference or otherwise identified in a U.S. patent, a statutory invention registration, a U.S. patent application publication, or an international patent application publication in accordance with PCT Article 21(2), a member of the public may obtain a copy of:
- the pending application as originally filed.

RECEIVED
JUN 2 0 2005
File Information Unit

B. Rhodes
Signature

6-20-05
Date

BILL RHODES
Typed or printed name

Registration Number, if applicable

703-413-3667
Telephone Number

FOR PTO USE ONLY

Approved by: [initials] (initials)

Unit: ______

This collection of information is required by 37 CFR 1.14. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. BRING TO: File Information Unit, Crystal Plaza Three, Room 1D01, 2021 South Clark Place, Arlington, VA.

US005510681A

# United States Patent [19]

Nilssen

[11] **Patent Number: 5,510,681**

[45] **Date of Patent: Apr. 23, 1996**

[54] **OPERATING CIRCUIT FOR GAS DISCHARGE LAMPS**

[76] Inventor: Ole K. Nilssen, 408 Caesar Dr., Barrington, Ill. 60010

[21] Appl. No.: 227,999

[22] Filed: Apr. 15, 1994

**Related U.S. Application Data**

[63] Continuation of Ser. No. 770,414, Oct. 3, 1991, which is a continuation-in-part of Ser. No. 663,566, Mar. 4, 1991, Pat. No. 5,185,560, and Ser. No. 768,105, Sep. 30, 1991, abandoned, said Ser. No. 768,105, Sep. 30, 1991, abandoned, is a continuation of Ser. No. 787,692, Oct. 15, 1985, abandoned, which is a continuation of Ser. No. 644,155, Aug. 27, 1984, which is a continuation of Ser. No. 555,426, Nov. 23, 1983, which is a continuation of Ser. No. 178,107, Aug. 14, 1980, abandoned, which is a continuation-in-part of Ser. No. 973,741, Dec. 28, 1978, abandoned, which is a continuation-in-part of Ser. No. 890,586, Mar. 20, 1978, Pat. No. 4,184, 128.

[51] Int. Cl.[6] .................... H05B 37/02

[52] U.S. Cl. .................... 315/219; 315/223; 315/289; 315/DIG. 5; 315/DIG. 7

[58] Field of Search .................... 315/171, 173, 315/175, 176, DIG. 5, DIG. 7, 207, 208, 200 R, 289, 223, 308, 219

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,740,609 | 6/1973 | Moerkens | 315/200 |
| 3,986,076 | 10/1976 | Rottier | 315/DIG. 5 |
| 4,259,616 | 3/1981 | Smith | 315/DIG. 5 |
| 4,277,728 | 7/1981 | Stevens | 315/308 |
| 4,442,380 | 4/1984 | Adachi | 315/207 X |
| 4,469,981 | 9/1984 | Ruff et al. | 315/171 X |
| 5,008,596 | 4/1991 | Kastl et al. | 315/DIG. 5 |
| 5,034,661 | 7/1991 | Sakurai et al. | 315/207 |

*Primary Examiner*—Frank Gonzalez
*Assistant Examiner*—Reginald A. Ratliff

[57] **ABSTRACT**

A half-bridge inverter is powered from a constant-magnitude DC supply voltage and provides at the inverter's output a first AC output voltage that is describable as a modified squarewave voltage. This first AC voltage is applied across a series-combination of an inductor and a capacitor, the junction between which is clamped to the DC supply voltage. As a result, a second AC voltage gets established across the capacitor; which second AC voltage is also describable as being a modified squarewave voltage. However, the phasing of the second AC voltage is delayed by approximately 90 degrees with respect to the first AC voltage; which results in the voltage across the inductor being of approximately sinusoidal waveform. A fluorescent lamp is connected in series with a ballast capacitor; and the lamp-capacitor series combination is connected across the inductor, thereby resulting in a nearly sinusoidal current being provided to the fluorescent lamp. Lamp starting aid is provided by a voltage-doubling circuit supplying a high-magnitude current-limited DC voltage across the ballast capacitor for ignition purposes.

**17 Claims, 8 Drawing Sheets**



PTO-1130 (REV 6-87)

U.S. DEPARTMENT OF COMMERCE—PATENT & TM OFFICE

# PALM III APPLICATION FILE DATA CODING SHEET

PREPARED BY: [signature] DATE: 10-11-91

FORMAT NO. 2

| Serial No. | TYPE APPL | FILING DATE (Month Day Year) | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWINGS | ASGT? | TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE RECEIVED | SECURITY CASE? | FOREIGN LICENSE? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/ 768105 | 2 | 09 30 91 | | 212 | 363 | 3 | N | 1 | 1 | Y | 315 | N | Y |

FORMAT NO. 3 — ATTORNEY DOCKET NUMBER (12 spaces) — Atty.'s Reg. Nos. ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 4 Applicant's Name & Address ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 5 Title of Invention ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 6&7 Correspondence Address ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 8

| | RECORD | CONTINUITY CODE | PARENT APPLICATION SERIAL NUMBER | PARENT FILING DATE (Month Day Year) | STATUS CODE | PARENT PATENT NO. |
|---|---|---|---|---|---|---|
| RECORD | 801 | 02 | 0 678 7692 | 10 15 85 | 3 | |
| RECORD | 802 | 12 | 0 664 4155 | 08 27 84 | 3 | |
| RECORD | 803 | 12 | 0 655 5426 | 11 23 83 | 3 | |
| RECORD | 804 | 12 | 0 617 8107 | 08 14 80 | 3 | |
| RECORD | 805 | 13 | 0 597 3741 | 12 28 78 | 3 | |
| RECORD | 806 | | 0 | | | |
| RECORD | 807 | | 0 | | | |
| RECORD | 808 | | 0 | | | |
| RECORD | 809 | | 0 | | | |
| ☐ MORE ON SUPPLEMENTAL CODING SHEET | RECORD 810 | | 0 | | | |

FORMAT NO. 9

| | RECORD | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FILING DATE (Month Day Year) |
|---|---|---|---|---|
| | 901 | | | |
| FOREIGN PRIORITY CLAIMED? | 902 | | | |
| | 903 | | | |
| ☐ YES ☐ NO | 904 | | | |
| | 905 | | | |
| | 906 | | | |
| ☐ APPLICATION PAPERS | 907 | | | |
| | 908 | | | |
| | 909 | | | |
| ☐ MORE ON SUPPLEMENTAL CODING SHEET | 910 | | | |

FORM PTO-875
(Rev. 3-83)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

# PATENT APPLICATION FEE DETERMINATION RECORD

SERIAL NO. 787692
FILING DATE 10/15/85
APPLICANT (FIRST NAMED) Nilssen, O.K.

## CLAIMS AS FILED - PART I

| FOR: | NO. FILED | NO. EXTRA | SMALL ENTITY RATE | SMALL ENTITY FEE | | OTHER THAN A SMALL ENTITY RATE | OTHER THAN A SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $170 | OR | | $340 |
| TOTAL CLAIMS | 20 -20- | * | x6 | $ | OR | x12 | $ |
| INDEP. CLAIMS | 4 -3- | * 1 | x17 | $ 17 | OR | x34 | $ |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | x55 | $ | OR | x110 | $ |
| | | | TOTAL | $ 187 | OR | TOTAL | $ |

* If the difference in col. 1 is less than zero, enter "0" in col. 2

## CLAIMS AS AMENDED - PART II

AMENDMENT A

| | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NO. PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT. FEE | | OTHER THAN A SMALL ENTITY RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * 6 | MINUS | ** 26 | = — | x5 | $ — | OR | x10 | $ — |
| INDEP. | * 6 | MINUS | *** 8 | = — | x15 | $ — | OR | x30 | $ — |
| FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | x50 | $ | OR | x100 | $ — |
| | | | | | TOTAL ADDIT. FEE | $ — | OR | TOTAL | $ |

AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | SMALL ENTITY RATE | ADDIT. FEE | | OTHER THAN A SMALL ENTITY RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * | MINUS | ** | = | x5 | $ | OR | x10 | $ |
| INDEP. | * | MINUS | *** | = | x15 | $ | OR | x30 | $ |
| FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | x50 | $ | OR | x100 | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | SMALL ENTITY RATE | ADDIT. FEE | | OTHER THAN A SMALL ENTITY RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * | MINUS | ** | = | x5 | $ | OR | x10 | $ |
| INDEP. | * | MINUS | *** | = | x15 | $ | OR | x30 | $ |
| FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | x50 | $ | OR | x100 | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

* If the entry in Col. 1 is less than the entry in Col. 2, write "0" in Col. 3.
** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest No. Previously Paid For" (Total or Indep.) is the highest number found in the appropriate box in Col. 1.

FORM PTO-875
(REV. 11-77)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**PATENT APPLICATION FEE DETERMINATION RECORD**

SERIAL NUMBER: 178,107

FILING DATE: 8-14-80

APPLICANT (First Named Only): Ole K. Nilssen

**CLAIMS AS FILED - PART I**

| (1) FOR | (2) NUMBER FILED | | (3) NUMBER FILED | | (4) RATE | (5) BASIC FEE $65.00 |
|---|---|---|---|---|---|---|
| TOTAL CLAIMS | 53 | -10= | 43 | = | — x $2.00 | 86 |
| INDEPENDENT CLAIMS | 14 | - 1= | 13 | = | — x $10.00 | 130.00 |
| | | | | | TOTAL FILING FEE → | 281.00 |

**CLAIMS AS AMENDED - PART II**

| | | (2) CLAIMS REMAINING AFTER AMENDMENT | | (4) HIGHEST NO. PREVIOUSLY PAID FOR | (5) PRESENT EXTRA | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|
| AMENDMENT A | TOTAL | * 29 | MINUS | ** 53 | = — | x $2 | = — |
| | INDEP. | * 3 | MINUS | 14 | = — | x $10 | = — |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT → | | | — |
| AMENDMENT B | TOTAL | * 54 | MINUS | ** 29 | = 25 | x $2 | = 50.00 |
| | INDEP. | * 10 | MINUS | 3 | = 7 | x $10 | = 70.00 |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT → | | | 120.00 |
| AMENDMENT C | TOTAL | * 34 | MINUS | ** 54 | = — | x $2 | = — |
| | INDEP. | * 9 | MINUS | 10 | = — | x $10 | = — |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT → | | | — |
| AMENDMENT | TOTAL | * | MINUS | ** | = | x $2 | = |
| | INDEP. | * | MINUS | ** | = | x $10 | = |
| | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT → | | | |

* If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 10, write "10" in this space.

*** The "Highest Number Previously Paid For" ("Total" or "Indep.") is the highest number found in the appropriate box in Column 2.

U.S. [illegible] ENT OF COMMERCE
Pat[illegible]

Address Only: COMMISSIONER OF PATENTS
Washington, D.C. 20231

MAIL ROOM
MAY 8 1981
PAT. & TRADE-MARK OFF.

Nilssen Case 6
May 7, 1981

RECEIVED
JUL 7 1981
GROUP 210

In re application of Ole K. Nilssen

Serial No. 178,107

Filed August 14, 1980

For INVERTER CIRCUITS

THE COMMISSIONER OF PATENTS
Washington, D.C. 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

☐ No additional fee is enclosed because this application was filed prior to October 25, 1965 (effective date of Public Law 89-83.)

☒ No additional fee is required.

The fee has been calculated as shown below.

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NO. PREVIOUSLY PAID FOR | (5) PRESENT EXTRA | (6) RATE | (7) ADDITIONAL FEE |
| | TOTAL CLAIMS | * 24 | MINUS | ** 53 | × 0 | × $2 | × 0 |
| | INDEP. CLAIMS | * | MINUS | | × | × $10 | × |
| | | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT → | | |

*If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.
**If the "Highest Number Previously Paid For" IN THIS SPACE is less than 10, write "10" in this space.

☐ A check in the amount of $ is attached.

☐ Charge $ to Deposit Account No. ______________. A duplicate copy of this sheet is enclosed.

☐ Please charge any additional fees or credit overpayment to Deposit Account No. ___________. A duplicate copy of this sheet is enclosed.

John K. Lucas
Attorney of Record
John K. Lucas
Reg. No. 27,024

FORM PO-1083 (11-69)

# PATENT APPLICATION FEE DETERMINATION RECORD

Application or Docket Number

## CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $ 315.00 | OR | | $ 630.00 |
| TOTAL CLAIMS | minus 20 = | * | x $10= | | OR | x $20 = | |
| INDEPENDENT CLAIMS | minus 3 = | * | x 30 = | | OR | x 60 = | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 100 = | | OR | + 200 = | |
| | | | TOTAL | 315 | OR | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * 24 | Minus | ** 20 | = 4 | x $10= | | OR | x $20 = | |
| Independent | * 8 | Minus | *** 3 | = 5 | x 30 = | | OR | x 60 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100 = | | OR | + 200 = | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x $10 = | | OR | x $20 = | |
| Independent | * | Minus | *** | = | x 30 = | | OR | x 60 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100 = | | OR | + 200 = | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x $10 = | | OR | x $20 = | |
| Independent | * | Minus | *** | = | x 30 = | | OR | x 60 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100 = | | OR | + 200 = | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 12-90)

For Fees Effective Nov. 5, 1990

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

MULTIPLE DEPENDENT CLAIM
FEE CALCULATION SHEET
*(FOR USE WITH FORM PTO-875)*

SERIAL | FILING DATE

APPLICANT(S)

CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | |
|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | 1 | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | 1 | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| 31 | | | | | | |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | | | | |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |
| 39 | | | | | | |
| 40 | | | | | | |
| 41 | | | | | | |
| 42 | | | | | | |
| 43 | | | | | | |
| 44 | | | | | | |
| 45 | | | | | | |
| 46 | | | | | | |
| 47 | | | | | | |
| 48 | | | | | | |
| 49 | | | | | | |
| 50 | | | | | | |
| TOTAL IND. | | ↵ | | ↵ | | ↵ |
| TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | | | | | | |

| | * | | * | | * | |
|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 51 | | | | | | |
| 52 | | | | | | |
| 53 | | | | | | |
| 54 | | | | | | |
| 55 | | | | | | |
| 56 | 1 | | | | | |
| 57 | | 1 | | | | |
| 58 | | 2 | | | | |
| 59 | | 2 | | | | |
| 60 | | 1 | | | | |
| 61 | | 1 | | | | |
| 62 | | 1 | | | | |
| 63 | | 1 | | | | |
| 64 | | 1 | | | | |
| 65 | | 1 | | | | |
| 66 | | 1 | | | | |
| 67 | | 1 | | | | |
| 68 | | 1 | | | | |
| 69 | | 1 | | | | |
| 70 | | 1 | | | | |
| 71 | | 1 | | | | |
| 72 | | 1 | | | | |
| 73 | 1 | | | | | |
| 74 | 1 | | | | | |
| 75 | 1 | | | | | |
| 76 | | 1 | | | | |
| 77 | | 1 | | | | |
| 78 | 1 | | | | | |
| 79 | 1 | | | | | |
| 80 | | 1 | | | | |
| 81 | 1 | | | | | |
| 82 | 1 | | | | | |
| 83 | 1 | | | | | |
| 84 | | 1 | | | | |
| 85 | | 1 | | | | |
| 86 | | | | | | |
| 87 | | 1 | | | | |
| 88 | | | | | | |
| 89 | | | | | | |
| 90 | | | | | | |
| 91 | | | | | | |
| 92 | | | | | | |
| 93 | | | | | | |
| 94 | | | | | | |
| 95 | | | | | | |
| 96 | | | | | | |
| 97 | | | | | | |
| 98 | | | | | | |
| 99 | | | | | | |
| 100 | | | | | | |
| TOTAL IND. | 10 | ↵ | | ↵ | | ↵ |
| TOTAL DEP. | 44 | | | | | |
| TOTAL CLAIMS | 54 | | | | | |

PTO-1360 (3-78)

*MAY BE USED FOR ADDITIONAL CLAIMS OR AMENDMENTS

U.S. DEPARTMENT of COMMERCE
Patent and Trademark Office

FORM PTO-875 (Rev. 3-83)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

# PATENT APPLICATION FEE DETERMINATION RECORD

SERIAL NO. 644135

FILING DATE 8/27/84

APPLICANT (FIRST NAMED) Ole K. Nilssen

## CLAIMS AS FILED - PART I

| FOR: | NO. FILED | NO. EXTRA | SMALL ENTITY RATE | SMALL ENTITY FEE | | OTHER THAN A SMALL ENTITY RATE | OTHER THAN A SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $150 | OR | | $300 |
| TOTAL CLAIMS | 20 -20- | * | x8- | $ | OR | x10- | $ |
| INDEP. CLAIMS | 8 -3- | * 5 | x15- | $75 | OR | x30- | $ |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT | | | +50- | $ | OR | +100- | $ |
| | | | TOTAL | $225 | OR | TOTAL | $ |

* If the difference in col. 1 is less than zero, enter "0" in col. 2

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NO. PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT. FEE | | OTHER THAN A SMALL ENTITY RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * 10 | MINUS | ** 20 | — | x5 | $ | OR | x10- | $ |
| INDEP | * 6 | MINUS | *** 8 | — | x15- | $ | OR | x30- | $ |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

J

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | | RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * 9 | MINUS | ** 20 | — | x5- | $ | OR | x10- | $ |
| INDEP | * 6 | MINUS | *** 8 | — | x15- | $ | OR | x30- | $ |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

### AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | | RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * | MINUS | ** | — | x5- | $ | OR | x10- | $ |
| INDEP | * | MINUS | *** | — | x15- | $ | OR | x30- | $ |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

* If the entry in Col. 1 is less than the entry in Col. 2, write "0" in Col. 3.

** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest No. Previously Paid For" (Total or Indep.) is the highest number found in the appropriate box in Col. 1.

D-1130 (Rev. 3-83) 555426

# PALM III APPLICATION FILE DATA CODING SHEET

U.S. DEPARTMENT OF COMMERCE–PATENT & TM OFFICE | PREPARED BY Ellen | DATE

FORMAT NO. 2

| Serial No. | TYPE APPL | FILING DATE (Month / Day / Year) | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWINGS | ASGT? | TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE RECEIVED | SECURITY CASE? | FOREIGN LICENSE? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06 | 3 | 11 / 23 / 83 | | 2 1 2 | 3 6 3 | 0 0 3 | N | 0 2 0 | 0 0 3 | 1 | 0 2 2 5 | N | Y |

FORMAT NO. 3 ATTORNEY DOCKET NUMBER (12 spaces) | Atty.'s Reg. Nos. ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 4 Applicant's Name & Address ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 5 Title of Invention ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 6&7 Correspondence Address ☐ APPL. PAPERS ☐ CODING SHEET

FORMAT NO. 8

| | | CONTINUITY CODE | PARENT APPLICATION SERIAL NUMBER | PARENT FILING DATE (Month / Day / Year) | STATUS CODE | PARENT PATENT NUMBER |
|---|---|---|---|---|---|---|
| RECORD | 8 0 1 | | 06/178,107 | 08 / 14 / 80 | 2 | |
| RECORD | 8 0 2 | | 0 | | | |
| RECORD | 8 0 3 | | 0 | | | |
| RECORD | 8 0 4 | | 0 | | | |
| RECORD | 8 0 5 | | 0 | | | |
| RECORD | 8 0 6 | | 0 | | | |
| RECORD | 8 0 7 | | 0 | | | |
| RECORD | 8 0 8 | | 0 | | | |
| RECORD | 8 0 9 | | 0 | | | |
| RECORD | 8 1 0 | | 0 | | | |

☐ MORE ON SUPPLEMENTAL CODING SHEET

FORMAT NO. 9

FOREIGN PRIORITY CLAIMED? ☐ YES ☐ NO

| | | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FILING DATE (Month / Day / Year) |
|---|---|---|---|---|
| RECORD | 9 0 1 | | | |
| RECORD | 9 0 2 | | | |
| RECORD | 9 0 3 | | | |
| RECORD | 9 0 4 | | | |
| RECORD | 9 0 5 | | | |
| RECORD | 9 0 6 | | | |
| RECORD | 9 0 7 | | | |
| RECORD | 9 0 8 | | | |
| RECORD | 9 0 9 | | | |
| RECORD | 9 1 0 | | | |

APPLICATION PAPERS

MORE ON SUPPLEMENTAL CODING SHEET

FORM PTO-875 (Rev. 3-83)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

# PATENT APPLICATION FEE DETERMINATION RECORD

SERIAL NO. 555 426

FILING DATE 11-23-83

APPLICANT (FIRST NAMED) Nilssen

## CLAIMS AS FILED - PART I

| FOR: | NO. FILED | NO. EXTRA | SMALL ENTITY RATE | SMALL ENTITY FEE | | OTHER THAN A SMALL ENTITY RATE | OTHER THAN A SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $150 | OR | | $300 |
| TOTAL CLAIMS | 20 -20- | * | x5- | $ | OR | x10- | $ |
| INDEP. CLAIMS | 3 -3- | * | x15- | $ | OR | x30- | $ |
| [ ] MULTIPLE DEPENDENT CLAIM PRESENT | | | +50- | $ | OR | +100- | $ |
| | | | TOTAL | $ | OR | TOTAL | $ |

* If the difference in col. 1 is less than zero, enter "0" in col. 2

## CLAIMS AS AMENDED - PART II

AMENDMENT A

| | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NO. PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT. FEE | | OTHER THAN A SMALL ENTITY RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * 8 | MINUS | ** 20 | = 0 | x5- | $ | OR | x10- | $ — |
| INDEP. | * 8 | MINUS | *** 14 | = 0 | x15- | $ | OR | x30- | $ — |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ — |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ — |

AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | | RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * 9 | MINUS | ** 20 | = 0 | x5- | $ | OR | x10- | $ |
| INDEP. | * 8 | MINUS | *** 14 | = 0 | x15- | $ | OR | x30- | $ |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

no fee

AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT. FEE | | RATE | ADDIT. FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | * | MINUS | ** | = | x5- | $ | OR | x10- | $ |
| INDEP. | * | MINUS | *** | = | x15- | $ | OR | x30- | $ |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | +50- | $ | OR | +100- | $ |
| | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

no change
no fee

* If the entry in Col. 1 is less than the entry in Col. 2, write "0" in Col. 3.
** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest No. Previously Paid For" (Total or Indep.) is the highest number found in the appropriate box in Col. 1.

555,426

Consulted Ex Grumm re Cl 331 8/15/84 WAB

## SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| 368 | 17, 22<br>98, 184<br>133<br>143 | | |
| 331 | 113A<br>117 | | |
| 315 | 207R<br>219<br>DIG, 5<br>106, 225<br>239, 224B<br>244, 291<br>275<br>DIG-4<br>DIG-7 | 2-8-84 | WAB |
| Above to date<br>363 | 136 | 8/14/84 | WAB |

## PRINT CLAIM(S):

## INDEX OF CLAIMS

## INTERFERENCE SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| | | | |

SYMBOLS

✓ ................ Rejected
= ................ Allowed
÷ (Through numeral) Canceled
÷ ................ Restriction requirement
N ................ Nonelected invention or species
I ................ Interference
A ................ Appeal
O ................ Objected

STATUS

06/178,107

to any
inverter combination
claims

Consider ... 2nd ...

4/7/81

7/30/81

Filed

## SEARCHED

| Class | Sub | Date | Ex'r |
| --- | --- | --- | --- |
| 315 | DIG 5 | | |
| 331 | 113A | | |
| 363 | 131, 132, 133, 17 | 7/28/81 | WHB |
| 363 | 98, 22, 143 | | |
| 331 | 117 | | |
| 315 | 205, 219 | | |
| | Above to date | 8/26/83 | WHB |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Ex'r |
| --- | --- | --- | --- |
| | | | |

PRINT CLAIM (S):

## INDEX OF CLAIMS

| Claim Final | Claim Original | Date 4/7/81 | Date 7/31/81 | Date 8/31/83 | Claim Final | Claim Original | Date 4/7/81 | Date 7/28/81 | Date 8/30/83 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | | | | | 26 | | | |
| | 2 | | | | | 27 | | | |
| | 3 | | | | | 28 | | | |
| | 4 | | | | | 29 | | | |
| | 5 | | | | | 30 | | | |
| | 6 | | | | | 31 | | | |
| | 7 | | | | | 32 | | | |
| | 8 | | | | | 33 | | | |
| | 9 | | | | | 34 | | | |
| | 10 | | | | | 35 | | | |
| | 11 | | | | | 36 | | | |
| | 12 | | | | | 37 | | | |
| | 13 | | | | | 38 | | | |
| | 14 | | | | | 39 | | | |
| | 15 | | | | | 40 | | | |
| | 16 | | | | | 41 | | | |
| | 17 | | | | | 42 | | | |
| | 18 | | | | | 43 | | | |
| | 19 | | | | | 44 | | | |
| | 20 | | | | | 45 | | | |
| | 21 | | | | | 46 | | | |
| | 22 | | | | | 47 | | | |
| | 23 | | | | | 48 | | | |
| | 24 | | | | | 49 | | | |
| | 25 | | | | | 50 | | | |

SYMBOLS STATUS

- ✓ ............ Rejected
- = ............ Allowed
- – (Through numeral) Canceled
- \+ ............ Restriction requirement
- N ............ Nonelected invention or species
- I ............ Interference
- A ............ Appeal
- O ............ Objected

in the patent application

for grounded DC
center tap feed from
full wave rectifier
see fig 15 US Pat #
4348734
9/82 (filed 7/10/80)
Also Loudin 333/129
363/126.

Also [illegible] Walden

## SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| 363 | 17, 22 | | |
| | 98, 131 | | |
| | 132, 133 | | |
| | 136 | | |
| 331 | 113A | | |
| | 117 | | |
| 315 | 207 R. | | |
| | ~~[illegible]~~ 219 | | |
| | DIG-5 | | |
| | 106, 225 | | |
| | 239, 243 | | |
| | 244, 291 | | |
| | 275 | | |
| | DIG-4 | | |
| | DIG-7 | 1/15/85 | WDB |
| Above to date | | 6/25/85 | WDB |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| | | | |

## PRINT CLAIM(S):

## INDEX OF CLAIMS

| Original | Final | 1/15/85 | 6/25/85 |
|---|---|---|---|
| 1 | 118 | ✓ | W |
| 2 | 119 | | |
| 3 | [illegible] | ✓ | W |
| 4 | [illegible] | ✓ | W |
| 5 | [illegible] | ✓ | W |
| 6 | 125 (?) | | |
| 7 | [illegible] | ✓ | W ✓ |
| 8 | [illegible] | ✓ | W |
| 9 | 121 (?) | ✓ | |
| 10 | [illegible] | ✓ | ✓ |
| 11 | 123 (?) | ✓ | ✓ |
| 12 | [illegible] | | ✓ |
| 13 | [illegible] | | |
| 14 | [illegible] | | |
| 15 | [illegible] | | |
| 16 | [illegible] | | |
| 17 | [illegible] | | |
| 18 | [illegible] | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | | | |
| 38 | | | |
| 39 | | | |
| 40 | | | |
| 41 | | | |
| 42 | | | |
| 43 | | | |
| 44 | | | |
| 45 | | | |
| 46 | | | |
| 47 | | | |
| 48 | | | |
| 49 | | | |
| 50 | | | |

Margin notes in the claims index: W/O S. Dolby(?); Ramon Dooley (?) [illegible]

SYMBOLS

STATUS

✓ .................. Rejected
= .................. Allowed
−(Through numeral) Canceled
÷ .................. Restriction requirement
N .................. Nonelected invention or species
I .................. Interference
A .................. Appeal
O .................. Objected
W − WITHDRAWN FROM CONSIDERATION

| POSITION | | | |
|---|---|---|---|
| CLASSIFIER | | | |
| EXAMINER | | [illegible] | |
| TYPIST | | [illegible] | [illegible] |
| VERIFIER | | | |
| CORPS CORR. | | | |
| SPEC. HAND | | | |
| FILE MAINT. | | | |

## INDEX OF CLAIMS

| Claim | Final | | Claim | Final | |
|---|---|---|---|---|---|
| 26 | [illegible] | | 76 | | |
| 27 | [illegible] | | 77 | | |
| 28 | [illegible] | | 78 | | |
| 29 | [illegible] | ✓ | 79 | | |
| 30 | [illegible] | | 80 | | |
| 31 | [illegible] | ✓ | 81 | | |
| 32 | [illegible] | ✓ | 82 | | |
| 33 | [illegible] | ✓ | 83 | | |
| 34 | [illegible] | | 84 | | |
| 35 | [illegible] | | 85 | | |
| 36 | [illegible] | | 86 | | |
| 37 | [illegible] | | 87 | | |
| 38 | [illegible] | ✓ | 88 | | |
| 39 | [illegible] | ✓ | 89 | | |
| 40 | [illegible] | | 90 | | |
| 41 | [illegible] | | 91 | | |
| 42 | [illegible] | ✓ | 92 | | |
| 43 | [illegible] | | 93 | | |
| 44 | 61 | ✓ | 94 | | |
| 45 | 62 | ✓ | 95 | | |
| 46 | [illegible] | | 96 | | |
| 47 | [illegible] | | 97 | | |
| 48 | [illegible] | ✓ | 98 | | |
| 49 | | | 99 | | |
| 50 | | | 100 | | |

06/787,692

## SEARCH NOTES

| | Date |
|---|---|
| Consulted Examiner Class 315 | |
| 4077 433 3/7/33 541 3/2/87 | |

## SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| 363 | 37 | | |
| | 132 | 11/26/85 | WB |
| 363 | 143 | 12/2/85 | WB |
| Above to date | | 6/2/86 | WB |
| 363 | 133 | | |
| | 17, 98, | | |
| | 139 | | |
| 331 | 113A | | |
| 315 | 223 | | |
| | 224 | | |
| | DIG-7 | | |
| Above to date | | 6/9/87 | WB |
| Up[illegible] | | 7/24/87 | WB |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Exr |
|---|---|---|---|
| | | | |

**PRINT CLAIM(S):**

## INDEX OF CLAIMS

| Claim (Original) | Claim (Original) |
|---|---|
| 1 | 26 |
| 2 | 27 |
| 3 | 28 |
| 4 | 29 |
| 5 | 30 |
| 6 | 31 |
| 7 | 32 |
| 8 | 33 |
| 9 | 34 |
| 10 | 35 |
| 11 | 36 |
| 12 | 37 |
| 13 | 38 |
| 14 | 39 |
| 15 | 40 |
| 16 | 41 |
| 17 | 42 |
| 18 | 43 |
| 19 | 44 |
| 20 | 45 |
| 21 | 46 |
| 22 | 47 |
| 23 | 48 |
| 24 | 49 |
| 25 | 50 |

SYMBOLS — STATUS

✓ ............... Rejected
= ............... Allowed
–(Through numeral) Canceled
÷ ............... Restriction requirement
N ............... Nonelected invention or species
I ............... Interference
A ............... Appeal
O ............... Objected