# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEIT ELECTRIC COMPANY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-cv-09339 |
| BEACON POINT CAPITAL, LLC, | ) Judge Sharon Johnson Coleman |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Feit Electric Company, Inc. ("Feit") filed a six-count First Amended Complaint [49] for declaratory judgment, seeking to have defendant Beacon Point Capital, LLC, ("Beacon") collaterally estopped from asserting infringement of U.S. Patent Nos. 6,172,464 (the '464 patent) and 5,757,140 (the '140 patent), or, alternatively, to have the patents declared unenforceable for inequitable conduct. On September 30, 2015, this Court granted in part and denied in part Feit's motion for summary judgment, finding that the '464 patent was unenforceable based on a prior adjudication of inequitable conduct. (Dkt. 65). Collateral estoppel did not apply to the '140 patent. Feit filed a successive motion for summary judgment to attempt to overcome the lack of evidence to demonstrate inequitable conduct [77]. For the reasons stated herein, the Court denies the motion.

**Background**

The following facts are undisputed. The patent-in-suit U.S. Patent Nos. 5,757,140 (the "'140 patent"), names Ole Nilssen as inventor. (Dkt. 89, Beacon Resp. to Feit L.R. 56.1 Statement of Undisputed Material Facts, at ¶ 10). Ownership of the patents-in-suit passed on Nilssen's death to his estate and then to his wife Ellen Nilssen. Ellen Nilssen assigned the patents-in-suit to Beacon Point Capital, LLC. Beacon is owned and controlled by Nilssen's daughter and son-in-law. (*Id.* at ¶

1

13). Feit commenced the instant lawsuit following assertions by Beacon that Feit sold products covered by the patents-in-suit. Beacon asserts that it has all substantial rights under the '140 patent.

The '140 patent titled "Electronic Ballast with Frequency Control" issued on May 26, 1998, from Nilssen's patent Application No. 851,887 ("the '887 application") filed on March 16, 1992. (*Id.* at ¶ 11). Nilssen, an experienced inventor, prosecuted the '887 application himself at the U.S. Patent and Trademark Office. (*Id.* at ¶ 12). No claim in the '140 patent is eligible for an effective filing date prior to August 14, 1980. (*Id.* at ¶ 16). The '887 application was filed as a continuation of application no. 07/819,655 that was filed on January 13, 1992. (*Id.* at ¶ 17). The '655 application cites application no. 05/973,741 filed on December 28, 1978, as a related application. Nilssen identified application no. 06/178,107, filed on August 14, 1980, as the "original in-part progenitor" of the '887 application. (*Id.*; Dkt. 79-3, Ex. 3 at FEIT _ 012774). The '655 application is a continuation of application no. 07/643,023, which was filed on January 18, 1991. (Dkt. 89 at ¶ 18). The '023 application is a continuation-in-part of application no. 06/787,692 filed on October 15, 1985. (*Id.* at ¶ 19). The '692 application referred to application no. 06/178,107 filed on August 14, 1980. (*Id.*). The '107 application does not cite any earlier application as "related," but does refer to application no. 05/973,741 filed on December 28, 1978, which is a continuation-in-part of application no. 05/890,586 filed March 20, 1978. (*Id.* at ¶ 22). The recitation of patent ancestry in the '140 patent states:

> "[(1)] The present application is a Continuation of Ser. No. 07/819,655 filed Jan. 13, 1992 now U.S. Pat. No. 5,191,262; [(2)] which is a Continuation of Serial No. 07/643,023 filed Jan. 18, 1991 now abandoned; [(3)] which is a Continuation-in-Part of Ser. No. 06/787,692 filed Oct. 15, 1985 now abandoned; [(4)] which is a Continuation of Ser. No. 06/644,155 filed Aug. 27, 1994, now abandoned; [(5)] which is a Continuation of Ser. No. 06/555,426 filed Nov. 23, 1983, now abandoned; [(6)] which is a Continuation of Ser. No. 06/178,107 filed Aug. 14, 1980, now abandoned; [(7)] which Ser. No. 06/555,426 is also a Continuation-in-Part of Ser. No. 06/330,159 filed Dec. 14, 1981, now U.S. Pat. No. 4,430,628; [(8)] which is a Division of Ser. No. 05/973,741 filed Dec. 28, 1978, now abandoned; [(9)] which is a Continuation-in-Part of Ser. No. 05/890,586 filed Mar. 20, 1978, now U.S. Pat. No. 4,184,128." (Dkt. 79-3, Ex. 3 at FEIT_012774).

2

Nilssen submitted an oath for the '140 patent to the U.S. Patent and Trademark Office ("USPTO") that also stated this ancestry. (*Id.* at ¶ 29). Feit asserts that this ancestry claims a priority date of March 20, 1978, for the '140 patent. (*Id.*). Beacon contends that Nilssen was not "claiming a priority date" in the 35 U.S.C. §120 sense, but merely stating the history of the patent. (*Id.*).

The 5,164,637 ("the '637 patent") found unenforceable in *Osram I* is descended from both application no. 06/787,692 (separated by two intervening continuations), and application no. 06/178,107 (separated by five intervening continuations). (*Id.* at ¶ 32). Like the '140 patent, Nilssen is the sole named inventor of the '637. (*Id.* at ¶ 33). On August 9, 1991, Nilssen filed application no. 743,216, *pro se*, which issued as the '637 patent on November 17, 1992. (*Id.* at ¶ 34). Nilssen had been prosecuting his own patent applications since October 1983. (*Id.* at ¶ 36). Nilssen testified in the *Osram* litigation that he would claim priority of his patents as far back as he could properly go under the law. (*Id.* at ¶ 43). The applications for both the '140 patent and the '637 patent recite ancestry to the '692 application, which recites to application '107 filed on August 14, 1980. (*Id.* at ¶ 45). The applications for both the '140 patent and the '637 patent recite ancestry to application no. 06/555,426, filed November 23, 1983, and that the recitation of patent ancestry of both applications ('637 and '140) state that application no. 06/555,426 is a descendant of application no. 05/890,586 filed March 20, 1978. (*Id.* at ¶ 46).

In the 1990s, Nilssen licensed some of his patents to Advance Transformer Company, including 65 patents and patent applications but not the '140 patent or its application. (*Id.* at ¶ 47). On August 22, 1991, Nilssen and Advance entered into an agreement whereby Nilssen granted to Advance an exclusive license for patents related to the Omega Ballasts. (*Id.* at ¶ 49). By its terms that licensing agreement, in section 2.0, could be terminated only if "<u>all</u> Patents issuing from these applications have been found invalid or unenforceable by competent authority <u>and all</u> remaining applications have been abandoned by NILSSEN." (*Id.*) (emphasis added). The applications covered

3

by the licensing agreement were incorporated in that agreement in an Exhibit X, which included application '023. (*Id.* at ¶ 50).

On March 6, 1991, Nilssen sent a letter to Advance, stating in part:

> However, I also mentioned to you that I may not be able to attain effective patent coverage on the Omega Ballast; which presents me with a dilemma. This dilemma relates to the fact that Advance is free to cancel its License Agreement with me at any time after June 30, 1993. Thus, if it should turn out that the Omega Ballast were to lack effective patent protection, I would have to recognize that Advance might indeed cancel its License Agreement with me while proceeding to make and sell the Omega Ballast.

(*Id.* at ¶ 51).

In *Nilssen, et al. v. Osram Sylvania Inc.,* 440 F.Supp.2d 884 (N.D. Ill. 2006 ("*Osram I*"), the district court found the '637, '680, and '681 patents to be unenforceable. (*Id.* at ¶ 63). The district court also found that the '637, '680, and '681 patents recited patent ancestry that included the '692 application. (*Id.* at ¶ 64). In that case, the court found that the claim of priority to the effective filing date of March 20, 1978, in the '637, '680, and '681 was incorrect because the respective patent applications filed between 1980 and 1990 do not claim priority to or cross reference any patents or patent applications earlier than patent application 06/178,107, filed on August 14, 1980. (*Id.* at ¶ 67). The Federal Circuit affirmed the district court's judgment. *Nilssen, et al. v. Osram Sylvania Inc.,* 504 F.3d 1223 (Fed. Cir. 2007) ("*Osram II*").

**Legal Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

Feit again moves for summary judgment on the '140 patent, urging this Court to find that the '140 patent is unenforceable based on the inequitable conduct of the inventor, Nilssen, in the prosecution of the patent at the U.S. Patent and Trademark Office. Although Feit does not expressly refer to collateral estoppel in its renewed argument, it is clear from its briefs that Feit is attempting again to apply the findings in *Osram I* to the '140 patent. This Court already ruled in the Memorandum Opinion and Order from September 30, 2015, that *Osram I* did not have a preclusive effect on the '140 patent. Dkt. 65, *Feit Electric Company, Inc. v. Beacon Point Capital LLC,* No. 13 C 9339 (N.D. Ill. Sept. 30, 2015). Feit has not provided any other basis for this Court to apply the findings from the *Osram* litigation, which did not include the '140 patent and pre-dated *Therasense, Inc. v. Becton, Dickinson, and Co.,* 649 F.3d 1276 (Fed. Cir. 2011), to the case now before the Court.

Feit argues that the '140 patent in suit is unenforceable because Nilssen falsely "claimed" priority to March 20, 1978, in the recitation of the patent ancestry.[1] Beacon contends that Feit has presented no evidence that Nilssen ever "claimed priority" to March 20, 1978, as an effective filing date pursuant to 35 U.S.C. § 120.

Courts presume patents are valid, and "the burden of persuasion to the contrary is and remains on the party asserting invalidity." *Ralston Purina Co. v. Far-M ar-Co, Inc.,* 772 F.2d 1570, 1773 (Fed. Cir. 1985). After *Therasense,* to prove inequitable conduct, Feit must prove by clear and convincing evidence that Nilssen: (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the U.S. Patent and Trademark Office. *Intellect Wireless, Inc. v. HTC Corp.,* 732 F.3d 1339, 1342 (Fed. Cir. 2013). Pursuant to *Therasense*, intent and materiality are separate requirements, and thus the court must "weigh the

---

[1] Feit's supplemental memorandum in support of its motion for summary judgment (dkt. 77) contains several errors in referencing dates. The errors render the Court's work more difficult because it is precisely the accuracy of dates that are central to Feit's argument. Thus, it is unclear in several places whether Feit is referring to the March 20, 1978, date or the August 14, 1980, date, or some other date altogether.

evidence of intent to deceive independent of its analysis of materiality." *Therasense,* 649 F.3d at 1290. To show specific intent to deceive, it is no longer sufficient for an accuser to prove that the applicant "knew of a reference, should have known of its materiality, and decided not to submit it to the PTO[.]" *Id.* "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* This Court previously found questions of fact on each prong of the *Therasense* inequitable conduct inquiry. Feit's renewed filings do not resolve those questions.

It is undisputed that the '140 patent is entitled to the effective filing date of August 14, 1980, for purposes of 35 U.S.C. §120. However, Feit seems to conflate reciting the ancestry of an invention in a patent application and asserting an effective filing date for a section 120 priority claim to avoid prior art. Feit has not presented any evidence that Nilssen sought the benefit of a filing date earlier than August 14, 1980, *i.e.* March 20, 1978, for the patent-in-suit. It is the assertion of a false effective filing date that is the source of Feit's inequitable conduct argument. The burden is on the patent owner to prove entitlement to claim priority to an earlier filing date. *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299, 1305-06 (Fed. Cir. 2008). Until an earlier date is proved the date of invention is presumed to be the filing date of the application. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986); *see also In re NTP,* 654 F.3d 1268, 1276 (Fed. Cir. 2011) ("for a patent's claims to be entitled to an earlier priority date, the patentee must demonstrate that the claims meet the requirements of 35 U.S.C. § 120."). Feit has not provided any authority to show that recitation of an earlier date in the patent ancestry is an assertion of it as an effective filing date. Thus, Feit simply has not presented sufficient evidence that Nilssen asserted the March 20, 1978, date as the effective filing date for the '140 patent.

Feit has likewise not shown by clear and convincing evidence that no genuine issue of material fact exists as to the alleged falsity in the patent ancestry that is recited in the '140 patent (the

6

'887 application). Feit argues that Nilssen's recitation of the '140 patent's ancestry was false because the '426 application was not a continuation-in-part of the '159 application and the '107 application was not a continuation-in-part of the '741 application because the later applications do not cross-reference the earlier applications. However, the cross-referencing requirement on which Feit relies stems from more recent amendments and interpretation of the requirements of section 120 than were in effect when Nilssen filed these applications. In the definitions of continuation and continuation in part that were operative when Nilssen filed the '887 application that became the '140 patent there is no requirement of cross-reference.

> A continuation is a second application for the same invention claimed in a prior application and filed before the original becomes abandoned. Except as provided in 37 C.F.R. 1.45, the applicant in the continuing application must be the same as in the prior application. The disclosure presented in the continuation must be the same as that of the original application, i.e., the continuation should not include anything which would constitute new matter if inserted in the original application.

M.P.E.P., Fourth Edition, §201.07 (July 1980). "A continuation-in-part is an application filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application *and adding matter not disclosed* in the said earlier case. M.P.E.P., Fourth Edition, §201.08 (emphasis in original). By definition, continuation-in-part application is not required to meet the requirements of section 120. Instead, M.P.E.P §201.08 provides that "an alleged continuation-in-part application should be permitted to claim the benefit of the filing date of an earlier application *if* the alleged continuation-in-part application complies with the… formal requirements of 35 U.S.C. § 120." *Id.* (Emphasis added).

In 1992 when Nilssen filed the '887 application that became the '140 patent, section 120 did not expressly require a cross-reference. To claim the benefit of an earlier priority date, that section required:

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor

7

or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. §120 (West 1984). It was not until 2010 that the Federal Circuit clarified the requirements of section 120 in *Encyclopaedia Britannica v. Alpine Electronics of America, Inc.*, 609 F.3d 1345, 1346 (Fed. Cir. 2010), that section 120 required each application to contain a specific reference to the original application. *See Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014) (referring to *Encyclopaedia Britannica,* "We recently clarified that the "specific reference" requirement mandates "each [intermediate] application in the chain of priority to refer to the prior applications."). The current version of section 120 reflects this clarification, stating in pertinent part: "No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section." 35 U.S.C. §120 (West 2015). It is reasonable that Nilssen may not have understood this requirement in 1992 when he filed the '887 application, which may account for discrepancies in the recitation of the patent ancestry. However, Nilssen is deceased and, thus, cannot be called to testify as to this patent and this issue. Accordingly, this Court again finds that Feit has not shown that the declaration in the '140 patent is "unmistakably false." This Court finds an issue of fact remains as to the falsity of the declaration and, therefore, the materiality prong of the inequitable conduct analysis is not satisfied as a matter of law.

Feit has also failed to demonstrate that Nilssen acted with the requisite intent to deceive. Even assuming that there is a misstatement in the recitation of the patent ancestry, Feit has not shown that Nilssen's deceptive intent is the single most reasonable inference able to be drawn from

8

evidence. Feit relies on two letters that Nilssen wrote to Advance, a company with which he had licensing agreements. However, neither letter references the patent-in-suit here. The licensing agreement covered: "All of Nilssen's currently pending patent applications relating to Omega Ballasts, including future continuations and divisions thereof…". Dkt. 89 at ¶49. The '887 patent was not pending when the agreement was entered, but the '887 patent does claim ancestry to the '023 application. Because the Advance licenses partially stemmed from the '023 application, the '887 application may be a part of that agreement. However, there is contradictory evidence in the record suggesting that Nilssen intentionally misrepresented the patent ancestry of the '140 patent in the '887 application to maintain the licensing agreement with Advance. Nilssen's March 6, 1991, letter references that he "may not be able to attain effective patent coverage on the Omega Ballast" and acknowledges the possibility that Advance may cancel its license. However, the terms of the agreement itself limited the ability of Advance to terminate the agreement to a scenario in which *all* of the covered patents were found invalid or unenforceable *and all remaining* applications have been abandoned. This is not the kind of "unmistakeably false" affidavit that is necessary to establish inequitable conduct under *Therasense*.

Moreover, it appears in the '887 application's "Description of Prior Art" that Nilssen identified the '107 application as the "original-in-part progenitor," filed on August 14, 1980, of the invention described in the '887 application. Dkt. 7903 at FEIT_012774. "'Progenitor applications' are applications unrelated to any previously filed U.S. patent application." Michael Carley, Deepak Hedge, & Alan Marco, *What is the Probability of Receiving a U.S. Patent?*, 17 Yale J. L. & Tech 203 (2015). Thus, it seems that Nilssen may have disclaimed any filing date earlier than August 14, 1980, on the face of the '887 application. Accordingly, there is insufficient evidence from which to conclude as the only reasonable inference that Nilssen intended to deceive the U.S. Patent Office by claiming an earlier effective filing date to which the '140 patent was not entitled.

9

**Conclusion**

Based on the foregoing, this Court again finds that Feit fails to meet its burden to show that Nilssen made a materially false misrepresentation to the U.S. Patent Office with the intent to deceive. Feit's motion for summary judgment is denied.

IT IS SO ORDERED.

Date: September 22, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge