UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEIT ELECTRIC COMPANY, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 13-cv-9339 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CFL TECHNOLGOGIES, LLC, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 31, 2013, plaintiff Feit Electric Company, Inc. ("Feit") filed this declaratory action against defendant CFL Technologies, LLC's ("CFLT") predecessor alleging that U.S. Patent Nos. 6,172,464 ("the '464 Patent") and 5,757,140 ("the '140 Patent") are unenforceable. Before the Court are the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a) regarding the unenforceability of the patents-in-suit based on the defense of inequitable conduct. For the following reasons, the Court grants CFLT's summary judgment motion in its entirety and denies Feit's summary judgment motion.

**Factual Background**

The patents-in-suit disclose and claim compact fluorescent lamp technology. The named inventor is Ole K. Nilssen, who is now deceased. In 1983, Nilssen began drafting and prosecuting his own patent applications pro se. Over the years, at least 240 U.S. Patents were issued in his name. These patents relate to electronic lighting products, including electronic ballasts and track lightning, as well as compact fluorescent lamp technology.

In 1998, Nilssen established the Geo Foundation as a not-for-profit charitable organization in the Cayman Islands. After Nilssen established the Geo Foundation, it became the exclusive licensee of Nilssen's patents. Earlier, Nilssen licensed some of his patents directly to Philips

Electronics North America Corporation via a Compact Fluorescent Lamp Agreement ("CFLA") effective in December 1995 and a Patent License Agreement ("PLA") effective in January 1996. In 1991, Nilssen licensed certain patents to Advance Transformer Company related to Omega ballasts ("Omega License").

The '140 and '464 Patents have expired.

**Procedural Background**

On September 30, 2015, the Court granted Feit's motion for partial summary judgment concluding that the '464 Patent was unenforceable based on the preclusive effect of prior determinations of Nilssen's inequitable conduct. *See Nilssen v. Osram Sylvania, Inc.*, 440 F.Supp.2d 884, 889 (N.D. Ill. 2006) (Darrah, J.) ("*Osram I*"), *aff'd* 504 F.3d 1223 (Fed. Cir. 2007); *Nilssen v. Wal-Mart Stores, Inc.*, No. 04 C 5363, 2008 WL 11350028 (N.D. Ill. Mar. 17, 2008) (Gettleman, J.), *aff'd Nilssen v. Wal-Mart Stores, Inc.*, 374 Fed.Appx. 972 (Fed. Cir. 2010) (unpublished). In the September 2015 ruling, the Court also denied Feit's motion for summary judgment in which Feit argued that Nilssen's conduct amounted to inequitable conduct in relation to a "false priority date" of the '140 Patent. On November 23, 2015, the Court denied defendant's first motion to reconsider the September 2015 summary judgment ruling concerning the '464 Patent.

In June 2018, the prior owner of the patents-in-suit, defendant Beacon Point Capital, LLC, assigned the patents to CFLT. Thereafter, CFLT filed a motion for reconsideration of the Court's September 2015 partial summary judgment and November 2015 reconsideration rulings in relation to the '464 Patent. In August 2019, the Court granted CFLT's motion based on the change in law exception to issue preclusion. *See Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620 (Fed. Cir. 2015). The change in law concerned the Federal Circuit's decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc), in which the Federal Circuit significantly changed the standard for proving inequitable conduct. In the interim, on September 22, 2017, the

2

Court denied Feit's motion for summary judgment concluding that Feit had failed to establish its inequitable conduct defense in relation to the '140 Patent under *Therasense*.

On January 13, 2021, the Court granted in part and denied in part Feit's motion for clarification concluding that the best course of action was to decide the inequitable conduct issues under the *Therasense* standard via a bench trial. To narrow the issues for the bench trial, the parties filed cross-motions for summary judgment as to the enforceability of the patents-in-suit based on Nilssen's alleged inequitable conduct.

The Court presumes familiarity with its earlier rulings in this lawsuit, along with Judge Darrah's 2006 inequitable conduct ruling in *Osram I*, which did not discuss the '464 Patent or the '140 Patent, and Judge Gettleman's ruling in *Wal-Mart Stores,* in which he concluded, pre-*Therasense*, that the '464 was unenforceable on grounds of false claims in relation to small entity status and nondisclosure of litigation against Motorola.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

To establish inequitable conduct under the *Therasense* standard, Feit must prove by clear and convincing evidence that Nilssen: (1) "misrepresented or omitted material information" and (2) did so "with the specific intent to deceive" the Patent and Trademark Office ("PTO"). *Therasense*, 649 F.3d at 1287. Under the first prong of the *Therasense* test, information is material "if the PTO would not have allowed a claim had it been aware" of the misrepresentations or omitted information. *Id.* at 1291. Under the second *Therasense* prong, "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1324 (Fed. Cir. 2020) (quoting *Therasense*, 649 F.3d at 1290). "[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Therasense,* 649 F.3d at 1290.

*Small Entity Status and Fee Payments*

Both parties move for summary judgment as to Nilssen's alleged inequitable conduct in relation to his assertion of small entity status. The Court starts with Feit's reliance on Judge Darrah's 2006 findings of Nilssen's inequitable conduct in prosecuting other patents to support his arguments in his summary judgment motion. Feit generally argues that a finding of inequitable conduct can spread from a single patent to render other related patents in the same family unenforceable. *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808-12 (Fed. Cir. 1990). Some courts call this concept the "'infectious unenforceability doctrine' where inequitable conduct associated with one patent may render a related patent unenforceable—so long as the inequitable conduct at issue bears 'an immediate and necessary relation' to the enforcement of the related patent." *Guardant Health, Inc. v. Foundation Med., Inc.*, Nos. 17 CV 1616, 17 CV 1623, 2020 WL 2477522, at *5 (D. Del. Jan. 7, 2020) (citation omitted). "An 'immediate and necessary relation' requires that 'the inequitable conduct that occurred earlier in the chain [of issued patents] 'must be

4

related to the targeted claims of the ultimately-issued patent or patents sought to be enforced.'" *Id.* (citations omitted); *see also Osram I*, 440 F.Supp.2d at 900. In short, there must be more than "mere relatedness of subject matter." *Consolidated Aluminum Corp.*, 910 F.2d at 810.

Feit offers little in the way of explanation or argument as to how the patents-in-suit and the patents in front of Judge Darrah meet the immediate and necessary relation standard in the context of its small entity status arguments. Moreover, based on the Court's earlier rulings and the Federal Circuit's en banc decision in *Therasense*, Judge Darrah's and Judge Gettleman's rulings no longer have a preclusive effect. As the Court explained in its September 2015 ruling denying Feit's summary judgment motion in relation to inequitable conduct allegedly involved in prosecuting the '140 Patent, because "the *Osram I* case was decided under the previous test for inequitable conduct it is insufficient by itself to serve as a basis for finding summary judgment in favor of Feit."

Turning to the parties' small entity status arguments, by way of background, patentees are required to pay initial issue fees and subsequent maintenance fees for the term of the patent to avoid any lapses. 35 U.S.C. § 41; *Osram I*, 440 F.Supp.2d at 902. "Certain entities, including 'independent inventors,' are entitled to pay reduced patent maintenance fees." *Nilssen v. Osram Sylvania, Inc.,* 504 F.3d 1223, 1230 (7th Cir. 2007) ("*Osram II*"). In general, an independent inventor cannot maintain small entity status if he assigned, granted, conveyed, or licensed his patent to a large company. *Id.* at 1230.

Feit argues Nilssen intentionally deceived the PTO by filing false declarations attesting to small entity status when prosecuting the patents-in-suit and via his subsequent payments of patent fees at the small entity rate. More specifically, Feit contends that because Nilssen licensed some of his patents to large companies such as Philips Electronics and Advance Transformer Company, he could not claim small entity status. At issue are the verified statements Nilssen submitted on March 16, 1992 for the '140 Patent application and on February 24, 1995 for the '464 Patent application in

5

which Nilssen affirmatively claimed small entity status. Because the CFLA and PLA licenses to Philips Electronics post-date these verified statements, the declarations made in March 1992 and February 1995 cannot be the basis for Feit's inequitable conduct defense.

Feit also contends that Nilssen did not qualify as an independent inventor because he licensed some of his patents in the 1991 Omega License to Advance Transformer Company, although the '140 and '464 Patents were not the subject of that license. Feit nonetheless asserts that the '140 Patent was a continuation of the '023 application that was licensed to Advanced Transformer as part of the 1991 agreement. This argument is misplaced because the '023 application was abandoned on March 14, 1992 before the March 16, 1992 filing date for the '140 Patent application; therefore, the '140 Patent could not be a continuation of the '023 application. MPEP § 201.07 (a "continuation" is "a second application for the same invention claimed in a prior application and filed before the original becomes abandoned or patented."). Similarly, Feit's argument that the '464 Patent was a continuation in part of the '569 application is not relevant because the '569 application was not listed in the Omega License nor was the '155 application listed as Feit maintains. (R. 79-14, Omega License, Ex. X.)

Next, Feit bases its inequitable conduct defense on the small entity fee payments for the '464 Patent made on October 3, 2000 and July 2, 2004 and the small entity fee payment made on November 12, 2001 for the '140 Patent. In 2006, Nilssen filed small entity correction forms for the '464 Patent paying $1,240.00 to rectify the underpayments made in October 2000 and July 2004. Likewise, Nilssen submitted a small entity correction form for the '140 Patent making a deficiency payment of $460.00. The PTO accepted Nilssen's deficiency payments.

Nilssen made the three small entity payments several years after he submitted the declarations of small entity status related to the '140 and '464 Patents and there is no evidence in the record that these payments were accompanied by affidavits or sworn declarations—false or

6

otherwise. As such, the Court's inquiry is whether these post-allowance payments meet the but-for standard of materiality under *Therasense*. As *Therasense* directs, information is material "if the PTO would not have allowed a claim had it been aware" of the omissions. *Id.* at 1291. Under the present circumstances, the underpayments occurred after the PTO allowed the patents-in-suit; therefore, they were "unrelated to the substantive criteria of patentability." *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013). This conundrum has left one district court to conclude that under the "standard of but-for materiality adopted in *Therasense*, it is difficult to see why the failure to pay the proper maintenance fee, long after the issuance of the patent, was material to the PTO's issuance of the patent." *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 16 CV 0588, 2017 WL 3394480, at *3 (E.D. Tex. Aug. 8, 2017).

Feit argues that under these circumstances, the Court should rely upon the PTO's rules and regulations to determine materiality despite the *Therasense* court's unequivocal holding that "this court is not bound by the definition of materiality in the PTO rules." *Id.* at 1294. The *Therasense* court explained why it was not following the PTO's rules on materiality, including that the materiality standard for inequitable conduct under the PTO's rules has led to uncertainty and inconsistency in the development of the inequitable conduct doctrine. *Id.* Meanwhile, the Court finds *Therasense's* general guidance as to materiality a better starting point, namely, as "an equitable doctrine, inequitable conduct hinges on basic fairness," and the "remedy imposed by a court of equity should be commensurate with the violation." *Id.* at 1292. Citing *Therasense*, the Federal Circuit has concluded that "an equitable defense will not be recognized if the offending party did not gain a benefit from its wrongdoing." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1368 (Fed. Cir. 2018).

Here, Nilssen underpaid the requisite fees by $1,700 and cured the underpayments by making payments in 2006 that the PTO accepted. In the end, Nilssen did not benefit from the

underpayment of $1,700 for purposes of inequitable conduct. Under these circumstances, the Court would be hard-pressed to conclude that the underpayment of $1,700 was material under *Therasense*, along with basic notions of equity and fairness. Because CFLT has established that Nilssen's deficient payments were not material under *Therasense*, the Court need not address whether Nilssen had the specific intent to deceive under the second *Therasense* prong. The Court therefore grants this aspect of CFLT's summary judgment motion and denies Feit's summary judgment motion.

*Motorola Litigation*

In its motion for summary judgment, CFLT also argues that Nilssen's failure to disclose the Motorola litigation does not support a finding of inequitable conduct under *Therasense*. In 1993 and 1996, Nilssen sued Motorola for patent infringement relating to fluorescent lighting products. Nilssen prosecuted the '140 and '464 Patents while the Motorola litigation was pending, yet did not inform the PTO about this litigation. The Court presumes familiarity with the patents-at-issue in the Motorola litigation as discussed by Judge Darrah in his 2006 decision, *see Osram I*, 440 F.Supp.2d at 895-96, and in his February 8, 2002 decision in *Nilssen v. Motorola, Inc.*, Nos. 96 C 5571, 98 C 2229, 2002 WL 206007 (N.D. Ill. Feb. 8, 2002).

Before *Therasense*, the Federal Circuit held that pending or prior "litigation itself is material information that an examiner needs to have." *Osram II*, 504 F.3d at 1234. After *Therasense,* failure to disclose litigation, without more, does not meet the materiality standard. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290-92 (Fed. Cir. 2012); *CFL Tech. LLC v. Osram Sylvania, Inc.,* No. 18-cv-1445, 2019 WL 2995815, at *6 (D. Del. July 9, 2019). Instead, in the context of the nondisclosure of information, Feit must show by clear and convincing evidence that Nilssen knew of the litigation, knew it was material, and made a deliberate decision to withhold the information from the PTO. *See Therasense,* 649 F.3d at 1290.

There is no doubt Nilssen knew of his ongoing litigation against Motorola, thus the Court

8

examines whether Nilsson knew the Motorola litigation was material. Feit has presented evidence concerning the materiality of this nondisclosure, including that three of the Motorola patents, namely, the '345 Patent, the '690 Patent, and the '067 Patent, may have covered similar if not the same subject matter in the same field of invention as to the '140 and '464 Patents. Feit also points to evidence that portions of the specification of the Motorola patents were the same or similar to those found in the '140 and the '464 Patents. Feit further states that information identified during the Motorola litigation and provided to Nilssen included potentially invalidating prior art—although Feit does not explain how this potentially invalidating prior art would invalidate the patents-in-suit. Moreover, Feit does not present evidence or argument that Nilssen knew of the materiality of this information as required under *Therasense*, and fails to explain how the failure to disclose this information would have blocked claim allowance for either the '140 or '464 Patents, except for the potentially invalidating prior art, if it were indeed invalidating.

Equally important, Feit has not presented evidence that Nilssen had the specific intent to deceive the PTO by failing to disclose the Motorola litigation. Instead, Feit relies on Judge Darrah's finding that "Nilssen intended to mislead the PTO by failing to disclose the ongoing Motorola litigation and did not do so in good faith." *Osram I*, 440 F.Supp.2d at 910. It goes without saying that Judge Darrah did not apply the standard under *Therasense*, namely, "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence," and oddly, Feit does not discuss this standard in relation to the Motorola litigation. Without more, Feit has failed to make a sufficient showing as to *Therasense's* materiality and intent requirements of which it bears the burden of proof at trial. *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019). The Court grants this aspect of CFLT's summary judgment motion.

*Patent Ancestry*

Next, Feit argues that the '140 Patent is unenforceable because Nilssen falsely claimed a

9

priority date of March 20, 1978 in the recitation of patent ancestry. In response, CFLT asserts that Feit has failed to present evidence that Nilssen claimed priority to March 20, 1978 as an effective filing date under 35 U.S.C. § 120, especially in light of the undisputed evidence that the that the '140 Patent explicitly refers to an August 14, 1980 application as the "progenitor" for the information being claimed. The Court discussed Feit's patent ancestry argument in detail when denying Feit's earlier summary judgment motion on this topic in its September 22, 2017 order and the Court presumes familiarity with that ruling. The Court also presumes familiarity of the recitation of patent ancestry in the '140 Patent, which the PTO verified as accurate.

The recitation of patent ancestry for the '140 Patent identifies a related application having a filing date of March 20, 1978, yet Feit has failed to present evidence that Nilssen sought the benefit of a filing date earlier than August 14, 1980. In addition, Feit has not provided legal authority that the recitation of an earlier date in the patent ancestry is an assertion of an effective filing date. Under the circumstances, to support its inequitable conduct defense, Feit must present some evidence raising a triable issue of fact that Nilssen made an assertion of a false effective date in the first instance.

Assuming Nilssen did mispresent the patent ancestry of the '140 Patent, Feit merely relies on Judge Darrah's conclusions in *Osram I* without mentioning or applying the deceptive intent standard set forth in *Therasense*. In doing so, Feit ignores the Court's September 2017, applying *Therasense*, that "Feit has not shown that Nilssen's deceptive intent is the single most reasonable inference able to be drawn from evidence." In that ruling, the Court explained why Feit's evidence and argument fell short of the *Therasense* standard, yet in response to the present motion, Feit has failed to cure these deficiencies. Eight years into this litigation, it "is not the court's responsibility to research the law and construct the parties' arguments for them." *Economy Folding Box Corp. v. Anchor Frozen Foods*

10

*Corp.*, 515 F.3d 718, 721 (7th Cir. 2008). The Court therefore grants CFLT's summary judgment motion as to Feit's patent ancestry argument.

*Prior Art*

Last, in its Local Patent Rule 2.3 contentions, Feit maintains that Nilssen failed to disclose U.S. Patent Nos. 4,045,711 ("Pitel") and 4,053,813 ("Kornrumpf") and that these patents claim the same circuit technology as in the '140 patent. Feit thus alleges that these patents constitute invalidating prior art. In response, CFLT argues Feit has failed to identify which claims and limitations in those claims in the withheld references are relevant to the '140 Patent and how the PTO's knowledge of this information would have led to it blocking allowance of the '140 Patent. Feit points to the claim charts set forth in its LPR 2.3 contentions arguing that they show that Pitel and Kornrumpf are but-for material and invalidating. It is well-settled that "it is not the responsibility of the district court to dig through the record to find evidentiary support for a party's summary judgment arguments." *MAO-MSO Recovery II, LLC v. State Farm*, 994 F.3d 869, 876 (7th Cir. 2021). Moreover, Feit does not address CFLT's argument concerning the specific intent requirement under *Therasense*, but instead relies on pre-*Therasense* authority.

Feit's bare-boned arguments as to materiality, and lack of arguments as to the *Therasense* intent requirement do little to defeat summary judgment. Rule 56(a) "mandates summary judgment" against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In other words, at summary judgment, the non-moving party must do more than make cursory arguments defending its position—it must explain how the relevant evidence supports its legal position. Feit has thus failed to raise a triable issue of fact as to Pitel and Kornrumpf. The Court grants CFLT's summary judgment motion in this respect.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion for summary judgment in its entirety [227] and denies plaintiff's motion for summary judgment [237].

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 6/17/2021