UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEIT ELECTRIC COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CFL TECHNOLOGIES LLC, <br><br> Defendant. | No. 13 CV 9339 <br><br> District Judge Maldonado <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendant CFL Technologies LLC's (CFLT) motion to compel and request for sanctions. [337].[1] The motion is fully briefed. [348, 349]. For the following reasons, the motion to compel and request for sanctions is denied.

**Background**

This is a patent-infringement case involving patents for compact fluorescent lightbulbs (CFLs). In December 2013, plaintiff Feit Electric Company, Inc. filed this suit seeking a declaratory judgment that two patents held by Beacon Point Capital, LLC–the '140 patent and the '464 patent–were unenforceable on various grounds. [1]. Feit also sought to bar Beacon from asserting that "any CFL product made, imported, used, offered for sale, or sold by Feit" infringed these patents. [*Id.*] 18. Beacon filed a counterclaim in June 2014, alleging that Feit's sale of CFLs infringed the patents-in-suit and seeking to enjoin Feit from selling a specifically identified CFL model–referred to as the "Exemplary Accused Model"–"as well as all other models of CFLs which directly infringe the patents-in-suit[.]" [15] 36, 38.

In May 2018, following multiple rounds of dispositive motion practice,[2] Beacon served its Initial Infringement Contentions (the Initial Contentions) pursuant to Local Patent Rule 2.2. [337-2]. The Initial Contentions explained how the Exemplary

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.
[2] One key ruling from this stage of the litigation was the District Judge's determination, in September 2015, that Beacon was collaterally estopped from enforcing the '464 patent, which had been found unenforceable in prior litigation based on the patent holder's inequitable conduct. *See* [65]. Accordingly, when the parties began discovery in the spring of 2018, discovery was limited to the '140 patent.

Accused Model and 32 additional Feit CFLs (collectively, the Initial Accused Products) allegedly infringed the '140 patent. [*Id.*] 4-16. Because Feit had not "produce[d] any CFL samples or related technical information" to Beacon before Beacon served the Initial Contentions, the Initial Contentions also provided "a general description of the collective characteristics of [Feit's] CFLs believed to constitute infringement" of the '140 patent. [*Id.*] 16. According to Beacon, any CFL sold or distributed by Feit would infringe the '140 patent if that CFL shared four characteristics: (1) a rectifier, (2) a voltage-fed half-bridge inverter, (3) a series-connected inductor-capacitor circuit, and (4) the capacitor circuit connected in parallel with the lamp. [*Id.*] 17.

### A. Origins of the Parties' Discovery Disputes

Shortly after Beacon served its Initial Contentions, Feit served its objections and responses to Beacon's written discovery requests. [337-3, 337-4]. These responses kicked off a protracted discovery dispute that remains unresolved nearly five years later.

Beacon had requested samples of and technical documents relating to all CFL models that Feit had sold since at least 1998. *E.g.*, [337-3] 6-7. Feit responded that the only discovery it would produce would be discovery related to the 33 Initial Accused Products; Feit refused to produce any discovery relating to CFL models that Beacon had not specifically accused of infringement in the Initial Contentions. [*Id.*] 7. Feit also raised two other objections that are relevant to the pending motion to compel. First, Feit objected to Beacon's request for schematics and other technical documents relating to the Initial Accused Products on the ground that Feit "does not itself design, develop, engineer, [or] manufacture CFLs[.]" [*Id.*] 4. Because Feit merely "purchases CFLs as finished goods from a variety of contract manufacturers," Feit contended that it did not have custody or control of these documents. [*Id.*]. Second, Feit objected to producing any confidential information "prior to the entry of an appropriate protective order[.]" [*Id.*] 5.

On June 1, 2018, Beacon served a discovery letter on Feit, declaring that Feit's responses were inadequate. [337-5]. Beacon first argued that "Feit's attempt to limit discovery to the Initial Accused Products identified in [Beacon's] LPR 2.2 Initial Infringement Contentions is [ ] improper." [*Id.*] 3. Beacon insisted that courts "'permit discovery on yet-unaccused products where the requesting party can articulate, in a focused, particularized manner, the characteristics or components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit[.]'" [*Id.*] 4 (quoting *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012)). According to Beacon, its Initial Contentions demonstrated a "pattern of infringement" by identifying the four characteristics that, if present in a Feit-distributed bulb, would constitute infringement of the '140 patent. For that reason, Beacon maintained that it was entitled to discovery "on all Feit self-ballasted CFLs

2

to ascertain which among those products match the particular description specified" in Beacon's Initial Contentions. [*Id.*]. Second, Beacon disputed Feit's position that it had no technical documents relating to the CFLs in its possession, custody, or control. [*Id.*] 5. According to Beacon, because Feit had "the practical ability to obtain the documents" by requesting them from its vendors or suppliers, Feit had "control" over those documents and was required to produce them. [*Id.*]. At the very least, Beacon maintained, "if Feit can procure documents by means of making a request of such documents from third parties, Feit has the obligation to make that effort." [*Id.*] 5. Third, Beacon insisted that Feit "cannot properly delay discovery on the purported grounds that no protective order has been entered." [*Id.*]. As Beacon explained, the Northern District of Illinois's Local Patent Rules state that a default protective order becomes operative as a matter of law "as of the date for each party's Initial Disclosures," and that protective order would shield any confidential information contained in Feit's discovery responses. [*Id.*]; *see also* LPR 1.4 & LPR App'x B.[3]

Feit responded on June 11, 2018. [337-7]. Regarding the proposed discovery into CFLs that had not been accused of infringement, Feit maintained that it was Beacon's burden to identify the allegedly infringing products, and that Feit would not "guess which of its other products could also be accused by Beacon for infringement of the '140 patent." [*Id.*] 3. Feit therefore stood on its refusal to produce any discovery respecting CFLs other than the Initial Accused Products. [*Id.*]. Regarding Beacon's request for CFL samples and schematics, Feit insisted that it had no right to obtain these materials because it "transacts with the contract manufacturers by purchase order and there are no overarching manufacturing or supply agreements." [*Id.*]. Feit added that, because Beacon "waited more than four years to disclose the additional accused products allegedly at issue," "most" of those products "are no longer available." [*Id.*]. Feit suggested that, if Beacon "seeks to take discovery of the manufacturers, it is free to do so." [*Id.*]. Feit did not, however, identify any of its vendors or manufacturers. As for the protective order, Feit claimed to be "perplexed" by Beacon's position, given that the default protective order in the Local Patent Rules was "simply a template" that supposedly was "not binding on the parties until it has been entered by the Court." [*Id.*] 4.

In a reply dated June 25, 2018, Beacon expressed its "urgent[ ] concern" with Feit's position that "discovery is limited to the CFLs identified in Beacon's initial infringement contentions." [337-9] 2. While Beacon's counsel "perceive[d]" that the parties "likely are at an impasse on the issue," counsel requested a further meet-and-confer with Feit to discuss (1) the permissibility of discovery into the unaccused products, (2) Feit's refusal to ask its vendors to provide technical documents and bulb samples, and (3) Feit's refusal to produce confidential materials without a court-approved protective order. [*Id.*]. The record before the Court does not appear to contain any response to this letter by Feit, and CFLT maintains that Feit "ignored"

---

[3] Beacon also served a discovery letter on June 7, 2018 that raised additional concerns with Feit's responses and sought a Local Rule 37.2 conference the following week. [337-6] 4.

this request. *See* [337-15] 2 (May 10, 2022 email from CFLT's counsel to Feit's counsel).

### B.   Stay of Discovery: June 2018 through July 2021

On June 21, 2018, Beacon moved to substitute CFLT–the entity to which Beacon had assigned the patents-in-suit–as the defendant/counterclaim-plaintiff in the case. The District Judge stayed discovery pending a ruling on the motion [141], but the stay remained in place after the motion was granted, and CFLT appeared in the case, in December 2018. [152].

Immediately after entering the case, CFLT moved for reconsideration of the District Judge's earlier ruling that the '464 patent was unenforceable. [157]. In August 2019, and based on intervening authority from the United States Court of Appeals for the Federal Circuit, the District Judge vacated the unenforceability ruling and reinstated the '464 patent into the litigation. [171]. The stay of discovery continued through the fall of 2020 while the parties discussed settlement, Feit sought (and was denied) permission to take an interlocutory appeal to the Federal Circuit, and the COVID-19 pandemic arrived. *See* [190, 192, 194, 197].

In October 2020, the District Judge referred this case to the undersigned for discovery supervision and with authority to set and adjust discovery deadlines. [206, 214]. The next month, the undersigned ordered that the stay of discovery continue through December 14, 2020 and instructed the parties to submit a joint status report by December 21, 2020. [215]. The December 2020 status report advised the Court that, "prior to the stay of discovery, it became evident that the parties may have discovery disputes," but that the parties would need to complete the meet-and-confer process before presenting such disputes to the Court. [219] 3. Based on the proposed discovery schedules contained in the status report, the undersigned ordered that the stay of discovery would be lifted on February 19, 2021, and that initial disclosures respecting the '464 patent would be due on March 5, 2021. [222]. Shortly after the entry of that order, however, the District Judge vacated the discovery schedule in anticipation of a bench trial concerning inequitable conduct and the '464 patent. [224, 226]. On July 1, 2021–after another round of summary-judgment briefing–the District Judge lifted the stay of discovery and, at the parties' request, ordered that all fact discovery be completed by October 20, 2022. [265].

### C.   Discovery Resumes: July 2021

The undersigned began reviewing the parties' periodic status reports on the progress of discovery in September 2021. The reports filed between September 2021 and August 2022 stated, in general terms, that discovery disputes were anticipated but had not ripened to the point that judicial intervention was warranted. *E.g.*, [280] 3-4; [289] 3 (stating that it was "evident" before entry of July 1, 2021 scheduling order

4

that "parties may have discovery disputes"); [292] 2. Beginning in February 2022, the parties consistently reported that they "anticipate completion of fact discovery by the current deadline of October 20, 2022." [297] 2; *see also* [303] 2 (same representation in March 14, 2022 joint status report). These representations continued even after the filing of a status report on April 19, 2022, in which CFLT stated that Feit's responses to Beacon's 2018 discovery responses were still outstanding. [309] 16; *see* [321] 2 (statement in June 21, 2022 joint status report that discovery was expected to be completed by October 20, 2022); [326] 2 (same statement in August 4, 2022 joint status report).

On April 25, 2022, and in apparent response to the parties' April 19 status report, the District Judge ordered Feit to "turn over product samples for testing or product schematics for analysis for the allegedly infringing products." [311] 3. On May 13, 2022, Feit filed an unsolicited "Notice of Compliance and Discovery Status Update," which explained that Feit had "conducted a reasonable search and is making available samples of the accused products within its possession, custody, or control, for CFLT's inspection." [313] 1. Several days later, CFLT filed an unsolicited response to Feit's submission. [314]. CFLT contended that Feit had not complied with the April 25 order because Feit had only offered to make six samples of the accused products available for inspection, even though "[a]t least 1,193 different Feit CFL models constitute 'allegedly infringing products.'" [*Id.*] 1.

### 1. CFLT's Pursuit of the 2018 Discovery Disputes

On April 14, 2022–nine-and-a-half months after the stay of discovery had been lifted–CFLT served a discovery letter on Feit seeking to resolve the discovery disputes that had been identified in the June 2018 correspondence between Beacon and Feit. *See* [337-10]. CFLT contended that, notwithstanding Feit's claim in June 2018 that it was "undertaking significant efforts to comply with a reasonable scope of discovery," Feit had not produced a single document–"or even a firm promise to produce any documents"–in response to the 2018 discovery requests. [*Id.*] 3. Just as Beacon had done in 2018, CFLT insisted that Feit (1) "provide discovery for all of its self-ballasted CFL models," rather than limiting discovery to the Initial Accused Products; (2) obtain from its vendors schematics, technical documents, and related information and produce it to CFLT; and (3) produce confidential information in light of the default protective order that had been in effect, by operation of the Court's Local Patent Rules, since Feit had made its initial disclosures. *See* [*id.*] 2, 14, 23. This letter also identified, by model number, a total of 1,193 Feit products that allegedly infringed the patents-in-suit. *See* [337-11] 2-28.

Having received no response from Feit, CFLT served a follow-up letter on April 29, 2022 and sought a Local Rule 37.2 conference. [337-12] 2. Referring to the District Judge's order of April 25, 2022, CFLT wrote that, "for the sake of clarity, 'the allegedly

5

infringing products' include all 1,193 products listed in Exhibit 17" to CFLT's letter of April 14. [*Id.*].

Feit responded to CFLT's letters on May 4, 2022, arguing that CFLT had timely accused only 33 Feit products of infringement and rejecting CFLT's interpretation of the District Judge's April 25 order as broadening the scope of discovery to encompass "all 1,193 products that CFLT identified *after* the parties' April 13th joint statement on discovery." [337-13] 4-5 (emphasis in original). Feit also disputed CFLT's contention that it was refusing to produce documents, reiterating that Feit was "not aware or in possession of any technical documentation as to the operations of the accused products" because Feit did not design or manufacture those products. [*Id.*] 4. Several days after sending this letter, Feit represented that it would move for a protective order "regarding the claims in [CFLT's] April 14, 2022 letter attempting to broaden your infringement claims from the 33 identified models in CFLT's infringement contentions to 'nearly 1,200 models' of Feit Electric's products." [337-14] 2. However, no such motion was filed.

On June 1, 2022, the parties conducted a Local Rule 37.2 meet-and-confer on the issues raised in CFLT's April 14 letter. [337-17] 2. The record is unclear as to the specifics of the parties' discussion at this conference, as there is no contemporaneous documentation of the conference from either side. According to a September 7, 2022 email from CFLT's counsel to Feit's counsel, Feit represented during the June 1 conference that:

> it was withholding no documents or information on the basis of any objection other than privilege and/or confidentiality. Feit indicated that the only potential barriers to the production of non-privileged documents and information were entry of a protective order and an ESI order.

[337-19] 3.

CFLT's September 7 email also took issue with Feit's proposed protective order, which CFLT criticized because it "actually calls for less protection than the default protective [order] in" the Local Patent Rules. [337-19] 3. CFLT also objected to a provision on Feit's proposal that "would require a party to potentially duplicate– at its own expense–huge quantities of physical documents having little to no relevance to any issue in this case." [*Id.*]. CFLT alleged that "Feit's purported need for a new protective order appears to be nothing more than pretext for avoiding its discovery obligations." [*Id.*]. In a response dated September 14, 2022, Feit stated that the June 1 discovery conference led to the parties' "joint[ ] agree[ment] to work together to enter a protective order and ESI protocol in this case." [337-19] 2. Feit then described its own efforts to propose multiple versions of a protective order for CFLT's review, as well as CFLT's alleged failure to timely respond to those proposals.

6

[*Id.*]. Feit also complained about CFLT's alleged "backtrack[ing]" as to the necessity for a modified protective order: "CFLT now backtracks and takes the position that no such order is necessary, even after having represented to the Court in multiple submissions that CFLT was ostensibly working in good faith with us to negotiate a protective order and ESI protocol." [*Id.*].

### 2. The September 19, 2022 Joint Status Report

In their joint status report of September 19, 2022, the parties flagged several unresolved discovery issues, including the dispute over the need for a modified protective order. [330] 2. For its part, CFLT also advised the Court that, as a predicate to deposing certain Feit fact witnesses, CFLT needed Feit's "production in response to CFLT's discovery requests dating back to 2018." [*Id.*]. CFLT also advised that "an extension of fact discovery is warranted, and plans to move for an extension if the parties cannot agree on one." [*Id.*] 3. Reviewing this report on September 20, 2022, the Court expressed its concern at "the sudden potential need for a discovery extension, given that the current deadline was set in July 2021, discovery has been ongoing for over a year, and the parties have been consistently indicating for the past several status reports that they anticipate meeting the current discovery deadline." [331] 1. The Court also advised that any extension motion or motion related to the protective-order issue should be filed promptly." [*Id.*].

### 3. CFLT's Motions to Compel and to Extend Fact Discovery

On October 7, 2022, CFLT filed the pending motion to compel and request for sanctions. [337]. The motion sought an order compelling Feit to (1) produce all non-privileged documents relating to "all non-dimmable Feit CFLs," (2) identify the third-party vendors from whom Feit obtained its CFLs, and (3) produce all confidential information under the default protective order that exists by operation of Local Patent Rule 1.4. [*Id.*] 12-15.

On October 12, CFLT moved to extend fact discovery pending the District Judge's claim construction ruling, which Feit opposed. [339]. In support, CFLT argued that Feit "has not provided a single document in response to CFLT's discovery requests, served over four years ago in 2018." [*Id.*] 1. CFLT also claimed that "Feit's fulfillment of its discovery obligations realistically cannot be achieved by the current fact discovery cut-off date of October 20, 2022[.]" [*Id.*] 10. On October 25, 2022, the undersigned denied the motion, finding that CFLT had not made a showing of good cause for its extension request:

> The fact discovery deadline has been in place since July 2021, and defendant has repeatedly represented, as recently as 08/04/2022, that it anticipated completion of fact discovery on schedule. See 297, 303, 309, 321, 326. Nine days prior to the fact discovery deadline of 10/20/2022,

7

defendant filed the instant motion. Defendant's motion is vague as to the need for the extension, citing that defendant may need to take third party discovery but provides no basis for why this discovery could not have been pursued sooner. The other rationales and arguments made in support of its motion demonstrate to this Court that defendant is in this predicament because it pursued and prioritized other aspects of the litigation. That was defendant's choice, to strategize as it chose, but defendant fails to meet the good cause standard. In light of the facts of this case and given the objection to an extension by plaintiff Feit Electric Company, Inc., the motion seeking a blanket extension until the Court's claim construction ruling is denied.

[343].

## Discussion

### I. Motion To Compel

Feit argues that CFLT's motion to compel is untimely because it was filed "less than two weeks before the close of fact discovery[.]" [348] 5. Contending that "[t]he filing of a discovery motion at the tail end of discovery is generally disfavored" [*id.*] 8, Feit maintains that CFLT failed to timely pursue the discovery at issue in the pending motion. [*Id.*] 5. Feit also relies on the undersigned's refusal to extend fact discovery in October 2022 [*id.*] 16, a ruling that was based in part on CFLT's failure to explain "why this discovery could not have been pursued sooner." [343]. CFLT responds that the motion is timely because it was "filed before the close of fact discovery." [349] 18 (internal quotation marks omitted). CFLT also contends that "the parties' impasse did not become fully apparent until September 2022, when Feit falsely claimed in a status report that it has not withheld production and otherwise refused to budge on its improper demands for cost-bearing provisions in its proposed protective and ESI orders." [*Id.*] 19. Because the motion was filed within three weeks of those developments, CFLT maintains that its motion is timely. [*Id.*].

### A. Legal Standard

"This [C]ourt has broad discretion in ruling on a motion to compel discovery, and that discretion extends to the determination of whether a motion to compel is timely." *Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 10891868, at *1 (N.D. Ill. Jul. 3, 2019) (internal citation omitted).

"The Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005). "[I]n this circuit motions to compel filed after the close of discovery are generally deemed untimely," *Africano*, 2019 WL

8

10891868, at *1, but "[g]reater uncertainty occurs where the motion is made very close to the discovery cut-off date," *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 332. As the court explained in the *Sulfuric Acid Antitrust Litigation* case:

> How is [the court's] discretion to be exercised? Is a motion to compel filed four days before the close of discovery too late? At least one court has said it is . . . What if the motion had been made six or perhaps twelve days before the close of discovery? Would the result have been different? Is a week the proper cut-off point, or perhaps two weeks? To pose the question is to demonstrate that there is no principled or mathematical way of determining in advance in every case when a motion to compel should be deemed untimely based upon an arbitrarily prescribed number . . . The answer then must necessarily be found in the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another.

*Id.* at 333.

In the absence of hard and fast rules governing the timeliness of a motion to compel filed before the close of discovery, some courts in this District have looked to three factors when "assessing delay of a moving party": (i) how long was the delay; (ii) was there an explanation for it; and (iii) what happened during the delay." *West v. Miller*, No. 05C4977, 2006 WL 2349988, at *5 (N.D. Ill. Aug. 11, 2006).

### B.  The Motion to Compel Is Untimely.

#### 1.  The Parties Have Been at An Impasse Since June 2018.

First, the parties have been at an impasse over the three discovery disputes at issue in CFLT's motion since June 2018.

In June 2018, Feit and CFLT's predecessor in this litigation, Beacon Capital, exchanged discovery letters on the identical discovery disputes that CFLT has raised in the pending motion to compel: (1) whether Feit could properly limit its discovery responses to the Initial Accused Products, despite Beacon's claim that it was entitled to discovery into all of Feit's self-ballasted CFLs; (2) whether Feit would produce samples, schematics, and/or other technical documents or request these materials from its vendors; and (3) whether Feit could properly withhold confidential information from its responsive production even though, under this Court's Local Patent Rules, a default protective order had been in effect since Feit made its initial disclosures. *See* [337-5] (Beacon's letter of June 1, 2018); [337-6] (Beacon's letter of June 7, 2018); [337-7] (Feit's letter of June 11, 2018); (Beacon's letter of June 25, 2018). Notably, Beacon expressed "urgent[ ] concern" on June 25, 2018 over Feit's position that discovery was limited to only those CFLs that had been accused of

9

infringement in the Initial Contentions. *See* [337-9] 2. Even Beacon's counsel recognized that the parties "likely are at an impasse" on the issues identified in Beacon's initial discovery letter, but Beacon nevertheless sought a final meet-and-confer session. [*Id.*]. The record does not contain any responsive letter from Feit, and CFLT maintains that Feit "ignored" this request for a meet-and-confer. *See* [337-15] 2.

Accordingly, when the District Judge stayed discovery on June 21, 2018, all indications were that the parties had reached an impasse on the three discovery disputes that are now before the Court, and–with Feit having "ignored" the request to meet and confer–the disputes were ripe for presentment to the Court. *See* L.R. 37.2 (court will refuse to hear discovery motion unless, *inter alia*, counsel certifies that "counsel's attempts to engage in such consultation" with opposing counsel about discovery disputes "were unsuccessful due to no fault of counsel's"). Nevertheless, CFLT's pursuit of these discovery disputes was marked by repeated instances of extreme and undue delay. *See Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 1680109, at *5 (W.D. Ky. May 14, 2012) ("because Plaintiffs were aware of Defendants' objections to the discovery requests for six months before filing a motion to compel, the Court cannot conclude that they were prejudiced by the magistrate judge's denial of their motion to compel," which had been filed only ten days before discovery closed).

### 2. CFLT Unreasonably Delayed in Pursuing the 2018 Discovery Disputes.

Second, the Court is obviously aware that discovery was stayed for two-and-a-half years after CFLT appeared in December 2018, and the Court does not consider that period of time relevant to the timeliness issue. But once the District Judge lifted the stay of discovery on July 1, 2021 and ordered that all fact discovery be completed by October 20, 2022, CFLT unreasonably–and unjustifiably–delayed in pursuing the 2018 discovery disputes.

CFLT took no steps to resolve the parties' discovery disputes until April 14, 2022–nine-and-a-half months after the stay was lifted–when it served a discovery letter on Feit. *See* [337-10]. The Court finds this delay to be particularly inexcusable and compelling evidence that the motion is untimely. As discussed above, the discovery disputes between Feit and Beacon had crystallized to the point of impasse by late June 2018, and CFLT–which stepped into Beacon's shoes only six months later–should have known that the disputes were ripe for presentment to the Court. CFLT should also have known that these disputes needed to be presented to the Court promptly once the stay had been lifted. At least one of the disputes–whether CFLT could take discovery on the Feit CFLs that had not been accused of infringement in the Initial Contentions–goes to the heart of CFLT's claim that *all* Feit self-ballasted CFLs infringe the patents-in-suit: without discovery into the other Feit CFLs, CFLT

10

would have no way to prove this claim. Furthermore, CFLT's demand that Feit identify its vendors and manufacturers is inextricably linked to that core issue, given Feit's representation that it did not maintain samples and technical documents of the CFLs it sold. There is nothing in the record, moreover, to suggest that, in the intervening four years, Feit had rethought or decided to compromise on its refusal to engage in discovery beyond the Initial Accused Products. Resolving that dispute–as well as the related disputes over samples, technical documentation, and confidential documents–in short order had to be a top priority for CFLT, yet it allowed nearly ten months of fact discovery to pass without moving any of these disputes closer to resolution. *See Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (motion to compel, filed four days before discovery closed and "seeking an array of evidence that [plaintiffs] had not inquired about in almost thirteen months," denied as "too little, too late"); *Hyland*, 2012 WL 1680109, at *5 (motion to compel filed six months after discovery dispute arose and ten days before discovery closed was untimely).

The Court recognizes that these disputes arose in a protracted and complex patent-infringement suit, and that, once the District Judge lifted the stay of discovery in July 2021, the parties apparently prioritized discovery into the '464 patent (as to which, due to the District Judge's original unenforceability ruling, discovery was in its early stages). But CFLT does not argue that it would have been impractical or unduly burdensome to pursue both lines of discovery simultaneously. *See* [349] 18-19. Indeed, the Court would not credit such a claim in any event, given (1) the importance of these three discovery disputes to CFLT's case, (2) the fact that the parties were already at an impasse in June 2018, and (3) CFLT's consistent representations to the Court in late 2021 and throughout 2022 that it expected to complete discovery by October 20, 2022.

For these reasons, the Court finds that CFLT's failure to take any steps to resolve the three outstanding discovery dispute between July 2021 and April 14, 2022 represents an unreasonable and unjustified delay, and that this delay weighs heavily in favor of finding the motion untimely.

### 3. CFLT's Failure to File the Motion until October 2022 Is Further Evidence of Unreasonable Delay.

Third, the Court concludes that CFLT unreasonably delayed in bringing its motion to compel by not filing it until four months after the parties' June 1, 2022 meet-and-confer conference.

On May 4, 2022, Feit responded to CFLT's discovery letter of mid-April by essentially repeating the arguments made in its June 2018 responses to Beacon's discovery letters. *Compare* [337-7] 3-4 *with* [337-13] 2-7. In other words, Feit did not change or moderate its position at all; to the contrary, Feit placed the blame on CFLT

11

for "fail[ing] to conduct even the most basic discovery on its own for at least the last four years[.]" [337-13] 6. The parties then conducted a Local Rule 37.2 meet-and-confer on June 1, 2022, but, as discussed in more detail below, there is no evidence that Feit was willing to compromise on its core objections that (1) discovery was limited to the Initial Accused Products, (2) CFLT needed to obtain samples and technical documents from Feit's suppliers, and (3) the default protective order was insufficient to protect Feit's confidential documents. Despite being clearly aware of Feit's positions by June 1, 2022 at the absolute latest, CFLT did not seek judicial intervention in these disputes until October 7, 2022–more than four months after that meet-and-confer session had occurred and only 13 days before the close of fact discovery. This unjustified delay weighs heavily in favor of finding the motion untimely. *See West*, 2006 WL 2349988, at *5-6 (motion to compel filed 11 days before discovery closed was untimely because it followed "four months of discovery inaction" as well as "representations to the Court that no problem existed close in time to when [moving party] first learned of . . . noncompliance").

### 4. The Relief CFLT Seeks Cannot Be Granted without Reopening Fact Discovery.

Fourth, the Court could not grant the relief CFLT seeks without reopening fact discovery for what would likely be an extended period of time. CFLT's belated motion seeks wide-ranging discovery–in the form of samples, technical documents, and other materials–related to nearly 1,200 models of CFLs that Feit sold or distributed. There is simply no way that the Court could have compelled the requested discovery by the October 20, 2022 close of discovery, and in light of the Court's previous determination that CFLT had not shown good cause to extend the fact discovery period, the Court declines to grant a de facto extension to permit CFLT to engage in the very discovery it should have undertaken years ago. *See Ridge Chrysler*, 2004 WL 3021842, at *6 ("The Court acknowledges that Plaintiffs filed their Motion to Compel in advance of the discovery deadline. However, they filed it so late as to make it impossible to conduct the requested discovery within the discovery period."). Discovery "[d]eadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute." *Haviland v. Catholic Health Initiatives-Iowa Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010); *see also Continental Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-cv-20-HSM-SKL, 2017 WL 11180629, at *3 (E.D. Tenn. Jun. 15, 2017) ("Even if the Court were inclined to address the belated motions, it could not compel the requested discovery without, in effect, reopening the discovery period."); *Hyland*, 2012 WL 1680109, at *4 ("Allowing extensive, detailed, additional discovery now would be significantly prejudicial and plaintiffs have had more than ample time to seek the resolution of any perceived shortcoming in a six-months old discovery response").

12

### 5. CFLT's Contrary Arguments Lack Merit.

CFLT's arguments that its motion to compel is timely are not persuasive.

#### i. Feit did not have the burden to seek a protective order.

CFLT first argues that, because Feit objected to the scope of discovery proposed by Beacon and CFLT, Feit had the burden to seek a protective order that limited discovery to the Initial Accused Products. [349] 19. CFLT contends that Feit's failure to do so amounts to a waiver of its objections to CFLT's discovery requests. [*Id.*]. Feit responds that it had no obligation to seek a protective order and that the burden was on CFLT to file a motion to compel. [348] 8-9.

The Court disagrees that Feit waived its objections by not moving for a protective order. As other decisions from this District have recognized, "a party objecting to discovery may seek a protective order" when served with discovery requests, but "it is under no obligation to do so." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 337. Rather, "[t]he served party has the option of providing appropriate written objections and leaving it to the party seeking discovery to file a motion to compel." *Id.* "Either method brings the disputed matter before the court." *Id.* Here, Feit served written objections to Beacon's discovery requests, and it reiterated those objections in Local Rule 37.2 correspondence with both Beacon and CFLT. As Feit had no obligation to request a protective order, its failure to do so did not result in forfeiture or waiver of its objections.

The decision is *Baxter Int'l Inc. v. Becton, Dickinson & Co.*, Case No. 17 C 7576, 2020 WL 424918 (N.D. Ill. Jan. 27, 2020), on which CFLT relies, does not require a different result. After Baxter was served with requests for production, it represented to Becton, Dickinson in August 2019 that it had searched for responsive documents and that, "to the extent any non-privileged responsive documents are identified, they will be produced consistent with Baxter's written response to RFP Nos. 24, 27, 29, 31, and 33." *Id.*, at *3. When the production was not forthcoming, Becton, Dickinson filed a motion to compel that the district court granted. As the court explained:

> Baxter cannot now back away from these representations. Document Requests 24, 27, 29, 31, and 33 were served in February 2018. If, as Baxter now claims, it has always maintained that documents responsive to these requests were neither relevant nor proportional to the needs of the case, Baxter should have declined to produce documents and sought a protective order on those grounds from the very beginning–or, at the very least, well before the initial close of fact discovery. Instead, it represented as late as August 2019 (a year-and-a-half after the requests were served) that it would produce additional responsive documents if

13

it found any. It was only two weeks before the initial close of fact discovery that Baxter asserted that it would not be doing so. That is much too late in the game for Baxter to change its position.

*Id.*

The Court does not read *Baxter*, a non-precedential district court decision, as imposing a duty on Feit to seek a protective order on the facts of this case. For one thing, *Baxter* said only that the objecting party "should have" sought a protective order, not that it had to do so to preserve its objections to the discovery requests. For another, Baxter unambiguously represented to Becton, Dickson that it would produce responsive documents and raised no objection to the discovery requests until a year-and-a-half after the requests were served and only two weeks before the initial discovery cutoff date. The opposite is true in this case: Feit immediately objected to Beacon's request to take discovery on Feit CFLs that were not accused of infringement in Beacon's Initial Contentions, stood on that objection during the parties' June 2018 meet-and-confer negotiations, raised the same objection in response to CFLT's April 2022 discovery letter, and continues to stand on that objection in opposing the motion to compel. *See* [348] 13-17.

### ii. The record does not support CFLT's claim that Feit misled CFLT about the scope of its discovery responses.

Second, CFLT appears to claim that Feit misled it into believing that Feit's discovery production would include materials relating to all Feit's CFL products, and not just the Initial Accused Products. According to CFLT, although Feit stated at the June 1, 2022 meet-and-confer that "it was maintaining its position that only 33 products are accused in the case," Feit also stated that it "was not withholding any discovery based on that position or any other objections other than privilege and/or confidentiality." [337] 11. In support, CFLT relies on a September 7, 2022 email from its counsel to counsel for Feit, in which CFLT's counsel wrote that "Feit has admitted to having over 100,000 documents that have been available for CFLT to come and inspect. At the June 1, 2022 meet-and-confer teleconference, Feit made clear that *it was withholding no documents or information on the basis of any objection other than privilege and/or confidentiality*." [337-18] 2 (emphasis added).

The Court is convinced, however, that the italicized portion of the email cannot reasonably be understood as an agreement on Feit's part to engage in the very discovery it had been opposing since June 2018. To begin, CFLT has not offered any contemporaneous record that documents Feit's supposed change-of-heart, after the June 1, 2022 meet-and-confer, on this core discovery dispute. Neither the June 2022 nor the August 2022 joint status report mentioned that Feit had agreed to produce documents relating to all 1,193 bulbs at issue. *See* [321] 1-2; [326] 1-2. Given the

14

importance of the scope of discovery into accused products, and Feit's unequivocal and longstanding refusal to engage in discovery beyond the Initial Accused Products, the Court expects that some contemporaneous documentation would have existed if Feit had indeed agreed to include in its discovery responses information that related to all 1,193 bulbs identified by CFLT. Instead, CFLT relies only on a single email drafted by one of its attorneys more than three months after the meet-and-confer session. And even accepting that the email accurately reflected Feit's position, the passage relied on by CFLT does not clearly demonstrate that Feit agreed to produce discovery of CFL models beyond the Initial Accused Products. Indeed, nothing in the September 7 email specifically addresses that longstanding discovery dispute. Rather, the email focuses on CFLT's position that "there is no need to for a new protective order or ESI order as any precondition for Feit to produce confidential documents and other information" and reiterates, in detail, CFLT's arguments that Feit should produce its discovery responses without regard to a modified protective order or an order governing ESI discovery. [337-18] 2. The Court therefore understands Feit's position to be that it would not be withholding from the documents it agreed to produce any materials that were non-privileged or not confidential.[4]

For these reasons, the Court rejects CFLT's claim that Feit misled it into believing that its discovery responses would include materials relating to all 1,193 CFL models identified in CFLT's April 14, 2022 letter.

### iii. CFLT strategically withheld its protective-order objection after the June 1, 2022 meet-and-confer.

Finally, CFLT argues that it "held off burdening the Court with a motion to compel" after the June 1, 2022 meet-and-confer because Feit "expressed the desire for a new protective order, implying that a new protective order was the only remaining barrier to Feit meeting its discovery obligations." [337] 11. CFLT later concluded that Feit's position "proved to be a ruse" that was "calculated to stave off CFLT's inevitable motion to compel." [*Id.*]. The Court rejects this argument. The record demonstrates that CFLT chose, for strategic reasons, to withhold its objection that a modified protective order was unnecessary and to negotiate on Feit's terms on this issue. At all times, however, CFLT was free to file a motion to compel, not least because the

---

[4] Feit's opposition brief failed to address CFLT's claim that Feit misled it at the June 1, 2022 meet-and-confer about the scope of its discovery responses, thereby hindering the Court's resolution of this issue. But even if the Court had to ignore the lack of a plausible factual basis for CFLT's claim and accept that Feit had misled CFLT, this would not make CFLT's motion timely. The June 2022 meet-and-confer did not occur until eleven months after the District Judge lifted the stay of discovery, and any motion to compel arising out of the 2018 discovery disputes–disputes over which the parties were at an impasse by late June 2018– would have been untimely. That CFLT waited four more months before filing its motion only exacerbated this timeliness problem.

15

parties had been at impasse for several years on this issue. That CFLT made a strategic choice to negotiate that it later came to regret provides no basis to find that CFLT's October 7, 2022 motion to compel was timely.

### 6. Conclusion

"Counsel who wait to file a motion to compel until the discovery deadline or close to the discovery deadline run the peril of having the motion considered to be untimely as being brought with undue delay." *Dziadek v. Charter Oak Fire Ins. Co.*, No. CIV 11-4134-RAL, 2014 WL 820049, at *4 n.2 (D.S.D. Mar. 3, 2014). In this case, the Court concludes that CFLT has unduly and unjustifiably delayed in seeking resolution of the three discovery disputes that arose between Feit and CFLT's predecessor in the litigation, Beacon Capital, in June 2018. The District Judge afforded the parties a lengthy discovery period, and the parties consistently reported that they expected discovery to be completed by the October 20, 2022 deadline. Despite the existence of a clear impasse on these issues that has existed since June 2018, CFLT failed to take any action to resolve the issues until nine-and-a-half months after the stay of discovery was lifted, and it did not seek judicial intervention until more than four months after the parties' June 1, 2022 meet-and-confer. Nor has CFLT provided a reasonable or plausible explanation for these delays, especially given that these disputes go to the heart of CFLT's infringement claims and thus should have been resolved much earlier. Finally, CFLT's motion could not be granted without granting a de facto extension of the discovery period, which is unwarranted for the reasons stated in this Opinion and the Court's denial of CFLT's earlier motion to extend fact discovery.

For these reasons, the Court denies CFLT's untimely motion to compel. *See Wilbur v. Cnty. of Waukesha*, Case No: 14-CV-46-PP, 2016 WL 4082666, at *4 (E.D. Wis. Jul. 29, 2016) ("In light of the lengthy discovery period, the multiple extensions of the discovery period, the plaintiff's knowledge of the impasse some two weeks prior to the filing of the motion, and the fact that granting this motion would require yet another extension of the discovery period, the court finds that this motion is untimely.").

In closing, the Court is compelled to note that its denial of CFLT's motion is in no way an endorsement of any of the positions that Feit has taken in response to the 2018 discovery requests. "Modern discovery practices seek to facilitate . . . open and even-handed development of relevant facts so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 342. But some of the positions Feit has taken have obviously impeded, rather than facilitated, the open and even-handed development of the relevant facts. Feit has insisted that CFLT must obtain samples and technical documents from its vendors and suppliers, but it has refused to identify these third parties. And it has insisted that the default protective order applicable in patent cases

16

pending in this District would not be binding on it–and has refused to produce confidential documents on that basis–in clear contravention of the plain language of the Local Patent Rules. That Feit has taken and persisted in these problematic positions is concerning to the Court. At the same time, Feit has made these positions clear to both Beacon Capital and CFLT, and CFLT has long been aware of Feit's objections to the 2018 discovery requests–which makes CFLT's delay in seeking judicial resolution of those disputes all the more inexplicable. Because there is no basis for CFLT to claim that it was unfairly surprised by Feit's positions, the Court concludes that denial of the motion on timeliness grounds is appropriate.

## II.     Request For Sanctions

CFLT also argues that the Court should sanction Feit for its alleged spoliation of evidence.[5] According to CFLT, Feit spoliated evidence when it "sold off all samples of its myriad CFL models" and failed to retain samples of those models for use in this litigation. [337] 4.

"When a party asks for a sanction for spoliation, courts conduct a two-part inquiry: first, the court must find that the party had a duty to preserve evidence because it knew or should have known that litigation was imminent, and second, the court must find that the evidence was destroyed in bad faith." *Bowen v. Bredemann*, Case No. 18-cv-675-pp, 2020 WL 5821801, at *2 (E.D. Wis. Sept. 30, 2020). "In this context, bad faith means destruction for the purpose of hiding adverse information." *Weitzman v. Maywood, Melrose Park, Broadview Sch. Dist. 89*, No. 13 C 1228, 2014 WL 4269074, at *2 (N.D. Ill. Aug. 29, 2014). Accordingly, when a court considers "the propriety of [giving] an adverse inference instruction, the crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2008) (internal quotation marks and brackets omitted). "[P]roof that evidence was lost or destroyed does not by itself establish bad faith." *Teamsters Local Union No. 727 v. Chicago Parking Valet*, Case No. 1:16-cv-6443, 2020 WL 13618112, at *2 (N.D. Ill. May 8, 2020); *accord Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("That the documents were destroyed *intentionally* no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information.") (emphasis in original).

---

[5] The undersigned has considered whether CFLT's request for sanctions is a dispositive matter for purposes of Fed. R. Civ. P. 72 and thus requires the preparation of a report and recommendation to the District Judge. "Whether the district judge treats a matter as dispositive or non-dispositive depends not on the relief sought, but on the relief entered." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, No. 08 C 0139, 2011 WL 812140, at *2 (N.D. Ill. Mar. 1, 2011). Although CFLT does not say whether it is seeking a mandatory or permissive adverse-inference instruction, this omission is immaterial. Because CFLT has not proved that Feit acted in bad faith, no sanctions are warranted and the undersigned's denial of the sanctions request involves a non-dispositive matter.

"[A]s the party moving for spoliation sanctions," CFLT "bears the burden to establish [Feit's] bad-faith destruction of evidence." *Teamsters Local Union No. 727*, 2020 WL 13618112, at *2.

Here, even assuming, *arguendo*, that Feit had a duty to preserve samples of every model of CFL that it sold or distributed, CFLT has not established that Feit's failure to do so was in bad faith. CFLT argues that Feit "had no intention of preserving any sample evidence," "should have at least preserved a sample of the Exemplary Accused Model[,]" and unreasonably took the position that "it did not understand that samples of all of its CFLs could have been relevant to' CFLT's infringement claims." [337] 17. But these arguments are just restatements of CFLT's basic claim that Feit should have, but failed, to preserve the CFL samples for this litigation. But the bare fact that the samples were not preserved is insufficient to warrant an adverse-inference instruction. *See, e.g.*, *Mathis*, 136 F.3d at 1155; *Teamsters Local Union No. 727*, 2020 WL 13618112, at *2. Furthermore, CFLT's request for sanctions is not supported by *any* evidence, let alone evidence that sheds light on "the reason for the [alleged] destruction" of the samples. *Bracey*, 712 F.3d at 1019; *see also Teamsters Local Union No. 727*, 2020 WL 13618112, at *2 (denying spoliation sanctions where plaintiff "points to no supporting evidence" and emphasizing that "speculation in a brief cannot substitute for evidence of bad faith, and plaintiff has introduced none").

CFLT also argues that it is "notable" that Feit ignored CFLT's suggestion in the April 14, 2022 discovery letter, to "discuss ways potentially to avoid prejudice to CFLT as a result of" Feit's alleged failure to preserve CFL samples. [337] 17. The Court disagrees that Feit's response, or lack of response, to this proposal constitutes any evidence of bad faith. Most importantly, this argument is merely another example of "speculation in a brief," rather than evidence of bad faith. *Teamsters Local Union No. 727*, 2020 WL 13618112, at *2. Moreover, Feit has taken the position–correctly or incorrectly[6]–that the scope of CFLT's infringement claim was limited to the Initial Accused Products. Feit's refusal to discuss how to cure the alleged prejudice to CFLT caused by its failure to preserve samples of a different set of CFLs does not establish that Feit destroyed or failed to preserve those samples with the intent to deny CFLT information that was adverse to Feit's own case. Finally, to the extent that any samples were spoliated, the spoliation appears to have occurred long before the parties' exchange of discovery letters in 2022. Indeed, Feit advised Beacon in June 2018 that, due to Beacon's alleged failure to identify the Initial Accused Products until more than four years after the case began, samples of most of the Initial Accused Products were no longer available. *See* [337-7] 3. CFLT does not

---

[6] The Court emphasizes that nothing in this Opinion should be construed as addressing the parties' dispute over which products–those included among the Initial Accused Products or all of Feit's self-ballasted CFLs–have properly been accused of infringement, which is a matter only the District Judge could resolve.

explain how Feit's position in discovery negotiations in 2022 constitutes evidence of its bad faith in 2018 or even earlier in the litigation.

Finally, CFLT relies on the decision in *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No 05 C 4088, 2011 WL 722467, at *8 (N.D. Ill. Feb. 23, 2011), where the court observed that "[a] party's failure to preserve evidence alone constitutes bad faith[.]" This passage in *Rosenthal Collins* is directly contrary to the Seventh Circuit's decisions in *Bracey* and *Mathis*, and the Court declines to follow that decision here.

For these reasons, CFLT's request for sanctions is denied.

## Conclusion

For the reasons set forth above, CFLT's motion to compel and request for sanctions [337] is denied.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 12, 2023**

19